UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
-------------------------------------------------------x
TIMOTHY KARCHER, et al.,                :
                                        :     **Case No. 16-cv-00232 (CKK)**
                            Plaintiffs, :
                                        :
          -against-                     :
                                        :
ISLAMIC REPUBLIC OF IRAN,               :
                                        :
                            Defendant.  :
-------------------------------------------------------x

# BRIEF ON JURISDICTION AND JUDICIAL NOTICE OF FACTS

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................................. ii

I.   **Summary of the Allegations in the Amended Complaint.** ................................................ 1

II.  **This Court Has Subject Matter and Personal Jurisdiction Over This Action.** ............... 2

  A.  **This Court Has Subject Matter Jurisdiction Over This Action.** ................................ 2

  B.  **This Court Has Personal Jurisdiction Over Iran as to All of Plaintiffs' Claims.** ....... 5

III. **This Court May Take Judicial Notice of Facts Established in Other FSIA Cases.** .......... 5

  A.  **Iran is a Designated State Sponsor of Terrorism with a Long History of Supporting Terrorism.** ................................................................................................................ 6

  B.  **Iran Uses Its Terror Proxy, Hezbollah, to Train and Direct Terrorism Globally.** ... 7

  C.  **Iran Uses the IRGC and the IRGC-QF to Train Terrorists to Export Terrorism Generally and to Target U.S. Forces in Iraq Specifically.** ........................................... 8

# **TABLE OF AUTHORITIES**

**Cases**

*Bodoff v. Islamic Republic of Iran*
  907 F. Supp. 2d 93 (D.D.C. 2012) ............................................................................... 7, 8

*Cohen v. Islamic Republic of Iran*
  No. 12-CV-01496 (CRC), 2017 WL 818208 (D.D.C. Mar. 1, 2017) ........................................ 4

*Dammarell v. Islamic Republic of Iran*
  404 F. Supp. 2d 261 (D.D.C. 2005) ............................................................................... 5, 7

*Doe v. Constant*
  No. 04 Civ. 10108 (SHS), 2006 WL 3490503 (S.D.N.Y. Oct. 24, 2006) ................................. 4

*Flanagan v. Islamic Republic of Iran*
  87 F. Supp. 3d 93 (D.D.C. 2015) ................................................................................... 8, 9

*Gill v. Islamic Republic of Iran*
  No. CV 15-2272 (RBW), 2017 WL 1289938 (D.D.C. Apr. 6, 2017) ................................... 4, 7

*Heiser v. Islamic Republic of Iran*
  466 F. Supp. 2d 229 (D.D.C. 2006) ................................................................................... 3

*Holland v. Islamic Republic of Iran*
  496 F. Supp. 2d 1 (D.D.C. 2005) ................................................................................... 5, 7

*Oveissi v. Islamic Republic of Iran*
  879 F. Supp. 2d 44 (D.D.C. 2012) ..................................................................................... 6

*Owens v. Republic of Sudan*
  826 F. Supp. 2d 128 (D.D.C. 2011) ............................................................................... 6, 8

*Taylor v. Islamic Republic of Iran*
  811 F. Supp. 2d 1 (D.D.C. 2011) ...................................................................................... 3

*Valore v. Islamic Republic of Iran*
  700 F. Supp. 2d 52 (D.D.C. 2010) ................................................................................. 6, 8

*Warfaa v. Ali*
  33 F. Supp. 3d 653 (E.D. Va. 2014) .................................................................................. 4

*Worley v. Islamic Republic of Iran*
  75 F. Supp. 3d 311 (D.D.C. 2014) ................................................................................. 3, 5

**Statutes**

28 U.S.C. § 1330 ..................................................................................................................... 3, 5

28 U.S.C. § 1603(a) ..................................................................................................................... 3

28 U.S.C. § 1605(a)(7) ................................................................................................................. 3

28 U.S.C. § 1605A .............................................................................................................. 3, 4, 5

28 U.S.C. § 1608(c)(3) ................................................................................................................. 5

**Other Authorities**

Determination Pursuant to Section 6(i) of the Export Administration Act of 1979-Iran
   49 Fed. Reg. 2836 (Jan. 23, 1984) ........................................................................................... 5

Rick Atkinson, *'There was a two-year learning curve . . . and a lot of people died in those two
   years,'* Wash. Post., Oct. 1, 2007 ............................................................................................ 2

**Rules**

Fed. R. Evid. 201(b) ..................................................................................................................... 6

**Regulations**

22 C.F.R. § 126.1(d) (2006) ......................................................................................................... 5

31 C.F.R. § 596.201 (2006) .......................................................................................................... 5

iii

Pursuant to this Court's May 15, 2017 Order, Plaintiffs set out below the bases for this Court's jurisdiction over this matter and the factual findings that the Court may take judicial notice of, along with their sources.

## I.     Summary of the Allegations in the Amended Complaint.

Plaintiffs are American servicemembers[1] and family members of American servicemembers who were killed or injured in terrorist attacks while serving in Iraq. Each of these attacks was committed by terrorists trained, funded, and otherwise supported by Defendant Islamic Republic of Iran—a political and ideological enemy of the United States since the 1979 Iranian Revolution that viewed the U.S. presence in neighboring Iraq as a threat to its regime. First Amended Complaint, ECF No. 8, ¶¶ 10, 28. Following the May 1, 2003 end of major combat operations in Iraq and the commencement of U.S. peacekeeping operations in Iraq under United Nations mandate, Iran increased its flow of material support and resources to terrorist groups in Iraq targeting U.S. and other Coalition forces. *Id.* ¶¶ 25-36. Iran provided this support primarily through its state militia, the Islamic Revolutionary Guard Corps ("IRGC"), the IRGC's "special operations" branch, Qods Force ("IRGC-QF"), *id.* ¶¶ 16-36, and Iran's Lebanon-based terror proxy, Hezbollah, *id.* ¶¶ 10-15. Hezbollah has been a designated Foreign Terrorist Organization since 1997, and the IRGC-QF has been a Specially Designated Global Terrorist since 2007. *Id.* ¶¶ 8, 15.

IRGC/IRGC-QF and Hezbollah agents, at Iran's direction, cultivated, armed, trained, and supported Shi'a terrorist groups in Iraq, called "Special Groups" by the U.S. military. *Id.* ¶¶ 23-66. For instance, Iran provided the Special Groups with sophisticated weapons with far more destructive power than the weapons terrorists in the region could otherwise acquire, including

---

[1]     In 3 cases, however, the decedent was a military contractor or journalist.

Explosively-Formed Penetrators ("EFPs") and Improvised Rocket-Assisted Munitions ("IRAMs"). *Id.* ¶¶ 67-87. EFPs are a particularly effective form of manufactured Improvised Explosive Device, usually made with a high explosive packed behind a concave copper disk. *Id.* ¶¶ 67-81. To produce these weapons, copper sheets are shaped into disks in industrial hydraulic presses and annealed in furnaces—processes out of the reach of an Iraqi terrorist group without Iranian support. *Id.* When the explosives inside an EFP detonate, the blast energy inverts the copper disk into a ragged slug weighing several pounds, traveling over a mile per second,[2] and capable of punching through military-grade armor. *Id.* Numerous U.S. government reports have identified Iran's role in supplying the Special Groups with these weapons and have detailed the devastating effect they have on U.S. military vehicles and soldiers. *Id.*

Each Plaintiff's injuries resulted from attacks committed by these Special Groups. Most of these attacks involved Iranian EFPs, *see, e.g.*, *id.* ¶¶ 134-48, or IRAMs, *see, e.g.*, *id.* ¶¶ 936-48. Other attacks were attributable to the Special Groups by other means, *see, e.g.*, *id.* ¶¶ 100-19; for instance, in a coordinated attack on a military installation planned by Hezbollah and directly supported by Iran and the IRGC, Special Group terrorists dressed as Iraqi security forces kidnapped and executed several U.S. soldiers and killed others during the ensuing firefight. *See id.* ¶¶ 443-524.

II.     **This Court Has Subject Matter and Personal Jurisdiction Over This Action.**

    A.     **This Court Has Subject Matter Jurisdiction Over This Action.**

United States district courts have original jurisdiction over personal injury claims against a foreign state where an exception to that state's sovereign immunity applies:

---

[2]     *See* Rick Atkinson, *'There was a two-year learning curve . . . and a lot of people died in those two years,'* Wash. Post, Oct. 1, 2007, *available at* http://www.washingtonpost.com/wp-dyn/content/article/2007/09/30/AR2007093001675_pf.html.

> The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief *in personam* with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.

28 U.S.C. § 1330(a). Because Plaintiffs have brought a nonjury[3] civil action against Iran, which is a foreign state under 28 U.S.C. § 1603(a), for personal injury claims against Iran in its capacity as a legal person, and against which claims Iran is not immune, "[a]ll of section 1330(a)'s requirements are met." *Worley v. Islamic Republic of Iran*, 75 F. Supp. 3d 311, 323 (D.D.C. 2014). *See also Taylor v. Islamic Republic of Iran*, 811 F. Supp. 2d 1, 8 (D.D.C. 2011) ("The Court has repeatedly found [Iran] subject to jurisdiction under the FSIA.").

Iran is not immune to Plaintiffs' claims as they are brought under the "State-Sponsored Terrorism" exception to sovereign immunity set forth in 28 U.S.C. § 1605A. Under that exception, a foreign state waives its sovereign immunity against claims for personal injury or death caused by "an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment or agency." *Id. See also Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 254 (D.D.C. 2006).[4]

Plaintiffs have alleged that Iran ordered and/or provided material support or resources for each of the acts of extrajudicial killing and hostage taking, constituting 93 terrorist attacks, that

---

[3]  Plaintiffs requested a jury trial in their original complaint, but acknowledge here that a jury trial is unavailable under the FSIA.

[4]  Although 1605A was enacted in 2008, the jurisdictional portions are substantially similar to its predecessor, 28 U.S.C. § 1605(a)(7), which was enacted in 1996.

killed the 40 estate Plaintiffs, injured the 22 surviving Plaintiffs, and intentionally inflicted emotional distress on the 311 family member Plaintiffs.

Eighty-six of these 93 terrorist attacks resulted in the death of a victim (whether represented in this matter or not).[5] In 8 of the 93 attacks, however, the evidence currently suggests that all the victims of those attacks survived. For example, Plaintiff Robert Canine sustained near-fatal injuries, losing both legs and nearly dying during emergency treatment, as a result of a terrorist attack that did not result in any fatalities. However, acts of attempted extrajudicial killing, "even if no one died as a result of that attempt," qualify under section 1605A. *Gill v. Islamic Republic of Iran*, No. CV 15-2272 (RBW), 2017 WL 1289938, at *7 (D.D.C. Apr. 6, 2017). *See also Doe v. Constant*, No. 04 Civ. 10108 (SHS), 2006 WL 3490503 (S.D.N.Y. Oct. 24, 2006)*, aff'd,* 354 Fed. Appx. 543 (2d Cir. 2009) (finding that attacks that resulted in no deaths satisfied the definition of extrajudicial killing under 28 U.S.C. § 1350 note, which section 1605A explicitly incorporates by reference); *Warfaa v. Ali*, 33 F. Supp. 3d 653 (E.D. Va. 2014), *aff'd*, 811 F.3d 653, 665-66 (4th Cir. 2016), *petition for cert. on other grounds filed*, (U.S. May 2, 2016) (No. 15–1345) (same).

Section 1605A conditions subject matter jurisdiction on fulfilling three additional requirements: "The court shall hear a claim under this section if" (1) "the foreign state was designated as a state sponsor of terrorism at the time the" terrorist attacks at issue occurred and "remains so designated when the claim is filed," (2) the claimant or the victim was a national of the United States or a member of the armed forces, and, if the attack occurred in the foreign state, (3) the foreign state was afforded the opportunity to arbitrate. 28 U.S.C. § 1605A(a)(2)(A).

---

[5]     *See Cohen v. Islamic Republic of Iran*, No. 12-CV-01496 (CRC), 2017 WL 818208, at *5 (D.D.C. Mar. 1, 2017) ("It is not necessary . . . for one of the plaintiffs to have died in the attack in order for the state-sponsor-of-terrorism exception to apply").

4

Each of these requirements is met here. First, Iran was designated a State Sponsor of Terrorism in 1984 and has been on the State Department's list of State Sponsors of Terrorism since that time. *See* 22 C.F.R. § 126.1(d) (2006); 31 C.F.R. § 596.201 (2006); Determination Pursuant to Section 6(i) of the Export Administration Act of 1979-Iran, 49 Fed. Reg. 2836 (Jan. 23, 1984). *See also Dammarell v. Islamic Republic of Iran*, 404 F. Supp. 2d 261, 273-74 (D.D.C. 2005). Second, all of the victims were United States nationals.[6] Third, the attacks did not occur in Iran, so Iran is not entitled to the opportunity to arbitrate the dispute. Therefore, this Court has subject matter jurisdiction over this matter. *See, e.g.*, *Holland v. Islamic Republic of Iran*, 496 F. Supp. 2d 1, 8 (D.D.C. 2005) (finding subject matter jurisdiction over claims relating to murder of U.S. serviceman in attack committed by Hezbollah and supported by Iran) (Kollar-Kotelly, J.).

**B.   This Court Has Personal Jurisdiction Over Iran as to All of Plaintiffs' Claims.**

This Court has personal jurisdiction "over a foreign state . . . as to every claim for relief over which the district courts have jurisdiction under [§ 1330(a)] where service has been made under section 1608 of this title." 28 U.S.C. § 1330(b). Because this Court ordered that "Iran is deemed to have been served [with Plaintiffs' operative complaint] on December 18, 2016" pursuant to 28 U.S.C. § 1608(c)(3), Order, ECF No. 31, at 3-4, the Court has personal jurisdiction over Iran for all of Plaintiffs' claims. *See also Worley*, 75 F. Supp. 3d at 328 (finding personal jurisdiction over claims against Iran because service on Iran was properly made).

**III.   This Court May Take Judicial Notice of Facts Established in Other FSIA Cases.**

The Court may judicially notice facts "not subject to reasonable dispute because" they are "generally known within the trial court's territorial jurisdiction or can be accurately and readily

---

[6]   One victim, Jang Ho Kim, was awarded United States citizenship posthumously, but he was a member of the United States armed forces at the time of the attack in which he was killed. 28 U.S.C. § 1605A(a)(2)(ii)(II).

determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "Because of the multiplicity of FSIA-related litigation, courts in this District have frequently taken judicial notice of earlier, related proceedings." *Oveissi v. Islamic Republic of Iran*, 879 F. Supp. 2d 44, 49 (D.D.C. 2012). While taking judicial notice of these opinions "does not conclusively establish the facts found" in other cases (particularly where defendant has not appeared to contest those facts, as in most FSIA cases against Iran), "'the FSIA does not require this Court to relitigate issues that have already been settled' in previous decisions. Instead, the Court may review evidence considered in an opinion that is judicially noticed, without necessitating the re-presentment of such evidence." *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 60 (D.D.C. 2010) (quoting *Brewer v. Islamic Republic of Iran*, 664 F. Supp. 2d 43, 54 (D.D.C. 2009)).

Numerous previous decisions of this Court have established that (a) Iran is a designated State Sponsor of Terrorism with a long history of providing material support and resources for acts of terrorism around the world, particularly through (b) Hezbollah and (c) the IRGC and IRGC-QF. Many of these findings are supported by the testimony of highly qualified experts who have each testified in numerous terrorism-related cases, including Dr. Patrick Clawson, "a widely-renowned expert on Iranian affairs," *Valore*, 700 F. Supp. 2d at 62 (quoting *Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46, 51 (D.D.C. 2003)), and Evan Kohlmann, who has "repeatedly been qualified as [an] expert[] on this or similar subject matter," *Owens v. Republic of Sudan*, 826 F. Supp. 2d 128, 136 (D.D.C. 2011). These facts, presented below, do not require re-presentment.

### A. Iran is a Designated State Sponsor of Terrorism with a Long History of Supporting Terrorism.

This Court has found that Iran is a designated State Sponsor of Terrorism on dozens of occasions. *See supra* at 5. Since that designation, "Iran's involvement in international terrorism has been unmatched by any other state. Iran remains the world's most capable and persistent state

sponsor of terrorism." *Dammarell*, 404 F. Supp. 2d at 274 (citation omitted). "Iranian governmental support for terrorism is an official state policy," and that support is made with "the approval of high-ranking Iranian officials." *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258, 262 (D.D.C. 2003).

Iran "has expended significant resources sponsoring terrorism"; according to Dr. Clawson's testimony in a 2010 affidavit, "the financial material support provided by Iran in support of terrorism is in the range of *$300 million to $500 million a year*." *Bodoff v. Islamic Republic of Iran*, 907 F. Supp. 2d 93, 105 (D.D.C. 2012) (emphasis added; quoting affidavit of Dr. Clawson). *See also Gill*, 2017 WL 1289938, at *2 (crediting Dr. Clawson's testimony that "[i]t has been well-documented for over thirty years that Iran has provided funding and training for terrorism operations that targeted United States and Israeli citizens"); *Holland*, 496 F. Supp. 2d at 8 ("from 1983 forward, Iran and the [Iranian Ministry of Intelligence and Security] would look to employ international terrorism against non-Iranians").

**B.    Iran Uses Its Terror Proxy, Hezbollah, to Train and Direct Terrorism Globally.**

This Court in *Flanagan* adopted Dr. Clawson's testimony as to Iran's "close[] relationship" with Hezbollah and Hezbollah's role in training other terrorists:

> In many of its operations involving terrorist groups, Iran uses Hizballah as a facilitator. Hizballah plays this role for several reasons. First, Iran's involvement in Hizballah's creation, large-scale funding, constant provision of training, and role in Hizballah's leadership councils has given Iran an important role in the Lebanese organization. Iran trusts Hizballah and Hizballah trusts Iran—one of the closest relationships in history between a terrorist group and its sponsor. Hizballah has a particularly close relationship with the IRGC, with which it has worked since the group's founding in the early 1980s. . . . In the past, however, according to some polls, Hizballah's leader, Hassan Nasrallah, was the single most popular individual in the Arab world because of his organization's repeated and successful defiance of Israel. Third, Hizballah is highly capable and has a high degree of independence in Lebanon. Thus the training offered at Hizballah camps is superb, and it can be done without having to hide it from the Lebanese government. Finally, working through

7

> Hizballah offers Iran some degree of deniability if it chooses, as it places one more degree of separation between the group in question and Iran.

*Flanagan v. Islamic Republic of Iran*, 87 F. Supp. 3d 93, 106 (D.D.C. 2015) (quoting affidavit of Patrick Clawson, Ph.D.). *See also Bodoff*, 907 F. Supp. 2d at 105 (crediting affidavit testimony from Dr. Clawson that Iran gave "$200 million in direct cash assistance to Hezbollah in 2008, as well as the provision since 2006 of 'many tens of millions of dollars' worth of sophisticated weaponry, including some 40,000 rockets.").

This Court has also accepted the testimony of terrorism expert Evan Kohlmann as to Iran's support of Hezbollah:

> Iran trained Hezbollah "in counterintelligence and in explosive capability" such that Hezbollah 'is often described as the A-team of terrorists." Hezbollah operatives were trained in Iran, and [IRCG] trainers were present in Lebanese Hezbollah training camps. Indeed, as terrorism expert Evan Kohlmann testified, "Hezbollah is a proxy force of Iran. Its primary foreign sponsor is Iran, both financially and otherwise. Almost all of Hezbollah's activities are well known to the Iranian government. In some cases they're planned by the Iranian government."

*Owens*, 826 F. Supp. 2d at 136 (quoting testimony from Evan Kohlmann). *See also Valore*, 700 F. Supp. 2d at 62 (quoting former Defense Department consultant Michael Ledeen, Ph.D.'s expert testimony that "Iran invented, created, funded, trained, and runs to this day Hezbollah, which is arguably the world's most dangerous terrorist organization").

### C. Iran Uses the IRGC and the IRGC-QF to Train Terrorists to Export Terrorism Generally and to Target U.S. Forces in Iraq Specifically.

This Court in *Flanagan* adopted Dr. Clawson's testimony as to Iran's use of the IRGC and the IRGC-QF to spread terror, particularly through its relationship with Hezbollah:

> The IRCG was established in the immediate wake of the 1979 revolution. Its role is built into Iran's constitution as defenders of the revolution—not just defenders of Iran as a country, but defenders of the 1979 revolution. The IRGC is one of the major organizations through which Iran has historically carried out its support for terrorism.

8

>Among its other tasks, the IRGC is dedicated to the spread of fundamentalist Islamist principles throughout the world, and the establishments of fundamentalist Islamist governments in nations other than Iran. The Qods Force is the branch of the IRGC generally charged with "foreign operations."
>
>*The foreign operations it supports include foreign insurgents and terrorists such as those fighting U.S. forces and U.S.-backed governments in Afghanistan and Iraq.* It is the principal Iranian organization working with the Lebanese Hizbollah organization's armed elements, which carry out terrorist operations worldwide, engage in military operations in Syria in support of the Assad regime's battle against insurgents, and prepare for battle against Israel.
>
>While in theory the Qods Force is a component element of the IRGC, in practice it operates largely autonomously. It reports directly to the Supreme Leader, rather than being subordinate to the IRGC command structure. The IRGC defines itself as an agent and instrumentality of the Supreme Leader, to which it pledges its unflinching loyalty. The IRGC and the Supreme Leader both frequently speak about the IRGC as the guardian of the principles of the Iranian revolution of 1979.
>
>. . .
>
>It [ ] has been well-documented for over twenty years that the IRGC has historically provided funding and/or training for terrorism operations that targeted United States and Israeli citizens. Such activities have included support for Hizbollah of Lebanon, HAMAS, as well as al-Qaeda, with the character of that support being quite different in each case. . . . Hizbollah of Lebanon (or Hizbollah for short, though not to be confused with similarly named organizations in other countries which have varying degrees of ties with Hizbollah of Lebanon) is a Shiite terrorist organization established in 1982 by Iran as an extension of the Iranian Revolution in Lebanon and elsewhere in the Middle East. The IRGC's relationship with Hizbollah is extremely close.
>
>. . .
>
>In providing support to al-Qaeda and Hizbollah, the IRGC, including the IRGC Qods division, is acting as an official agency whose activities are tightly and carefully controlled by the Iranian government through the Supreme Leader and his representatives. . . .
>
>In sum, the terrorism training provided to Hizbollah, HAMAS, and al-Qaeda by the IRGC is an official policy of the Iranian government.

*Flanagan*, 87 F. Supp. 3d at 104–05 (quoting affidavit of Patrick Clawson, Ph.D.) (emphasis added).

In sum, Plaintiffs respectfully request that this Court judicially notice its prior opinions as described *supra*, as evidence tending to establish the following facts:

1. Iran has been a designated State Sponsor of Terrorism from 1984 to the present.

2. Iran uses Hezbollah, the IRGC, and the IRGC-QF, to support and direct terrorist organizations and terrorist attacks outside of Iran.

3. The IRGC and IRGC-QF are part of the Iranian government and act at the instructions of Iranian leadership.

4. The IRGC and IRGC-QF provide funding, training, direction, and other support for terrorist groups around the world.

Plaintiffs intend to supplement these facts during the liability hearing with additional expert testimony and to present evidence demonstrating Iran's liability for each Plaintiff's injuries.

## CONCLUSION

Plaintiffs respectfully request that this Court find that it has subject matter and personal jurisdiction over Plaintiffs' claims, and judicially notice the facts set forth above.

Dated: May 22, 2017

Respectfully submitted,

OSEN LLC

By   /s/ Gary M. Osen
Gary M. Osen (DC Bar No. NJ009)
Ari Ungar (DC Bar No. NJ008)
Michael J. Radine (DC Bar No. NJ015)
2 University Plaza, Suite 402
Hackensack, NJ 07601
Tel. (201) 265-6400

TURNER & ASSOCIATES, P.A.
C. Tab Turner
4705 Somers Avenue, Suite 100
North Little Rock, AR 72116
Tel. (501) 791-2277

Attorneys for Plaintiffs