UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
---------------------------------------------------------x
TIMOTHY KARCHER, et al.,              :
                                      :   **Case No. 16-cv-00232 (CKK)**
                    Plaintiffs,       :
                                      :
         -against-                    :
                                      :
ISLAMIC REPUBLIC OF IRAN,             :
                                      :
                    Defendant.        :
---------------------------------------------------------x

## STATUS REPORT

Plaintiffs respectfully submit the following status report pursuant to the Court's December 11, 2017 order (ECF No. 39).

**I.    Estimated Duration of Liability Hearing**

Plaintiffs expect that their proposed liability hearing will last **3 full days** and focus on the following liability issues:

1. Iran's provision of material support for terrorism, including its use of the Lebanese Foreign Terrorist Organization Hezbollah as a proxy for its terrorist activities;

2. The role of Iran's Islamic Revolutionary Guard Corps ("IRGC") and Hezbollah in supporting terrorist attacks in Iraq between 2004 and 2011, including targeted attacks on U.S. service members;

3. The role of the IRGC and Hezbollah in creating Shi'a terrorist cells in Iraq commonly referred to as "Special Groups," including by financing, supplying, training and arming them;

4. Iran's design, manufacture and supply of Explosively Formed Penetrators ("EFPs"), Improvised Rocket-Assisted Mortars ("IRAMs") and other munitions used against U.S. service members in Iraq; and

5. Iran's provision of material support for specific bellwether attacks in Iraq.[1]

---

[1] Under Plaintiffs' proposal, they would submit supporting expert declarations and exhibits in support of their Proposed Findings of Fact and Conclusions of Law to support a liability finding for each individual attack identified in the Amended Complaint.

Although the Court requested that Plaintiffs provide their estimate *excluding* the time they anticipate requiring for their proposed bellwether damages hearing, insofar as Plaintiffs anticipate calling certain injured Plaintiffs as fact witnesses, we believe only **one additional day** would be required for the bellwether damages if the Court combined the two hearings.[2] We provide below an example of the liability evidence that could be coupled with damages-related testimony:

> A May 17, 2009 attack on a U.S. patrol in Baghdad, Iraq severely injured Staff Sgt. Robert Canine. As part of the liability hearing, Staff Sgt. Canine would testify about his personal recollections of the attack and its immediate aftermath. If the Court included damages testimony during the same hearing, Staff Sgt. Canine would describe the nature and extent of his injuries; subsequently, Plaintiffs' medical experts would provide an overview of the particular injuries suffered by soldiers like Staff Sgt. Canine as well as a brief assessment of his specific injuries (e.g., depression, Post-Traumatic Stress Disorder ("PTSD"), Traumatic Brain Injury ("TBI") and orthopedic complications from bilateral amputation of his legs).

## II.  Anticipated Availability

The earliest date Plaintiffs could be prepared and available for a liability (and, if directed by the Court, a damages) hearing is **the week of March 12, 2018**, subject to the availability of the majority of expert witnesses separately listed. Plaintiffs can furnish additional available dates in April or May, if those are more convenient for the Court's schedule.

## III.  Information That May Be Appropriate to Be Filed Under Seal

Plaintiffs contemplate three categories of records that they would file under seal. The first category involves certain declassified Department of Defense records that have not previously

---

[2] These witnesses could appear a second time at a separate damages hearing to describe their injuries, but because we envision presenting only 4-5 medical experts in the contemplated damages hearing, the Court may wish to consider consolidating the two hearings once it has evaluated Plaintiffs' January 19, 2018 submissions. Under their initial proposal, Plaintiffs contemplated submitting most of the damages evidence for individual bellwether Plaintiffs by written submission. The sole purpose of the live testimony is to highlight uncommon medical issues that affect many of the wounded Plaintiffs and similarly situated explosive blast victims.

been made public through the Freedom of Information Act.³ The second category involves the technical aspects of the design and deployment of EFPs.

The limited documents Plaintiffs may wish to submit under seal in this second category may include:

1. Patents for the design of explosive devices;

2. Professional materials relating to the design and effectiveness of certain explosive devices;

3. Demonstrative exhibits that detail tradecraft used in the successful deployment of explosive devices (to the extent they might be posted to the ECF docket); and

4. Certain declassified government records concerning terrorist attacks that by themselves pose no concern, but, coupled with expert trial testimony and other demonstrative exhibits, may raise some concerns about public disclosures that might educate potential tortfeasors on methods of effective deployment or concealment of explosive devices.

Plaintiffs' concern is that some of these materials in the second category, *taken as a whole* and placed in context by expert witnesses, might unintentionally provide a roadmap for amateur bomb-makers. Because the materials deal with particularly lethal, armor-defeating weapons, we propose, in an abundance of caution, to file these exhibits and any submissions explaining them under seal. *See Rice v. Paladin Enters., Inc.*, 128 F.3d 233, 239 n.1 (4th Cir. 1997) ("the court has even felt it necessary to omit portions of [excerpts, included in the opinion, from a publicly available book providing instructions on committing murder] in order to minimize the danger to the public from their repetition herein."); *U.S. v. Hubbard*, 650 F.2d 293, 315-16 & n.83 (D.C. Cir. 1980) (noting that national security is a ground for sealing). The Court may determine that Plaintiffs' approach is excessively cautious, especially in light of the fact that none of the documents or exhibits are currently classified. As such, Plaintiffs propose filing such documents

---

³ Though declassified, because the records have not been obtained though the Freedom of Information Act, the expert who provided them has not authorized Plaintiffs to publicly disclose them.

under seal, prior to any evidentiary hearing, with a more detailed explanation of their potential significance.

The third category constitutes medical records and other personal information relating to the damages proceedings, along with declarations from Plaintiffs' medical experts describing Plaintiffs' injuries. These documents contain graphic and detailed images and descriptions of Plaintiffs' physical and mental injuries, along with other intimate information. *See, e.g.*, *Hardaway v. D.C. Hous. Auth.*, 843 F.3d 973, 980 (D.C. Cir. 2016) (reversing lower court's denial of motion to seal medical records, as "[t]he public has no need for access to" them and plaintiff has a "strong privacy interest" in keeping them confidential, and noting that "a doctor's description of [plaintiff's] disability" qualifies as a medical record for sealing purposes).

### IV.   List of Proposed Liability Witnesses

The list of witnesses identified below is subject to two provisos. First, absent a confirmed date for the hearing, Plaintiffs cannot anticipate the availability of all witnesses. Second, there is some overlap between the witnesses and their proposed testimony. Plaintiffs are preparing seven bellwether attacks but anticipate presenting only four or five of them, depending on the witnesses' availability, the pace of the hearing and the time allotted for the hearing by the Court. Plaintiffs are mindful of the limited availability of certain experts and propose presenting five of them (live) during the hearing, avoiding duplicative testimony on the same subjects.

**Fact Witnesses**

1. Robert Canine
2. Wesley Williamson
3. Christopher Levi
4. David Haines

One of the following fact witnesses for the January 20, 2007 attack in Karbala, Iraq:

5. Billy Wallace

6. Marvin Thornsberry

7. Johnny Washburn

**Liability Expert Witnesses** (opinion testimony)

1. **\* Dr. Matthew Levitt**. Dr. Matthew Levitt is the Director of the Stein Program on Counterterrorism and Intelligence at the Washington Institute for Near East Policy. From 2005 to early 2007, he served as Deputy Assistant Secretary for Intelligence and Analysis at the U.S. Treasury Department, where he served as both a senior official within the department's terrorism and financial intelligence branch and as deputy chief of the Office of Intelligence and Analysis. In 2008-2009, he served as a State Department counterterrorism advisor to the special envoy for Middle East regional security, General James L. Jones. Dr. Levitt has authored a leading scholarly book on Hezbollah and has also been qualified as an expert on numerous occasions in both civil and criminal terrorism cases.

    **Scope of Testimony: Iran's material support to terrorism, including its use of the Lebanese Foreign Terrorist Organization Hezbollah as a proxy for its terrorist activities and its deployment of the IRGC to finance, train, supply and arm terrorist groups in Iraq.**

2. **\* Dr. Patrick Clawson**. Dr. Patrick Clawson is director of research at the Washington Institute for Near East Policy, where he directs the Iran Security Initiative. He holds a Ph.D. in economics from the New School for Social Research and speaks Farsi. Dr. Clawson has been qualified as an expert in numerous cases relating to Iran and its role in supporting terrorism.

    **Scope of Testimony: Same as Dr. Levitt's.**

3. **\* Michael Pregent**. Mr. Pregent is a retired U.S. intelligence officer. He served as an embedded advisor with Kurdish forces in Mosul, Iraq, in 2005-2006. Also, as a civilian employee of the Defense Intelligence Agency, he served as a political and military advisor in Iraq from 2007-2011 and then served as a civilian analyst for U.S. Central Command in Iraq from 2011-2013.

    **Scope of Testimony: Overview of Iran's IRGC and Hezbollah's role in supporting terrorist attacks in Iraq between 2004 and 2011, including targeted attacks on U.S. service members, and an assessment of Iran's role in the January 20, 2007 attack in Karbala, Iraq.**

4. **\* General (Ret.) Michael Oates**. Mr. Oates is a retired U.S. Army lieutenant general who served in Iraq from November 2003 to February 2007 in several capacities. From June 2008 until May 2009, he served as the commanding general of the 10th Mountain Division, Multi-National Division-Center, Iraq. From December 2009 until April 2011, he served as Director of the Joint Improvised Explosive Device Defeat Organization ("JIEDDO"), the Defense Department's lead agency for providing counter-IED capabilities in support of combat forces in Iraq and Afghanistan.

    **Scope of Testimony: The role of the IRGC and Hezbollah in creating and sustaining Shi'a terrorist cells in Iraq commonly referred to as "Special Groups," including by financing, supplying, training and arming them**.

5. **\* General (Ret.) Michael Barbero**. Mr. Barbero is a retired U.S. Army lieutenant general who served 46 months over three combat tours in Iraq and retired from active duty in 2013 after 38 years of service. From March 2011 until May 2013, he served as Director of JIEDDO.

    **Scope of Testimony: Same as Mr. Oates's.**

6. **\* Colonel (Ret.) Leo Bradley**. Mr. Bradley is a retired U.S. Army Colonel who has served as Chief of the Army's Explosive Ordnance Disposal ("EOD") branch and of the Office of the Secretary of Defense's EOD and Humanitarian Mine Action. From June 2006 to June 2008, Mr. Bradley commanded the EOD battalion supporting most of Iraq. Mr. Bradley also commanded the 71st Ordnance Group (2010-2012), which is one of two EOD groups in the Army, and Combined Joint Task Force Paladin, which was responsible for EOD and counter-IED efforts for Coalition Forces in Afghanistan (2011-2012).

    **Scope of Testimony: Multi-National Forces-Iraq development and deployment of Explosive Ordinance Disposal units in Iraq between 2003 and 2011 as well as Iran's design, manufacture and supply of EFPs, IRAMs and other munitions used against U.S. service members in Iraq.**

7. **\* Colonel (Ret.) Mark Wickham**. Mr. Wickham served in the British army for 36 years, including a tour in Northern Ireland as a high threat IED specialist. He was deployed to Iraq for Operation Iraqi Freedom in 2004-2005 and was later selected to work at the U.S. Department of Defense as a specialist advisor within JIEDDO.

    **Scope of Testimony: Same as Mr. Bradley's.**

8. **\* Captain (Ret.) Wade Barker**. Mr. Barker served in the U.S. Army from 1995 to 2009. He was the Officer in Charge in the 101st Airborne Division Asymmetric Warfare unit, where he managed a team of eight personnel, including Intelligence, Civil Affairs, Engineers and Infantry, charged with developing and implementing new Counter-Improvised Explosive Device and counterinsurgency strategies for

6

use in military engagements. He was subsequently promoted to 101st Airborne Division Commander.

**Scope of Testimony: Forensic analysis of specific bellwether EFP attacks in Iraq excluding the January 20, 2007 attack in Karbala, Iraq. Description of the technical aspects of the manufacture, deployment and detonation of EFPs and the evidence of Iranian material support to Iraqi terror cells that deployed these weapons.**

V. **List of Proposed Damages Witnesses**

As stated above, if the Court directs Plaintiffs to present bellwether damages evidence as part of the liability hearing, Plaintiffs expect needing **1** full additional day to do so. If the Court directs Plaintiffs to present this evidence in a separate hearing, Plaintiffs expect that the damages hearing they propose will last **2 full days** because the bellwether Plaintiffs would have to testify a second time concerning their injuries. In either scenario, the proposed damages hearing would focus on the following medical issues:

1. Treatment of combat injuries on the battlefield, with an emphasis on blast injuries; and

2. Particular complications in both the short- and long-term treatment of battlefield injuries relating to:

    a. Amputations caused by explosive blasts

    b. TBI

    c. PTSD

    d. Severe burns

The list of witnesses identified below is subject to two provisos. First, absent a confirmed date for the hearing, Plaintiffs cannot anticipate the availability of all witnesses. Second, there is some overlap between the expert witnesses on PTSD and their proposed testimony. Plaintiffs are preparing seven bellwether attacks but anticipate presenting only four or five of them, depending on the witnesses' availability, the pace of the hearing and the time allotted for the hearing by the Court. Plaintiffs are mindful of the limited availability of certain experts and propose presenting

no more than four of them (live) during the hearing, avoiding duplicative testimony on the same subjects.

**Fact Witnesses**[4]

1. Robert Canine
2. Wesley Williamson
3. Christopher Levi
4. David Haines

One of the following fact witnesses for the January 20, 2007 attack in Karbala, Iraq:

5. Billy Wallace
6. Marvin Thornsberry
7. Johnny Washburn

**Damages Expert Witnesses** (opinion testimony)[5]

1. **\* Dr. Shean Phelps**. Dr. Phelps is a retired Senior Flight Surgeon and former U.S. Army Special Operations Command surgeon for the 1st Battalion, 10th Special Forces Group (Airborne). Dr. Phelps also served as the Director of the Warfighter Protection Division and the Chief of the Injury Biomechanics Branch at the United States Army Aeromedical Research Laboratory at Fort Rucker, Alabama.

   **Scope of Testimony: Specific medical complications unique to battlefield combat trauma, the challenges to successful treatment of battlefield blast injuries, and specific testimony regarding the battlefield injuries of the bellwether plaintiffs.**

2. **\* Dr. Russell Gore**. Dr. Gore is the medical director of vestibular neurology at the Shepherd Center in Atlanta, Georgia, as well as the medical director of Shepherd Center's SHARE Military Initiative, a comprehensive rehabilitation program that focuses on assessment and treatment for servicemembers who have sustained a mild to moderate traumatic brain injury, along with co-occurring PTSD or other mental health concerns. Dr. Gore received a bachelor's degree in biomedical engineering from Vanderbilt University, after which he earned his medical degree from Emory

---

[4] This assumes that the damages hearing is held separately from the liability hearing.

[5] Plaintiffs anticipate submitting expert reports concerning the calculation of economic damages suffered by the bellwether plaintiffs, but do not intend to offer live testimony on this subject unless directed to do so by the Court.

University School of Medicine. After an internship at Emory, Dr. Gore served as a flight surgeon in the United States Air Force from 2002 until 2010.

**Scope of Testimony: Specific medical complications unique to battlefield TBIs, the challenges to successful short- and long-term treatment of battlefield TBIs, and specific testimony regarding the TBIs of the relevant bellwether plaintiffs.**

3. **\* Dr. Romney Andersen**. Dr. Andersen is the Chief of Orthopedics for the Riverside Health System in Newport News, Virginia and a Professor of Surgery at the Uniformed Service University of the Health Sciences in Bethesda, Maryland. He is the former Chairman of Orthopedic Surgery and Chief of the Department of Orthopedics at the Walter Reed National Military Medical Center in Bethesda, Maryland.

    **Scope of Testimony: Medical complications unique to battlefield blast injuries such as Heterotopic Ossification, short-term and long-term complications in the treatment of battlefield blast injuries, and testimony regarding the injuries sustained by certain bellwether plaintiffs.**

4. **\* Dr. Charles Marmar**. Dr. Marmar is the Lucius N. Littauer Professor of Psychiatry, Department of Psychiatry; Chair, Department of Psychiatry; and Director of PTSD Research Program at the NYU Langone Medical Health Center.

    **Scope of Testimony: Specific medical complications unique to combat PTSD, short- and long-term complications in the treatment of combat-induced PTSD, and testimony regarding depressive and other psychiatric disorders.**

5. **\* Dr. Erel Shvil**. Dr. Shvil is a clinical psychologist engaged in private practice focusing on the treatment of adults and children with a variety of psychopathology and symptomatology. Dr. Shvil has treated numerous patients diagnosed with PTSD, including veterans who have suffered combat-related PTSD.

    **Scope of Testimony: Testimony regarding the psychological injuries sustained by certain bellwether plaintiffs.**

VI. **Proposed Exhibit Lists**

At the Court's direction, Plaintiffs submit as **Exhibit A** and **Exhibit B** Proposed Exhibit Lists relating to liability and damages, respectively. Both lists use the protocol and template indicated by Deputy Court Clerk, Ms. Dorothy Patterson. We note that Plaintiffs' counsel continue to investigate Plaintiffs' claims and may seek leave to further supplement their Exhibit Lists should

they acquire additional evidence. For example, additional evidence may be produced in response to pending Freedom of Information Act requests prior to the date of the evidentiary hearing.

In addition, we note that **Exhibit A** reflects evidence *limited* to Iran's alleged material support to terrorism in Iraq, the IRGC and Hezbollah's alleged role in supporting terrorist attacks in Iraq between 2004 and 2011 and evidence of Iran's alleged liability for the bellwether attacks presented. Likewise, **Exhibit B** reflects evidence limited to injuries suffered by Plaintiffs in the bellwether attacks. Should the Court ultimately determine that Plaintiffs have met their initial burden of proving Iran's legal responsibility for certain categories of terrorist attacks in Iraq between 2004 and 2011 (including the bellwether attacks), Plaintiffs would, at the appropriate time, submit supporting affidavits and *additional* documentation to support their Proposed Findings of Fact and Conclusions of Law for each of the attacks set forth in the Amended Complaint.

## VII. Special Master Proceedings

At the Court's direction, Plaintiffs submit as **Exhibit C** a proposed administrative plan for conducting special master proceedings. Subject to the Court's further instructions, Plaintiffs will provide a proposed order implementing the administrative plan.

Dated: January 5, 2018

                                                Respectfully submitted,

                                                **OSEN LLC**

                                                By /s/ Gary M. Osen
                                                Gary M. Osen (DC Bar No. NJ009)
                                                Ari Ungar (DC Bar No. NJ008)
                                                Michael J. Radine (DC Bar No. NJ015)
                                                2 University Plaza, Suite 402
                                                Hackensack, NJ 07601
                                                Tel. (201) 265-6400

        TURNER & ASSOCIATES, P.A.
        C. Tab Turner
        4705 Somers Avenue, Suite 100
        North Little Rock, AR 72116
        Tel. (501) 791-2277

        Attorneys for Plaintiffs