UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TIMOTHY KARCHER, *et al.*,
    Plaintiffs,

    v.

ISLAMIC REPUBLIC OF IRAN,
    Defendant.

Civil Action No. 16-232 (CKK)

**MEMORANDUM OPINION**
(September 10, 2019)

In its Order and Memorandum Opinion dated August 26, 2019, ECF Nos. 93 & 94, the Court granted default judgment against Defendant Islamic Republic of Iran as to numerous claims brought by Plaintiffs either injured in seven "bellwether" attacks or representing individuals killed in those attacks brought under the Foreign Sovereign Immunities Act ("FSIA"). The Court, however, excepted from its judgment the claims of Evan Kirby, Marvin Thornsberry, and Johnny Washburn on the basis that Plaintiffs had not provided sufficient evidence for the Court to evaluate their claims. *See* Aug. 26, 2019 Mem. Op., ECF No. 95, at 56 n.31, 66 n.33, 77, 88–89.

Plaintiffs have now provided additional evidence as to these three individuals, who Plaintiffs allege were harmed in the January 20, 2007 attack on the Provincial Joint Coordination Center ("PJCC") in Karbala, Iraq. Upon consideration of Plaintiffs' [99] Additional Evidence Relating to the January 20, 2007 Karbala Attack, the exhibits attached thereto, the relevant legal authorities, and the record as a whole, the Court shall **GRANT** default judgment against Iran as to the claims of Plaintiffs Evan Kirby, Marvin Thornsberry, and Johnny Washburn. For damages determinations, the Court has referred the bellwether Plaintiffs' claims to Special Master Alan L.

Balaran, who shall prepare a report and recommendation to the Court as outlined in the [102] Order and Administrative Plan.

## I. BACKGROUND

The Court has previously detailed the background of this suit and specifically the January 20, 2007 attack on the PJCC in Karbala.  Rather than reiterate every detail, the Court incorporates and makes a part of this Memorandum Opinion its prior Memorandum Opinion dated August 26, 2019.  The Court will also outline its findings of fact and law that are relevant to the three Plaintiffs discussed below.

Of the seven bellwether attacks, the January 20, 2007 attack on the PJCC was the only one not involving explosively formed penetrator weapons attributed to Iran.  Aug. 26, 2019 Mem. Op., ECF No. 95, at 54.  In addition to analyzing the evidence put forward by Plaintiffs related to this attack, the Court also took judicial notice of certain findings by Judge Randolph Moss in a different case about the same January 20, 2007 attack on the PJCC.  *See id.*; Nov. 28, 2018 Mem. Op. and Order, ECF No. 66, at 1–4 (citing *Fritz v. Islamic Republic of Iran*, 320 F. Supp. 3d 48 (D.D.C. 2018) (Moss, J.)).  The Court focused its analysis on the "expert report and testimony of Michael Pregent, who considered a number of sources in preparing his report, including the military's reports of the Karbala attack as it unfolded, the U.S. Army's formal AR 15-6 Investigation after the attack, recent testimony in another case by the AR 15-6 investigating officer, and a variety of other documentation."  Aug. 26, 2019 Mem. Op., ECF No. 95, at 55.  In addition, the Court examined the Karbala AR 15-6 report itself.  *Id.*; *see also* U.S. Army Report Pursuant to AR 15-6, PX-96.

"The PJCC in Karbala was an Iraqi compound where U.S. forces collaborated with Iraqi civil authorities, including police, to strengthen governance of the Karbala Province in central

Iraq." Aug. 26, 2019 Mem. Op., ECF No. 95, at 56.  The Court found that Plaintiff Johnny

Washburn was present at Karbala on January 20, 2007.  *Id.*  That evening, at around 6:00 PM,

six SUVs disguised to look like American security contractor trucks, through either their

disguised appearance or coordination with the Iraqi Police manning the checkpoints, were

permitted to pass the checkpoints and approach the PJCC facility.  *Id.* at 56–57.  The SUVs were

able to push open the metal gate to the compound.  *Id.* at 57.

Once inside the facility, one group of assailants attacked the command room where Mr.

Washburn, other Plaintiffs, and other U.S. Troops were located.  *Id.* at 58.  One of the attackers

dressed in an older Army Battle Dress Uniform began shooting into the room, only to be stopped

by an American soldier trying to push the door closed.  *Id.* at 58.  The assailant kept shooting and

threw a grenade into the room, which Plaintiff Johnathan Millican jumped on top of as it

detonated.  *Id.*  The blast killed him.  *Id.*

While the assault on the command room was occurring, four U.S. servicemembers were

handcuffed and loaded into the SUVs.  *Id.* at 59.  As the assailants began to withdraw, they

"increased their rate of fire" and tossed a grenade into the PJCC building, which "'blew the

doors in the hallway off their hinges,'" injuring one soldier in the command room.  *Id.* (quoting

Pregent Rep. at 23).  The assailants also used explosive devices to disable Humvees in and

outside of the courtyard.  *Id.* at 59–60.  At the same time as assailants attacked the main building,

other assailants fired at the U.S. barracks next door, preventing soldiers there from aiding the

troops in the main building or those handcuffed in the courtyard.  *Id.* at 60.  A unit of U.S.

soldiers positioned themselves on PJCC's roof, but the assailants had already completed the

assault and the explosion knocked the soldiers back and obscured their version.  *Id.*  Meanwhile,

assailants were also firing at the back of the facility.  *Id.*  After the assailants left the facility, they

continued along a route used by the Islamic Revolutionary Guard Corps and passed through several checkpoints. *Id.* After the checkpoint at Mahawil, the Iraqi Army and Iraqi Police began pursuing the assailants' SUVs. *Id.* at 60–61. Once the assailants realized that they could not escape with the hostages, they abandoned most of their equipment and vehicles, and then fatally wounded or killed all the hostages. *Id.* at 61.

The Court attributed this attack to Iran based on numerous grounds. For one, Asa'ib Ahl al-Haq ("AAH"), "a Special Group supported by the [Islamic Revolutionary Guard Corps] and spearheaded by Qais nad Layth Khazali," repeatedly claimed responsibility for the attack in various ways. *Id.* at 61–62 (citing also Judge Moss's opinion finding same). Second, the Court credited Mr. Pregent's report and testimony, which found that AAH's "claim of responsibility was credible." *Id.* at 62. Third, the Court noted the collusion between the Iraqi Police working at the PJCC and the assault team, which was "further evidence that the operation was planned by an experienced team under the direction of [Iran-backed] Hezbollah and the [Islamic Revolutionary Guard Corps Qods Force]." *Id.* at 62–63. Fourth, a senior Hezbollah commander involved with AAH was captured in a raid and later admitted to having a "significant operational planning role" in the Karbala attack; the raid also uncovered evidence tying the group to the Karbala attack. *Id.* at 63–64 (quoting Pregent Rep. at 35). Fifth, the operational leader of the Karbala attack was trained by Hezbollah in Iran at the Islamic Revolutionary Guard Corps Qods Force's direction. *Id.* at 64. For these and other reasons, the Court found that there was sufficient evidence to attribute the attack to Iran. *Id.* at 65–66.

In its August 26, 2019 Memorandum Opinion, the Court further found that it had subject-matter jurisdiction over the suit and personal jurisdiction over Iran. *Id.* at 66. As for subject-matter jurisdiction, the Court concluded that FSIA's terrorism exception to foreign sovereign

immunity applied to the various attacks, including the Karbala attack. *Id.* at 73–76; *see also* 28 U.S.C. § 1605A(a)(1) (laying out terrorism exception). The Court subsequently found that Plaintiffs, except for those Plaintiffs whose claims are discussed in this Memorandum Opinion, established their entitlement to relief under 28 U.S.C. § 1605A(c), which "creates a cause of action for the same conduct that gives rise to subject-matter jurisdiction under the terrorism exception to sovereign immunity." Aug. 26, 2019 Mem. Op., ECF No. 95, at 77 (citing cases).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 55, a party "must apply to the court for a default judgment" when the party's claims are not for "a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b). The court then has discretion as to whether to enter a default judgment. *Hanley-Wood LLC v. Hanley Wood LLC*, 783 F. Supp. 2d 147, 150 (D.D.C. 2011) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). A plaintiff seeking default judgment must persuade the trial court that it has subject-matter and personal jurisdiction over the defendant. *Thuneibat v. Syrian Arab Republic*, 167 F. Supp. 3d 22, 33 (D.D.C. 2016).

Furthermore, under the FSIA, the Court cannot enter default judgment against a foreign state "unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). The Court has discretion to "determine precisely how much and what kinds of evidence the plaintiff must provide." *Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1047 (D.C. Cir. 2014). "Uncontroverted factual allegations that are supported by admissible evidence are taken as true." *Thuneibat*, 167 F. Supp. 3d at 33.

## III. ANALYSIS

The FSIA creates a cause of action "for personal injury or death caused by acts described in subsection (a)(1) of that foreign state, or of an official, employee, or agent of that foreign

state, for which the courts of the United States may maintain jurisdiction under this section for

money damages," in suits brought by four categories of individuals, including "member[s] of the

armed forces" or their legal representatives.  28 U.S.C. § 1605A(c).  In other words, it "creates a

cause of action for the same conduct that gives rise to subject-matter jurisdiction under the

terrorism exception to sovereign immunity."  Aug. 26, 2019 Mem. Op., ECF No. 95, at 77.

     As the Court previously found that it had subject-matter jurisdiction over the other

Plaintiffs' claims, including the claims related to the Karbala attack, the only analyses remaining

to determine liability for Mr. Kirby's and Mr. Thornsberry's claims are (1) whether they were

U.S. servicemembers at the time of the attack and (2) whether they were injured as a result of the

attack.  As the Court previously found that Mr. Washburn was a U.S. servicemember, it need

only examine whether he was injured as a result of the attack.  *See id.* at 77–78.  The below

analysis draws upon Exhibits 2, 3, and 4 to the Declaration of Andrew Schlanger, which were

sealed pursuant to the Court's Minute Order dated September 9, 2019.  Accordingly, the Court

has redacted some of this information and is issuing both sealed and redacted public versions of

this Memorandum Opinion.

    A. Johnny Washburn

     For Mr. Washburn, Plaintiffs have provided enough evidence to show that he was injured

as a result of the Karbala attack. ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

[REDACTED] Accordingly, the Court finds that Plaintiffs have sufficiently demonstrated liability as to Mr. Washburn.

### B. Evan Kirby

So too have Plaintiffs demonstrated that Mr. Kirby was a U.S. servicemember and that he was injured as a result of the Karbala attack. [REDACTED]

[REDACTED] This is sufficient to demonstrate liability as to Mr. Kirby.

### C. Marvin Thornsberry

Plaintiffs have likewise provided sufficient evidence to demonstrate that Mr. Thornsberry was a U.S. servicemember and was injured as a result of the Karbala attack. [REDACTED]

And based on the announcement of his receipt of the Combat Action Badge on May 24, 2007, he was a "key element in the security of the Solder's barracks during the attack," and helped "hold

off the insurgents from entering the barracks" while "the insurgents were using multiple grenades and satchel charges."  Schlanger Decl., Ex. 1, at 2.  These grenades were being thrown "within 10–15 meters from P[rivate] F[irst] C[lass] Thornsberry."  *Id.*  Accordingly, Plaintiffs have sufficiently shown liability as to Mr. Thornsberry.

## IV. CONCLUSION

For the foregoing reasons, in an exercise of its discretion the Court shall **GRANT** default judgment against Defendant Islamic Republic of Iran as to the claims of Mr. Washburn, Mr. Kirby, and Mr. Thornsberry.  Plaintiffs have not provided extensive evidence as to the injuries sustained by Mr. Washburn, Mr. Kirby, and Mr. Thornsberry, and the Court expects Plaintiffs to provide that evidence to Special Master Balaran as part of the damages proceedings.

Dated: September 10, 2019

                                                   /s/
                                          COLLEEN KOLLAR-KOTELLY
                                          United States District Judge