**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| TIMOTHY KARCHER, *et al.*,<br>          Plaintiffs,<br><br>     v.<br><br>ISLAMIC REPUBLIC OF IRAN,<br>          Defendant. | Civil Action No. 16-232 (CKK) |

**MEMORANDUM OPINION**
(January 14, 2021)

Plaintiffs are now seeking default judgment against the Islamic Republic of Iran ("Iran"), for claims set forth in their Amended Complaint, brought under the Foreign Sovereign Immunities Act ("FSIA"). The Court previously held a bench trial addressing Iran's liability for some of Plaintiffs' claims deriving from seven "bellwether" attacks involving Iran. Following this bench trial, the Court made findings of fact and conclusions of law pertaining to Iran's liability arising out of these bellwether attacks. In particular, the Court's opinion presented a template for the future assessment of Plaintiffs' remaining claims involving an Iranian signature weapon known as an "explosively formed penetrator" (EFP).

This Memorandum Opinion addresses an additional seventy-three non-bellwether EFP attacks alleged in Plaintiffs' Amended Complaint. Collectively, these seventy-three attacks implicate the claims of: (1) eight Plaintiffs who were personally injured in one of the attacks, (2) thirty-four Plaintiffs representing the estates of individuals killed in one of the attacks, and (3) over two hundred Plaintiffs seeking solatium damages as a family member of a victim of one of the attacks. For the reasons set forth herein, the Court will now **GRANT** default judgment against Iran as to the claims of the eight Plaintiffs personally injured in one of the non-bellwether attacks, as well as the thirty-four Plaintiffs representing the estates of individuals killed by one of those

1

attacks.  The Court, however, does not make any ruling at this time regarding the claims of the "family-member" Plaintiffs arising out of the seventy-three non-bellwether attacks.

## I.      BACKGROUND

Well over 300 Plaintiffs filed this suit on February 12, 2016.  Those Plaintiffs generally consist of military servicemembers, their estates, and their family members, nearly all of whom are allegedly U.S. nationals.  Plaintiffs allege that Iran went to great lengths to enlist, train, and supply operatives in Iraq to attack American forces.  As stated above, most of the attacks at issue in this case involve the EFP, a weapon allegedly attributable to Iran.  The three-count Amended Complaint in this action seeks relief for the personal injuries of the surviving victims, the personal injuries and deaths of victims who were killed, and the intentional infliction of "severe" emotional distress endured by families of those injured or killed.  *See* Am. Compl., ECF No. 8, ¶¶ 1161–74.

The Court shall summarize certain proceedings leading up to the bench trial in this matter, and those that precipitate the present decision.

## A.  Service and Entry of Default

After Plaintiffs purported to effectuate service on Iran via diplomatic channels pursuant to 28 U.S.C. § 1608(a)(4), and Iran failed to respond, they sought entry of default, which the Clerk entered.  *See* ECF Nos. 16-18.  When Plaintiffs thereafter moved for default judgment, the Court denied the motion without prejudice to permit Plaintiffs to demonstrate the grounds for proper service.  Nov. 15, 2016 Order, ECF No. 22.

Plaintiffs then took a dual-tracked approach to completing service.  They supplied further justification for their attempt to serve Iran under Section 1608(a)(4), while also asking the Clerk of Court to facilitate service on Iran's Minister of Foreign Affairs under Section 1608(a)(3).  ECF Nos. 23-27.  The Clerk again entered default against Iran at Plaintiffs' request once proof of service

under Section 1608(a)(3) was returned and Iran failed to respond within the statutory time period. *See* ECF Nos. 27-30; 28 U.S.C. § 1608(c)(2), (d).  The Court then determined that Plaintiffs had properly effectuated service.  Apr. 19, 2017 Mem. Op. and Order, ECF No. 31.

The FSIA sets forth the requirements for service on a foreign state such as Iran.  28 U.S.C. § 1608(a); Fed. R. Civ. P. 4(j)(1).  Under the FSIA, there are four methods of effecting service, the first two of which, if applicable, must be exhausted before moving to the third.  28 U.S.C. § 1608(a)(3); *see also Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015) (recognizing "descending order of preference" in this provision).  Neither special arrangements with Iran nor an international convention signed by Iran was available to facilitate service under Section 1608(a)(1) or (a)(2), so Plaintiffs were permitted to avail themselves of Section 1608(a)(3).  Apr. 19, 2017 Mem. Op. and Order, ECF No. 31, at 3.  Accordingly, even though Plaintiffs had improperly resorted first to Section 1608(a)(4) means, the Court concluded that their belated service under Section 1608(a)(3) was effective.  *Id.* at 2-4.

## B.  Pretrial Proceedings

Through a series of Orders, the Court elicited Plaintiffs' views to facilitate proceedings in the default setting.  *See id.* at 4; Scheduling and Procedures Order, ECF No. 32; Min. Order of May 15, 2017; Pretrial Scheduling and Procedures Order, ECF No. 39.  Based on that briefing, and discussion on the record with Plaintiffs, the Court decided to hold a three-day bench trial regarding a subset of attacks that Plaintiffs proposed as "bellwethers."  In the Court's Phase I bellwether proceedings, Plaintiffs presented evidence as to jurisdiction, liability, and at least an aspect of damages.  *See* Min. Orders of June 18, 2018, and July 17, 2018.  One or more special masters then would conduct Phase II bellwether proceedings to complete damages determinations and make a report and recommendation to the Court.  *See* Min. Orders of June 18, 2018, and July

17, 2018. The Court would issue further instructions thereafter regarding non-bellwether proceedings. *See* Min. Order of July 17, 2018.

Subsequent pretrial proceedings included the entry of a protective order to facilitate the military's production of certain documents to Plaintiffs. Privacy Act and Personal Information Protective Order, ECF No. 54. Plaintiffs also sought the Court's pretrial approval of several demonstrative exhibits, two of which the Court permitted in its discretion: an actual-sized model EFP and an actual-sized model High Mobility Multipurpose Wheeled Vehicle ("HMMWV" or "Humvee"). Oct. 9, 2018 Order, ECF No. 55. The Court permitted Plaintiffs to file certain documents under seal; the basis for sealing most of those documents was their national-security sensitivity. *See* Nov. 5, 2018 Order, ECF No. 57 (citing *United States v. Hubbard*, 650 F.2d 293, 315-16 & n.83 (D.C. Cir. 1980)); Min. Order of June 18, 2018.

In a further exercise of its discretion, the Court granted Plaintiffs' request for pre-admission of ninety-six government records under Federal Rule of Evidence 803(8), the public records exception to the hearsay rule. Nov. 27, 2018 Order, ECF No. 64. Plaintiffs had furnished satisfactory evidence under the rather liberal evidentiary standards applicable to FSIA cases in default posture, particularly when the foreign sovereign has been recognized as a sponsor of terrorism. *Id.* at 1-2 (citing 28 U.S.C. § 1608(e); *Owens v. Republic of Sudan*, 864 F.3d 751, 785-86 (D.C. Cir. 2017), *cert. granted in part on other grounds sub nom. Opati v. Republic of Sudan*, 139 S. Ct. 2771 (2019) (Mem.); *Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1048-51 (D.C. Cir. 2014)). The Court nevertheless deferred its "determination of the appropriate weight to accord each of these exhibits." *Id.* at 2. The Court refused, however, to pre-admit reports prepared by Plaintiffs' experts, who were scheduled to testify at trial. Nov. 28, 2018 Mem. Op. and Order, ECF No. 66, at 1. Plaintiffs could lay adequate foundation for admission of

those reports simply by asking the experts whether they adopted the facts and conclusions therein. *Id.*

## C.  Bench Trial

The Court then held a bench trial on December 3, 4, and 6, 2018.  Over the three-day trial, Plaintiffs presented evidence regarding seven bellwether attacks.  Six attacks in Baghdad or the vicinity allegedly involved EFPs.  The seventh attack—on the PJCC in Karbala—involved more conventional weapons.

Plaintiffs put on a total of 19 witnesses, consisting of 8 fact witnesses and 11 expert witnesses.  The fact witnesses consisted of the following five military servicemember Plaintiffs who were injured in the bellwether attacks: Robert Bartlett, Robert Canine, David Haines, Chris Levi, and Wesley Williamson.  The other fact witnesses were Kelli Hake, a Plaintiff and the widow of servicemember Christopher Hake, who was killed in a bellwether attack; Colonel (Ret.) Kevin Farrell, a non-Plaintiff witness of the attack that injured Mr. Bartlett; and then-First Lieutenant Rusty Mason, a non-Plaintiff witness of the attack that killed Mr. Hake.

Of the expert witnesses, seven spoke to liability issues consisting generally of Iran's role in Iraq, Iran's relationship with its Lebanese and Iraqi proxies, the weapons they used in Iraq, and the U.S. military's efforts to respond.  Because of the importance of the experts to this case, the Court shall briefly summarize some relevant qualifications of Plaintiffs' seven liability experts and identify the topics as to which the Court found them to be qualified.  *See* Fed. R. Evid. 702.[1]

---

[1] Certain subjects that the experts discussed appeared to be "common knowledge" amongst those who study recent conflicts involving Iran and Iraq.  For example, a number of the experts discussed Iranian proxies in Iraq.  In the Findings of Fact below, the Court sometimes cites experts as to topics that may fall outside the topics that they were expressly qualified at trial to address.  However, the Court finds their reports and/or testimony to be credible as to any such topics for which it cites them.

Liability Experts

- Captain (Ret.) Donald Wade Barker performed counter-IED research and development at Georgia Tech after leading counter-IED units of the U.S. Army in Iraq, Afghanistan, and the United States.  Expert Rep. of Capt. (Ret.) Donald Wade Barker, PX-158 ("Barker Rep."), Ex. 1; *see also* Barker T3-6:19-10:7.[2]  The Court qualified Mr. Barker as an expert in "[improvised explosive devices ("IEDs")], EFPs and counter-IED technology."  Barker T3-10:8-12.

- Colonel (Ret.) Leo E. Bradley III commanded U.S. Army units in Iraq, Afghanistan, and the United States that were responsible for explosive ordnance disposal ("EOD") and/or counter-IED initiatives.  Expert Rep. of Colonial Leo E. Bradley III, U.S. Army (Retired), PX-156 ("Bradley Rep."), Ex. A; Bradley T2-7:14-9:24.  The Court found Mr. Bradley qualified to serve as an expert as to "U.S. military EOD operations and IED investigations."  Bradley T2-12:9-13.

- Dr. Matthew Levitt directs a counterterrorism and intelligence program at the Washington Institute for Near East Policy and previously served in related roles at the Federal Bureau of Investigation and the U.S. Departments of State and the Treasury.  Expert Rep. of Dr. Matthew Levitt, PX-154 ("Levitt Rep."), Ex. A; *see also* Levitt T1-15:5-26:5.  The Court found Dr. Levitt qualified to address "Iran's role as a state sponsor of terrorism, Iran's Islamic Revolutionary Guard Corps, or IRGC; the Islamic Revolutionary Guard Corps Qods Force, or IRGC-QF; Hezbollah; and those entities' support and training of the Special Groups in Iraq." Levitt T1-26:6-14.

- Colonel (Ret.) Kevin Lutz established and commanded the U.S. military's Combined Joint Task Force Troy ("Task Force Troy") in Iraq and led other counter-IED and EOD units of the U.S. Army. Expert Rep. of Col. (Ret.) Kevin Lutz, PX-159 ("First Lutz Rep."), Ex. A; *see also* Lutz T5-6:18-15:2.  The Court found Mr. Lutz qualified to address "the use of explosive devices, including IEDs and other ordnance, by transnational terrorist organizations and specifically the tactics, techniques and procedures used by terrorist groups in Iraq between 2003 and 2011." Lutz T5-15:4-11.

- Russell McIntyre has held intelligence roles that include ████████████ ███████████████████████████████████████████████████████ and serving with Multi-National Corps-Iraq in a counter-IED cell.  Expert Rep. of Russell L. McIntyre, PX-157 ("McIntyre Rep."), at 2 & Ex. A; *see also* McIntyre T5-59:10-64:15.  The Court recognized Mr. McIntyre as an expert regarding "IED threats to [U.S.] forces, specifically in Iraq between 2003 and 2011, and with an additional focus on explosively formed projectiles or penetrators."  McIntyre T5-64:16-22.

---

[2] Citations to testimony from the bench trial shall use the following format: "name T#-page(s):line(s)," i.e., witness name, transcript volume, and then page number(s) and line(s) thereon.

- <u>Lieutenant General (Ret.) Michael L. Oates</u> directed the U.S. military's Joint Improvised Explosive Device Defeat Organization ("JIEDDO") and served in a number of U.S. Army leadership roles in, or concerning, Iraq during the relevant time period. Expert Rep. of Lt. Gen. Michael L. Oates, United States Army (Ret.), PX-153 ("Oates Rep."), at 2; *see also* Oates T1-81:2-9, 81:25-86:8. The Court recognized Mr. Oates as an expert in "tactical and strategic threats faced by US and Coalition Forces in Iraq [from] 2003 to 2008 and including the specific threat to US military forces from IEDs and other ordnance, including EFPs." Oates T1-86:15-22.

- <u>Michael P. Pregent</u> performed intelligence roles for the United States Central Command Intelligence Directorate, Defense Intelligence Agency, and U.S. Army and currently serves as a senior fellow at the Hudson Institute, where he focuses on, among other things, counter-Iranian policy proposals. Expert Rep. of Michael P. Pregent, PX-155 ("Pregent Rep."), at 1-2; *see also* Pregent T5-165:15-173:2. The Court found that Mr. Pregent was qualified to testify regarding "intelligence matters, including attribution of terror attacks and also evidence collection and analysis in the intelligence field." Pregent T5-173:3-7.

In addition to the nearly one hundred pre-admitted exhibits, the Court admitted twenty-five more based on the witnesses' testimony. *See generally* Ex. List, ECF No. 68. Those exhibits consisted largely of the expert reports, as well as audiovisual and photographic evidence. A number of demonstrative exhibits also were used at trial but were not offered into evidence.

**D. August 26, 2019 Ruling & Post-Trial Proceedings**

On August 26, 2019, the Court entered an order granting default judgment against Iran as to the claims of certain Plaintiffs representing individuals killed or injured in the six bellwether EFP attacks addressed during the bench trial. *See* Aug. 26, 2019 Order, ECF No. 93. The Court, however, did not enter an order regarding damages for these bellwether attacks. Instead, the Court appointed Mr. Alan L. Balaran as a special master to administer damages proceedings for the bellwether Plaintiffs in this case. *See* Sept. 9, 2019 Order, ECF No. 102. Mr. Balaran's duties include hearing damages evidence and making recommended findings of fact and conclusions of law as to each Plaintiff's entitlement to compensatory damages. *See id.*

In support of its August 26, 2019 order finding Iran liable for the six bellwether EFP attacks, the Court made extensive findings of fact based on testimony presented at the bench trial, as well as a substantial amount of evidence submitted before and after the trial.  *See* Aug. 26, 2019 Mem. Op., ECF No. 94.  A portion of the Court's August 26, 2019 Findings of Fact were specific to Iran's material support for the six individual bellwether EFP attacks at issue during bench trial. *See id.* at 27–54 (addressing the six bellwether EFP attacks in Baghdad).  The Court, however, also made detailed findings of fact regarding "Iran's relationship with Hezbollah and other proxy groups operating in Iraq" and "the nature and use in the Iraqi theater of EFPs, as an Iranian signature weapon."  *Id.* at 12 (quotation omitted).  The Court intended these findings of fact to provide a foundation for forthcoming liability analyses pertaining to the remaining non-bellwether EFP attacks raised in Plaintiffs' Amended Complaint.

On August 30, 2019, the Court held a teleconference on the record, and Plaintiffs addressed the future proceedings for the non-bellwether EFP attacks raised in the Amended Complaint.  To facilitate the Court's liability analysis for these remaining EFP attacks, Plaintiffs first submitted a sample expert report from Col. Kevin Lutz, opining on Iran's liability for one of the non-bellwether EFP attacks: the March 17, 2008 attack that killed Staff Sergeant Michael D. Elledge.  *See* Pls.' Sept. 5, 2019 Rep., ECF No. 100; *see also* Am. Compl., ECF No. 8, ¶¶ 791–97.  As noted above, the Court had previously found Col. Lutz qualified as an expert to address "the use of explosive devices, including IEDs and other ordnance, by transnational terrorist organizations and specifically the tactics, techniques and procedures used by terrorist groups in Iraq between 2003 and 2011."  Lutz T5-15:4-11.  Accordingly, upon review of Plaintiffs' sample expert report from Col. Lutz, the Court permitted Plaintiffs to file additional expert reports regarding the remaining non-bellwether EFP attacks alleged in the Amended Complaint.  Min. Order of Nov. 15, 2019.

Thereafter, Plaintiffs submitted a consolidated expert report from Col. Lutz addressing an additional seventy-two (72) of the non-bellwether EFP attacks in the Amended Complaint.  *See* Dec. 11, 2019 Consolidated Expert Rep. of Col. (Ret.) Kevin Lutz ("Lutz Rep."), ECF No. 109–1.  Plaintiffs also submitted to the Court therewith an Evidentiary Appendix under seal containing the nearly 6,000 pages of records considered and relied upon by Col. Lutz in arriving at the opinions set forth in his consolidated expert report.  *See* Dec. 11, 2019, Pls.' Submission of Lutz Rep., ECF No. 109, at 1–2.  Finally, Plaintiffs also filed a stand-alone "Section 1605A(c) Appendix" to accompany the Col. Lutz's consolidated expert report.  *See id.* at 2.  This report "provides either a copy of the Casualty Report (prepared by the military following a service member's injury or death from enemy action); [the] AR 15-6 Investigative file (an Army record investigating the injury or death of a soldier); or other documentation (military autopsy reports, medical records and decoration)," for each of the victims in the seventy-three non-bellwether attacks addressed in Col. Lutz's consolidate expert report.  *Id.* at 2–3; *see also* Pls.' Section 1605A(c) Index, ECF No. 110.[3]

In view of the foregoing, the Court will now consider Iran's liability under the FSIA for the seventy-three non-bellwether EFP attacks, for which Plaintiffs have now submitted evidence.

---

[3] Under the public records exception to the hearsay rule, "a record or statement of a public office" is admissible if it contains "a matter observed while under a legal duty to report" or "factual findings . . . from a legally authorized investigation" and does not "indicate a lack of trustworthiness." Fed. R. Evid. 803(8). "Pursuant to the 'broad approach to admissibility' under Rule 803(8), a court may also admit 'conclusion[s] or opinion[s]' contained within a public record' and '[o]nce proffered, a public record is presumptively admissible, and the opponent bears the burden of showing it is unreliable.'" *Fritz v. Islamic Republic of Iran*, 320 F. Supp. 3d 48, 61 n.6 (D.D.C. 2018) (quoting *Owens v. Republic of Sudan*, 864 F.3d 751, 792 (D.C. Cir. 2017)).  Upon review, the Court finds that the each of the military records included within Plaintiffs' Section 1605A(c) Appendix is admissible under the Rule 803(8) public records exception. So too are those public records referenced in Col. Lutz's expert report and cited by this Court in its Findings of Fact below.  *See* Fed. R. Evid. 803(8).  The Court also makes these evidentiary findings in view of the D.C. Circuit's instruction that "courts have the authority—indeed . . . the obligation—to adjust evidentiary requirements to . . . differing situations," particularly in the context of FSIA default proceedings.  *Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1048 (D.C. Cir. 2014) (quotations omitted).

This includes the March 17, 2008 EFP attack that killed Staff Sergeant Michael D. Elledge, *see* Pls.' Sept. 5, 2019 Rep., ECF No. 100, and the seventy-two additional EFP attacks addressed in Col. Lutz's consolidated expert report, *see* Dec. 11, 2019 Pls.' Submission of Lutz Rep., ECF No. 109, at 1–2.  In assessing these seventy-three non-bellwether EFP attacks the Court will rely on its August 26, 2019 findings of fact regarding Iran's use of EFPs in Iraq.  Then the Court will make new findings of fact specific to Iran's role in each of the seventy-three non-bellwether EFP attacks in question, including whether an EFP was in fact responsible for each attack.  Finally, the Court will make its conclusions of law and determine whether Iran is liable under the FSIA for any of Plaintiffs' claims arising from the seventy-three non-bellwether attacks now at issue.

## II.      LEGAL STANDARD

The entry of default judgment is governed by Federal Rule of Civil Procedure 55.  Where the damages sought from a defaulting party are not for a sum certain or are not readily susceptible to computation, "the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b).  But even then, "the entry of a default judgment is not automatic."  *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005).  In ordinary civil litigation, "[t]he determination of whether a default judgment is appropriate is committed to the discretion of the trial court."  *Hanley-Wood LLC v. Hanley Wood LLC*, 783 F. Supp. 2d 147, 150 (D.D.C. 2011) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)); *see also* 10A Charles Alan Wright et al., Federal Practice & Procedure Civil § 2685 (4th ed.) (same).  Because "strong policies favor resolution of disputes on their merits[,] '[t]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party.'" *Jackson*, 636 F.2d at 836 (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970) (per curiam)).

A plaintiff seeking default judgment must persuade the trial court that subject-matter jurisdiction and personal jurisdiction over the defendant are satisfied. *Thuneibat v. Syrian Arab Republic*, 167 F. Supp. 3d 22, 33 (D.D.C. 2016) (citing *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008); *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1091 (D.C. Cir. 2008)). Additionally, this Court cannot enter default judgment against a foreign state under the FSIA "unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e); *see Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 232 (D.C. Cir. 2003) ("The court . . . has an obligation to satisfy itself that plaintiffs have established a right to relief."), *cert. denied*, 542 U.S. 915 (2004). "[T]he FSIA leaves it to the court to determine precisely how much and what kinds of evidence the plaintiff must provide," *Han Kim*, 774 F.3d at 1047, and "[u]ncontroverted factual allegations that are supported by admissible evidence are taken as true," *Thuneibat*, 167 F. Supp. 3d at 33.

### III.    FINDINGS OF FACT

The Court's Findings of Fact in this Memorandum Opinion proceed in two principal parts. First, the Court will incorporate its prior factual findings from its August 26, 2019 Memorandum Opinion, which recount in detail the evidence proffered during a three-day bench trial in this case. *See* Aug. 26, 2019 Mem. Op., ECF No. 94. These findings of fact first address Iran's relationship with Hezbollah and other proxy groups operating in Iraq, and also address the nature and use in the Iraqi theater of EFPs, an Iranian "signature weapon." Second, the Court will address how Iran's material support for its proxies and use EFPs resulted in the injuries and deaths in the seventy-three non-bellwether attacks in Iraq at issue in this present Memorandum Opinion. In so doing, the Court will rely upon the entirety of the record evidence in this case, including Plaintiffs'

recent evidentiary submissions specific to these seventy-three non-bellwether EFP attacks.  *See generally* Lutz Rep., ECF No. 109-1; Pls.' Section 1605A(c) Index, ECF No. 110.

## A.  Iran's Material Support for Hezbollah and Other Proxies in Iraq

### 1.  <u>Iranian Interests in the Region</u>

Like many accounts of Iran's modern activities, this one properly begins with the revolution in 1979.  Shortly after Ayatollah Ruhollah Khomeini came to power as Supreme Leader, he instituted what became known as the Islamic Revolutionary Guard Corps ("IRGC") to forestall any "backsliding in implementing [his] vision for an Islamic theocratic government" in the Islamic Republic of Iran.  McIntyre Rep. at 4–5; *see also* Levitt T1-27:9–12.  While the Iranian armed forces would "protect the borders of Iran," the IRGC with its "parallel" military structure was tasked with "protect[ing] the revolution."   Levitt T1-28:3–8 (observing that IRGC has its own army, navy, and air force).   A subsidiary of the IRGC—the Qods Force, or IRGC-QF—is responsible for its international operations, including training Muslim groups to support the revolution through insurgency and terrorism.  McIntyre Rep. at 6; Levitt T1-27:18–21, 33:6–16 (likening the Qods Force to "the sharp end of [a] spear" when it comes to "Iran's extraterritorial activities").  Until recently, that subsidiary was led by General Qasem Soleimani, now deceased, who was a direct report to the second Supreme Leader of Iran, Ayatollah Sayyid Ali Hosseini Khamenei.  McIntyre Rep. at 4–5; Oates Rep. at 11.

As a result of Iran's "support for acts of international terrorism," the United States designated Iran as a state sponsor of terrorism on January 19, 1984.  State Sponsors of Terrorism, U.S. Dep't of State (Dec. 21, 2020), PX-1; *see also* McIntyre Rep. at 6 (attributing designation "in large part to the actions of the IRGC and later its Qods Force"); Levitt T1-27:16–17 (observing that designation has not been discontinued).  Similar terrorism-related designations of the IRGC

and IRGC-QF have followed more recently: the IRGC-QF on October 25, 2007, and the IRGC on

October 13, 2017.  *See* U.S. Dep't of Treasury, Fact Sheet: Designation of Iranian Entities and

Individuals for Proliferation Activities and Support for Terrorism (Oct. 25, 2007), PX-5 ("IRGC-

QF Designation"), at 1, 3 (announcing designation of IRGC-QF under Executive Order ("E.O.")

13224 for supporting terrorist organizations); McIntyre Rep. at 3 n.1, 4 n.3 (recognizing this

designation of IRGC-QF as "Specially Designated Global Terrorist"); U.S. Dep't of Treasury,

Treasury Designates the IRGC Under Terrorism Authority and Targets IRGC and Military

Supporters Under Counter-Proliferation Authority (Oct. 13, 2017), PX-6 (announcing designation

of IRGC under E.O. 13224 for supporting IRGC-QF); McIntyre Rep. at 3 n.1 (recognizing this

designation of IRGC as "Specially Designated Global Terrorist"); Levitt Rep. at 6 n.4 (same).

Among Iran's foreign activities, its campaign in Iraq figures prominently.  Dating at least

to the Iran-Iraq War in the 1980s, the Shi'a Muslim regime in Iran sought to undermine Saddam

Hussein's largely Sunni Muslim government by supporting Shi'a political groups in Iraq.  *See*

McIntyre Rep. at 14; Levitt Rep. at 16.  These efforts escalated after the United States' Second

Iraq War, opines Dr. Matthew Levitt, a former U.S. counterterrorism intelligence analyst:

> By forcing the collapse of Saddam Hussein's regime, Operation Iraqi Freedom
> removed Iran's greatest enemy and longtime nemesis. The 2003 invasion therefore
> provided Iran with a historic opportunity to reshape its relationship with Iraq and,
> in the process, increase its influence in the region. To that end Iran employed an
> "all elements of national power" approach in exploiting the outcome of this seminal
> event. This included both soft and hard power, from the use of political, economic,
> religious, and cultural leverage to the support of militant proxies.

Levitt Rep. at 7.  The United States' post-invasion presence in Iraq threatened Iran's opportunities,

however, only reinforcing "the long-held Iranian desire to push the United States out of the Gulf

region."  *Id.* at 8.  Iran accordingly pursued "a Shia-dominated and unified Iraq" while causing the

United States "continued setbacks in [its] efforts to promote democracy and stability" there.

Annual Threat Assessment of the Director of National Intelligence for the Senate Select Comm. on Intelligence (Feb. 2, 2006) ("Annual Threat Assessment"), PX-16, at 12.

Meanwhile, Iran had long exerted its influence in Lebanon, as well. Beginning in the early 1980s, IRGC shaped the development and military capabilities of Lebanese Hezbollah (herein, "Hezbollah"),[4] a militant Shi'a political party that wanted to oust Israeli forces from Southern Lebanon. McIntyre Rep. at 7–8. As the relationship between IRGC and Hezbollah grew, Hezbollah reciprocated by executing terrorist missions against Israeli and American targets at Iran's request, offering Iran "reasonable deniability" after the fact. Levitt T1-30:10–19; *see also* McIntyre Rep. at 7–8; Annual Threat Assessment at 13 (describing Hezbollah as "Iran's main terrorist ally" and "capable of attacks against US interests if it feels its Iranian patron is threatened").

## 2.  Iran's Network of Influence in Post-Invasion Iraq

In order to bolster its influence in Iraq, and counter American efforts there, Iran continued to sponsor Shi'a political movements—now vying for control of the post-Hussein government—while funding and facilitating the training of Shi'a militia groups, with Hezbollah's help. *See, e.g.*, Oates Rep. at 14–17. In the political sphere, the Da'wa Party, the Supreme Council for the Islamic Revolution in Iraq ("SCIRI"), and Muqtada al-Sadr's Office of the Martyr Sadr ("OMS") filled varying niches but each benefitted from Iranian support. *See id.* The armed wings of SCIRI and OMS—the Badr Corps and Jaysh al-Mahdi ("JAM"), respectively—were likewise closely affiliated with IRGC-QF. *Id.* at 14, 17. Among the downstream effects of that Iranian support was militia infiltration of the Iraqi police and security forces, resulting in widespread corruption and "death squads" targeting at least Sunnis, if not Western officials as well. *See, e.g.*, McIntyre

---

[4] Elsewhere the Court shall distinguish an Iraqi Shi'a militia group known as Kata'ib Hezbollah.

Rep. at 19–21; Oates Rep. at 15–16.  Meanwhile, Iranian arms, funding, and operatives flowed into Iraq through the Sheibani Network and other smuggling operations, while some Iraqi allies made the reverse trip to Iran for training.  McIntyre Rep. at 26.

The fruits of Iran's soft power are perhaps best demonstrated by Michael Pregent's testimony.  As a civilian intelligence officer with the Defense Intelligence Agency, Mr. Pregent was tasked with "curbing Iranian influence in the security ministries."  Pregent T5-168:2–25, 169:16–24.  His undercover assignment in the Iraqi prime minister's Office of the Commander in Chief gave him a unique vantage point.  *Id.* at 169:24–170:2.  He witnessed "the level of complicity with Iraqi ministers tied to the Shi'a Da'wa Party that went after American allies in the Sunni community and the Kurdish community and also Shi'a nationalists."  *Id.* at 170:7–10.  These connections benefitted Shi'a militia members, who gained access to "government vehicles, government waivers to travel during curfews," and "official ministerial paperwork and permissions" that enabled them to "develop targeting packets against opposition leaders and also Sunnis."  *Id.* at 170:11–16.  Iranian allies threatened American military interests in Iraq in part because they had "saturat[ed] . . . the security ministries and the intelligence apparatus."  *Id.* at 170:17–21.

As for the hard power, the IRGC-QF spearheaded a closely coordinated campaign to equip the Shi'a militia for proxy warfare.  That campaign is well attested to in U.S. Government documents.  In 2007, the Qods Force earned its Treasury Department designation under E.O. 13224 in part because it "provides lethal support in the form of weapons, training, funding, and guidance to select groups of Iraqi Shi'a militants who target and kill Coalition and Iraqi forces and innocent Iraqi civilians."  IRGC-QF Designation, PX-5, at 3.  The State Department found that in 2011,

Iran was responsible for the increase of lethal attacks on U.S. forces [in Iraq] and provided militants with the capability to assemble explosives designed to defeat armored vehicles.  The IRGC-QF, in concert with Lebanese Hizballah, provided training outside of Iraq as well as advisors inside Iraq for Shia militants in the construction and use of sophisticated improvised explosive device technology and other advanced weaponry.

U.S. Dep't of State, Country Reports on Terrorism 2011 (July 2012), PX-18, at 172.[5]

The threat from Shi'a militia continued to evolve under Iranian direction or support.  After American and Iraqi forces inflicted tremendous casualties on JAM in the battle of Najaf in 2004, Mr. al-Sadr permitted the formation of JAM "Special Groups" with enhanced capabilities to attack American and Coalition forces, while the remainder of JAM would focus on anti-Sunni violence and other criminal activities.  Oates Rep. at 22; McIntyre Rep. at 37.  This resulted in a realignment of leadership, where local commanders of JAM Special Groups operated with some autonomy from Mr. al-Sadr and "received their training, weapons and operational direction directly from Hezbollah and the IRGC-QF."  Oates Rep. at 22-23.  IRGC-QF funding and equipment for Special Groups reached an estimated $750,000 to $3 million per month by August 2007.  Pregent Rep. at 12 (reporting U.S. military estimate).

Notably, Qais Khazali, who commanded one or more JAM Special Groups, traveled to Iran in 2006 and met with IRGC-QF leadership as well as Supreme Leader Ayatollah Khamenei.  Declassified Detainee Document Regarding Qais Khazali, at 000324 (Aug. 13, 2007), PX-57; McIntyre T5-104:9–17; McIntyre Rep. at 25.  Declassified military intelligence indicates that the

---

[5] The Court has no reason to believe that "Lebanese Hizballah" is not synonymous with Lebanese Hezbollah, to which the Court refers simply as Hezbollah.  *See Hezbollah*, Oxford English Dictionary (2d ed. 1989) (identifying other transliterations of Arabic term for "Party of God"), *available at* https://www.oed.com/oed2/00105782 (last visited Aug. 12, 2019); *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 37 n.1 (D.D.C. 2007) (discussing some transliterations), *abrogated on other grounds*, *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9 (D.C. Cir. 2015).  Any other presumptive versions of that organization's name that appear in the evidence shall be treated likewise.

Supreme Leader asked Mr. Khazali to start Asa'ib Ahl al-Haq ("AAH") or the K2 network, a further special group outside of Mr. al-Sadr's auspices and awareness.  Declassified Detainee Document Regarding Qais Khazali, at 000324 (Aug. 13, 2007), PX-57.  The AAH initiative demonstrated Iran's effort to foster dependence on its aid for Iraqi militia to carry out attacks on Coalition Forces.  Pregent Rep. at 13.  Although AAH was later deprived for some time of the leadership of Qais Khazali and his brother, Layth,[6] during their detention by U.S. forces, the group "was able to maintain a fairly high-level offensive tempo" and "operated as Iran's direct terror proxy targeting U.S. personnel at the direction of Hezbollah and the IRGC-QF" from 2006 through 2011.  Oates Rep. at 33; *see also* McIntyre Rep. at 39, 51 (discussing AAH's successes without the Khazalis, and identifying the release of Layth in June 2009 and Qais in January 2010);[7] Pregent T5-223:4–13 (stating that AAH "was funded, directed, trained and equipped by the IRGC-Qods Force and Lebanese Hezbollah").

Perhaps Iran sought an even closer ally, or simply to multiply its options for proxy attacks on U.S. and Coalition forces.  Whatever the reason, Iran directed the formation of still another militia group—Kata'ib Hezbollah ("KH" or "Hezbollah Brigades")—in 2007.  Oates Rep. at 33; Oates T1-123:24–25 (calling KH a "whole-cloth creation of the IRGC").  This group would be led by Abu Mahdi al Muhandis, now deceased, who served as a senior advisor to the IRGC's former leader Qasem Soleimani with both Da'wa Party and Badr Corps credentials.  Oates Rep. at 33; McIntyre Rep. at 40.  Since 2007, Kata'ib Hezbollah had been "responsible for numerous terrorist acts against Iraqi, U.S., and other targets in Iraq," the U.S. Department of State noted when it

---

[6] The record suggests that Layth Khazali's first name is also transliterated "Laith."  But the Court shall use Layth uniformly, for simplicity.  *See supra* note 9 (discussing transliterations of Hezbollah).

[7] In his testimony, Mr. Pregent identified the release date of Layth as 2008 and Qais as 2009, but the discrepancy is immaterial.  Pregent T5-180:112–14.  Evidently the Khazali brothers and Mr. Daqduq had been turned over to the Iraqi government and subsequently released "at the request of Iran."  Pregent T5-179:5–180:14, 181:7–10.

designated the group as a Foreign Terrorist Organization in June 2009.  U.S. Dep't of State, Designation of Kata'ib Hizballah (June 26, 2009), PX-10.

Not to be outdone, Mr. al-Sadr's militant activity against U.S. and Coalition forces came full circle.  Whereas previously he had ceded those kinds of initiatives to the JAM Special Groups, in July 2008 Mr. al-Sadr announced the formation of the Promise[d] Day Brigades ("PDB"), which could be called a JAM Special Group of his own.  Oates Rep. at 38; McIntyre Rep. at 46.  This group too was supported by the IRGC-QF and Hezbollah, "in keeping with the IRGC's long-time policy of investing in all Shi'a factions."  Oates Rep. at 38.  And it was responsible for its own string of attacks on U.S. and Coalition forces.  Oates Rep. at 38; *see also* Exhibit, ████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

## B.  Explosively Formed Penetrators as a Signature Weapon

Plaintiffs' evidence shows that Iran supplied or bankrolled a number of types of weapons used by Shi'a militia groups in Iraq.  *See, e.g.*, McIntyre Rep. at 41 (noting that Iran provided Kata'ib Hezbollah with a certain type of rocket launcher).  The Court shall focus on the explosively formed penetrator, herein, because that weapon is implicated in 82 or 83 of the 92 attacks alleged in the Amended Complaint.

### 1.  <u>The Nature, Uses, and Deployment of EFPs</u>

The Court's understanding of EFP design, construction, and detonation is aided by the report and trial testimony primarily of Wade Barker, an explosives expert.  *See* Barker T3-13:3–15:7; Barker Rep. at 5–9; *see also* Lutz T5-17:8–18:19 (affirming Mr. Barker's testimony and describing EFP video admitted as PX-60).  An EFP typically consists, in pertinent part, of a short metal pipe loaded with high-energy explosive ("HE" explosive) and capped with a concave copper disk.  Barker Rep. at 6–7 & n.13 (defining HE explosives in part as "chemical compounds or

mixtures that are capable of supporting or sustaining a detonation wave"). Detonation of the EFP forces the inverted center of the disk outwards into a molten slug capable of traveling 2,000 meters per second or more.[8] *Id.*

That speed is sufficient to puncture an "up-armored" Humvee's rolled homogenous armor ("RHA"), which, Mr. Barker said, is "the hardest steel that we can make" and is intentionally deployed "in layers on the vehicles to prevent penetration." Barker T3-14:3–11. The combination of RHA and ballistic glass windows is enough to thwart other types of weapons. Barker Rep. at 13 (recognizing efficacy against "truly-improvised IEDs and small arms fire"). After an EFP pierces even an up-armored Humvee, the slug disperses shards of the Humvee's steel and Teflon, potentially blows the vehicle's doors off of their hinges due to the pressure wave, and possibly ignites the vehicle's fuel. *Id.* at 7.

Inflicting this damage requires precision craftsmanship of the EFP. Nowhere is this more apparent than in the specifications for the copper disk. Mr. Barker indicated, for example, that this disk must be milled to a specific "thickness and angle."[9] *Id.* at 9; *see also* Barker T3-17:19–18:1. If the depth of the disk is too thick or too thin, or if the curvature of the disk is incorrect, then the slug may be unable to form or may split into multiple pieces during flight. Barker Rep. at 9; Barker T3-17:19–18:1. As a result, the slug may be unable to penetrate the target or may miss it entirely. Barker Rep. at 9; Barker T3-17:19–18:1. Moreover, the disk must consist of copper, rather than

---

[8] Mr. Barker's report states, in different places, that EFPs "typically" travel 2,000 meters per second but "up to" 5,000 meters per second. Barker Rep. at 7. Mr. Barker does not explain what might drive the wide variation between the typical and maximum speeds.

[9] While the Court could add further detail, the Court shares Plaintiffs' concern that publishing, or re-publishing, too much of this information about EFP construction could create unnecessary risk. *See* Nov. 5, 2018 Order, ECF No. 57 (permitting filing of certain EFP-related documents under seal because, although they "have reportedly been publicly released," they "appear to be national-security sensitive"). Although most of Mr. Barker's report discussing the design and deployment of EFPs has been unsealed, portions containing sensitive details have been redacted.

other metals whose melting points are not conducive to proper formation of an effective slug. Barker Rep. at 9; Barker T3-17:4–18. The explosive too must be of a certain type and strength in order to shape and propel the slug fast enough to cut through RHA. Barker Rep. at 8.

Detonating an EFP relies on a "two-step arming and triggering process" akin to that of other explosive weapons. *Id.* at 10, 12. At least for EFPs in the Iraqi theater, the operator typically would arm the EFP using either a command wire ("CW") or remote frequency ("RF"). *Id.* at 10. Whereas the CW approach had a range of 100 meters or less, the RF approach enabled the operator to arm the EFP from more than 300 meters away.[10] *Id.* Often a spotter closer to the site of the EFP would alert the operator when the target vehicle approached. Barker T3-32:19–25. The operator of an RF-equipped EFP would then send the signal "using something as simple as a key-fob or as complex as a dual-tone multi-function reference board found inside a cell phone." Barker Rep. at 10. The cell phone method permitted the EFP maker to incorporate a safety system requiring the operator to enter a four- to ten-digit PIN into the cell phone in order to arm the device. Barker T3-33:2–9. After arming the EFP, the operator did not need to take any further action. Upon moving from passive into active mode, the armed device awaits only a triggering event in order to detonate. Barker Rep. at 10. An approaching vehicle would generate enough heat to cause a passive infra-red device ("PIR") attached to the EFP to send an electrical current to the EFP, thereby triggering detonation. *Id.* (deeming this a "Victim Operated IED ('VOIED')").

As the foregoing suggests, Mr. Barker confirmed at trial that making effective EFPs requires substantial technical expertise. He acknowledged that it had "taken [him] years to even understand how" to make an EFP, and that building the demonstrative EFP exhibit for trial

---

[10] In his trial testimony, Mr. Barker remarked that operators could arm an RF device from even "a few thousand miles" away. Barker T3-24:23–25:3.

involved two months of work by two electrical engineers and two mechanical engineers.  Barker T3-19:2–10.

Effectively deploying the EFP called for a further layer of technical know-how combined with substantial strategic planning.  Identifying precisely the right directional focus, distance from the target, and timing of the PIR-enabled weapon would require an extensive "trial and error" process.  Bradley T2-26:16–27:15.  The EFP emplacers were also adept, for example, at camouflaging the weapon to avoid tipping off U.S. forces.  EFPs could be embedded in piles of trash, trash barrels, concrete street curbing, or synthetic rocks made out of foam and covered with dirt.  Barker T3-26:4–12, 45:15–21; Lutz T5-43:14 –44:13 (discussing "rock" pictured in PX-65); McIntyre Rep. at 10.  The sophistication of EFP attacks also evolved in step with the U.S. military's countermeasures, as explained below.

### 2.  <u>The Sources of EFPs and the Training to Deploy Them</u>

Who in the Iraqi theater possessed satisfactory expertise to make and deploy the EFPs that the U.S. military encountered?  If it is not possible to create an EFP without being "a classically trained engineer," as Mr. Barker maintains, then the average Iraqi Shi'a militia member could not reasonably be expected to construct this weapon on his own.  Barker T3-33:11–19.  Due to the unique components of the EFP, the tactics through which it is effectively deployed, and the extensive expertise necessary to overcome U.S. countermeasures, Plaintiffs' experts have traced the EFPs encountered in Iraq to Iran and Hezbollah.

According to several expert reports, EFPs were first seen in combat when Hezbollah attacked one or more Israeli Humvees in Southern Lebanon on October 5, 1998.  Barker Rep. at 6; McIntyre Rep. at 12.[11]  But even before Hezbollah used EFPs, it had been developing

---

[11] *Contra* McIntyre T5-79:2–7 (attributing earliest-known EFP deployment to Hezbollah in July 1998).

increasingly effective IEDs by honing tactics, techniques, and procedures ("TTP").  *See* McIntyre Rep. at 10–11.  Each time the Israeli military devised countermeasures, Hezbollah's engineers would adapt TTP accordingly.  *See id.*  For example, Hezbollah developed synthetic rock camouflage for their IEDs, turned from CW to RF methods of arming those weapons, and added PIR for a trigger.  *Id.*  And those hallmarks of Hezbollah's TTP appeared in the Iraqi theater as well, where, as the Court described above, camouflage, RF-armament, and PIR-triggering were keys to the success of EFPs.  *See also, e.g.*, Lutz T5-43:20–44:25 (describing camouflaged EFP characteristic of Hezbollah's practices in Lebanon); Levitt T1-58:19–59:25 (discussing Hezbollah's transfer of its EFP tactics, including camouflage, from Lebanon to Iraq).

Although Hezbollah appears to have developed the first EFPs, both Iran and Hezbollah were instrumental in their use in Iraq, beginning in 2004.  *See, e.g.*, Lutz T5-20:2–21:2 (identifying earliest reported EFP use in Iraq).  First, the evidence shows that Iran supplied EFPs that were fired in Iraq.  Mr. Oates, the former director of JIEDDO, said that the U.S. Department of Defense established JIEDDO to "coordinate all of the defense activities to understand" IEDs, including EFPs, "how [U.S. institutions] might mitigate the effects from a material[s] solution or from training and furthermore to understand the intelligence components associated with the networks that are being used against Coalition Forces with these devices."  Oates T1-85:18–86:8.  While JIEDDO coordinated counter-IED efforts from Washington, D.C., Task Force Troy was "the operational force" on the ground in Iraq, bringing together "intelligence, explosive ordnance expertise and engineering expertise."  Oates T1-95:1–9.  Task Force Troy and domestic U.S. intelligence conducted extensive forensic analysis after EFP attacks, as well as when EFP components were found in caches.  *See, e.g.*, Lutz T5-27:16–25; Bradley T2-43:25–44:16.  When Mr. Oates was asked whether "Task Force Troy and/or JIEDDO ever reach[ed] any conclusion

about the source of the EFPs being used in Iraq," he concluded unequivocally that "[t]he principal source of the materials and the completed munition, the EFP, was . . . Iran."  Oates T1-95:11–18; *see also, e.g.*, Oates Rep. at 24–25 ("[O]ne of Iran's primary forms of material support to the [JAM] Special Groups was financing, manufacturing and deploying EFPs. . . . The U.S. military traced much of the machinery used to manufacture the EFPs, high explosives and PIR devices deployed in Iraq to Iran and its illicit supply chain."); U.S. Dep't of Defense, Measuring Stability and Security in Iraq (Mar. 2007), PX-35, at 17 (identifying Iranian origin of EFPs supplied to some Shi'a militants, who in turn have attacked Coalition forces).  At a minimum, the metal, the HE explosive, and some degree of EFP manufacturing have each been attributed to Iran.  *See* Oates T1-95:19–25 (agreeing that "the actual metal," as well as "the milling or the actual manufacture," could be traced to Iran); Lutz T5-46:12–47:18 (ascribing HE explosive that looked like American C4 to non-U.S. origin, "most likely . . . Iran through the IRGC"); *id.* at 48:5–48:15 (indicating that "large shipments of steel [were] going into Iran to a specific manufacturing plant that had the capability to cut and mill the casings").  It appears that Iran facilitated the smuggling of these components into Iraq along well-established, yet clandestine supply lines for assembly into the finished weapons.  *See* McIntyre T5-96:20–97:11 (discussing network of supply bases, weapons caches, and safe houses); Lutz T5-47:19–48:4 (describing HE explosives disguised as American equivalent to pass through "logistic rat lines").

Meanwhile, IRGC-QF and Hezbollah conducted training operations in combination of Iraq, Iran, and Lebanon for Iraqi Shi'a militant leaders in the effective use of EFPs.  *See e.g.*, U.S. Dep't of Defense, FY 2010 NDAA Conference Rep., PX-39, at 3; U.S. Dep't of State, Country Reports on Terrorism 2008 (Apr. 2009), PX-18, at 183.  Compared with Iranian instructors, Hezbollah instructors were reportedly more effective, in part because they shared a language

(Arabic) and culture (tribal relationships and other networks) with Iraqi Shi'a that Iranians coming from a Persian, cosmopolitan culture generally did not.   Strategic Debriefing Element – Recommendation for Continued Internment, at 000330–31 (Oct. 5, 2008), PX-107; McIntyre T5-107:2–108:20 (interpreting PX-107).   Whatever their nationality, the trainers offered critical assistance that, for example, enabled Shi'a militia groups to understand how to position EFPs' PIR triggers based on the likely speed of a moving target vehicle.   *See* Bradley T2-26:16–27:21 (indicating, *inter alia*, that substantial calculations were involved); Lutz T5-36:11–37:24 (discussing Hezbollah's characteristic use of PIR triggers).

That training was further evidenced in the Iraqi Shi'a militia's ability to respond so rapidly and effectively to the U.S. military's sophisticated countermeasures.   For example, the U.S. military attached several more inches of RHA and ballistic glass to up-armored Humvees using "door kits," such as the Level 5 Interim Fragmentary Armor Kit ("Frag 5 Kit").   Barker Rep. at ii, 15.   That was not enough to stop EFPs.   *Id.* at 15.   The military also began attaching appendages, called "Rhinos," to the front of Humvees to trigger early detonation of EFPs ahead of the vehicle or into the engine, but the militia responded by offsetting and angling the EFPs' PIRs so that the EFP would still hit the crew cabin.   *See* Barker T3-29:2–30:18.   This kind of response to the Rhinos "might appear simple on paper," but would be "far more complex" in the field.   Barker Rep. at 18.

As Mr. Oates testified, "the rapid capability development of the Shi'a militia in Iraq from a weapons training and tactics [perspective], the speed with which they achieved this capability and their ability to adapt led me to believe that there was external assistance provided."   Oates T1-97:23–98:10 (explaining his metaphor that a turtle found atop a fence post required some outside help to get there).   And Mr. Lutz more pointedly identified that assistance when it came to surmounting U.S. countermeasures:

██████████████████████████████████ cost hundreds of millions of dollars to design, maintain and deploy and were well beyond the capacity of a local terror cell—limited by education, experience and access to technology—to overcome. In my professional opinion, the Special Groups and other local Shi'a terror cells could not have deployed and implemented throughout southern Iraq the sophisticated radio-frequency technology necessary to defeat ███████████████████████ without the IRGC's active involvement, training, equipment and support.

First Lutz Rep. at 4, 21.  Moreover, the U.S. military determined that many thousands of copies of a device used to thwart U.S. countermeasure technologies had passed through Iran and thereafter into EFPs used in Iraq.  Lutz T5-48:16–49:12.

## C.  Seventy-Three Non-Bellwether EFP Attacks in Iraq

The Court will now address each of the seventy-three alleged EFP attacks presently under consideration.  There are two principal issues involved in each purported EFP attack: (1) whether the weapon was indeed an EFP, and (2) whether Iran or one of its agents furnished that EFP, its constituent parts, and/or the training to assemble or deploy it.  Plaintiffs' expert, Col. Kevin Lutz, has reviewed each of the seventy-three non-bellwether attacks under consideration and has concluded that each attack involved at least one EFP.  Under Plaintiffs' theory—corroborated by the Court's analysis—identification of the weapon as an EFP *all but* necessitates the inference that Iran was responsible.  The small caveat is effectively the concession of Col. Lutz, who has previously acknowledged in his earlier testimony before the Court that Iran may not be implicated in every instance.  *See* Lutz T5-52:7–14.  But Col. Lutz has confirmed that each of the seventy-three attacks at issue involved explosively formed penetrators that were provided by the IRGC.  *See* disc. *infra* at 26–135.  Based on Col. Lutz's expert report and absent any indication that any of these EFPs were *not* backed by Iran, the Court shall find that Iran was indeed the provider of the EFP(s) in each attack.

In analyzing the foregoing attacks, the Court will generally employ the template adopted during its bellwether proceedings.  As a threshold matter, the Court shall determine whether the victim of each attack was a U.S. servicemember at the time the attack occurred.  Next, the Court shall summarize each attack and identify the harms inflicted on the respective Plaintiff(s) (or the decedent(s) represented by Plaintiff(s)).  Then, the Court shall identify the key elements of the attack that persuade the Court that it is, in fact, an EFP strike.  Finally, the Court shall trace the connection to Iran.

### 1.   June 28, 2009 – Lieutenant Colonel Timothy Karcher

In 2009, Lieutenant Colonel ("LTC") Timothy Karcher was serving as a member of the United States Army in Baghdad, Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 1 (Karcher Walter Reed Medical Rep.) at 1.   On June 28, 2009, LTC Karcher's personal security detail, which included a convoy of four vehicles, was traveling south on Route Miller in Baghdad.  *See* Lutz Rep. at 1.  At approximately 11:28 AM, a multi-array explosive from the west side of the street struck LTC Karcher's armored vehicle within the convoy.  *See id.*  The Iraqi officials on the scene were "informed by a witness that a man, possibly two" were "carrying wire [and] were running . . . down the road to the west," when they "detonated the IED and got into a yellow cab after attempting to roll up the wire."  *Id.*  at 2.  The explosion that ensued sent slugs through LTC Karcher's armored vehicle's engine block and the front passenger door, severely injuring both of LTC Karcher's legs.  *Id.* at 1.  As a result of the attack, LTC Karcher eventually required above-the knee amputations of both legs.  *Id.*  LTC Karcher's medical records from Walter Reed Hospital confirm as much, noting that he "sustained traumatic amputation" following his injuries from the June 28, 2009 attack "while riding in an armored vehicle."  Pls.' Section 1605A(c) Index, Ex. 1 (Karcher Walter Reed Medical Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for LTC Karcher's injuries in the June 28, 2009 attack was an EFP, traceable to Iran and its proxies.  As an initial matter, LTC Karcher's medical records from Walter Reed identify his injury as an "EFP Blast Injury."  *Id.*  Moreover, the Significant Activity ("SIGACT") Report from the attack identifies the "IED Type" as "EFP" and contains a description of the device as a "four array, copper lined EFP, approximately six to eight inches in diameter, contain[ing] a total of 70-80 lbs of U[nidentified] B[ulk] E[xplosive] and . . . command wire initiated."  Lutz Rep. at 1.  The SIGACT Report also states that the explosive involved in the June 28, 2009 attack "created an entry point that went through the hood" of LTC Karcher's armored vehicle, and that "three copper slugs and several copper [redacted]" were recovered from the vehicle.  *Id.* at 2. Additionally, the report concludes that due to the "magnitude" and "sophistication" of the attack on LTC Karcher's vehicle, the culprit must have possessed "proven . . . capabilities at conducting sophisticated EFP attacks" and could not have been a "lower-level" actor.  *Id.*

Based on a review of these records, Col. Lutz opines that "the attack that injured LTC Karcher was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.* at 4.  The Court is persuaded by this evidence.  In particular, the Court observes that the presence of copper slugs and the documented sophistication of the June 28, 2009 attack are strong indicators of the use of a precision-manufactured Iranian EFP.  *See* disc. *supra* at 12–25.  Therefore, upon review of the record evidence regarding the June 28, 2009, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack in Baghdad, Iraq that caused LTC Karcher's injury.

### 2.  July 3, 2005 – Sergeant Ryan Montgomery

In 2005, Sergeant ("Sgt.") Ryan Montgomery was serving as a member of the United States Army in Baghdad, Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 2 (Montgomery Casualty Rep.) at 1.  On July 3, 2005, Sgt. Montgomery was traveling with a military police convoy on a supply route in Baghdad, when an explosive array struck one of the vehicles in the convoy.  *See* Lutz Rep. at 5.  The vehicle hit by the explosive was an up-armored M1114 HMMWV, a vehicle characteristically used by military police units at the time in Iraq.  *Id.*  The explosive attack on the armored vehicle severely injured two soldiers inside and instantly killed Sgt. Montgomery.  *See id.*  Sgt. Montgomery's casualty report confirms that he was killed in action in Baghdad, Iraq on July 3, 2005, as the result of hostile "blast and shrapnel injuries."  Pls.' Section 1605A(c) Index, Ex. 2 (Montgomery Casualty Rep.) at 1.

In his expert report, Col. Lutz opines that Sgt. Montgomery's death was the result of "one of the earlier EFP attacks on record," and, consequently, there is "relatively little attribution related information to consider."  Lutz Rep. at 5.  Nonetheless, the SIGACT report from the July 3, 2005 attack notes that "that two EFP IEDs struck the M1114."  *Id.* at 6.  "One was 7-8 in diameter and the second one was 3-4 in diameter."  *Id.*  Additionally, a further assessment of the July 3, 2005 attack revealed that "that both [explosives] were R[emote] [C]ontrol detonated."  *Id.*  In his expert assessment, Col. Lutz ultimately concludes that "the weapon that killed [Sgt.] Montgomery was part of the EFP campaign orchestrated by the IRGC and Hezbollah, that was conducted by one of the IRGC's Special Group proxies."  *Id.*

The Court is sufficiently persuaded by this evidence.  Although robust evidence regarding the July 3, 2005 attack is unavailable, the evidence available shows that the explosive inflicted severe damage upon an up-armored military police vehicle, which caused multiple casualties and

Sgt. Montgomery's instant death. *See id.* The significant impact of this explosive on an up-armored military vehicle points to the use of a sophisticated EFP, rather than a conventional IED. This conclusion comports with the Court's findings of fact regarding the enhanced capabilities of properly crafted Iranian EFPs, relative to generic IEDs. *See* disc. *supra* at 12–15. And, as set forth in the Findings of Fact above, the Court is further persuaded that such a sophisticated EFP attack in the Iraqi theater, capable of defeating an up-armored HMMWV, required the support of Iranian sponsors. *See id.* Accordingly, upon review of the record evidence regarding the July 3, 2005 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Sgt. Montgomery.

### 3.  July 27, 2005 – Sergeant Tony Wood

In 2005, Sergeant ("Sgt.") Tony Wood was serving as a member of the United States Army in Baghdad, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 3 (Wood Purple Heart Award) at 1. During the morning of July 27, 2005, Sgt. Wood was riding in the front passenger seat of an up-armored M1114 HMMWV, traveling within a military police convoy. *See* Lutz Rep. at 8. Sgt. Wood's up-armored vehicle was struck on the left side by an explosive, which instantly killed the driver and the gunner in the vehicle. *See id.* Sgt. Wood, himself, was seriously injured by the resulting shrapnel, which punctured his body armor and damaged his internal organs. *See id.* Because of these injuries, Sgt. Wood "required multiple surgeries to repair his liver, lung, intestines and stomach, and was in a coma for 45 days following the attack." *Id.* On August 5, 2005, Sgt. Wood received the Purple Heart award for his "wounds received in action" in Iraq on July 27, 2005. Pls.' Section 1605A(c) Index, Ex. 3 (Wood Purple Heart Award) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for Sgt. Wood's injuries in the July 27, 2005 attack was an EFP, traceable to Iran and

its proxies.  First, the SIGACT report for the attack confirms that the explosion resulted in destruction of Sgt. Wood's up-armored HMMWV and further indicates that HMMWV caught fire from the explosion.  *See* Lutz Rep. at 8.  Additionally, photographic evidence in the record clearly shows the complete destruction of Sgt. Wood's up-armored vehicle, including the complete penetration of the vehicle's door from an explosively propelled slug.  *Id.* at 9–10 (providing photographic evidence).  Moreover, the record shows that the Executive Officer from Sgt. Wood's Army company submitted a declaration stating that he personally observed the damage inflicted on Sgt. Wood's up-armored vehicle from the July 27, 2005 explosion, which sent a copper slug through the driver's door of the HMMWV and set the vehicle on fire.  *Id.* at 8.  The Executive Officer for Sgt. Wood's company also reported that local Shi'a Special Groups had been active in the company's area of operations and had used EFPs.  *Id.*

In his expert report, Col. Lutz's opines that "the weapon that injured Sgt. Wood was an EFP that produced at least one large slug approximately 8-10" in diameter that penetrated the up-armored driver's door [of Sgt. Wood's vehicle], and created a fireball and blast overpressure strong enough to light the vehicle on fire."  *Id.* at 11.  Col. Lutz further concludes that the July 27, 2005 attack "was a well-planned and coordinated attack that was part of the EFP campaign orchestrated by the IRGC and Hezbollah and conducted by one of the IRGC's Special Group proxies."  *Id.* at 11.

The Court is persuaded by this evidence.  Of note, the record evidence bearing on the July 27, 2005 attack includes clear photographic evidence of the catastrophic damage to and the incineration of Sgt. Wood's up-armored vehicle.  The record evidence also notes the presence of a copper slug in the explosion and points to active reports of Shi'a proxy groups using EFPs in the region at the time of the July 27, 2005 attack.  Consequently, upon review of the record evidence

regarding the July 27, 2005 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that injured Sgt. Wood.

### 4. September 28, 2005 – Sergeant Steve Morin Jr.

In 2005, Sergeant ("Sgt.") Steve Morin Jr. was serving as a member of the United States Army in Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 4 (Morin Death Cert.) at 1. On September 28, 2005, Sgt. Morin and his unit were "providing route security for a supply run between Camp Navistar, in Kuwait near the Iraqi border, and Camp Bucca, located in Umm Qasr, Iraq." Lutz Rep. at 13. At the time, Sgt. Morin was driving an up-armored M1114 HMMWV alongside four other such vehicles in the military security convoy. *Id.* As the convoy approached a road bridge, a projectile struck Sgt. Morin's vehicle on the right side, causing the vehicle to career off of the roadway and roll several times before coming to a rest. *Id.* Sgt. Morin and the truck commander, seated in the front passenger seat, were killed, and the gunner in the vehicle was seriously wounded. *Id.* Sgt. Morin's official death certificate confirms that he died at 11:48 AM near Umm Qasr, Iraq, as a result of a "penetrating shrapnel wound of the head." Pls.' Section 1605A(c) Index, Ex. 4 (Morin Death Cert.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for Sgt. Morin's death in the September 28, 2005 attack was an EFP, traceable to Iran and its proxies. The SIGACT report addressing the attack attributed the damage to a "Directional IED," which Col. Lutz explains is a term used to denote an EFP attack. Lutz Rep. at 13. The SIGACT report further states that the weapon in the attack was a "command armed, victim operated (PIR) EFP IED." *Id.* Additionally, Sgt. Morin's family has provided photographic evidence depicting the damage inflicted to Sgt. Morin's armored vehicle as a result of the

September 28, 2005 attack.  This photographic evidence shows "that the armor on the passenger side door was entirely defeated."  *Id.*  Notably, the photographic evidence also shows a penetration hole through the passenger door of Sgt. Morin's armored vehicle, which Col. Lutz attributes to an EFP slug.  *Id.*  In his expert report, Col. Lutz concludes that "the weapon that killed Sgt. Morin was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.*  Similarly, the Court has reviewed the record evidence regarding this attack, along with the broader evidence of Iran's use of EFPs in Iraq through proxies, and finds that Iran and its proxies bear responsibility for the September 28, 2005 EFP attack near Umm Qasr, Iraq that killed Sgt. Morin.

### 5.  <u>October 6, 2005 – Private Jeremiah Robinson</u>

In 2005, Private Jeremiah Robinson was serving as a member of the United States Army in Baghdad, Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 5 (Robinson Casualty Rep.) at 1.  On October 6, 2005, Private Robinson was traveling with a routine convoy providing route security along Main Supply Route Vernon in western Baghdad.  *See* Lutz Rep. at 18.  This security convoy consisted of two up-armored M1114 HMMWV and one M1117 Armored Security Vehicle, and Private Robinson was driving the lead up-armored M1114 HMMWV in the convoy.  *See id.*  At approximately 8:00 A.M. local time, a multi-array explosive, emplaced at the base of a light pole, struck Private Robinson's up-armored vehicle.  *See id.*  The slug from the explosion caused Private Robinson traumatic head injuries and instantly killed him.  *See id.*  Private Robinson's casualty report confirms that he was killed in action in Baghdad, as a result of hostile "blast injuries to the head."  Pls.' Section 1605A(c) Index, Ex. 5 (Robinson Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for Private Robinson's death in the October 6, 2005 attack was an EFP, traceable to

Iran and its proxies.  First, the SIGACT report from the blast states that the IED responsible for the explosion was "believed to be an EFP."  Lutz Rep. at 18.  Similarly, the IED report observes that an "*EFP* was placed at the base of a light pole," and further indicates that the "main charge configuration" of the weapon at issue was an "EFP."  *Id.* (emphasis added).  And tellingly, investigators on the ground reported that "3-4 EFPs were probably used with approx[imately] 1LB of explosives per EFP" in the attack, and that the "damage to the vehicle had copper and silver colored scarring" indicative of EFP damage.  *Id.* at 19.  Finally, the record includes photographic evidence of the damage caused by the blast, including photographs of the defeated armor on the passenger door of Private Robinson's up-armored vehicle.  *Id.* at 19–20.

In his expert report, Col. Lutz opines that "the weapon used to attack [Private] Robinson's up-armored M1114 HMMWV was an EFP array that produced at least four slugs approximately 3-6" in diameter."  *Id.* at 20.  Col. Lutz further concludes "that the attack killed [Private] Robinson was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.*  The Court is persuaded by this evidence.  Upon review of the record evidence regarding the October 6, 2005 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack in Baghdad that killed Private Robinson.

### 6.  <u>February 18, 2006 – Sergeant Charles Matheny IV</u>

In 2006, Sergeant ("Sgt.") Charles Matheny IV was serving as a member of the United States Army in Baghdad, Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 6 (Matheny Casualty Rep.) at 1.  On the morning of February 18, 2006, Sgt. Matheny was traveling with a military convoy from the 3rd Battalion, 67th Armor Regiment on Route Buzz in Baghdad, Iraq.  *See* Lutz Rep. at 23.  Around 8:00 AM local time, a multi array explosive detonated and hit the up-armored M1114

HMMWV that Sgt. Matheny was driving.  *See id.*  The explosion killed Sgt. Matheny and wounded two other soldiers.  *Id.*  Sgt. Matheny's casualty report confirms that he was killed in action in Baghdad as the result of a hostile action leading to "blunt force injuries due to [a] blast."  Pls.' Section 1605A(c) Index, Ex. 6 (Matheny Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for Sgt. Matheny's death in the February 18, 2006 attack was an EFP, traceable to Iran and its proxies.  As an initial matter, the SIGACT report from the attack contains the following note: "1X IED (*EFP*) BDA: 1 CF KIA, 2 CF WIA, M1114 Destroyed."  Lutz Rep. at 23 (emphasis added).  Additionally, the casualty report from the attack confirms that Sgt. Matheny was driving an "up-armored M1114 HMMWV," which was struck before his death.  *Id.*  And the record contains photographic evidence demonstrating complete penetration to both the front and rear doors of Sgt. Matheny's up-armored M1114 HMMWV.  *See id.* at 24–25.  Of note, the photographic evidence also shows "copper spalls lodged in ballistic glass of the right rear door." *Id.* at 25.  The total defeat of the armor on Sgt. Matheny's vehicle, as well as the copper residue left from the attack are strong indicators of the use of an EFP.  *See* disc. *supra* at 12–25.

In his export report, Col. Lutz opines that the February 18, 2006 attack involved a "multi-array EFP" that "produced at least two copper slugs."  Lutz Rep. at 25.  Moreover, Col. Lutz concludes that "the attack that killed Sgt. Matheny was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.*  The Court is persuaded by this evidence.  Accordingly, upon review of the record evidence regarding the February 18, 2006 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack in Baghdad that killed Sgt. Matheny.

### 7. **February 26, 2006 – Specialist Clay Farr & Staff Sergeant Wesley Hunter**

In 2006, Specialist ("Spc.") Clay Farr and Staff Sergeant ("Staff Sgt.") Wesley Hunter were serving as members of the United States Army in Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 7 (Farr Casualty Rep.) at 1; *id.*, Ex. 7 (Hunter Bronze Star), at 2. On February 26, 2006, Spc. Farr and Staff Sgt. Hunter were traveling together in a two-vehicle patrol from A Troop, 1st Battalion, 71st Cavalry Regiment, proceeding eastbound on Route Mets. *See* Lutz Rep. at 26. During this trip, both Spc. Farr and Staff Sgt. Hunter were riding in the same up-armored M1114 HMMWV, with Spc. Farr seated in the driver's position and Staff Sgt. Hunter in the front passenger seat of the vehicle. *See id.* At approximately 1:00 AM local time, an explosive emplaced in the curb along Route Mets detonated and sent copper slugs through the right-rear passenger door of Spc. Farr and Staff Sgt. Hunter's up-armored M1114 HMMWV. *Id.*

The blast killed Spc. Farr and the vehicle's gunner and seriously wounded Staff Sgt. Hunter, who later perished from these wounds. *Id.* Here, the record includes Spc. Farr's Army casualty report, which confirms that he was killed in action during hostile action as a result of "blast and shrapnel injuries." Pls.' Section 1605A(c) Index, Ex. 7 (Farr Casualty Rep.) at 1. The record also includes Staff Sgt. Hunter's Bronze Star Award, which confirms that he was "wounded in an ambush" on February 26, 2006 that killed two of his fellow soldiers, and that Staff Sgt. Hunter "ultimately los[t] his life due to the injuries he sustained while protecting his fellow soldiers." *id.*, Ex. 7 (Hunter Bronze Star), at 2.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the February 26, 2006 attack causing the deaths of Spc. Farr and Staff Sgt. Hunter was an EFP traceable to Iran and its proxies. First, the SIGACT report from the attack includes a summary that describes the attack as "1 x IED (*confirmed EFP*), 2 x US KIA, 1 x US WIA, 4 x

detainees." Lutz Rep. at 27 (emphasis added). And similarly, the IED report labels the "main charge configuration" as "EFP." *Id.* Additionally, the written WIT 10 report from the February 26, 2006 attack confirms that the vehicle struck was an "M1114," and also notes that an "EFP was on the south edge of the east bound lane on the curb." *Id.* That same report further states that AIF [Anti-Iraqi Forces] studied C[oaliton] F[orces] patrol routines and placed the EFP after the patrol passed in hopes that the patrol would return to the area." *Id.*

The record also contains photographic evidence depicting the damage inflicted upon Spc. Farr and Staff Sgt. Hunter's up-armored M1114 HMMWV. *See id.* at 28–29. Notably, this photographic evidence includes a picture of the rear door of the up-armored vehicle with multiple penetration holes through the vehicle's armor, which Col. Lutz's attributes to multiple EFP slugs. *Id.* at 28. And in his expert report, Col. Lutz opines that the February 26, 2006 attack "involved an EFP that was likely copper-lined." *Id.* at 31. Finally, Col. Lutz concludes that "the attack that killed Spc. Farr and . . . [Staff Sgt.] Hunter was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 30. The Court is persuaded by this evidence. Upon review of the record evidence regarding the February 26, 2006 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack in Baghdad that killed Spc. Farr and Staff Sgt. Hunter.

## 8. **March 13, 2006 – Sergeant Bryan Lewis**

In 2006, Sergeant ("Sgt.") Bryan Lewis was serving as a member of the United States Army in Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 8 (Lewis Casualty Rep.) at 1. On March 13, 2006, Sgt. Lewis was traveling on an access road parallel to Route Pluto in Baghdad with a patrol comprising three up-armored M1114 HMMWVs from the 258th Military Police Company. *See*

Lutz Rep. at 32; Pls.' Section 1605A(c) Index, Ex. 8 (Lewis Casualty Rep.) at 1.  During this trip, a multi-array explosive struck the right side of Sgt. Lewis's armored vehicle, which was the first vehicle in the convoy.  *See* Lutz Rep. at 32.  The explosive sent multiple copper slugs through the vehicle's armor and into the crew compartment, where Sgt. Lewis was positioned.  *See id.* at 33. The blast mortally wounded Sgt. Lewis and the truck commander, and also seriously injured three other service members and their interpreter.  *See id.*  Sgt. Lewis's casualty report confirms that he was killed in action in Iraq on March 13, 2006, as the result of a hostile blast and shrapnel injuries. Pls.' Section 1605A(c) Index, Ex. 8 (Lewis Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for Sgt. Lewis's death in the March 13, 2006 attack was an EFP, traceable to Iran and its proxies.  First, the SIGACT report from the attack confirms that Sgt. Lewis's "vehicle was equipped with Level 1 armor, meaning that its doors, roof and undercarriage were reinforced with at least one inch thick rolled homogenous armor plating."  Lutz Rep. at 35.  The SIGACT report also notes that the armored vehicle was "struck by what EOD [the Explosive Ordnance Device team] has assessed as a multiple-array EFP."  *Id.*  Additionally, the WIT 3 report from the March 13 attack states that "[f]ragmentation found at the site confirms an EFP array."  *Id.*  Finally, the record also contains photographic evidence depicting the damage inflicted to Sgt. Lewis's up-armored vehicle.  Notably, this includes multiple photographs showing a number of clear penetration holes through the vehicle's passenger door, *see id.* at 36–37, which, as noted above, was heavily armored, *see id.* at 35.

In his expert report, Col. Lutz opines that the March 13, 2006 attack "involved a concealed, curbside-emplaced EFP array of undetermined size, that produced multiple copper slugs."  *Id.* at 38.  Moreover, Col. Lutz concludes that "the attack that killed Sgt. Lewis was part of the EFP

campaign orchestrated by the IRGC and Hezbollah, that was conducted by one of the IRGC's Special Group proxies." *Id.* at 38. The Court is persuaded by this evidence. Upon review of the record evidence regarding the March 13, 2006 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack in Iraq that killed Sgt. Lewis.

### 9.  April 1, 2006 – Sergeant Israel Devora-Garcia

In 2006, Sergeant ("Sgt.") Israel Devora-Garcia was serving as a member of the United States Army in Baghdad, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 9 (Devora-Garcia Casualty Rep.) at 1. On April 1, 2006, Sgt. Devora-Garcia was traveling with a convoy from the 2nd Battalion, 6th Infantry Regiment along Route Jackson in Baghdad, Iraq. *See* Lutz Rep. at 39. At approximately 8:00 PM local time, Sgt. Devora-Garcia, along with one other soldier, participated in a dismounted inspection of a "suspicious looking area" of a curb along the route. *Id.* As Sgt. Devora-Garcia was inspecting the suspicious area an explosive device detonated, instantly killing Sgt. Devora-Garcia and seriously wounding the second solider accompanying him at the time. *See id.* Sgt. Devora-Garcia's casualty report confirms that he was killed during hostile action on April 1, 2006, in Baghdad, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 9 (Devora-Garcia Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for Sgt. Devora-Garcia's death in the April 1, 2006 attack was an EFP, traceable to Iran and its proxies. Although this attack did not involve more conventional EFP damage to an up-armored military vehicle like other attacks presented by Plaintiffs in this case, *see* Lutz Rep. at 39, the SIGACT report from the April 1, 2006 attack still contains a summary stating "1X IED (*EFP*) 2X CF KIA," *id.* at 40 (emphasis added). Relatedly, the IED report from the attack

identifies the "main charge configuration" of the explosive device as an "EFP." *Id.* And the EOD report from the attack noted that multiple EFP attacks had transpired in the location of the April 1, 2006 attack within the past 60 days. *See id.* Consequently, that EOD report concluded that it was "reasonable to assume that the device was in fact a multiple EFP array." *Id.*

Similarly, Col. Lutz opines in his expert report that the April 1, 2006 attack "involved an EFP that was likely copper-lined." *Id.* Furthermore, Col. Lutz concludes in his expert report that "the attack that killed Sgt. Devora-Garcia was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* The Court is persuaded by this evidence. Upon review of the record evidence regarding the April 1, 2006 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack in Baghdad, Iraq that killed Sgt. Devora-Garcia.

### 10. April 12, 2006 – Specialist Scott Bandhold

In 2006, Specialist ("Spc.") Scott Bandhold was serving as a member of the United States Army in Misiab, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 10 (Bandhold Casualty Rep.) at 1. On April 12, 2006, Spc. Bandhold was traveling with a military convoy of four up-armored M1114 HMMWVs from the Headquarters Company, 1st Battalion, 67th Armor Regiment. *See* Lutz Rep. at 43. Spc. Bandhold and the convoy were heading south along Route Cleveland to attend a meeting at an Iraqi Police station in Karbala. *Id.* While en route to Karbala, however, two multi-array explosives detonated and struck two of the up-armored vehicles in the convoy. *Id.* The first of these multi-array explosives struck the driver's side of the second vehicle in the convoy, where Spc. Bandhold was located. *Id.* The blast killed Spc. Bandhold and the driver of his vehicle. *Id.* Spc. Bandhold's casualty report confirms that he was killed during hostile action in Misiab, Iraq

on April 12, 2006, as a result of a "blast and shrapnel injuries."  Pls.' Section 1605A(c) Index, Ex. 10 (Bandhold Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for Spc. Bandhold's death in the April 12, 2006 attack was an EFP, traceable to Iran and its proxies.  As an initial matter, the SIGACT report from the attack records the "modes of attack" as a "directional IED," and notes that the second vehicle in the convoy, where Spc. Bandhold was located, was struck with an IED that "was an EFP."  Lutz Rep. at 44.  Notably, the record also indicates that investigators on the scene recovered copper fragmentation from the attack site, and the CEXC report expressly concludes that "[t]he second vehicle . . . was hit by an EFP array consisting of at least 5 EFPs that killed the driver and the passenger seated directly behind the driver."  *Id.*  Moreover, the records also suggest that a noteworthy degree of precision and sophistication were involved in the design and execution of the April 12, 2006 explosive attack.  For example, the investigators of the attack observed that the explosives specifically targeted the second and third vehicles in Spc. Bandhold's convoy, based on the understanding that unit command elements rarely travel in the first or last vehicle of such a convoy.  *See id.* at 45.  Finally, the photographic evidence in the record shows severe damage inflicted upon Spc. Bandhold's up-armored vehicle, including the complete penetration of the up-armored siding on the vehicle, which Col. Lutz attributes to multiple EFP slugs.  *See id.* at 46–47.

In his expert report, Col. Lutz opines that the April 12, 2006 attack "involved the use of a multi-array copper-lined EFP."  *Id.* at 49.  Col. Lutz then concludes that "the attack that killed Spc. Bandhold was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.*  The Court is persuaded by this evidence.  In particular, the Court notes that the sophisticated targeting and

complete defeat of Spc. Bandhold's up-armored vehicle reflected in the record, are strong indicators of an EFP attack carried with Iranian support. *See* disc. *supra* at 12–25. Consequently, upon review of the record evidence regarding the April 12, 2006 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack in Misiab, Iraq that killed Spc. Bandhold.

### 11. April 25, 2006 – Sergeant Erik Roberts

In 2006, Sergeant ("Sgt.") Erik Roberts was serving as a member of the United States Army in Baghdad, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 11 (Roberts Casualty Rep.) at 1–3. On April 25, 2006, Sgt. Roberts was traveling with a military convoy from C Troop, 1st Battalion, 33rd Cavalry Regiment. *See* Lutz Rep. at 51. Within the convoy, Sgt. Roberts was traveling as a passenger in an up-armored M1114 HMMWV, positioned in the rear of the vehicle. *See id.*; Pls.' Section 1605A(c) Index, Ex. 11 (Roberts Casualty Rep.) at 2. At approximately 1:15 AM local time, however, an explosive struck Sgt. Roberts's vehicle, setting the vehicle on fire and peppering Sgt. Roberts with shrapnel. *See* Lutz Rep. at 51. Sgt. Roberts suffered a "peppered right arm" and a fractured femur as a result of the blast. Pls.' Section 1605A(c) Index, Ex. 11 (Roberts Casualty Rep.) at 2.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for Sgt. Roberts's injuries in the April 25, 2006 attack was an EFP, traceable to Iran and its proxies. First, the SIGACT report from the attack contains an update, stating that "EOD reported that P[ost] B[last] A[nalysis] determined the IED strike to be a multiple array EFP, initiation system unknown." Lutz Rep. at 52. Moreover, Sgt. Roberts has provided compelling photographic evidence from the blast. This photographic evidence shows a clear "exit wound" hole in the rear passenger door of Sgt. Roberts's armored vehicle, which Col. Lutz concludes

resulted from an EFP blast.  *See id.* at 52.  Additionally, Sgt. Roberts's photographic evidence displays the complete destruction and incineration of his armored vehicle.  *See id.* at 53–54.  This comprehensive damage to Sgt. Roberts's vehicle, which the record confirms was an up-armored M1114 HMMWV, provides a strong indicator that an EFP was responsible for the blast.  To that end, Col. Lutz concludes in his expert report that "the attack that injured Sgt. Roberts was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.* at 54.  The Court is persuaded by this evidence.  Upon review of the record evidence regarding the April 26, 2006 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack in Baghdad, Iraq that injured Sgt. Roberts.

### 12. May 5, 2006 – First Sergeant Carlos Saenz and Sergeant Nathan Vacho

In 2006, Sergeant ("Sgt.") Nathan Vacho was serving as a member of the United States Army in Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 12 (Vacho Casualty Rep.) at 1. Similarly, First Sergeant ("First Sgt.") Carlos Saenz was also serving as a member of the United States Army in Iraq in 2006.  *See id.*, Ex. 12 (Saenz Casualty Rep.) at 2.  On May 5, 2006, both Sgt. Vacho and First Sgt. Saenz were returning from a mission at the Regional Embassy Office in Mahawil, Iraq, with a patrol made up of four up-armored M1114 HMMWVs.  *See* Lutz Rep. at 56–57.  Within the patrol group, First Sgt. Saenz was driving the lead vehicle, accompanied by Sgt. Vacho, who was riding in the left-side, rear passenger seat.  *See id.* at 57.  As they were driving, an explosive emplaced in the median along the road detonated and struck First Sgt. Saenz and Sgt. Vacho's vehicle.  *Id.*; *see also id.* at 58 (visual diagram).  The blast caused their vehicle to career into an oncoming dumptruck, *see id.* at 59 (photographic evidence), and instantly killed Sgt. Vacho, *id.* at 57.  Sgt. Vacho's casualty report confirms that he was killed in action on May 5, 2006, as a result

of a hostile "blast and blunt force injuries."  Pls.' Section 1605A(c) Index, Ex. 12 (Vacho Casualty Rep.) at 1.  The blast also seriously wounded First Sgt. Saenz, who later died from those injuries during his medevac flight to the hospital.  *See* Lutz Rep. at 57.  First Sgt. Saenz's casualty report confirms that he was killed in action on May 5, 2006, as a result of "blast injuries of the pelvis and lower extremities."  Pls.' Section 1605A(c) Index, Ex. 12 (Saenz Casualty Rep.) at 2.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the May 5, 2006 attack causing the deaths of Sgt. Vacho and First Sgt. Saenz was an EFP traceable to Iran and its proxies.  As an initial matter, the SIGACT report from the attack states that the IED that struck Sgt. Vacho and First Sgt. Saenz's M1114 HMMWV "was a[n] EFP 5 to 8 array, [long range cordless telephone armed] with a PIR trigger."  Lutz Rep. at 60.  Similarly, the IED report from the attack identified the "main charge configuration" from the blast as "EFP." *Id.* at 60.  And the AR 15-6 Investigation Report notes that "the IED [from the May 5, 2006 attack] was determined to be approximately 3-5 EFP array judging from penetration holes and spalling." *Id.* at 59.

Additionally, the record contains compelling photographic evidence demonstrating the damage inflicted upon Sgt. Vacho and First Sgt. Saenz's up-armored M1114 HMMWV by the blast.  *See id.* 61–64.  Notably, this photographic record includes "visual evidence of the presence of copper found inside the vehicle during the postblast analysis."  *Id.* at 61.  Moreover, the photographic record also shows the clear penetration holes through the armor on Sgt. Vacho and First Sgt. Saenz's vehicle, which Col. Lutz attributes to the EFP array from the blast.  *Id.* at 64. This visual evidence of the defeated armor and the copper residue from the blast provides a strong indication of the use of an EFP in the May 5, 2006 attack.  *See* disc. *supra* at 12–25.  To that end, Col. Lutz concludes in his expert report that "the attack that killed [First Sgt.] Saenz and Sgt.

Vacho was part of the EFP campaign orchestrated by the IRGC and Hezbollah, that was conducted by one of the IRGC's Special Group proxies." *Id.* at 65. The Court is persuaded by this evidence. Upon review of the record evidence regarding the May 5, 2006 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack in Iraq that killed Sgt. Vacho and First Sgt. Saenz.

### 13. May 14, 2006 – Chief Warrant Officer John Engeman and Sergeant First Class Robert West

In 2006, Chief Warrant Officer ("CWO") John Engeman was serving as a member of the United States Army in Baghdad, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 13 (Engeman Casualty Rep.) at 1. Similarly, Sergeant First Class ("SFC") Robert West was also serving as a member of the United States Army in Baghdad, Iraq in 2006. *See id.*, Ex. 13 (West Casualty Rep.) at 2. On May 14, 2006, CWO Engeman and SFC West were part of a Special Police Transition Team ("SPTT") from the 1st Battalion, 312th Regiment. *See* Lutz Rep. at 67. At the time, the SPTT was embedded within an Iraqi National Police convoy traveling north along Route Pluto. *See id.* At approximately 6:10 PM local time, an explosive device struck the lead vehicle in the convoy, an up-armored M1114 HMMWV, causing it to catch fire and fall off of the road. *See id.* The attack killed SFC West, who was driving the vehicle. *See id.* SFC West's casualty report confirms that he was killed in action in Baghdad, Iraq on May 14, 2006, as a result of hostile "blast injuries." Pls.' Section 1605A(c) Index, Ex. 13 (West Casualty Rep.) at 2. The blast also killed CWO Engeman, who was seated in the front passenger seat of the vehicle during the attack. *See* Lutz Rep. at 67. CWO Engeman's casualty report confirms that he too was killed in action in Baghdad, Iraq on May 14, 2006, as a result of a hostile "blast and shrapnel injuries." *Id.*, Ex. 13 (Engeman Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the May 14, 2006 attack causing the deaths of CWO Engeman and SFC West was an EFP traceable to Iran and its proxies. First, the SIGACT report from the attack indicates that the IED involved in the attack "was an EFP placed on the right shoulder of RTE Pluto." Lutz Rep. at 67. The SIGACT report also notes that Route Pluto was a major supply route for Coalition Forces and, consequently, was the site of many "EFP attacks orchestrated by Shi'a proxy groups." *Id.* Moreover, the event storyboards from the attack, which Col. Lutz reviewed in preparing his exert report, identifies the attack as "1 X IED STRIKE (*EFP*)." *Id.* at 71 (emphasis added). Additionally, the post-blast story board concludes that the "[i]mpact and armor penetration" on the vehicle "[were] consistent with a multi-array EFP." *Id.*

Finally, the record also contains compelling photographic evidence depicting the comprehensive damage inflicted during the May 14, 2006 attack. This evidence depicts complete penetration holes in the armor of CWO Engeman and SFC West's vehicle, which the record confirms was an up-armored M1114 HMMWV. *See id.* at 70–71 (photographic evidence). And notably, Col. Lutz observed the presence of "copper residue" visible on certain impact points left on the defeated vehicle of the armor. *Id.* at 71. Such evidence is a strong indicator of the use of an EFP, *see* disc. *supra* at 12–25, and the specific targeting of CWO Engeman and SFC West's vehicle along a major supply route further points to the involvement of Shi'a proxy groups like JAM in the attack, *see* Lutz Rep. at 71; disc. *supra* at 12–25 (discussing the relationship between JAM and the IRGC). Accordingly, Col. Lutz concludes in his expert report "that the attack that killed CWO Engeman and SFC West was part of the EFP campaign orchestrated by the IRGC and Hezbollah, that was conducted by one of the IRGC's Special Group proxies." Lutz Rep. at 72.

The Court is persuaded by this evidence.  Accordingly, upon review of the record evidence regarding the May 14, 2006 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the the EFP attack in Baghdad, Iraq that killed CWO Engeman and SFC West.

### 14. **June 5, 2006 – Sergeant First Class Isaac Lawson**

In 2006, Sergeant First Class ("SFC") Isaac Lawson was serving as a member of the United States Army in Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 14 (Lawson Casualty Rep.) at 1.  On June 5, 2006, SFC Lawson was traveling south along New Five Road in Baghdad with a four-vehicle convoy from the 49th Military Police Brigade.  *See* Lutz Rep. at 73.  SFC Lawson was located in the front passenger seat of an up-armored M1114 HMMWV, which was positioned as the third vehicle within the military convoy.  *See id.*  At approximately 8:30 PM local time, however, an explosive device struck the right side of SFC Lawson's armored vehicle, injuring the vehicle's driver and killing SFC Lawson.  *See id.*  SFC Lawson's casualty report confirms that he was killed in hostile action from a "blast injury" on June 5, 2006, in Iraq.  Pls.' Section 1605A(c) Index, Ex. 14 (Lawson Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for SFC Lawson's death in the June 5, 2006 attack was an EFP, traceable to Iran and its proxies.  As an initial matter, the SIGACT report from the attack indicates that "an EFP detonated in proximity to the third vehicle in the four-vehicle convoy, resulting in 1X [] KIA and 1X driver WIA."  Lutz Rep. at 74.  And that report further notes that the "blast penetrated the level 1 armor on the front passenger[']s side, and caused damage to the inside of the vehicle."  *Id.*  Relatedly, the IED report from the attack identifies the "main charge configuration" of the explosive device involved in the June 5, 2006 attack as an "EFP."  *Id.*  Moreover, the record

contains photographic evidence, which according to Col. Lutz, amply demonstrates the defeated armor on SFC Lawson's up-armored M1114 HMMWWV. *See id.* at 78–79, 82–83. Finally, investigators from the attack recovered one copper slug and a number of copper fragments from the blast site. *See id.* at 80 (addressing the CEXC Report).

In his expert report, Col. Lutz opines that the June 5, 2006 attack "involved the use of a copper-lined EFP." *Id.* at 83. Furthermore, Col. Lutz concludes that "the attack that killed SFC Lawson was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* The Court is persuaded by this evidence. In particular, the Court notes that the presence of multiple copper fragments from the blast, along with the visual evidence of the defeated armor on SFC Lawson's up-armored vehicle, present strong indicators of the use of an Iranian EFP to kill SFC Lawson. *See* disc. *supra* at 12–25. Consequently, upon review of the record evidence regarding the June 5, 2006 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack in Baghdad, Iraq that killed SFC Lawson.

### 15. June 8, 2006 – Sergeant First Class Daniel Crabtree

In 2006, Sergeant First Class ("SFC") Daniel Crabtree was serving as a member of the United States Army in Al Kut, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 15 (Crabtree Casualty Rep.) at 1. On June 8, 2006, SFC Crabtree was traveling along Alternate Supply Route Roswell with a convoy consisting of a U.S. Army Special Forces Operational Detachment Alpha team 1 from B Company, 2nd Battalion, 19th Special Forces Group. *See* Lutz Rep. at 85. During this patrol mission, SFC Crabtree was the vehicle commander of an up-armored M1114 HMMWV with level-1 armor. *Id.* at 86. At approximately 8:00 AM local time, an explosive device struck SFC Crabtree's armored vehicle, killing him, as well as the local Iraqi interpreter in the vehicle.

*See id.* at 85.  SFC Crabtree's casualty report confirms that he was killed in hostile action on June 8, 2006, in Al Kut, Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 15 (Crabtree Casualty Rep.) at 1.

As Col. Lutz explains in his expert report, "[s]ince this is one of the earlier . . . attacks on record and involved an attack on a Special Forces unit, the record . . . is somewhat spar[s]e."  Lutz Rep. at 86.  Nonetheless, the SIGACT report from the attack does indicate that SFC Crabtree's team "was attacked with [] an *EFP* IED on ASR Roswell," and that "2X HMMWV were . . . damaged in the attack."  *Id.* at 85 (emphasis added).  Moreover, the casualty report from the attack confirms that SFC Crabtree was riding in "an M11114 up-armored HMMWV with level-1 armor" at the time of the attack, and attributes SFC's Crabtree's death to "[m]assive trauma caused by Explosive Formed Projectile (EFP) IED."  *Id.* at 86.  Finally, Col. Lutz opines in his expert report that the June 8, 2006 attack "involved the use of an EFP" and "was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.*  The Court is sufficiently persuaded by this evidence.  Notably, the blast damage inflicted to that SFC Crabtree's up-armored vehicle indicates the use of a precision-manufactured Iranian EFP.  *See* disc. *supra* at 12–25.  Accordingly, the Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for SFC Crabtree's death in the June 8, 2006 attack was an EFP, traceable to Iran and its proxies.

### 16. **June 9, 2006 – Specialist Benjamin Slaven**

In 2006, Specialist ("Spc.") Benjamin Slaven was serving as a member of the United States Army in Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 16 (Slaven Casualty Rep.) at 1.  On June 9, 2006, Spc. Slaven was traveling north towards Baghdad International Airport on Route Tampa, as part of a unit from the 308th Transportation Company escorting twenty-nine vehicle convoy.  *See* Lutz Rep. at 87.  Spc. Slaven was located in the gunner's seat of the convoy's lead vehicle, which

was an up-armored M114 HMMWV.  *See id.*  At approximately 9:00 PM local time, a multi-array explosive device detonated outside of the town of Ad Diwaniyah and struck Spc. Slaven's vehicle on the left side, including on the left side of the vehicle's turret.  *See id.*  The blast killed Spc. Slaven.  *Id.*  Spc. Slaven's casualty report confirms that he was killed in action on June 9, 2006, as a result of hostile blast injuries.  *See* Pls.' Section 1605A(c) Index, Ex. 16 (Slaven Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for Spc. Slaven's death in the June 9, 2006 attack was an EFP, traceable to Iran and its proxies.  First, the IED report from the attack identifies the "main charge configuration" of the explosive device responsible for the attack as an "EFP."  Lutz Rep. at 88.  Of note, IED report further specifies that Spc. Slaven's vehicle "was impacted by the EFPs on the left side above the left-rear door and on the left side of the turret with 1 KIA (gunner)," and concludes that because of "the size of the blast hole, fragmentation recovered, the copper residue, and the damage to the M1114, the IED *was definitely a multiple EFP array*."  *Id.* (emphasis added).  Moreover, Col. Lutz's expert report references a CJTF-Troy report, which concludes that Spc. Slaven's armored vehicle "was impacted by the EFPs on the left side above the left-rear door and on the left side of the turret."  *Id.*  Finally, the record contains photographic evidence providing a visual display of damage to Spc. Slaven's armored vehicle that "is consistent with damage caused by a copper-lined, multi-array EFP."  *Id.* at 91 (including photographic evidence).

In his expert report, Col. Lutz concludes that "the attack that killed SPC Slaven was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.* at 93.  The Court is persuaded by this evidence.  In particular, the Court observes that the record evidence of copper residue around the

blast site and the defeated armor on Spc. Slaven's M1114 HMMWV are strong indicators of the use of a precision-manufactured EFP. *See* disc. *supra* at 12–25. Accordingly, the Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for Spc. Slaven's death in the June 9, 2006 attack was an EFP, traceable to Iran and its proxies.

### 17. <u>October 17, 2006 – Staff Sergeant Ryan Haupt and Specialist Nathan Frigo</u>

In 2006, Staff Sergeant ("Staff Sgt.") Ryan Haupt was serving as a member of the United States Army in Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 17 (Haupt Casualty Rep.) at 1. Similarly, Specialist ("Spc.") Nathan Frigo was also serving as a member of the United States Army in Iraq in 2006. *See id.*, Ex. 17 (Frigo Casualty Rep.) at 2. On October 17, 2006, both Staff Sgt. Haupt and Spc. Frigo were returning to an Army base located a few miles northwest of Baqubah, Iraq, in a convoy of four up-armored M1114 HMMWVs from A Company, 1st Battalion, 68th Armor Regiment. *See* Lutz Rep. at 94. Staff Sgt. Haupt and Spc. Frigo, along with two additional soldiers, were driving in the second up-armored vehicle within the convoy. *See id.* At approximately 3:00 PM local time, an explosive device struck Staff Sgt. Haupt and Spc. Frigo's vehicle, killing both soldiers almost instantaneously. *See id.* Staff Sgt. Haupt's casualty report confirms that he was killed in hostile action on October 17, 2006, in Baqubah, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 17 (Haupt Casualty Rep.) at 1. Spc. Frigo's casualty report also confirms that he was killed in hostile action on October 17, 2006, in Baqubah, Iraq, as a result of "blast and shrapnel injuries." *Id.*, Ex. 17 (Frigo Casualty Rep.) at 2.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the October 17, 2006 attack causing the deaths of Staff Sgt. Haupt and Spc. Frigo was an EFP traceable to Iran and its proxies. As an initial matter, the IED report from the attack identifies the "main charge configuration" of the explosive device as an "EFP," and notes that the

attack involved "an array of at least 8 EFPs due to the amount of large points of penetration."  Lutz Rep. at 96.  Similarly, the SIGACT report states that "the scene [of the blast] indicated that the vehicle was struck by an EFP due to the copper residue evident at the spots where the armor was penetrated."  *Id.* at 95.  Col. Lutz expert report also references the Army AR 15-6 investigation report from the attack, which identified the IED responsible for the damage "as an at least 8 EFP array."  *Id.*  Finally, the record includes compelling photographic evidence of the damage inflicted during the October 17, 2006 attack, such as a visual display of the copper residue left on Staff Sgt. Haupt and Spc. Frigo's vehicle, as well as copper fragmentation from the blast.  *See id.* at 97–98 (including photographic evidence).

In his expert report, Col. Lutz concludes that "the attack that killed [Staff Sgt.] Haupt and Spc. Frigo was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.* at 99.  Col. Lutz further opines that the October 17, 2006 "attack involved the use of a multi-array copper-lined EFP that possessed at least eight (8) penetrators," which "sent multiple slugs through the HMMWV's armor along its right side, killing [Staff Sgt.] Haupt and Spc. Frigo."  *Id.*  The Court is persuaded by this evidence.  In particular, the clear evidence of copper residue and fragments from the blast are strong indicators of the use of a precision-manufactured EFP.  *See* disc. *supra* at 12–25.  Accordingly, upon review of the record evidence regarding the October 17, 2006 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Staff Sgt. Haupt and Spc. Frigo.

### 18. October 23, 2006 – First Lieutenant Amos Bock

In 2006, First Lieutenant ("FLT") Amos Bock was serving as a member of the United States Army in Baghdad, Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 18 (Bock Casualty Rep.) at

1. On October 23, 2006, FLT Bock was traveling north on Route Wild with a four-vehicle convoy from A Company, 4th Battalion, 320th Field Artillery Regiment that was conducting a curfew patrol in the Zafriniyah neighborhood in Baghdad.  *See* Lutz Rep. at 100.  Each of the vehicles within the convoy, including the vehicle occupied by FLT Bock, was an up-armored M1114 HMMWV.  *See id.*  At approximately midnight, an explosive detonated causing severe damage to three of the four armored vehicles within FLT Bock's patrol convoy.  *See id.*  The blast wounded nine soldiers and an Iraqi interpreter, and killed FLT Bock.  *See id.*  FLT Bock's casualty report confirms that he was killed in action on October 23, 2006, as the result of hostile "blast injuries" sustained in Baghdad, Iraq.  Pls.' Section 1605A(c) Index, Ex. 18 (Bock Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the October 23, 2006 attack causing the death of FLT Bock was an EFP traceable to Iran and its proxies.  First, the SIGACT report from the attack confirms that the vehicles impacted by the blast were each up-armored M1114's and that that blast set each impacted vehicle on fire.  *See* Lutz Rep. at 100.  Moreover, the SIGACT report notes that FLT Bock's convoy "was struck by a possible steel-lined EFP array."  *Id.* at 101.  Similarly, the IED report from the blast attributes that attack to an "EFP array [that] was emplaced along a line of blocks that prevented vehicles from parking in front of the stores along the east side of the northbound lane on Route Wild."  *Id.*  And finally, the record contains compelling photographic evidence from the attack site depicting the damage inflicted by the blast.  *See id.* at 101–03 (photographic evidence).  Of note, this photographic evidence shows the complete destruction of the three armored vehicles impacted in the blast, as well as clear penetration holes on the passenger-door of FLT Bock's armored vehicle.  *Id.* at 102.

In his expert report, Col. Lutz concludes that "the attack that killed [FLT] Bock was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 104. Col. Lutz further opines that "[t]he attack involved a multi-array EFP that sent at least one slug through his vehicle's armored front-passenger door." *Id.* The Court is persuaded by this evidence. Upon review of the record evidence regarding the October 23, 2006 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack in Baghdad, Iraq that killed FLT Bock.

### 19. November 2, 2006 – Lieutenant Colonel Eric Kruger

In 2006, Lieutenant Colonel ("LTC") Eric Kruger was serving as a member of the United States Army in Baghdad, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 19 (Kruger Casualty Rep.) at 1. On November 2, 2006, LTC Kruger was traveling towards Forward Operating Base Loyalty with a patrol consisting of four up-armored M1114 HMMWVs and twenty personnel. *See* Lutz Rep. at 105. Within this patrol, LTC Kruger was traveling in the convoy's lead vehicle, along with incoming military leadership. *See id.* The purpose of their mission that day was to familiarize the incoming leadership team with the surrounding area of operations and local routes. *See id.* At approximately 2:00 PM local time, however, an explosive device struck the lead armored vehicle in the convoy, while it was in a traffic circle in Baghdad. *See id.* The slug from the explosion "penetrated the crew compartment between the passenger side front and rear doors, traveling up and back through the crew compartment, and exiting the vehicle above the left rear seat." *Id.* "The attack killed LTC Kruger, two other soldiers and the team's interpreter." *Id.* LTC Kruger's casualty report confirms that he was killed in action on November 2, 2006, as the result of hostile

"blast injuries" sustained in Baghdad, Iraq.  Pls.' Section 1605A(c) Index, Ex. 19 (Kruger Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the November 2, 2006 attack causing the death of LTC Kruger was an EFP traceable to Iran and its proxies.  Tellingly, Col. Lutz's expert report demonstrates that the AR 15-6 investigation report from the blast concluded that the IED responsible for the attack "appears to have been a single, copper-lined shaped charge."  Lutz Rep. at 106.  Additionally, that explosive device was "angled to compensate for the presence of the RHINO" device on the lead vehicle in LTC Kruger's convoy.  *Id.*  Similarly, and even more directly, the SIGACT report states that LTC Kruger's armored vehicle "was struck by a large copper EFP."  Lutz Rep. at 107.  And the IED report from the blast indicates that LTC Kruger's armored vehicle "was hit on the [front passenger] door by a large copper EFP, resulting in one six-inch round penetration."  *Id.*  Finally, the record also contains compelling photographic evidence from the attack site depicting the damage inflicted by the blast.  *See id.* at 108–10 (photographic evidence).  This photographic evidence depicts the complete penetration holes on LTC Kruger's armored vehicle, which Col. Lutz attributes to the EFP array from the blast.  *See id.* at 109.  The photographic evidence also shows the multiple copper slugs recovered from the attack site.  *See id.* at 110.

In his expert report, Col. Lutz concludes that "the attack that killed LTC Kruger was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.* at 111.  Col. Lutz also opines that the explosive device responsible for the November 2, 2006 attack "involved the use of a large, well-concealed and emplaced single, copper-lined EFP," which the attackers armed "via radio frequency to defeat the electronic counter measure (ECM) being employed by LTC Kruger's

HMMWV before it came alongside the EFP." *Id.* The Court is persuaded by this evidence and, in particular, finds that the record evidence of copper slugs and the sophisticated targeting of the November 2, 2006 attack are strong indicators of the use of a precision manufactured EFP by Iran and its proxies. *See* disc. *supra* at 12–25. Accordingly, upon review of the record evidence regarding the November 2, 2006 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack in Baghdad, Iraq that killed LTC Kruger.

### 20. **November 13, 2006 – Private First Class Jang Ho Kim**

In 2006, Private First Class ("PFC") Jang Ho Kim was serving as a member of the United States Army in Baghdad, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 20 (Kim Casualty Rep.) at 1. On November 13, 2006, PFC Kim was traveling west on Route Brewers with a combat patrol, consisting of a five-vehicle convoy from Headquarters Company, 1st Battalion, 26th Infantry Regiment. *See* Lutz Rep. at 112. PFC Kim was positioned in the lead vehicle of this convoy, which was an up-armored M1151 HWMMV. *See id.* At approximately 8:30 PM local time, an explosive device "impacted the passenger side doors of the lead vehicle" in the convoy, "resulting in the deaths of the gunner and PFC Kim, the vehicle's driver." *Id.* PFC Kim's casualty report confirms that he was killed in action on November 13, 2006, as the result of hostile "blast injuries" sustained in Baghdad, Iraq. Pls.' Section 1605A(c) Index, Ex. 20 (Kim Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the November 13, 2006 attack causing the death of PFC Kim was an EFP traceable to Iran and its proxies. As an initial matter, the SIGACT report from the attack notes that "the lead vehicle was struck on the [passenger] side by a multiple-array EFP" and "resulted in 2X CF KIA and 2X CF WIA." Lutz Rep. at 113. Similarly, the IED Report from the attack indicates that the

main charge configuration of the explosive responsible for the November 13, 2006 attack was that of an EFP. *See id.* And notably, the CEXC report from the attack attributes the blast to a copper-lined "5 or 6 x Explosively Formed Penetrator (EFP) [that] was employed" with the use of high explosive compounds. *Id.* at 115. Finally, the record also contains compelling photographic evidence, depicting the damage caused to PFC Kim's armored vehicle during the attack. *See id.* at 114 (photographic evidence). In particular, this photographic evidence shows a penetration point visible on the rear passenger door of PFC Kim's armored vehicle, which Col. Lutz attributes to an EFP. *See id.*

In his expert report, Col. Lutz concludes that "the attack that killed PFC Kim was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 116. Of note, Col. Lutz's expert report specifically identifies the recovery of copper fragmentation from PFC Kim's defeated vehicle, a fact Col. Lutz attributes to the use of a copper-lined, multi-array EFP in the November 13, 2006 attack. *See id.* at 113 n.3. The Court is persuaded by this evidence. Accordingly, upon review of the record evidence regarding the November 13, 2006 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack in Baghdad, Iraq that killed PFC Kim.

### 21. November 26, 2006 – First Lieutenant David Fraser

In 2006, First Lieutenant ("FLT") David Fraser was serving as a member of the United States Army in Baghdad, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 21 (Fraser Casualty Rep.) at 1. On November 26, 2006, FLT Fraser was traveling with a six-vehicle convoy participating in a "route clearance" mission, intended to sweep the roads for IEDs. Lutz Rep. at 118. FLT Fraser was positioned in the convoy's lead vehicle, which was a Buffalo Mine Resistant Ambush

Protected truck (a "Buffalo").  *Id.*  The Buffalo is "a heavily armored vehicle designed specifically to withstand traditional IED attacks," and the vehicle is often fitted with an extendable arm used for IED sweeps.  *Id.*  Earlier in the day, on November 26, 2006, a conventional IED struck FLT Fraser's Buffalo, but the blast inflicted no damage to the vehicle or its passengers.  *See id.* at 119. At around 8:30 AM local time, however, a second multi-array explosive, which Col. Lutz attributes to an EFP, struck the vehicle and killed FLT Fraser and two other servicemembers.  *See id.* at 118. FLT Fraser's casualty report confirms that he was killed in action on November 26, 2006, as the result of hostile "blast and shrapnel injuries" sustained in Baghdad, Iraq.  Pls.' Section 1605A(c) Index, Ex. 21 (Fraser Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the November 26, 2006 attack causing the death of FLT Fraser was an EFP traceable to Iran and its proxies.  As an initial matter, the AR 15-6 report from the attack notes that FLT Fraser's Buffalo "encountered a five-array copper lined anti-armor IED, which struck the passenger side of the vehicle" and immediately killed FLT Fraser.  Lutz Rep. at 120.  Similarly, the SIGACT report from the attack indicates that the damage sustained by FLT Fraser's Buffalo "[wa]s consistent with a multiple array copper-lined EFP."  *Id.*  The IED report also identifies the main charge configuration from the blast as an EFP and indicates that the attack specifically targeted the Buffalo, because it was more likely to be transporting Coalition Forces at the time. *See id.*  The CEXC report indicates that "[t]he Buffalo was engaged with an A[rmor] D[efeating] D[evice] comprising of 5 x copper lined EFPs," and also references multiple copper fragments recovered from the vehicle.  *Id.* at 124. Finally, the record also contains compelling photographic evidence, depicting the damage caused to FLT Fraser's Buffalo during the attack.  *See id.* at 114 (photographic evidence).  For example, this photographic evidence shows clear penetration holes,

which Col. Lutz attributes to "multi-array EFP strike points along the right side of the Buffalo." *Id.* at 122–23.  The record also contains photographic evidence of four copper fragments recovered from the blast site.  *See id.* at 123.

Upon review of this material, Col. Lutz concludes in his expert report that "the attack that killed [FLT] Fraser was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.* at 124. Moreover, Col. Lutz's opines that the "multi-array EFP created five molten copper, high-velocity slugs that penetrated the armor of the Buffalo that killed both [FLT] Fraser and another soldier." *Id.*  The Court is persuaded by this evidence.  In particular, the evidence of copper slugs and the defeated armor on FLT Fraser's Buffalo, which had sustained no damage from an earlier conventional-IED attack, are strong indicators of the involvement of an EFP.  *See* disc. *supra* at 12–25.  Accordingly, upon review of the record evidence regarding the November 26, 2006 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack in Baghdad, Iraq that killed FLT Fraser.

### 22. <u>December 3, 2006 – Captain Shawn English</u>

In 2006, Captain ("Cpt.") Shawn English was serving as a member of the United States Army in Baghdad, Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 22 (English Casualty Rep.) at 1. On December 3, 2006, Cpt. English was traveling in Baghdad with "a combat patrol consisting of three M1114 HMMWVs carrying U.S. forces and four vehicles carrying Iraqi Army," collectively part of a military transition team.  Lutz Rep. at 126.  During the journey, Cpt. English was located in the front passenger's seat of an armored U.S. Army vehicle, positioned at the lead of the convoy. *See id.*  At approximately 11:30 AM local time, however, an explosive device struck Cpt. English's vehicle and killed him.  *See id.*  Cpt. English's casualty report confirms that he died from wounds

sustained in Baghdad, Iraq on December 3, 2006, as the result of hostile "blast injuries."  Pls.' Section 1605A(c) Index, Ex. 22 (English Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the December 3, 2006 attack causing the death of Cpt. English was an EFP traceable to Iran and its proxies.  First, the AR 15-6 report from the attack notes that Cpt. English's "vehicle was struck . . . on the right side with an explosively formed projectile subsequently causing [his] death."  Lutz Rep. at 127.  And similarly, the SIGACT report from the attack indicates that the "[d]amage to the vehicle is consistent with a multiple array, copper-lined EFP."  *Id.* at 128.  The IED report also lists the main charge configuration of the explosive device as an "EFP," and further indicates that the explosive device responsible for the blast "was an EFP based on fragmentation and penetration patterns."  *Id.*  The record also contains photographic evidence depicting the penetration points in the armor on Cpt. English's vehicle.  *See id.* at 129.  Notably, these photographs also depict the presence of copper residue left around the penetration holes of the vehicles.  *See id.*

In his expert report, opines that "[t]he slugs created by the EFP penetrated the armored door of Cpt. English's M1114HMMWV, and struck CPT English, causing him massive injuries that led to his death."  *Id.* at 130.  Moreover, Col. Lutz identifies in his expert report a video from Kat'aib Hezbollah displaying the December 3, 2006 and claiming responsibility for that attack.  *See  id.*  (citing  https//archive.org/details/  KataibHezbollahhezballahBrigades-Efp3122006).  Consequently, Col. Lutz concludes that "the attack that killed Cpt. English was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.*  The Court is persuaded by this evidence.  Accordingly, upon review of the record evidence regarding the December 3, 2006 attack, along

with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack in Baghdad, Iraq that killed Cpt. English.

### 23. December 10, 2006 – Sergeant Brennan Gibson and Specialist Philip Ford

In 2006, Sergeant ("Sgt.") Brennan Gibson was serving as a member of the United States Army in Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 23 (AR 15-6 Investigation Rep.) at 1–5. Similarly, Specialist ("Spc.") Philip Ford was also serving as a member of the United States Army in Iraq in 2006.  *See id.*  On December 10, 2006, both Sgt. Gibson and Spc. Ford were traveling to Forward Operating Base Loyalty with a patrol consisting of five up-armored HMMWVs to conduct operations in the surrounding area.  *See* Lutz Rep. at 131.  Sgt. Gibson and Spc. Ford were positioned in the lead up-armored HMMWV within the patrol, along with three other U.S. servicemen.  *See id.*  Later in the evening, an explosive device struck and penetrated Sgt. Gibson and Spc. Ford's HMMWV, killing both soldiers.  *See id.*  The Article 15-6 Investigation Report addressing this attack confirms that Sgt. Gibson and Spc. Ford were both "killed in action" as a result of "enemy action" on December 10, 2006. Pls.' Section 1605A(c) Index, Ex. 23 (AR 15-6 Investigation Rep.) at 2–3.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the December 10, 2006 attack causing the deaths of Sgt. Gibson and Spc. Ford was an EFP traceable to Iran and its proxies.  As an initial matter, the Army AR 15-6 Investigation report indicates that Sgt. Gibson and Spc. Ford's vehicle was struck by an EFP.  *See* Lutz Rep. at 132.  Specifically, Col. Lutz opines that the AR 15-6 report references "EFP," "RHINO," and "-lined EFP," terms which "are consistent with a determination that the HMMWV was struck by an EFP."  *Id.*  Moreover, the SIGACT report from the attack indicates that Sgt. Gibson and Spc. Ford's up-armored HMMWV was struck by an EFP on the driver's side of the vehicle.  *Id.*  And

60

similarly, Col. Lutz notes in his expert report that the IED report from the December 10, 2006 attack identifies the "main charge configuration" from the blast as "EFP." *Id.* at 133. Finally, the record contains compelling photographic evidence depicting the catastrophic damage inflicted to Sgt. Gibson and Spc. Ford's up-armored HMMWV by the blast, including at least four penetration points through the vehicle's reinforced armor. *See id.* at 133–34 (photographic evidence).

In his expert report, Col. Lutz opines that "the weapon that destroyed the soldiers' up-armored M1114 HMMWV was a large, single EFP which completely defeated the vehicle's armor and killed three of the soldiers in the crew cabin, including Sgt. Gibson and Spc. Ford." *Id.* at 136. Col. Lutz further concludes that "the attack that killed Sgt. Gibson and Spc. Ford was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 135–36. The Court is persuaded by this evidence. Accordingly, upon review of the record evidence regarding the December 10, 2006 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Sgt. Gibson and Spc. Ford.

### 24. December 30, 2006 – Specialist John Sullivan

In 2006, Specialist ("Spc.") John Sullivan was serving as a member of the United States Army in Baghdad, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 24 (Sullivan Casualty Rep.) at 1. On December 30, 2006, Spc. Sullivan was traveling west on Route Furniture during an Iraqi Police checkpoint patrol, with a four-vehicle convoy from B Battery, 2nd Battalion, 17th Field Artillery Regiment. *See* Lutz Rep. at 137. Spc. Sullivan was positioned in the third vehicle within the convoy, which was an up-armored M1114 HMMWV. *See id.* At approximately 7:30 PM local time, a multi-array explosive struck the driver's side of Spc. Sullivan's vehicle, resulting in his death. *See id.* Spc. Sullivan's casualty report confirms that he died from wounds sustained in

Baghdad, Iraq on December 30, 2006, as a result of hostile "blast injuries." Pls.' Section 1605A(c) Index, Ex. 24 (Sullivan Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the December 30, 2006 attack causing the death of Spc. Sullivan was an EFP traceable to Iran and its proxies. First, the SIGACT report from the attack indicates that during the attack "the third vehicle in the convoy was struck on the driver[']s side by a copper-lined, multiple-array EFP." Lutz Rep. at 138. Moreover, the IED report from the attack notes that the main charge configuration from the blast was an "EFP," and further indicates that the "primary blast was a copper-lined, multiple array EFP placed on the south shoulder of RTE Furniture, concealed in mounds of trash." *Id.* Furthermore, Col. Lutz's expert report indicates that the chemical analysis from the attack revealed the use of a high-energy explosive compounds. *See* Lutz Rep. at 141. Finally, the record also includes compelling photographic evidence depicting the multiple penetration points through the armor of Spc. Sullivan's HMMWV, which Col. Lutz attributes to a multiple array EFP. *See id.* at 139–40 (photographic evidence).

In his expert report, Col. Lutz concludes "that the attack that killed Spc. Sullivan was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 142. Of note, Col. Lutz emphasizes the recovery of "male-to-female connectors" at the blast site, used to connect the wired explosive to a power source. *Id.* Specifically, Col. Lutz opines that "the application of male-to-female connectors is a distinct bomb-making trait used by Lebanese Hezbollah." *Id.* The Court is persuaded by this evidence, in particular the evidence attributing the December 30, 2006 blast to Hezbollah. *See* disc. *supra* at 12–25 (discussing the relationship between Hezbollah and Iran). Accordingly, upon review of the record evidence regarding the December 30, 2006 attack, along

62

with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies

bear responsibility for the EFP attack that killed Spc. Sullivan.

### 25. December 31, 2006 – Private First Class Alan Blohm

In 2006, Private Frist Class ("PFC") Alan Blohm was serving as a member of the United

States Army in Baghdad, Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 25 (Blohm Casualty Rep.)

at 1.  On the morning of December 31, 2006, PFC Blohm departed from Forward Operating Base

Kalsu with an EOD escort team.  *See* Lutz Rep.at 144.  The convoy included two up-armored

M1114 HMMWVs and a Joint Engineering Rapid Response Vehicle from Headquarters Company,

425th Brigade Special Troops Battalion.  *See id.*  Within the convoy, PFC Blohm was positioned

as the gunner in the lead HMMWV.  *See id.*  At approximately 1:10 PM local time, however, a

multi-array explosive device struck PFC Blohm's up-armored HMMWV on the right side,

spraying fragments that killed PFC Blohm at the scene of the blast.  *See id.* at 145.  PFC Blohm's

casualty report confirms that he was killed during hostile action in Baghdad, Iraq on December 31,

2006.  Pls.' Section 1605A(c) Index, Ex. 25 (Blohm Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive

responsible for the December 31, 2006 attack causing the death of PFC Blohm was an EFP

traceable to Iran and its proxies.  As an initial matter, the AR 15-6 Investigation report from the

attack indicates that the explosive device responsible for the blast was an EFP.  *See* Lutz Rep. at

145.  Specifically, that report provides that the "devi[c]e was a copper-lined EFP, with at least

three arrays," triggered with a remote control and a PIR device.  *Id.*; *see also* disc. *supra* at 12–25

(discussing remote triggered EFP devices).  Moreover, the AR 15-6 Investigation report notes the

presence of copper residue left on PFC Blohm's vehicle, which indicates that an "EFP's copper

slugs penetrated the armor . . . surrounding the gun turret atop the HMMWV" where PFC Blohm

was positioned. Lutz Rep. at 145–46. Moreover, the SIGACT report from the attack observes that PFC Blohm's armored vehicle "was struck by an EFP," *id.* at 146, and the IED report from the attack similarly indicates that the explosive involved in the December 31, 2006 blast "was a copper-lined EFP, with at least three arrays," *id.*

The record also contains compelling photographic evidence displaying the damage inflicted to PFC Blohm's vehicle and its steel armor during the attack. *See id.* at 146, 150 (photographic evidence). Relatedly, Col. Lutz's expert report indicates that the chemical analysis from the attack reveals the use of a high-energy explosive compounds in the blast. *See id.* at 150. Also of note, the Court observes that "event storyboards" regarding the December 31, 2006 attack state that a "JAM cell" was operating near the blast site. *See id.* at 147; disc. *supra* at 12–25 (discussing the role of Jaysh al-Mahdi in Iraq). Accordingly, Col. Lutz concludes in his expert report that "the attack that killed PFC Blohm was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." Lutz Rep. at 152. Moreover, Col. Lutz specifically opines that the December 31, 2006 attack "involved the use of a multi-array copper-lined EFP," whose slugs "penetrated the vehicle's turret armor and transparent armor, and struck PFC Blohm in the head and hip, which resulted in his death." *Id.* The Court is persuaded by this evidence. Consequently, upon review of the record evidence regarding the December 31, 2006 attack in Baghdad, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed PFC Blohm.

### 26. <u>December 31, 2006 – Corporal Richard Smith</u>

In 2006, Corporal ("Cpl.") Richard Smith was serving as a member of the United States Army in Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 26 (Smith Casualty Rep.) at 1. On December

31, 2006, Cpl. Smith was traveling with a five-vehicle convoy of armored vehicles that "was escorting a fuel truck from FOB Warhorse to the Khan Bani Saad Base." Lutz Rep. at 153.  During the trip, Cpl. Smith was riding in the convoy's third vehicle, which was an up-armored M1114 HMMWV.  *See id.*  At approximately 3:00 PM local time, an explosive array struck Cpl. Smith's vehicle and penetrated its armor, causing the death of Cpl. Smith and one other servicemember. *See id.*  Cpl. Smith's casualty report confirms that he was killed in Iraq during hostile action on December 31, 2006, as a result of "multiple blast fragment injuries."  Pls.' Section 1605A(c) Index, Ex. 26 (Smith Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the December 31, 2006 attack causing the death of Cpl. Smith was an EFP traceable to Iran and its proxies.  First, the AR 15-6 Investigation report from the attack indicates, as Col. Lutz explains in his expert report, that an "EFP his [Cpl. Smith's] vehicle in the convoy," which was specially fitted "heavy armor elements."  Lutz Rep. at 154.  That report further provides that the EFP blast sent slugs through the front passenger door of Cpl. Smith's up-armored M1114 HMMWV and set the engine of that vehicle on fire.  *See id.*  Furthermore, the IED report from the December 31, 2006 attack identifies the "main charge configuration" from the blast as an "EFP," and also indicates that a "black and white command wire was used to initiate at least a 7x array EFP" involved in the blast.  *Id.* at 154–55.  Additionally, the record contains photographic evidence of the command wire recovered from the attack site.  *See id.* at 156.

In his expert report, Col. Lutz concludes that the December 31, 2006 attack "involved a multi-array EFP that was likely copper-lined, which the "attackers detonated . . . via a command wire as the [Cpl. Smith's] HMMWV came alongside the device."  *Id.*  Col. Lutz further opines that the slugs from the EFP blast penetrated Cpl. Lutz's up-armored HMMWV and instantly killed

him.  *Id.*  Finally Col. Lutz concludes that this attack "was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.*  To that end, Col. Lutz identifies material from the IED report demonstrating a high probability "that a Shi[']a insurgent group (likely Jaysh al-Mahdi) [was] responsible for this attack."  *Id.* at 155; *see also* disc. *supra* at 12–25 (discussing the role of Jaysh al-Mahdi in Iraq).  The Court is persuaded by this evidence.  Accordingly, upon review of the record evidence regarding the December 31, 2006 attack in Baqubah, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Cpl. Smith.

### 27. January 18, 2007 – Specialist William Joshua Rechenmacher

In 2007, Specialist ("Spc.") William Joshua Rechenmacher was serving as a member of the United States Army in Baghdad, Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 27 (Rechenmacher Casualty Rep.) at 1.  On January 18, 2007, Spc. Rechenmacher was traveling south under an overpass along Route Senators with a four-vehicle convoy from C Company, 2nd Battalion, 5th Infantry Regiment.  *See* Lutz Rep. at 158.  Specifically, Spc. Rechenmacher was positioned in the gunner's seat of the fourth vehicle within the convoy, which was an up-armored M1114 HMMWV.  *See id.*  At around 2:15 PM local time, an explosive device struck the passenger-side of Spc. Rechenmacher's HMMWV, resulting in his death.  *See id.*  Spc. Rechenmacher's casualty report confirms that he was killed in action on January 18, 2007, as a result of hostile "blast injuries" sustained in Baghdad, Iraq.  Pls.' Section 1605A(c) Index, Ex. 27 (Rechenmacher Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the January 18, 2007 attack causing the death of Spc. Rechenmacher was an EFP

traceable to Iran and its proxies.  As an initial matter, the IED report from the attack identifies the "main charge configuration" from the blast as an "EFP," and further indicates that the device was command wire initiated.  Lutz Rep. at 159.  Similarly, the SIGACT report from the attack attributes the blast from the January 18, 2007 attack to an EFP.  *See id.*  Furthermore, Col. Lutz's expert report also notes that the "event storyboards" from the attack indicate that the attack occurred in a predominantly Shi'a neighborhood and that the EFP responsible for the blast was emplaced on the right side of the road and killed Spc. Rechenmacher "instantly."  *Id.*  And in assessing the chemical analysis from the attack, Col. Lutz identifies the use of high-energy explosive compounds in the blast.  *See id.* at 160.

Accordingly, Col. Lutz opines in his expert report that the "[a]n EFP was the weapon used to attack the M1114 HMMWV and that killed Spc. Rechenmacher."  Furthermore, Col. Lutz concludes in his expert report that "the attack that killed Spc. Rechenmacher was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.* at 161.  The Court is persuaded by this evidence. Upon review of the record evidence regarding the January 18, 2007 attack in Baghdad, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Spc. Rechenmacher.

### 28. January 22, 2007 – Specialist Brandon Stout

In 2007, Specialist ("Spc.") Brandon Stout was serving as a member of the United States Army in Baghdad, Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 28 (Stout Casualty Rep.) at 1.  On January 22, 2007, Spc. Stout was traveling south on Route Pluto towards Forward Operating Base Rustamiyah with a five-vehicle patrol from 1st Squad, 2nd Platoon, 46th Military Police Company consisting of one M1151 HMMWV and four M1114 HMMWVs.  *See* Lutz Rep. at 162.  Spc.

Stout was driving the fourth vehicle within this convoy, which was an M1114 HMMWV. *See id.* At approximately 6:30 PM local time, a multi-array explosive emplaced on the side of the road struck the right side of Spc. Stout's vehicle. *See id.* The blast blew open the driver's side door of Spc. Stout M1114 HMMWV and caused the vehicle to swerve into a nearby tree and fence. *See id.* Spc. Stout was ejected from the vehicle during the attack and was found dead "approximately 20 meters behind the site the M1114 HMMWV stopped." *Id.* at 163. Spc. Stout's casualty report confirms that he was killed in Baghdad, Iraq during hostile action on January 22, 2007, as a result of "blast and ballistic fragment injuries." Pls.' Section 1605A(c) Index, Ex. 28 (Stout Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the January 22, 2007 attack causing the death of Spc. Stout was an EFP traceable to Iran and its proxies. As an initial matter, the AR 15-6 investigation report from the blast indicates that an EFP was involved in the attack, observing that "the EFP went off on the T[ruck] C[ommander] side of the truck right by a National Police checkpoint." Lutz Rep. at 163. The SIGACT report, as Col. Lutz explains, also indicates that Spc. Stout's armored vehicle "was struck on the right side by a multiple-array EFP" while traveling southbound on Route Pluto. *Id.* Similarly, the IED report notes that "[t]he vehicle was struck in the right side by a multiple-array EFP that penetrated both doors on the right side," and further provides that the site of the January 22, 2007 attack on Route Pluto had been "a hotspot for EFP activity." *Id.* at 164. The record, moreover, contains photographic evidence depicting this penetration damage inflicted upon Spc. Stotut's HMMWV from the blast. *See id.* at 165–66 (photographic evidence). And finally, the "event storyboards" reviewed by Col. Lutz indicate that "the multiple array of entry points in the

vehicle and the location of the detonation indicate that this was most likely a command detonated EFP." *Id.* at 167.

In his expert report, Col. Lutz opines that the January 22, 2007 attack "involved a multi-array EFP that was most likely command wire initiated," which "impacted the right side of [Spc. Stout's] vehicle causing the vehicle to veer off the road and ejecting Spc. Stout and the interpreter, killing them." *Id.* at 168.  Col. Lutz further concludes that the January 22, 2007 attack "was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.*  The Court is persuaded by this evidence. Accordingly, upon review of the record evidence regarding the January 22, 2007 attack in Baghdad, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Spc. Stout.

### 29. January 25, 2007 – Sergeant Alexander H. Fuller

In 2007, Sergeant ("Sgt.") Alexander Fuller was serving as a member of the United States Army in Baghdad, Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 29 (Fuller Casualty Rep.) at 1.  On January 25, 2007, Sgt. Fuller was traveling east on an unnamed route in New Baghdad with a four-vehicle patrol consisting of four M1114 HMMWVs from Bravo Company, 3rd Squadron, 61st Cavalry Regiment.  Lutz Rep. at 170.  During the trip, Sgt. Fuller was located in the left, rear passenger seat within the convoy's lead M1114 HMMWV.  *See id.* at 170–71.  At approximately 10:30 PM local time, a multi-array explosive emplaced on the side of the road struck the driver's side of Sgt. Fuller's M1114 HMMWV.  *See id.* at 170.  The blast penetrated the vehicle and killed Sgt. Fuller.  *See id.* at 170–71.  Sgt. Fuller's casualty report confirms that he was killed in Baghdad,

Iraq during hostile action on January 25, 2007, as a result of "blast and shrapnel injuries."  Pls.'
Section 1605A(c) Index, Ex. 29 (Fuller Casualty Rep.) at 1.

 The Court finds satisfactory evidence in the record to demonstrate that the explosive
responsible for the January 25, 2007 attack causing the death of Sgt. Fuller was an EFP traceable
to Iran and its proxies.  First, the SIGACT report from the attack "notes that the device used in the
attack was a 4 array EFP" and confirms that "the first vehicle in the convoy was struck on the
driver[']s side by a multi-array EFP."  Lutz Rep. at 171.  Similarly, the IED report identifies the
main charge configuration from the blast as "EFP" and indicates that the January 25, 2007 attack
demonstrates the continued targeting of Coalition Forces in the East Baghdad Area.  *Id.*  Moreover,
the "event storyboard" from the attack, as Col. Lutz explains, indicates that "the device used in the
attack was a four array EFP."  *Id.* at 174.  Finally, the record contains photographic evidence
depicting the penetration points on Sgt. Fuller's up-armored M1114 HMMWV inflicted by an EFP
array.  *See id.* at 173 (photographic evidence).

 In his expert report, Col. Lutz opines that the January 25, 2007 attack "involved a multi-
array EFP that struck [Sgt. Fuller's] vehicle in multiple locations."  *Id.* at 175.  Furthermore, Col.
Lutz concludes that this attack, which killed Sgt. Fuller, "was part of the EFP campaign
orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-
trained Special Group proxies."  *Id.*  The Court finds this evidence persuasive.  Consequently,
upon review of the record evidence regarding the January 25, 2007 attack in Baghdad, along with

the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Sgt. Fuller.

### 30. __March 20, 2007 – Specialist Curtis Eric Glawson, Jr.__

In 2007, Specialist ("Spc.") Eric Curtis Glawson, Jr. was serving as a member of the United States Army in Baghdad, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 30 (Glawson Casualty Rep.) at 1. On March 20, 2007, Spc. Glawson was departing from Forward Operating Base Falcon on a combat patrol mission with a convoy from E Company, 610th Brigade Support Battalion consisting of three M1151 HMMWVs and a 10-ton M984/A1 up-armored Heavy Expanded Mobility Tactical Truck ("HEMTT") wrecker. *See* Lutz Rep. at 176. During the patrol, Spc. Glawson was riding in the HEMTT wrecker, acting as the vehicle's commander. *See id.* At approximately 3:20 PM local time, however, a multi-array explosive struck the HEMTT wrecker on its right side, destroying the vehicle and killing Spc. Glawson. *See id.* Spc. Glawson's casualty report confirms that he was killed in Baghdad, Iraq during hostile action on March 20, 2007. *See* Pls.' Section 1605A(c) Index, Ex. 30 (Glawson Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the March 20, 2007 attack causing the death of Spc. Glawson was an EFP traceable to Iran and its proxies. First, according on Col. Lutz's review, the AR 15-6 investigation report from the attack indicates that a "multi-array EFP strike on the HEMTT wrecker pierced the passenger door and the passenger side cab, killing Spc. Glawson." Lutz. Rep. at 177. Notably, that report also indicates that the March 20, 2007 attack was "complex," as it specifically targeted Spc. Glawson's HEMTT wrecker and was sufficiently "powerful" to blow the driver of the HEMTT wrecker out of the left side of the vehicle's cab. *Id.* Furthermore, the SIGACT report from the attack indicates that copper transfer appeared on the armor of the HEMTT wrecker,

around the penetration points from the blast. *See id.* at 178. Finally, the IED report from the attack identifies the main charge configuration from the blast as an "EFP." *Id.* at 179.

In his expert report, Col. Lutz opines that the March 20, 2007 attack involved a "multi-array EFP," which created four slugs that "penetrated the armor of Spc. Glawson's up-armored HEMTT wrecker, and one of the slugs struck Spc. Glawson, causing him massive, mortal injuries." *Id.* at 181. Col. Lutz further concludes that this attack "was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* The Court is persuaded by this evidence, and, in particular, finds that the damage inflicted to Spc. Glawson's heavily armored HEMTT wrecker and the copper residue from the attack are strong indicators of a precision-manufactured EFP. *See* disc. *supra* at 12–25. Accordingly, upon review of the record evidence regarding the March 20, 2007 attack in Baghdad, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Spc. Glawson.

### 31. **March 23, 2007 – Specialist Ryan Sabinish**

In 2007, Specialist ("Spc.") Ryan Sabinish was serving as a member of the United States Army in Baghdad, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 31 (Sabinish Casualty Rep.) at 1–3. On March 23, 2007, Spc. Sabinish was traveling with a military patrol from Alpha Company, 134th Brigade Support, Battalion, 1-34th Brigade Combat Team on Route Tampa in Nasiriyah, Iraq. *See* Lutz Rep. at 183. During the patrol, Spc. Sabinish was riding in the gunner's position of an M1151 HMMWV fitted with level 1 armor. *See id.* As the patrol turned onto Route Dallas at approximately 4:45 PM local time, an explosive device detonated and struck Spc. Sabinish's vehicle, injuring him in the blast. *See id.* Spc. Sabinish's casualty report confirms that he was

"wounded in action" on March 23, 2007 and specifies that he sustained "wounds to his right elbow." *See* Pls.' Section 1605A(c) Index, Ex. 31 (Sabinish Casualty Rep.) at 1–2.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the March 23, 2007 attack injuring Spc. Sabinish was an EFP traceable to Iran and its proxies. As an initial matter, the SIGACT report from the attack indicates that the explosive disposal team dispatched to the attack site identified the explosive device as an EFP "intended for a large armored vehicle." Lutz Rep. at 184. Furthermore, the SIGACT report indicates that the explosive device from the March 23, 2007 attack deposited "copper fragmentation on the vehicle." *Id.* at 183. The record also contains photographic evidence depicting the damage inflicted upon Spc. Sabnish's armored vehicle by the blast. Notably, this photographic evidence displays clear penetration holes on Spc. Sabinish's vehicle, as well as copper residue deposits around one of these penetration holes. *See id.* at 185–86. Finally, the photographic evidence also confirms that Spc. Sabinish's vehicle was fitted with a Rhino device. *See id.* at 187 (displaying Rhino device); disc. *supra* at 12–25 (discussing defensive purpose of Rhino devices).

In his expert report, Col. Lutz opines that the March 23, 2007 attack "involved a copper EFP that was prefabricated, expanding foam covered and was likely PIR initiated," and that this "EFP struck [Spc. Sabinish's] vehicle in multiple locations." Lutz Rep. at 187. Moreover, Col. Lutz concludes that this attack "injured Spc. Sabinish" and "was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* The Court is persuaded by this evidence, and, in particular, finds that the vehicle's defeated Rhino device and the copper residue from the attack are strong indicators of a precision-manufactured EFP. *See* disc. *supra* at 12–25. Consequently, upon review of the record evidence regarding the March 23, 2007 attack, along with the broader evidence of

Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that injured Spc. Sabinish.

### 32. <u>March 31, 2007 – Kwesi Christopher</u>

In 2007, Mr. Kwesi Christopher was a "Department of Defense Civilian Contractor . . . serving in Iraq in support of Operation Iraqi Freedom."  Pls.' Section 1605A(c) Index, Ex. 32 (Christopher Autopsy Examination Rep.) at 1.  On March 31, 2007, Mr. Christopher was traveling through Ad Diwaniyah, Iraq towards Forward Operating Base Kalsu with a convoy of four armored Ford Excursion SUVs operated by a British private security company called Erinys.  *See* Lutz Rep. at 188.  Mr. Christopher was riding in the convoy's first vehicle.  *See id.*  During the trip, however, an explosive struck Mr. Christopher's vehicle, sending shrapnel in the vehicle's cab and killing Mr. Christopher instantly.  *See id.*  Mr. Christopher's autopsy report from the Office of the Armed Forces Medical Examiner confirms that Mr. Christopher "died of blast injuries" caused by an explosive device that "detonated in the vicinity of the vehicle he was traveling in."  Pls.' Section 1605A(c) Index, Ex. 32 (Christopher Autopsy Examination Rep.) at 3.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the March 31, 2007 attack that killed Mr. Christopher was an EFP traceable to Iran and its proxies.  As an initial matter, Mr. Christopher's autopsy report states that "[c]opper colored fragments [were] recovered from the left side of [his] head," as well as his neck and face.  *Id.* at 2. The presence of copper residue on Mr. Christopher's body, following the blast, is a characteristic indicator of the use of a precision-manufactured EFP.  *See* disc. *supra* at 12–25.  Moreover, Plaintiffs have supplemented the record regarding Mr. Christopher's death with a declaration from Mr. Russell McIntyre in support of the conclusion that the March 31, 2007 attack "involved the use of an Explosively Formed Penetrator ("EFP") of original Hezbollah and Islamic Revolutionary

Guard Corps ("IRGC") design that was supplied by the IRGC."  Dec. 24, 2020, McIntrye Decl., ECF No. 117-1, at ¶ 1.  As noted above, the Court has recognized Mr. McIntyre as an expert regarding "IED threats to [U.S.] forces, specifically in Iraq between 2003 and 2011, and with an additional focus on explosively formed projectiles or penetrators."  McIntyre T5-64:16-22.

In his declaration, Mr. McIntyre explains that Ad Diwaniyah, the municipality where the March 31, 2007 attack occurred, contains a population of almost entirely Shi'a Iraqis.  *See* Dec. 24, 2020, McIntrye Decl., ECF No. 117-1, at ¶ 15.  Mr. McIntyre also explains that the area around Ad Diwaniyah has "functioned as a sanctuary for IRGC-directed and controlled Shi'a proxy groups," *id.* at ¶ 18, and has also been the site of numerous attacks carried out by Shi'a Special Groups supported by the IRGC, *see id.* at ¶¶ 19–22.  Notably, Mr. McIntyre also indicates that in April 2007, Coalition Forces "seized a significant number of Iranian-provided weapons in the area around Ad Diwaniya[h], including stockpiles of EFPs."  *Id.* at ¶ 26.  Accordingly, Mr. McIntrye opines that "it is highly probable that Mr. Christopher was killed by an EFP emplaced by Shi'a Special Groups" and supplied by the IRGC.  *Id.* at ¶¶ 27–28.  Similarly, Col. Lutz concludes in his expert report that "the attack that killed Mr. Christopher was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  Lutz Rep. at 191.  The Court is persuaded by this evidence.  Accordingly, upon review of the record evidence regarding the March 31, 2007 attack, along with the broader

evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Mr. Christopher.

### 33. **April 6, 2007 – Private First Class Daniel Fuentes**

In 2007, Private First Class ("PFC") Daniel Fuentes was serving as a member of the United States Army in Baghdad, Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 33 (Fuentes Casualty Rep.) at 1.  On April 6, 2007, PFC Fuentes was traveling with a four-vehicle convoy from D Company, 1st Battalion, 28th Infantry Regiment on patrol in the vicinity of the West Rashid neighborhood of Baghdad.  *See* Lutz Rep. at 192.  PFC Fuentes was riding in the gunner's seat of an up-armored M1151 HMMWV, which was positioned as the second vehicle within the convoy.  *See id.*  At approximately 12:30 AM local time, a multi-array explosive struck PFC Fuentes's armored vehicle, killing him and injuring three other soldiers within the vehicle.  *See id.*  PFC Fuentes's casualty report confirms that he was killed in Baghdad, Iraq during hostile action on April 6, 2007, as a result of a "ballistic injury."  Pls.' Section 1605A(c) Index, Ex. 33 (Fuentes Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the April 6, 2007 attack causing the death of PFC Fuentes was an EFP traceable to Iran and its proxies.  As an initial matter, the SIGACT report from the attack indicates that "the second M1151 in a 4X vehicle convoy was struck by an EFP," and further notes that the "EFP array was angled up to impact the doors and gunner[']s turret."  Lutz Rep. at 193.  Moreover, the IED report from the attack notes that "due to fragmentation found on the M1151, the IED consisted of an EFP array [redacted] from the impacted vehicle."  *Id.*  The record also contains compelling photographic evidence depicting the damage inflicted to PFC Fuentes's up-armored M1151 HMMWV, *see id.* at 196, which according to Col. Lutz supports the conclusion that a "multi-array

EFP" struck the vehicle and was specifically "angled upwards and measured out to strike the driver's door and the vehicle's gunner," *id.* at 195.

In his expert report, Col. Lutz ultimately opines that the April 6, 2007 attack "involved a multi-array EFP that was angled upward to purposefully focus formed penetrators at a passing HMMWV's driver's side crew compartment doors and its gunner's turret." *Id.* at 196. Additionally, Col. Lutz concludes that the attack killed PFC Fuentes and the attack "was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* The Court is persuaded by this evidence, and, in particular, finds that the specific targeting of the explosive used in the April 6, 2007 is a strong indicator of a sophisticated EFP attack involving Iranian support. *See* disc. *supra* at 12–25. Therefore, upon review of the record evidence regarding the April 6, 2007 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed PFC Fuentes.

### 34. <u>April 13, 2007 – Sergeant Larry Bowman</u>

In 2007, Sergeant ("Sgt.") Larry Bowman was serving as a member of the United States Army in Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 34 (Bowman Autopsy Rep.) at 1. On April 13, 2007, Sgt. Bowman was traveling south on Main Supply Route Tampa with a thirty-seven vehicle convoy from the 513th Transportation Company, 57th Transportation Battalion. *See* Lutz Rep. at 198. Sgt. Bowman was operating as the commander of the thirty-sixth vehicle of the convoy, which was an M915 tractor trailer. *See id.* At approximately 6:30 AM local time, an explosive device struck the passenger's side door of Sgt. Bowman's vehicle, killing him. *See id.* Sgt. Bowman's autopsy report confirms that Sgt. Bowman died on April 13, 2007 in Iraq from a "blast injury" and further specifies that the explosion resulted in the "traumatic amputation of [his]

left leg" and "a perforating ballistic injury of the right foot," which caused "severe bleeding."  Pls.' Section 1605A(c) Index, Ex. 34 (Bowman Autopsy Rep.) at 1, 3.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the April 13, 2007 attack causing the death of Sgt. Bowman was an EFP traceable to Iran and its proxies.  First, the SIGACT report from the attack indicates that the blast involved an "EFP Strike," and further notes that the "EFP detonated from within a shack on the west shoulder [of the road] striking the 36th vehicle in the convoy, which resulted in 1x US KIA."  Lutz Rep. at 199.  Similarly, the IED report from the attack identifies the "main charge configuration as EFP."  *Id.*  Col. Lutz's review of the "event storyboard" from the April 13, 2007 attack also points to the use of an EFP, as it notes that "[t]he EFP at CP13 on MSR Tampa this morning was the first EFP attack since 01APR."  *Id.* at 202.  Moreover, the event storyboard from the attack references the fact that "JAM has been re-supplied with new EFPs."  *Id.*; *see also* disc. *supra* at 12–25 (discussing the role of Jaysh al-Mahdi in Iraq).

The record also contains compelling photographic evidence of the April 13, 2007 attack. These photographs clearly depict the complete penetration of the armor on Sgt. Bowman's M915 tractor trailer caused by the blast.  *See id.* at 201–02.  In his expert report, Col. Lutz opines that the April 13, 2007 attack "involved an EFP that struck [this] vehicle in multiple locations including the fuel tank and the tires," causing Sgt. Bowman's death.  *Id.* at 204.  Furthermore, Col. Lutz concludes that this attack "was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  The Court is persuaded by this evidence.  Accordingly, upon review of the record evidence regarding the

April 13, 2007 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Sgt. Bowman.

### 35. **April 15, 2007 – Staff Sergeant Scott Lilley**

In 2007, Staff Sergeant ("Staff Sgt.") Scott Lilley was serving in Iraq as a member of the United States Air Force.  *See* Pls.' Section 1605A(c) Index, Ex. 35 (Lilley Casualty Rep.) at 1–2. On April 15, 2007, Staff Sgt. Lilley was traveling west on Route Irish with a four-vehicle convoy consisting of four M1114 HMMWVs from the 732nd Expeditionary Security Forces Squadron, Detachment 3.  *See* Lutz Rep. at 206.  Specifically, Staff Sgt. Lilley was located in the gunner's position within the third vehicle of the convoy.  *See id.*  At approximately 11:30 AM local time, an explosive device struck the driver's side of Staff Sgt. Lilley's M1114 HMMWV, causing Staff Sgt. Lilley to sustain head injuries from the blast.  *See id.*  Staff Sgt. Lilley's casualty report confirms that he "sustained a closed head injury" in Iraq from an IED attack that occurred on April 15, 2007.  Pls.' Section 1605A(c) Index, Ex. 35 (Lilley Casualty Rep.) at 2.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the April 15, 2007 attack that injured Staff Sgt. Lilley was an EFP traceable to Iran and its proxies.  As an initial matter, the Extended Casualty Report from the attack confirms that Staff Sgt. Lilley was riding in an M1114 HMMWV fitted with "Level 1 armor integrated during production."  Lutz Rep. at 207.  The record then also contains compelling photographic evidence depicting clear penetration holes on the vehicle's fitted armor, *see id.* at 209, which is a strong indicator of the use of a precision-manufactured EFP, *see* disc. *supra* at 12–25.  Relatedly, the SIGACT report from the April 15, 2007 attack indicates that the blast occurred because of a likely EFP attack.  *See* Lutz Rep. at 207.  And according to Col. Lutz's expert report, the event storyboard

from the attack contains a diagram of the EFP attack and an assessment that the device used in the April 15, 2007 attack was an EFP.  *See id.*

Accordingly, Col. Lutz opines in his expert report that the April 15, 2007 attack "likely involved an EFP that was emplaced on the left side of the road causing damage to the driver's side of the vehicle and injuring [Staff Sgt.] Lilley."  *Id.* at 209.  Furthermore, Col. Lutz notes that the April 15, 2007 attack along Route Irish occurred in an area accessible to Shi'a Special Groups. *See id.* at 206.  To that end, Col. Lutz opines that "the attack that injured [Staff Sgt.] Scott Lilley was likely part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.* at 209.  The Court is persuaded by this evidence.  Therefore, upon review of the record evidence regarding the April 15, 2007 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that injured Staff Sgt. Lilley.

### 36. <u>April 16, 2007 – Specialist Lucas Starcevich</u>

In 2007, Specialist ("Spc.") Lucas Starcevich was serving in Iraq in support of Operation Iraqi Freedom, as an active duty member of the United States military.  *See* Pls.' Section 1605A(c) Index, Ex. 36 (Starcevich Autopsy Rep.) at 1.  On April 16, 2007, Spc. Starcevich was traveling with a five-vehicle convoy consisting of two M2A2 Bradley Fighting Vehicles and three M1114 HMMWVs from Company C, 1st Battalion, 18th Infantry Regiment, 2nd Brigade Combat Team, 1st Infantry Division.  *See* Lutz Rep. at 210.  The convoy was conducting a patrol on Route Vernon in Baghdad, Iraq, and during the patrol Spc. Starcevich was riding in an up-armored M1114 HMMWV occupying the fourth position within the convoy.  *See id.* at 210–11.  At approximately 2:36 PM local time, a multi-array explosive struck the passenger's side of Spc. Starcevich's M1114 HMMWV, resulting in "two main penetration points, one on the passenger side rear door and one

on the passenger side of the cargo hatch, and two smaller penetration points on the roof cap."  *Id.*
at 210.  Spc. Starcevich's autopsy report confirms that he "was mortally wounded" in this April
16, 2007 attack, as the result of a "ballistic wound of the head."  Pls.' Section 1605A(c) Index, Ex.
36 (Starcevich Autopsy Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive
responsible for the April 16, 2007 attack causing the death of Spc. Starcevich was an EFP traceable
to Iran and its proxies.  First, the SIGACT report from the attack notes the recovery of a slug,
smaller fragments, and spalling on the armor of Spc. Starcevich's vehicle, which pointed to the
use of "EFPs constructed with a copper liner."  Lutz Rep. at 211.  Similarly, the IED report from
the attack "lists the main charge configuration as EFP."  *Id.*  Notably, Col. Lutz's expert report
observes that the event storyboard from the April 16, 2007 attack indicates that the explosive
device from the blast "was consistent with a multiple array copper EFP" and "penetrated [Spc.
Starcevich's] M1114."  *Id.* at 214.  To that end, the record also contains photographic evidence of
Spc. Starcevich's vehicle, which depicts the damage inflicted during the April 16, 2007 attack.
*See id.* at 213.

In his expert report, Col. Lutz opines that the April 16, 2007 "attack involved a multi-array
copper EFP that penetrated the vehicle in multiple locations" and killed Spc. Starcevich with "one
of the slugs that penetrated the roof of the vehicle."  *Id.* at 216.  Moreover, Col. Lutz's expert
report also observes that EFP attacks in the area where the April 16, 2007 attack occurred are likely
"due to the rejuvenation of JAM leadership in the area."  *Id.* at 214; *see also* disc. *supra* at 12–25
(discussing the role of Jaysh al-Mahdi in Iraq).  Accordingly, Col. Lutz concludes that the April
16, 2007 "attack that killed Spc. Starcevich was part of the EFP campaign orchestrated by the
IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group

proxies." *Id.* at 216.  The Court is persuaded by this evidence.  Consequently, upon review of the record evidence regarding the April 16, 2007 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Spc. Starcevich.

### 37. **April 29, 2007 – Sergeant Alexander Funcheon**

In 2007, Sergeant ("Sgt.") Alexander Funcheon was serving as a member of the United States Army in Baghdad, Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 37 (Funcheon Casualty Rep.) at 1.  On April 29, 2007, Sgt. Funcheon was traveling north on Route Pluto from Forward Operating Base Rustamiyah to Al Qanat Joint Security Station with a four-vehicle patrol comprising four M1114 HMMWVs from Troop A, 3rd Squadron, 61st Cavalry Regiment, 2nd Brigade Combat Team, 2nd Infantry Division.  *See* Lutz Rep. at 217.  During the trip, Sgt. Funcheon was riding in the up-armored M1114 HMMWV occupying the lead position within the convoy.  *See id.*  At approximately 11:45 AM local time, a multi-array explosive struck the driver's side of Sgt. Funcheon's M1114 HMMWV resulting "in six primary penetration points and at least seven smaller penetration points" on the vehicle and killing Sgt. Funcheon.  *Id.*  Sgt. Funcheon's casualty report confirms that he was killed in action in Baghdad on April 29, 2007, as a result of hostile "blast and ballistic fragment injuries."  Pls.' Section 1605A(c) Index, Ex. 37 (Funcheon Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the April 29, 2007 attack causing the death of Sgt. Funcheon was an EFP traceable to Iran and its proxies.  As an initial matter, the SIGACT report from the attack indicates that the damage inflicted upon Sgt. Funcheon's armored vehicle "was consistent with a multiple array EFP."  Lutz Rep. at 218.  Moreover, the IED report from the attack identifies the main charge

configuration as an "EFP," and further notes the presence of copper residue located on one of the exit holes left on Sgt. Funcheon's vehicle from the blast's penetration. *Id.* at 217–18. Similarly, that report also indicates that "[a] metal fragment that appeared to be copper was recovered on the right side of [Sgt. Funcheon's] vehicle." *Id.* The record also contains photographic evidence depicting the damage inflicted to Sgt. Funcheon's vehicle during the April 29, 2007 attack, notwithstanding the Level 1 armor on that vehicle. *See id.* at 221.

In his expert report, Col. Lutz opines that the April 29, 2007 attack "involved a multi-array EFP consisting of both copper and steel liners," which sent "[m]ultiple slugs" into "the vehicle killing . . . Sgt. Funcheon." *Id.* at 222. Furthermore, Col. Lutz concludes that "the attack was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* The Court is persuaded by this evidence. In particular, the evidence of copper residue left on Sgt. Funcheon's armored vehicle from the blast is a strong indicator of the use of a precision-manufactured EFP. *See* disc. *supra* at 12–25. Accordingly, upon review of the record evidence regarding the April 29, 2007 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Sgt. Funcheon.

### 38. **May 3, 2007 – Private First Class Jerome Potter**

In 2007, Private First Class ("PFC") Jerome Potter was serving as a member of the United States Army in Baghdad, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 38 (Potter Casualty Rep.) at 1. "On May 3, 2007, PFC Potter was participating in a mission in eastern Baghdad to prevent indirect fire attacks on the International Zone." Lutz Rep. at 223. During the mission, PFC Potter was driving an M2A3 Bradley on Old Crow Road, approaching Route Oilers. *See id.* At approximately 6:10 PM local time, however, an explosive struck PFC Potter's M2A3 Bradley "on

its right side, underneath the turret," setting the vehicle on fire and causing it to crash into a civilian vehicle nearby. *Id.* Despite rescue attempts from soldiers at the site of the attack, PFC Potter died in the fire. *See id.* at 224. PFC Potter's casualty report confirms that he was killed in action in Baghdad on May 3, 2007, as a result of hostile "blast injuries." Pls.' Section 1605A(c) Index, Ex. 38 (Potter Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the May 3, 2007 attack in Baghdad causing the death of PFC Potter was an EFP traceable to Iran and its proxies. First, the SIGACT report from the May 3, 2007 attack states that "the weapon used to destroy PFC Potter's Bradley was an EFP [located] at the corner of Old Crow [Road] and [Route] Oilers." Lutz Rep. at 225. Moreover, Col. Lutz's explains that the Army AR 15-6 investigation report from the attack shows "PFC Potter was killed as the result of the EFP striking his Bradley." *Id.* at 224. That report also notes that PFC Potter's vehicle carried "reactive armor to defend it from EFPs." *Id.* And in his expert report, Col. Lutz opines that it would take a "well-designed and professionally manufactured EFP that employed both precision milled copper liners and high explosives" to "cause the damage sustained to the M2A3 Bradley Fighting Vehicle." *Id.* at 226. Accordingly, Col. Lutz opines that the May 3, 2007 "attack that killed PFC Potter was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* The Court is persuaded by this evidence. Consequently, upon review of the record evidence regarding the May 3, 2007 attack

in Baghdad, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran

and its proxies bear responsibility for the EFP attack that killed PFC Potter.

### 39. May 3, 2007 – First Lieutenant Colby James Umbrell

In 2007, First Lieutenant ("First Lt.") Colby James Umbrell was serving as a member of

the United States Army in Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 39 (Umbrell Autopsy Rep.)

at 1.  On May 3, 2007, First Lt. Umbrell was working with a military patrol unit leaving from

Forward Operating Base Iskandariyah ("FOB Iskan") "to provide security along Route Caroline

and to prevent enemy freedom of movement."  Lutz Rep. at 227.  The patrol included seventeen

U.S. personnel traveling in a convoy of four up-armored HMMWVs.  *See id.*  First Lt. Umbrell

was located in the convoy's second vehicle, which was an up-armored M1151 HMMWV.  *See id.*

At approximately 9:00 AM local time, while the convoy was returning back to FOB Iskan, a multi-

array explosive struck First Lt. Umbrell's vehicle as it turned onto Route Michelle.  *See id.*  The

explosive struck the rear portion of the vehicle's "engine compartment, the [front passenger] door

rear of the window, and the passenger window as well as the rear of the gunner's turret."  *Id.*  First

Lt. Umbrell died on the scene from traumatic penetrating brain injuries.  *See id.* at 227–28.  First

Lt. Umbrell's official autopsy report confirms that he was killed in action on May 3, 2007 from

"blast injuries" suffered in Musayyib, Iraq, which caused a "gaping laceration on the right side of

[his] head."  Pls.' Section 1605A(c) Index, Ex. 39 (Umbrell Autopsy Rep.) at 1–2.

The Court finds satisfactory evidence in the record to demonstrate that the explosive

responsible for the May 3, 2007 attack in Mussayib causing the death of First Lt. Umbrell was an

EFP traceable to Iran and its proxies.  As an initial matter, the SIGACT report from the attack

concludes that the explosive device responsible for the blast, and which struck First Lt. Umbrell's

M1151 HMMWV, was an EFP.  *See* Lutz Rep. at 231.  Similarly, the IED report from the blast

identifies the "main charge configuration" and the "device description" as an EFP.  *Id.*  And persuasively, Col. Lutz's expert report contains a fulsome analysis of the Army's AR 15-6 investigation report from the attack.  Of note, the AR 15-6 report indicates that the site of the attack along Route Caroline in Musayyib had been the site of numerous EFP attacks against Coalition Forces attributed to Jaysh al-Mahdi.  *See id.* at 228; disc. *supra* at 12–25 (discussing the role of Jaysh al-Mahdi in Iraq).  Moreover, the report indicates that the May 3, 2007 blast was particularly accurate, *see id.* at 230, and further concludes that a "multi-array EFP," consisting of "two large steel EFPs and one small copper EFP," was responsible for the blast damage, *id.* at 231.

In his expert report, Col. Lutz opines that the May 3, 2007 attack in Mussayib "involved a multi-array EFP consisting of two large steel EFPs and one small copper EFP," and "it is highly likely that a cell phone was used to initiate the EFP."  *Id.* at 232.  Col. Lutz also opines that such a "precise strike[] using a cellphone or other radio-controlled initiator is extremely difficult."  *Id.*  Accordingly, he concludes that the May 3, 2007 attack "that killed [First Lt.] Umbrell was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.*  The Court is persuaded by this evidence.  In particular, the Court notes that the attack occurred nearby Jaysh al-Mahdi activity, and included strong EFP indicators, such as a copper lining and precision accuracy.  *See* disc. *supra* at 12–25.  Therefore, upon review of the record evidence regarding the May 3, 2007 attack in Musayyib, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed First Lt. Umbrell.

### 40. May 6, 2007 – Specialist Robert Dixon

In 2007, Specialist ("Spc.") Robert Dixon was serving as a member of the United States Army in Baghdad, Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 40 (Dixon Casualty Rep.) at 1.  On

May 6, 2007, Spc. Dixon was traveling north along Route Jackson with a five-vehicle patrol from Company A, 1st Squadron, 4th Cavalry Regiment.  *See* Lutz Rep. at 234.  Spc. Dixon was located in the gunner position of the convoy's lead vehicle, which was an up-armored M1151 HMMWV. *See id.*  At approximately 7:00 AM local time, a multi-array explosive struck the right side of Spc. Dixon's armored vehicle causing Spc. Dixon to suffer a fatal abdominal wound.  *See id.*  Spc. Dixon's casualty report confirms that he died in May 6, 2007 of wounds sustained in Baghdad, Iraq during hostile action.  *See* Pls.' Section 1605A(c) Index, Ex. 40 (Dixon Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the May 6, 2007 attack causing the death of Spc. Dixon was an EFP traceable to Iran and its proxies.  First, the SIGACT report from the attack states that an "EFP was taped to a telephone pole" near the blast site and notes that that the "EFP struck [Spc. Dixon's] vehicle's right side at a 90 angle" as it was traveling along Route Jackson.  Lutz Rep. at 235.  Notably, the SIGACT report also indicates that an investigative team recovered "copper slugs from the vehicle" after the attack.  *Id.*  Moreover, the IED report from the attack notes that the IED "consisted of a multi-array EFP" and that an increasing number of EFP attacks had occurred in the area of the May 6, 2007 attack.  *Id.* at 235–36.

Additionally, Col. Lutz explains that the "event storyboards" from the attack show that "the effectiveness and lethality of this EFP indicates that this was constructed and emplaced by an expert."  *Id.* at 237.  The "event storyboards" further note that this EFP attack "was most likely in retaliation for the capture of [an] immediate superior within a major Jaysh al-Madhi IED/EFP organization."  *Id.*  And CEXC reports from the attack contain a chemical analysis showing that metal fragments from the blast trace tested positive for explosive residue consistent with a Cyclotrimethylenetrinitramine based explosive, which is a common component of Iranian-

manufactured C-4.  *See* Lutz Rep. at 242.  Finally, the record also contains compelling photographic evidence depicting the penetration holes on Spc. Dixon's up-armored vehicle from the ERP array.  *See id.*

In his expert report, Col. Lutz opines that the May 7, 2006 attack "involved a multi-array copper-lined EFP . . . constructed and emplaced by terrorists with a significant degree of training." *Id.* at 243.  Accordingly, Col. Lutz concludes that "the attack that killed Spc. Dixon was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.*  The Court is persuaded by this evidence. Upon review of the record evidence regarding the May 6, 2007 attack in Baghdad, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Spc. Dixon.

### 41. May 6, 2007 – Staff Sgt. Virgil Martinez

In 2007, Staff Sergeant ("Staff Sgt.") Virgil Martinez was serving as a member of the United States Army in Baghdad, Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 41 (Martinez Casualty Rep.) at 1.  On the night of May 5, 2007, Staff Sgt. Martinez and his platoon departed from Forward route Operating Base Liberty ("FOB Liberty") to provide security for the 38th EOD Team working at a possible IED site.  *See* Lutz Rep. at 245.  After the EOD concluded its work in the early hours of May 6, 2007, Staff Sgt. Martinez's convoy began its return back to FOB Liberty. *See id.* at 246.  At the time, Staff Sgt. Martinez was riding in the passenger's seat of the convoy's lead vehicle, which was an up-armored M1114 HMMWV "equipped with a Rhino II counter-PIR device[,] a Duke ECM jamming system," and a Level 5 fragmentary Armor Kit.  *Id.* at 245.

At approximately 1:48 AM local time, however, a multi-array explosive struck Staff Sgt. Martinez's vehicle while the convoy was traveling south on Route Cubs.  *See id.* at 246.  The blast

shattered glass on all of Staff Sgt. Martinez's windows and left a round hole in the armor on Staff Sgt. Martinez's door.  *Id.*  Staff Sgt. Martinez sustained a number of lacerations on his neck and died from the blast.  *See id.*  Staff Sgt. Martinez's casualty report confirms that he was killed in action on May 6, 2007 in Iraq, as a result of hostile "blast and shrapnel injuries."  Pls.' Section 1605A(c) Index, Ex. 41 (Martinez Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the May 6, 2007 attack causing the death of Staff Sgt. Martinez was an EFP traceable to Iran and its proxies.  First, the SIGACT report from the attack confirms that "[t]he lead vehicle (M1114) [in Staff Sgt. Martinez's convoy] was struck by an EFP," and that "[t]he EFP disabled the M1114 and resulted in lX KIA."  Lutz Rep. at 249.  Indeed, photographic evidence in the record clearly depicts the multiple penetration holes inflicted to Staff Sgt. Martinez's up-armored M1114 HMMWV, as a result of the blast.  *See id.* at 248.  Moreover, the IED report states that the May 6, 2007 attack was "likely a retaliation attack against C[oalition] F[orces] as a result of [an] engagement . . . [with] JAM," and indicates that "JAM has been known to initiate [such] retaliatory attacks."  *Id.* at 249–50.  Relatedly, the AR 15-6 investigation report from the attack notes that recent engagement between Coalition Forces and the local "Mehdi Army," also referred to as the Jayish Al-Mahdi ("JAM"), had taken place in the area of the May 6, 2007 attack.  *Id.* at 249.  Finally, that report also concludes that the EFP attack produced "molten copper slugs" that "ripped through all three soldiers in the vehicle, killing [Staff Sgt.] Martinez instantly."  *Id.* at 247.

In his expert report, Col. Lutz opines that this May 6, 2007 attack "involved a multi-array copper-lined EFP initiated by command wire," and further states that "[s]lugs from the multi-array EFP penetrated the armor between [Staff Sgt.] Martinez's door and the rear passenger doors,

killing [Staff Sgt.] Martinez instantly and injuring the other soldiers in the vehicle." *Id.* at 253. Col. Lutz also concludes that the attack "that killed [Staff Sgt.] Martinez was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* The Court is persuaded by this evidence. In particular, Plaintiffs have presented number of strong indicators of the presence of an Iranian sponsored EFP attack, such as the presence of copper slugs at the attack site and the proximity to Jaysh al-Mahdi hostilities. *See* disc. *supra* at 12–25 (discussing the role of Jaysh al-Mahdi in Iraq). Consequently, upon review of the record evidence regarding the May 6, 2007 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Staff Sgt. Martinez.

### 42. <u>May 8, 2007 – Specialist Kyle Little</u>

In 2007, Specialist ("Spc.") Kyle Little was serving as a member of the United States Army in Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 42 (Little Casualty Rep.) at 1. On May 8, 2007, Spc. Little was driving the lead vehicle in a convoy consisting of four up-armored M1151A1 HMMWVs departing from Forward Operating Base Hammer ("FOB Hammer"), located at Besmaya, Iraq, roughly fifteen to twenty miles east of Baghdad. *See* Lutz Rep. at 254. "The convoy was escorting the Brigade Commander from FOB Hammer to a meeting with a sheik in southwest Baghdad." *Id.* Approximately fifty minutes into the trip, a multi-array explosive struck the convoy's lead vehicle, blowing "two holes each in both the front and rear passenger doors of the HMMWV, catastrophically damaging the vehicle." *Id.* at 256. The blast ejected Spc. Little from the vehicle, caused him severe lacerations, and killed him. *Id.* Spc. Little's casualty report

confirms that he was killed during hostile action in Iraq on May 8, 2007.  *See* Pls.' Section 1605A(c) Index, Ex. 42 (Little Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the May 8, 2007 attack causing the death of Spc. Little was an EFP traceable to Iran and its proxies.  As an initial matter, the SIGACT report from the attack indicates that the explosive responsible for the damage inflicted to Spc. Little's vehicle was "an incredibly strong device."  *Id.* at 258.   Moreover, that report notes that the "penetration holes in the door [of the HMMWV] are in line with EFP target effects."  *Id.*  The IED report from the attack also lists the primary explosive device from the blast as a "multiple array (3-4) EFP."  *Id.*  And the AR 15-6 Report states that "Spc. Little's convoy was struck by an EFP array consisting of two penetrators 10-12" in diameter and two penetrators 6-8" in diameter," which pierced the armor of Spc. Little's up-armored HMMWV and caused his death.  *Id.* at 257.  The record also contains photographic evidence depicting copper fragmentation from the blast, *see id.* at 259, and the substantial damage inflicted to Spc. Little's up-armored HMMWV from the attack, *see id.* at 256.

Furthermore, the record evidence demonstrates the sophistication of the May 8, 2007 attack.  For example, the AR 15-6 report indicates that the attackers "had emplaced the EFP in such a fashion as to defeat the 'Rhino' countermeasure installed on the lead HMMWV."  *Id.* at 257.  Relatedly, that report also concludes that the attack was aimed specifically at Spc. Little's convoy, "which was carrying the Brigade Commander."  *Id.*  The AR 15-6 report also documents the presence of a second IED device at the site of the May 8, 2007 attack, specifically left to target soldiers "responding to the EFP attack."  *Id.*  Finally, the CEXC report in the record confirms that this secondary explosive device used "male and female connectors" tying together the device's

arming and initiation components, which is a strong indicator of Lebanese Hezbollah manufacturing. *Id.* at 263.

In his expert report, Col. Lutz opines that the May 8, 2007 attack "that killed Spc. Little was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* The Court is persuaded by this evidence. In particular, the Court finds that the sophistication of the May 8, 2007 attack is a strong indicator of the involvement of an EFP used by Iranian-sponsored proxies. *See* disc. *supra* at 12–25. Accordingly, upon review of the record evidence regarding the May 8, 2007 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Spc. Little.

### 43. May 11, 2007 – Specialist William Farrar

In 2007, Specialist ("Spc.") William Farrar was serving as a member of the United States Army in Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 43 (Farrar Casualty Rep.) at 1. On May 11, 2007, Spc. Farrar was conducting a combat patrol mission into the local towns of Al Iskandariyah and Haswah with his squad from the 89th Military Police Brigade left FOB Iskandariyah in a four-vehicle convoy. *See* Lutz Rep. at 265. Spc. Farrar was driving the convoy's lead vehicle, which was an M1114 HMMWV equipped with a Rhino anti-PIR device and Fragmentary Armor Kits installed on the doors for added protection. *See id.* At approximately 7:12 PM local time, while the convoy was headed towards an Iraqi Police station just off Route Cleveland in Al Iskandariyah, an explosive detonated in the median of the road and struck Spc. Farrar's HMMWV. *See id.* at 265–66. The explosion sent a charge through the driver's door of Spc. Farrar's vehicle and caused it to roll into a ditch. *See id.* at 266. Spc. Farrar sustained serious wounds to his legs and lungs during the attack, which resulted in his death. *See id.* Spc. Farrar's casualty report confirms that

he was killed in action in Al Iskandariyah, Iraq on May 11, 2007, as a result of hostile "blast injuries."  Pls.' Section 1605A(c) Index, Ex. 43 (Farrar Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the May 11, 2007 attack causing the death of Spc. Farrar was an EFP traceable to Iran and its proxies.  As an initial matter, the SIGACT report from the attack characterizes the blast as a "confirmed EFP" attack, and the IED report, similarly, identifies the "main charge configuration" from the attack as an EFP.  Lutz Rep. at 267.  Moreover, the AR 15-6 report indicates that an EFP array caused an entrance hole in the driver's door of Spc. Farrar's up-armored HMMWV, as well "copper residue" on the front wheel.  *Id.*  The record also contains compelling photographic evidence corroborating these reports.  For example, the record includes photographic evidence clearly depicting copper residue deposited on the front wheel of Spc. Farrar's HMMWV.  *See id.* at 268.  The photographic evidence in the record also displays the significant penetration points through the armor of Spc. Farrar's vehicle, which Col. Lutz attributes to a 10-12" EFP.  *See id.* at 270–71.

In his expert report, Col. Lutz opines that the May 8, 2007 attack "involved a multi-array EFP consisting of steel and copper EFPs," which expelled slugs that "severely damaged Spc. Farrar's HMMWV, defeated its door armor . . . and mortally wounded SPC Farrar."  *Id.* at 271.  Col. Lutz also notes that "the emplacement and camouflage of the EFP" used in the May 11, 2007 attack "are signature Hezbollah and the IRGC EFP employment tactics, techniques and procedures."  *Id.*  Accordingly, he concludes that the attack "was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.*  The Court is persuaded by this evidence.  Upon review of the record evidence regarding the May 11, 2007 attack in Al Iskandariyah, along with the broader

evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Spc. Farrar.

### 44. June 2, 2007 – Sergeant Shawn Dressler and Specialist Joshua David Brown

In 2007, Sergeant ("Sgt.") Shawn Dressler was serving as a member of the United States Army in Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 44 (Dressler Casualty Rep.) at 5. Specialist ("Spc.") Joshua David Brown was also serving in Iraq as a member of the United States Army in 2007. *See id.*, Ex. 44 (Brown AR 15-6 Rep.) at 1. On June 2, 2007, both Sgt. Dressler and Spc. Brown were travelling with a patrol unit into the Muhalla 879 neighborhood of Baghdad "to drop off sworn statement paperwork for a local national to report on terrorist activity." Lutz Rep. at 273. Their patrol included six vehicles, consisting of two M2A2 Bradleys and four M1114s up-armored HMMVWs, from Company A, 1st Battalion, 18th Infantry. *See id.* After dropping off the paperwork, the patrol headed north on Route Cedar and eventually passed through an unmanned Iraqi National Police checkpoint. *See id.* at 273–74. Sgt. Dressler and Spc. Brown were riding together in the convoy's second vehicle, an up-armored HMMWV M1114 with a Duke ECM jamming system and Level 5 Fragmentary Armor Kits. *See id.* at 274.

At approximately 8:17 PM local time, a roadside explosive device struck the third vehicle in Sgt. Dressler and Spc. Brown's convoy. *See id.* Moments later, a second explosive struck Sgt. Dressler and Spc. Brown's HMMWV, penetrating the vehicle's rear driver's side window and fatally wounding both men. *See id.* at 273–74. Sgt. Dressler's casualty report confirms that he was killed in action in Baghdad, Iraq on June 2, 2007, as the result of hostile "ballistic fragment injuries." Pls.' Section 1605A(c) Index, Ex. 44 (Dressler Casualty Rep.) at 5. Similarly, Spc.

Brown's AR 15-6 report confirms that he was also killed in action on June 2, 2007 in Baghdad. *See id.*, Ex. 44 (Brown AR 15-6 Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the June 2, 2007 attack causing the deaths of Sgt. Dressler and Spc. Brown was an EFP traceable to Iran and its proxies. First, the SIGACT report from the attack reflects a determination that the second blast—the blast which struck Sgt. Dressler and Spc. Brown's HMMWV—"involved a multiarray EFP." Lutz Rep. at 279. The IED report from the attack also indicates that the explosive responsible for striking Sgt. Dressler and Spc. Brown's vehicle "was a multiarray EFP initiated by command wire." *Id.* at 280. Moreover, the record contains compelling photographic evidence depicting the multiple penetration holes inflicted to Sgt. Dressler and Spc. Brown's vehicle from the blast, as well as copper residue deposited on the vehicle's exterior. *See id.* at 277–79, 283. And finally, according to Col. Lutz, the chemical analysis of the soil surrounding the attack site points to the use of high-energy explosives in the construction of the EFP. *See id.* at 284; disc. *supra* at 18 (discussing the use of high-energy explosives in EFP construction).

In his expert report, Col. Lutz opines that the June 2, 2007 attack "involved a multi-array copper-lined EFP initiated by command wire," and that "[t]he copper slugs from the weapon destroyed Sgt. Dressler and Spc. Brown's HMMWV." *Id.* at 285. Col. Lutz further concludes that "the attack that killed Sgt. Dressler and Spc. Brown was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* The Court is persuaded by this evidence. Accordingly, upon review of the record evidence regarding the June 2, 2007 attack in Baghdad, along with the broader evidence of

Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Sgt. Dressler and Spc. Brown.

### 45. **June 5, 2007 – Air Force Staff Sergeant Matthew Kuglics and Air Force Technical Sergeant Ryan Balmer**

In 2007, both Staff Sergeant ("Staff Sgt.") Matthew Kuglics and Technical Sergeant ("Tech. Sgt.") Ryan Balmer were serving as members of the United States Air Force in Kirkuk, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 45 (Air Force Investigation Rep.) at 1. On June 5, 2007, Staff Sgt. Kuglics and Tech. Sgt. Balmer were carrying out a preplanned mission for the Air Force Office of Special Investigations to meet with local personnel and collect information regarding insurgent activities threatening Kirkuk Air Base and other coalition units operating in the area. *See* Lutz Rep. at 286–87. During this mission, Staff Sgt. Kuglics and Tech. Sgt. Balmer were travelling in a three-vehicle convoy and riding together in an armored Chevrolet Suburban SUV. *See id* at 287. At approximately 11:45 AM local time, as the convoy was returning to Kirkuk Air Base along Route Jetta, a multi-array explosive from the center median struck Staff Sgt. Kuglics and Tech. Sgt. Balmer's vehicle and killed both men. *See id.* The Air Force Investigation Report from the attack confirms that both Staff Sgt. Kuglics and Tech. Sgt. Balmer were "murdered" in Kirkuk on June 5, 2007. Pls.' Section 1605A(c) Index, Ex. 45 (Air Force Investigation Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the June 5, 2007 attack in Kirkuk causing the deaths of Staff Sgt. Kuglics and Tech. Sgt. Balmer was an EFP traceable to Iran and its proxies. As an initial matter, the IED report from the attack identifies the "main charge configuration" from the blast as an "EFP," and further notes that "copper slugs were recovered from the vehicle." Lutz Rep. at 289. Similarly, the SIGACT report indicates that "[c]opper fragments/slug[s] were found in [Staff Sgt. Kuglics and Tech. Sgt.

Balmer's] vehicle" which had sustained "numerous impact points" from the blast.  *Id.* at 288.  To that end, the record also contains photographic evidence depicting the copper slugs and fragmentation recovered from Staff Sgt. Kuglics and Tech. Sgt. Balmer's vehicle after the blast. *See id.* at 293.

Furthermore, the Air Force Investigation Report indicates that the June 5, 2007 blast was unusually "large" and consistent with an EFP explosion.  *Id.* at 288.  Indeed, the record contains photographic evidence depicting the complete penetration damage inflicted to Staff Sgt. Kuglics and Tech. Sgt. Balmer's armored vehicle, *see id.* at 293, and also indicates that high-energy explosives were likely used in the attack, *see id.* at 294 (discussing the CEXC chemical analysis). It is also notable that the Air Force Investigation Report confirms that Kirkuk had recently experienced an influx of Jaysh al-Mahdi activity around the time of the June 5, 2007 attack, including a surge of EFP usage attributable to Iran along military routes.  *See id.* at 288.

In his expert report, Col. Lutz opines that the June 5, 2007 attack "involved a 6-8 array, copper-lined EFP with an unknown amount of bulk explosive," which was "concealed in the median of Route Jetta and sent four large projectiles through the driver's side armor of [a] vehicle causing the deaths of [Staff Sgt.] Kuglics and [Tech. Sgt.] Balmer."  *Id.* at 294.  Col. Lutz also concludes that this attack "was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.*  The Court is persuaded by this evidence.  In particular, the record evidence of copper slugs and fragmentation from the blast, as well as the increase of Jaysh al-Mahdi activity near Kirkuk around the time of the attack, are strong indicators of the use of a precision-made Iranian EFP in the June 5, 2007 attack.  *See* disc. *supra* at 12–25.  Consequently, upon review of the record evidence regarding the June 5, 2007 attack in Kirkuk, along with the broader evidence of Iran's use of EFPs

in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Staff Sgt. Kuglics and Tech. Sgt. Balmer.

### 46. **June 14, 2007 – Sergeant Richard Parker**

In 2007, Sergeant ("Sgt.") Richard Parker was serving as a member of the United States Army in Scania, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 46 (Parker Casualty Rep.) at 1. On June 14, 2007, Sgt. Parker was traveling in a thirty-eight-vehicle convoy heading north on Main Supply Route Tampa towards Scania. *See* Lutz Rep. at 296. Sgt. Parker was riding in the gunner's position of the convoy's second vehicle, which was an up-armored M1114 HMMWV. *See id.* At approximately 3:19 AM local time, however, a multi-array explosive struck Sgt. Parker's vehicle, killing him instantly and setting his HMMWV ablaze. *See id.* Sgt. Parker's casualty report confirms that he was killed in hostile action on June 14, 2007 in Scania, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 46 (Parker Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the June 14, 2007 attack in Scania causing the death of Sgt. Parker was an EFP traceable to Iran and its proxies. As an initial matter, the SIGACT report from the attack indicates that the explosive device involved was "consistent with an EFP array due to the presence of copper residue." Lutz Rep. at 297. Moreover, that report notes that "the EFP was command wire armed and PIR initiated." *Id.*; *see also* disc. *supra* at 20 (discussing the sophisticated nature of passive infra-red triggering for EFPs). The IED report from the attack also notes that "command wire was used to arm the EFP and that the initiation system was a passive infrared device." Lutz Rep. at 297. And similarly, the CJTF-Troy Report from the attack confirms that the explosive device at

issue "was consistent with an EFP because of the presence of copper residue and that it was command wire armed and PIR initiated." *Id.* at 299.

In his expert report, Col. Lutz opines that the June 14, 2007 attack "involved a multi-array EFP that was command wire armed and PIR initiated." *Id.* at 300. Col. Lutz further concludes that "the attack that killed Sgt. Parker was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* The Court is persuaded by this evidence, and in particular finds that the presence of copper residue and the use of PIR triggering are strong indicators of a precision-manufactured Iranian EFP. *See* disc. *supra* at 12–25. Consequently, upon review of the record evidence regarding the June 14, 2007 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Sgt. Parker.

### 47. June 21, 2007 – Specialist Raymond N. Spencer

In 2007, Specialist ("Spc.") Raymond N. Spencer was serving as a member of the United States Army in Baghdad, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 47 (Spencer Casualty Rep.) at 1. On June 21, 2007, Spc. Spencer carried out an assessment of the Shulla Hospital in Baghdad to locate an individual with suspected ties to Jaysh al-Mahdi. *See* Lutz Rep. at 301. Spc. Spencer's patrol included a four-vehicle convoy from 1st Platoon, Alpha Company, 2nd Battalion, 12th Cavalry Regiment, 2nd Brigade Combat Team, 1st Infantry Division. *See id.* During the mission, Spc. Spencer was riding in the convoy's lead vehicle, which was an M2A2 Bradley. *See id.* After the patrol completed its assessment of the Shulla Hospital, it departed southwest on an unnamed road. *See id.* But at approximately 1:55 PM local time, a multi-array explosive struck the right side of Spc. Spencer's vehicle, causing Spc. Spencer to lose his leg and sustain multiple shrapnel wounds. *See id.* Spc. Spencer died later that day from his wounds, *see id.*, and his casualty report

confirms that he was killed in action in Baghdad on June 21, 2007, as the result of hostile "blast injuries," Pls.' Section 1605A(c) Index, Ex. 47 (Spencer Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the June 21, 2007 attack in Baghdad causing the death of Spc. Spencer was an EFP traceable to Iran and its proxies.  First, the SIGACT report from the attack indicates that "the lead vehicle in the convoy, a Bradley, was struck by an EFP on the right side of the vehicle," Lutz Rep. at 305, and the IED report from the attack further notes that the "event consisted of a multiple EFP array containing 7x EFPs," *id.* at 306.  Moreover, the Army AR 15-6 Investigation report offers similar information, indicating that "the strike by the EFP was consistent with a 7-8 array EFP." *Id.* at 302.  Notably, the "Event Storyboard" from the attack, reviewed by Col. Lutz in his expert report, confirms that Spc. Spencer was patrolling the Shulla area in Baghdad on the day of the June 21, 2007 attack to "disrupt JAM activities."  *Id.* at 306.

In his expert report, Col. Lutz opines that the June 21, 2007 attack "involved a multi-array EFP," which "was concealed, possibly encased in a curb section given the lack of debris in the area."  *Id.* at 308.  Furthermore, Col. Lutz concludes that "the attack that killed Spc. Spencer was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.*  The Court is persuaded by this evidence, and in particular notes the strong evidence of Jaysh al-Mahdi activity near the site of the attack in Shulla.  *See* disc. *supra* at 12–25 (discussing role of Jaysh al-Mahdi in Iraq).  Accordingly, upon review of the record evidence regarding the June 21, 2007 attack, along with the broader

evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Spc. Spencer.

### 48. **June 29, 2007 – Specialist James L. Adair**

In 2007, Specialist ("Spc.") James L. Adair was serving as a member of the United States Army in Baghdad, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 48 (Adair Casualty Rep.) at 1. On June 29, 2007, Spc. Adair was patrolling the West Rashid neighborhood of Baghdad with a four-vehicle convoy consisting of M1151 HMMWVs from Company B, 1st Battalion, 28th Infantry Regiment, 4th Infantry Brigade Combat Team, 1st Infantry Division. *See* Lutz Rep. at 309. During the patrol, Spc. Adair was driving the convoy's lead M1151 HMMWV. *See id.* At approximately 6:10 PM local time, a multi-array explosive struck the driver's side of Spc. Adair's vehicle from around four feet away, killing Spc. Adair. *See id.* Spc. Adair's casualty report confirms that he was killed in action in Baghdad on June 29, 2007, as the result of hostile "blast fragment injuries of the torso." Pls.' Section 1605A(c) Index, Ex. 48 (Adair Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the June 29, 2007 attack in Baghdad causing the death of Spc. Adair was an EFP traceable to Iran and its proxies. As an initial matter, the SIGACT report from the attack notes that "Spc. Adair's vehicle was struck by a command wire EFP consisting of four arrays and that three of the slugs hit the driver's door and the fourth slug hit the passenger door on the driver's side of the vehicle." Lutz Rep. at 310. That report also confirms that the command wire recovered from the blast site was traced back to the rooftop of a house approximately fifty meters from the detonation. *See id.* Relatedly, the IED report from the blast identifies "the device used in the attack as a four EFP array initiated by command wire." *Id.* The record also contains photographic evidence displaying the command wire and camera flash device used as the firing mechanism for

the EFP in the June 29, 2007 attack.  *See id.* at 317; disc. *supra* at 20 (discussing use of command wire to trigger EFPs).

In view of this evidence, Col. Lutz opines in his expert report that the June 29, 2007 attack "involved a four array EFP that was initiated by command wire," and that "[t]hree of the slugs from the EFP impacted the driver's door [of Spc. Adair's vehicle] and the fourth impacted the passenger door behind the driver."  Lutz Rep. at 318.  Col. Lutz further concludes that "the attack that killed Spc. Adair was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.*  The Court is persuaded by this evidence.  Consequently, upon review of the record evidence regarding the June 29, 2007 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Spc. Adair.

### 49. July 6, 2007 – Sergeant Gene Lamie

In 2007, Sergeant ("Sgt.") Gene Lamie was serving as a member of the United States Army in Baghdad, Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 49 (Lamie Casualty Rep.) at 1.  On July 6, 2007, Sgt. Lamie was heading west on Route Vernon, while conducting a combat patrol in the Adhamiyah neighborhood of Baghdad with a four-vehicle convoy from 3rd Battalion, 7th Cavalry Regiment, 2nd Brigade Combat Team, 3rd Infantry Division.  *See* Lutz Rep. at 319.  During the patrol, Sgt. Lamie was riding in the convoy's third vehicle, which was an up-armored M1151 HMMWV.  *See id.*  Around 4:30 AM local time, a multi-array explosive struck Sgt. Lamie's HMMWV, killing him and one other soldier in the vehicle.  *See id.*  Sgt. Lamie's casualty report

confirms that he was killed in action in Baghdad on July 6, 2007, as the result of hostile "blast injuries." Pls.' Section 1605A(c) Index, Ex. 49 (Lamie Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the July 6, 2007 attack in Baghdad causing the death of Sgt. Lamie was an EFP traceable to Iran and its proxies. Notably, Col. Lutz's expert report emphasizes the "event storyboards" from the July 6, 2007 attack prepared by the Battalion's Command, Control and Communication Operations group. *See* Lutz Rep. at 320. Those reports indicate that an explosive ordnance assessment of the blast confirm the use of "a 4-7 EFP array." *Id.* The involvement of a multi-array EFP, also aligns with the damage inflicted by the blast to Sgt. Lamie's up-armored M1151 HMMWV, which had "integrated Level 1 armor." *Id.*; *see also* disc. *supra* at 19 (discussing the unique ability of EFPs to penetrate reinforced armor). Moreover, the Event Storyboards indicate that "the Qahira JAM cell ha[d] been active in emplacing IEDs and EFPs in the area" of the July 6, 2007 attack, along Route Vernon in Baghdad. Lutz Rep. at 320. Accordingly, Col. Lutz opines in his expert report that this attack "was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 322. The Court is persuaded by this evidence. Upon review of the record evidence regarding the July 6, 2007 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Sgt. Lamie.

### 50. July 6, 2007 – Petty Officers First Class Jason Dale Lewis and Robert McRill

In 2007, both Petty Officer First Class ("POFC") Jason Dale Lewis and POFC Robert McRill were serving as members of the United States Navy in Baghdad, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 50 (Lewis & McRill Casualty Reps.) at 1–2. On July 6, 2007, POFC Lewis

and POFC McRill were conducting a clandestine mission in Sadr City within Baghdad.  *See* Lutz

Rep. at 324.  During the mission, both POFC Lewis and POFC McRill riding in the rear vehicle

in a five-vehicle convoy.  *See id.*  A multi-array explosive struck POFC Lewis and POFC McRill's

vehicle during their mission, killing both men.  *See id.*  POFC Lewis's casualty report confirms

that he was killed in action in Sadr City, Iraq on July 6, 2007, as the result of hostile "massive

trauma" from the blast.  Pls.' Section 1605A(c) Index, Ex. 50 (Lewis Casualty Rep.) at 1.

Similarly, POFC McRill's casualty report confirms he was killed in action in Sadr City, Iraq on

July 6, 2007, as the result of hostile "massive trauma" from the blast.  *See id.*, Ex. 50 (McRill

Casualty Rep.) at 2.

 In his expert report addressing the July 6, 2007 attack in Sadr City, Col. Lutz explains that

"[d]ue to the fact that these special operators were engaged in a clandestine mission, only a limited

record exists" regarding the blast.  Lutz Rep. at 325.  Nonetheless, the Court finds satisfactory

evidence in the record to demonstrate that the explosive responsible for the July 6, 2007 attack in

Sadr City causing the death of POFC Lewis and POFC McRill was an EFP traceable to Iran and

its proxies.  Notably, the casualty reports for both officers explicitly state that these men died as a

"result of massive trauma *received from an EFP (Explosively Formed Penetrator) blast while in

an HMMWV*."  Pls.' Section 1605A(c) Index, Ex. 50 (Lewis Casualty Rep.) at 1 (emphasis added);

*id.*, Ex. 50 (McRill Casualty Rep.) at 2 (same).  Moreover, the Line of Duty Determination from

the attack confirms that POFC Lewis was conducting an operation in Sadr City on July 6, 2007,

"when his vehicle was struck by an EFP."  Lutz Rep. at 324.  It also notes that the cause of POFC

Lewis's death "was a penetrating chest wound caused by the blast from the EFP."  *Id.*  And finally,

Col. Lutz concludes in his expert report that "the attack that killed [POFC] Lewis and [POFC]

McRill was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted

by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 325.   The Court is persuaded by this evidence.  Accordingly, upon review of the record evidence regarding the July 6, 2007 attack in Sadr City, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed POFC Lewis and POFC McRill.

### 51. July 17, 2007 – Privates First Class Brandon Bobb and Ron Joshua

In 2007, Private First Class ("PFC") Brandon Bobb and PFC Ron Joshua were serving as members of the United States Army in Baghdad, Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 51 (Bobb & Joshua Casualty Reps.) at 1–2.  On July 17, 2007, PFC Bobb and PFC Joshua were traveling south towards Combat Outpost Casino on Ghazaliyah Main with a four-vehicle security patrol from the 401st Military Police Company, 92nd Military Police Battalion, 89th Military Police Brigade.  *See* Lutz Rep. at 326.  PFC Bobb and PFC Joshua were both riding in the convoy's lead vehicle, which was "an up-armored M1114 HMMWV with a Duke ECM and a Rhino anti-PIR device."  *Id.*   At approximately 12:50 PM local time, a multi-array explosive struck the passenger side of their HMMWV.  *See id.*  The blast caused PFC Joshua to be ejected from the vehicle, killing him instantly.  *See id.*  The blast also inflicted serious wounds to PFC Bobb legs, which caused his death.  *See id.*  The casualty reports for both PFC Bobb and PFC Joshua confirm that both men were killed in action in Baghdad on July 17, 2007, as the result of hostile blast injuries.  *See* Pls.' Section 1605A(c) Index, Ex. 51 (Bobb & Joshua Casualty Reps.) at 1–2.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the July 17, 2007 attack in Baghdad causing the deaths of PFC Bobb and PFC Joshua was an EFP traceable to Iran and its proxies.  As an initial matter, the SIGACT report from the attack indicates that "the blast seat and damage to the vehicle was consistent with one large

EFP approximately 12 round, and surrounded by smaller EFPs." Lutz Rep. at 327. That report also confirms that PFC Bobb and PFC Joshua HMMWV was equipped with an anti-IED CREW system. *See id.* The IED report from the attack similarly indicates that "the incident was consistent with an EFP array." *Id.* at 328. And notably, the record also contains photographic evidence depicting the penetration damage inflicted upon PFC Bobb and PFC Joshua's up-armored HMMWV from the blast. *See id.* at 332.

The event storyboard from the attack, reviewed in Col. Lutz's expert report, also provides strong evidence of JAM involvement in the July 17, 2007 attack. *See id.* at 328. For example, it indicates that "[r]ecent raids and detentions of JAM H[igh] V[alue] I[ndividuals] throughout the battle space have further motivated JAM Special Groups to take action against CF as retaliation for disrupting their operations." *Id.* Accordingly, Col. Lutz opines in his expert report "that the attack that killed PFC Bobb and PFC Joshua was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 333. The Court is persuaded by this evidence. In particular, the Court notes that the presence of JAM hostilities in the region and the ability of the explosive to defeat an up-armored vehicle with CREW technology are strong indicators of a precision-manufactured Iranian EFP. *See* disc. *supra* at 12–25. Consequently, upon review of the record evidence regarding the July 17, 2007 attack in Baghdad, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed PFC Bobb and PFC Joshua.

### 52. <u>December 1, 2007 – Specialist Matthew K. Reece</u>

In 2007, Specialist ("Spc.") Matthew K. Reece was serving as a member of the United States Army in Baghdad, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 52 (Reece Casualty Rep.) at

1.  On December 1, 2007, Spc. Reece was conducting a patrol in the Rusafa neighborhood of Baghdad with a six-vehicle convoy from 1st Battalion, 504th Parachute Infantry Regiment, 1st Brigade Combat Team, 82nd Airborne Division.  *See* Lutz Rep. at 335.  During the patrol mission, Spc. Reece was riding in the convoy's lead vehicle, which was an up-armored M1114 HMMWV. *See id.*  Around 8:45 AM local time, an explosive struck the right side of Spc. Reece's HMMWV, "as the convoy was traveling north at the intersection of Routes Texas and Coors."  *Id.*  The blast caused Spc. Reece to suffer fatal wounds to his head and back.  *See id.*  Spc. Reece's casualty report confirms that he was killed in action in Baghdad on December 1, 2007, as the result of hostile "blast injuries."  Pls.' Section 1605A(c) Index, Ex. 52 (Reece Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the December 1, 2007 attack in Baghdad causing the death of Spc. Reece was an EFP traceable to Iran and its proxies.  First, the SIGACT report from the attack indicates that the blast "involved 2 EFPs."  Lutz Rep. at 336.  And the IED report from the attack similarly identifies the "main charge configuration" from the blast as an EFP.  *Id.*  Moreover, a CJTF Troy report from the blast concludes that a steel-lined EFP was responsible for the attack.  *See id.* at 338.  To that end, the record contains photographic evidence of a steel liner fragment recovered from the blast. *See id.* at 342.  Relatedly, the record also contains photographic evidence depicting the fragmentation damage inflicted upon Spc. Reece's up-armored vehicle from the EFP blast.  *See id.* at 341.

In his expert report, Col. Lutz opines that the December 1, 2007 "attack involved an EFP . . . consisting of a steel liner and an unknown amount of bulk explosive."  *Id.* at 342.  Furthermore, Col. Lutz concludes that "the attack that killed Spc. Reece was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-

trained Special Group proxies." *Id.* The Court is persuaded by this evidence. Upon review of the record evidence regarding the December 1, 2007 attack in Baghdad, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Spc. Reece.

### 53. January 6, 2008 – Corporal James D. Gudridge

In 2008, Corporal ("Cpl.") James D. Gudridge was serving as a member of the United States Army in Baghdad, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 53 (Gudridge Casualty Rep.) at 1. On January 6, 2008, Cpl. Gudridge was participating in a mounted patrol of the West Rashid neighborhood of Baghdad with a seven-vehicle convoy from 4th Battalion, 64th Armor Regiment, 4th Brigade Combat Team, 3rd Infantry Division. *See* Lutz Rep. at 344. During the patrol, Cpl. Gudridge was riding in the convoy's lead vehicle, which was an up-armored M1151 HMMWV. *See id.* But as the convoy was traveling northbound on Route Vernon, a multi-array explosive struck the passenger door of Cpl. Gudridge's HMMV at approximately 5:15 PM local time. *See id.* The blast sent multiple slugs through the vehicle, which killed Cpl. Gudridge. *See id.* Cpl. Gudridge's casualty report confirms that he was killed in action on January 6, 2008 in Baghdad, Iraq, as the result of hostile "blast injuries." Pls.' Section 1605A(c) Index, Ex. 53 (Gudridge Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the January 6, 2008 attack in Baghdad causing the death of Cpl. Gudridge was an EFP traceable to Iran and its proxies. As an initial matter, the SIGACT Report from the attack "notes that [a] multi-array EFP struck the driver's side front window, driver's door, driver's side passenger door, and turret" of Cpl. Gudridge's up-armored HMMWV. Lutz Rep. at 345. Similarly, the IED report identifies the main charge configuration as an EFP, and further indicates

that the device responsible for the January 6, 2008 blast was "a single array of 3-4 copper-lined EFPs." *Id.*  Notably, the IED report also concludes the initiation of the EFP "was likely RC armed and PIR initiated." *Id.*  Finally, the record also contains compelling photographic evidence from the attack.  For example, this photographic evidence depicts the deposit of copper residue on Cpl. Gudridge's HMMWV.  *See id.* at 348.  Moreover, the photographic evidence depicts "partial EFP penetration" on the vehicle, *see id.*, which was equipped with level 1 armor at the time of the January 6, 2008 attack, *see id.* at 351.

In his expert report, Col. Lutz opines that the January 6, 2008 attack "involved a multi-array EFP consisting of 3-4 copper liners," and that "[m]ultiple EFP slug penetrations were observed on the driver's side of the vehicle killing Cpl. Gudridge." *See id.* at 351.  Furthermore, Col. Lutz concludes that the attack that killed Cpl. Gudridge . . . was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.*  The Court is persuaded by this evidence, and, in particular, notes that the record evidence of copper residue from the attack is a strong indicator of a precision-manufactured Iranian EFP.  *See* disc. *supra* at 12–25 (discussing the signature use of copper in Iranian manufactured EFPs).  Accordingly, upon review of the record evidence regarding the January 6, 2008 attack in Baghdad, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Cpl. Gudridge.

### 54. **March 17, 2008 – Staff Sergeant Michael Elledge**

In 2008, Staff Sergeant ("Staff Sgt.") Michael Elledge was serving as a member of the United States Army in Baghdad, Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 54 (Elledge Casualty Rep.) at 1.  On March 17, 2008, Staff Sgt. Elledge traveled east on Route Pluto to Combat Outpost

("COP") Ford from Camp Taji with a five-vehicle patrol from 1st Battalion, 68th Armor Regiment, 3rd Brigade Combat Team, 4th Infantry Division.  *See* Lutz Rep. at 353.  During the patrol, Staff Sgt. Elledge was riding in gunner's position of the convoy's third vehicle, which was an up-armored M1151 HMMWV.  *See id.*  At approximately 12:20 PM local time, a multi-array explosive struck the passenger's side of Staff Sgt. Elledge's vehicle.  *See id.*  The blast sent multiple slugs through the vehicle, including through the gunner's turret, immediately killing Staff Sgt. Elledge.  *See id.*  Staff Sgt. Elledge's casualty report confirms that he was killed in action on March 17, 2008 in Baghdad, Iraq, as the result of hostile "blast injuries."  Pls.' Section 1605A(c) Index, Ex. 54 (Elledge Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the March 17, 2008 attack in Baghdad causing the death of Staff Sgt. Elledge was an EFP traceable to Iran and its proxies.  First, the SIGACT report from the attack indicates that Staff Sgt. Elledge's vehicle, which was equipped with "CREW systems and IED Defeat Equipment," was "hit in 3 locations, from a 3 array copper EFP."  Lutz Rep. at 354.  Similarly, the IED report from the attack identifies the main charge configuration from the blast as an EFP.  *See id.*  Furthermore, the CEXC report from the blast indicates the use of high-energy explosives in the EFP used in the March 17, 2008 attack.  *See id.* at 361.  The record also contains photographic evidence depicting the damage inflicted upon Staff Sgt. Elledge's up-armored HMMWV from the March 17, 2008 blast.  *See id.* at 360.  Finally, the record evidence contains strong indicators of the involvement of Iranian proxy groups.  For example, the SIGACT report noted the increase presence of Shi'a special groups in the area of the March 17, 2008 attack.  *See id.* at 354.  And the

event storyboard from the attack indicates that "[b]ased on the area and copper-lining of the EFP, special groups criminal elements (SGC) are likely responsible for the attack." *Id.*

Accordingly, Col. Lutz opines in his expert report that the March 17, 2008 attack that killed Staff Sgt. Elledge "was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 362. The Court is persuaded by this evidence. In particular, the Court notes that the evidence of a copper residue, the defeat of a CREW-equipped vehicle, and the high-energy explosives used in the blast, are each strong indicators of the use of a precision-manufactured Iranian EFP. *See* disc. *supra* at 12–25. Consequently, upon review of the record evidence regarding the March 17, 2008 attack in Baghdad, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Staff Sgt. Elledge.

### 55. <u>March 29, 2008 – Private First Class Patrick J. Miller</u>

In 2008, Private First Class Patrick J. Miller was serving as a member of the United States Army in Baghdad, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 55 (Miller Casualty Rep.) at 1. On March 29, 2008, PFC Miller was conducting a mounted patrol in New Baghdad in a six-vehicle convoy from 2nd Battalion, 16th Infantry Regiment. *See* Lutz Rep. at 363. During the patrol, PFC Miller was riding in an up-armored M1151 HMMWV within the convoy. *See id.* At approximately 5:19 PM local time, however, an explosive struck PFC Miller's HMMWV while it was positioned at the intersection of Routes Florida and Fedaliyah. *See id.* The blast killed PFC Miller and one other soldier in the impacted HMMWV. *See id.* PFC Miller's casualty report

confirms that he was killed in action on March 29, 2008 in Baghdad, Iraq, as the result of hostile "blast injuries."  Pls.' Section 1605A(c) Index, Ex. 55 (Miller Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the March 29, 2008 attack in Baghdad causing the death of PFC Miller was an EFP traceable to Iran and its proxies.  First, the IED report from the attack indicates that the explosive ordnance assessment of the attack determined that PFC Miller's M1151 HMMWV "was struck by an EFP consisting of a copper plate."  Lutz Rep. at 364.  And notably, the SIGACT report from the attack observes that "JAM continues to emplace IED/EFP and conduct complex attacks" around the site of the March 29, 2008 blast.  *Id.*  Similarly, the "event storyboards" from the attack note that "SGCs have consistently targeted C[oalition] F[orces] in the vicinity of COP 799 since the level of violence increased beginning 25 Mar[ch]."  *Id.*

Accordingly, Col. Lutz opines in his expert report that the March 29, 2008 attack "that killed PFC Miller was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.* at 365.  Col. Lutz further specifies that the attack "involved a single EFP consisting of a copper plate."  *Id.*  The Court is persuaded by this evidence.  Upon review of the record evidence regarding the March 29, 2008 attack in Baghdad, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed PFC Miller.

### 56. <u>March 30, 2008 – Specialist Terrell Gilmore</u>

In 2008, Specialist ("Spc.") Terrell Gilmore was serving as a member of the United States Army in Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 56 (Gilmore AR 15-6 Investigative Rep.) at 1.  On March 30, 2008, Spc. Gilmore was traveling with a seven-vehicle combat patrol convoy from Forward Operating Base Liberty to Joint Security Station Ur, northeast of Baghdad.  *See* Lutz

Rep. at 367.  During the patrol mission, Spc. Gilmore was driving an M1075 Truck Cargo Heavy Palletized Loading System Transport with Level I armor.  *See id.*  At approximately 2:25 PM local time, an explosion occurred to the right of Spc. Gilmore's convoy.  *See id.*  This initial explosion caused no damage to the convoy, but around thirty seconds later a subsequent explosion struck the left side of Spc. Gilmore's vehicle, causing it to roll down the road.  *See id.*  Following these explosions Spc. Gilmore's patrol unit sustained brief small arms fire from nearby hostiles.  *See id.*  As a result of the second blast, Spc. Gilmore sustained significant wounds and died from those injuries shortly after 7:00 PM local time that evening.  *See id.* at 368.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the March 30, 2008 attack causing the death of Spc. Gilmore was an EFP traceable to Iran and its proxies.  As an initial matter, the AR 15-6 Investigative Report from the attack confirms that Spc. Gilmore "died of his wounds" on March 30, 2008 after his patrol vehicle "was struck by a[n] Explosively Formed Penetrator."  Pls.' Section 1605A(c) Index, Ex. 56 (Gilmore AR 15-6 Investigative Rep.) at 1–2.  That report also states that "the EFP was command wire initiated" and confirms that Spc. Gilmore suffered "multiple shrapnel wounds" and "first degree burns" from the blast.  *Id.* at 2.  Moreover, the SIGACT report similarly indicates that an EFP was used in the attack.  *See* Lutz Rep. at 368.  And finally, the SIGACT report from the attack also notes that "JAM and S[pecial] G[roups] continue to attempt to prevent C[oalition] F[orces] movement into Sadr City."  *Id.* at 368.

In his expert report, Col. Lutz opines that the March 30, 2008 attack "involved the use of an Iranian-manufactured, military-grade EFP," which was "emplaced in a tactically advantageous position aligning the convoy route."  *Id.* at 370.  Furthermore, Col. Lutz states that the presence of small arms fire at the time of the attack is representative of a tactic used by Iranian special groups.

*See id.*  Accordingly, Col. Lutz concludes that "the attack that killed Spc. Gilmore was part of the EFP campaign orchestrated by the IRGC and Hezbollah, and that the attack was likely conducted by one of the IRGC's Special Group proxies."  *Id.*  The Court is persuaded by this evidence.  Upon review of the record evidence regarding the March 30, 2008 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Spc. Gilmore.

### 57. <u>March 31, 2008 – Sergeant Dayne Dhanoolal</u>

In 2008, Sergeant ("Sgt.") Dayne Dhanoolal was serving as a member of the United States Army in Baghdad, Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 57 (Dhanoolal Casualty Rep.) at 1.  On March 31, 2008, Sgt. Dhanoolal was traveling from Forward Operating Base Rustimayah with an eight-vehicle route clearance patrol from Echo Company, 2nd Battalion, 69th Armor Regiment, 3rd Brigade Combat Team, 3rd Infantry Division.  *See* Lutz Rep. at 372.  During the patrol mission, Sgt. Dhanoolal was operating the convoy's lead vehicle.  *See id.*  At approximately, 5:58 PM local time, while the convoy was heading north on Route Predators, a multi-array explosive struck the right side of Sgt. Dhanoolal's vehicle.  *See id.*  The explosion sent multiple slugs into Sgt. Dhanoolal's vehicle, one of which struck Sgt. Dhanoolal in the head, killing him instantly.  *See id.* at 372.  Sgt. Dhanoolal's casualty report confirms that he was killed in action on March 31, 2008 in Baghdad, as the result of hostile "blast injuries."  Pls.' Section 1605A(c) Index, Ex. 57 (Dhanoolal Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the March 31, 2008 attack causing the death of Sgt. Dhanoolal was an EFP traceable to Iran and its proxies.  First, the AR 15-6 investigation report from the attack provides that: "Sgt. Dhanoolal was killed in the line of duty by an enemy EFP. The EFP slug entered the

vehicle just below the base of the right side window, and exited at the top left corner of the hull. The EFP slug passed through Sgt. Dhanoolal's head, killing him instantly."  Lutz Rep. at 372. Similarly, the IED report from the attack indicates that Sgt. Dhanoolal's vehicle "was struck with an array of 2 EFPs with steel liners."  *Id.* at 373.  And notably, the SIGACT report states that "[t]he EFP was most likely emplaced and detonated by the Oubadi/Riassa S[pecial] G[roup]."  *Id.*

Accordingly, Col. Lutz opines in his expert report that the March 31, 2008 attack that killed Sgt. Dahnoolal "was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.* at 376.  Col. Lutz further opines that the "attack involved a multi-array EFP," featuring copper liners.  *Id.*  The Court is persuaded by this evidence.  Upon review of the record evidence regarding the March 31, 2008 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Sgt. Dhanoolal.

### 58. April 7, 2008 – Sergeant Timothy M. Smith

In 2008, Sergeant ("Sgt.") Timothy M. Smith was serving as a member of the United States Army in Baghdad, Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 58 (Smith Casualty Rep.) at 1.  On April 7, 2008, Sgt. Smith was conducting a route clearance patrol mission in Sadr City with a seven-vehicle convoy from Alpha Company, 4th Brigade Special Troops Battalion, 4th Brigade Combat Team, 10th Mountain Division.  *See* Lutz Rep. at 378.  As the patrol unit headed northeast on Route Aeros, a multi-array explosive struck the right side of Sgt. Smith's vehicle at approximately 9:40 PM local time.  *See id.*  The explosion caused four slugs to penetrate Sgt. Smith's vehicle, including one slug that penetrated the vehicle's engine compartment.  *See id.* at 379.  Sgt. Smith's casualty report confirms that he was killed in action in Baghdad, on April 7,

2008, as the result of a hostile "blast and blast fragmentation injuries." Pls.' Section 1605A(c) Index, Ex. 58 (Smith Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the April 7, 2008 attack causing the death of Sgt. Smith was an EFP traceable to Iran and its proxies. As an initial matter, the AR 15-6 report from the attack indicates that the slugs that struck Sgt. Smith's vehicle "were consistent with 8-10" copper lined EFP's." Lutz Rep. at 379. Similarly, the SIGACT report from the attack confirms "that the attack was an EFP based on EOD postblast" analysis. *Id.* at 380. And notably, the IED report from the attack indicates that the blast involved "copper lined EFPs," which caused a "catastrophic hit" to Sgt. Smith's vehicle, leaving "copper residue . . . on each of the impact areas." *Id.* To that end, the record also contains compelling photographic evidence depicting the copper EFP strikes to Sgt. Smith's vehicle and the clear penetration points left from the blast. *See id.* at 383.

Additionally, the SIGACT report indicates that there had been multiple attacks in the area around Route Aeros in the months before the April 7, 2008 attack, and that "[t]hese attacks [were] S[pecial] G[roup] cells that are being commanded to conduct attacks on C[oalition] F[orces] out of Sadr City." *Id.* at 380. In his expert report, Col. Lutz similarly opines that "the attack that killed Sgt. Timothy M. Smith was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 384. The Court is persuaded by this evidence, and in particular observes that the record evidence of copper residue left from the blast is a strong indicator of the use of a precision-manufactured Iranian EFP. *See* disc. *supra* at 19–20 (discussing use of copper in Iranian EFPs). Consequently, upon review of the record evidence regarding the April 7, 2008 attack, along with the broader

evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Sgt. Smith.

### 59. **April 12, 2008 – Sergeant Allen Swinton**

In 2008, Sergeant ("Sgt.") Allen Swinton was serving as a member of the United States Army in Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 59 (Swinton Casualty Rep.) at 2. On the evening of April 12, 2008, Sgt. Swinton was working as part of a seventeen-vehicle resupply convoy from Company A, 703rd Brigade Support Battalion. *See* Lutz Rep. at 386. The convoy was traveling east on Route Christy to Patrol Base ("PB") Zulu near Suwayrah. *See id.* During the patrol mission, Sgt. Swinton was riding in the commander position of the convoy's lead vehicle, which was a Mine-Resistant Ambush Protected vehicle ("MRAP"). *See id.* At approximately 10:53 PM, however, an explosive struck the right side of Sgt. Swinton's MRAP, sending multiple slugs into the vehicle. *See id.* As a result of the blast, Sgt. Swinton "sustained shrapnel wounds to his right wrist and right leg." *Id.* Sgt. Swinton's casualty report confirms that he was "wounded in action" while on active duty in Iraq on April 12, 2008. Pls.' Section 1605A(c) Index, Ex. 59 (Swinton Casualty Rep.) at 1–2.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the April 12, 2008 attack injuring Sgt. Swinton was an EFP traceable to Iran and its proxies. First, the IED report from the attack indicates that "a 4-6 array EFP, with one and a half to two pounds of explosives per EFP, struck the right front side of SGT Swinton's MRAP." Lutz Rep. at 388. Similarly, the CJTF-Troy report from the attack "indicates that the damage to the vehicle was consistent with a 4-6 array EFP," and that fragmentation from the blast "penetrated the door as well as the engine compartment" of Sgt. Swinton's MRAP. *Id.* at 390. And notably, the record also contains compelling photographic evidence depicting damage inflicted to Sgt.

Swinton's vehicle from the blast, including copper residue deposits left behind on the strike points. *See id.* at 390–92.

Moreover, the IED report from the April 12, 2008 attack indicates that the triggerman for the EFP was an insurgent associated with Jaysh al-Mahdi.  *See id.* at 388.  Accordingly, Col. Lutz concludes in his expert report that "the attack that injured Sgt. Swinton was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.* at 392.  Col. Lutz also confirms that "the attack involved a multi-array EFP consisting of 4-6 EFPs."  *Id.*  The Court is persuaded by this evidence. Specifically, the Court observes the strong record evidence connecting the triggerman for the blast with Jaysh al-Mahdi, a group with well known ties to the IRGC.  *See* disc. *supra* at 12–25 (discussing Jaysh al-Mahdi and the IRGC). Therefore, upon review of the record evidence regarding the April 12, 2008 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that injured Sgt. Swinton.

### 60. <u>April 21, 2008 – First Lieutenant Matthew Vandergrift</u>

In 2008, First Lieutenant ("First Lt.") Matthew Vandergrift was serving as a member of the United States Marine Corps in Basrah, Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 60 (Vandergrift Casualty Rep.) at 1.  On April 21, 2008, First Lt. Vandegrift was traveling northwest along Route Topeka, with a four-vehicle convoy.  *See* Lutz Rep. at 395.  During the patrol, First Lt. Vandergrift was riding in the convoy's second vehicle, which was an up-armored M114 HMMWV.  *See id.*  At approximately 11:12 AM local time, an explosive device struck First Lt. Vandergrift's HMMWV, causing the vehicle to burst into flames.  *See id.*  The explosion caused First Lt. Vandergrift massive internal injuries, which led to his death later that afternoon.  *See id.*

First Lt. Vandergrift's casualty report confirms that he died in Basrah, Iraq on April 21, 2008, as the result of hostile "blast injuries" sustained "while conducting combat operations." Pls.' Section 1605A(c) Index, Ex. 60 (Vandergrift Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the April 21, 2008 attack causing the death of First Lt. Vandergrift was an EFP traceable to Iran and its proxies. As an initial matter, the SIGACT report from the attack notes that the April 21, 2008 explosion was the result of a "probable EFP." Lutz Rep. at 395. Moreover, the TF-Renegade Report from the attack indicates that "the damage to the vehicle was consistent with a single copper-lined EFP that was PIR initiated." *Id.* That same report also notes that "Special Groups likely intended to attack . . . as retaliation for ongoing operations in Basrah." *Id.* Finally, the record contains compelling photographic evidence of the complete damage inflicted upon First Lt. Vandergrift's up-armored M1114 HMMWV from the blast. *See id.* at 396.

In his expert report, Col. Lutz opines that the April 21, 2007 attack "involved the use of an Iranian-manufactured, military-grade EFP." *Id.* Relatedly, Col. Lutz concludes that "the attack that killed [First Lt.] Vandegrift was part of the EFP campaign orchestrated by the IRGC and Hezbollah, and that the attack was likely conducted by one of the IRGC's Special Group proxies." The Court is persuaded by this evidence. Consequently, upon review of the record evidence regarding the April 21, 2008 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed First Lt. Vandergrift.

### 61. **August 4, 2008 – Specialist Jonathan D. Menke**

In 2008, Specialist ("Spc.") Jonathan D. Menke was serving as a member of the United States Army in Baghdad, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 61 (Menke Casualty Rep.)

at 1.  On August 4, 2008, Spc. Menke was traveling west on Route Airport Road in Baghdad with a four-vehicle patrol consisting of four M1151 HMMWVs and twelve military personnel from 2nd Squad, 3rd Platoon, 38th Military Police Company.  *See* Lutz Rep. at 398.  During the patrol, Spc. Menke was driving the convoy's lead M1151 HMMWV.  *See id.* at 399.  At approximately 9:35 AM local time, however, an explosive emplaced on the side of the road struck Spc. Menke's HMMWV on its passenger side, as the vehicle was stopped at a National Police checkpoint.  *See id.* at 398–99.  The blast killed Spc. Menke, *see id.* at 399, and his casualty report confirms that he was killed in action on August 4, 2008 in Baghdad, Iraq, as the result of a "penetrating blast injury of the chest," Pls.' Section 1605A(c) Index, Ex. 61 (Menke Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the August 4, 2008 attack causing the death of Spc. Menke was an EFP traceable to Iran and its proxies.  As an initial matter, the AR 15-6 investigation report from the attack indicates that "Spc. Menke was killed instantly by [an] EFP strike," which "blew the doors of [his] M1151 open."  Lutz Rep. at 399.  Similarly, the SIGACT report from the attack notes "that the device used in the attack comprised two 8-inch EFPs," and also confirms that Spc. Menke's vehicle was equipped with a Rhino device at the time of the attack.  *Id.* at 400.  Furthermore, the JTF Troy report from the attack notes that "copper fragments" where recovered from the penetration points in Spc. Menke's vehicle.  *See id.* at 401.  And the record also contains photographic evidence depicting these penetration points inflicted upon Spc. Menke's up-armored M1151 HMMWV during the blast.  *See id.* at 403.

Additionally, the SIGACT report indicates that the August 4, 2008 "attack was most likely conducted by the Baghdad Al Jadida JAM Cell."  *Id.* at 400.  And in his expert report, Col. Lutz similarly concludes that "the attack that killed Spc. Menke was part of the EFP campaign

orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 405.  Col. Lutz also opines that "[t]he attack involved a multi-array copper-lined EFP." *Id.*  The Court is persuaded by this evidence.  Upon review of the record evidence regarding the August 4, 2008 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Spc. Menke.

### 62. August 26, 2008 – Specialist Carlo Alfonso

In 2008, Specialist ("Spc.") Carlo Alfonso was serving as a member of the United States Army in Baghdad, Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 62 (Alfonso Casualty Rep.) at 1. On August 26, 2008, Spc. Alfonso was part of a convoy traveling northeast on a route clearance patrol mission on Route Grizzlies in the Sadr City area of Baghdad.  Lutz Rep. at 407.  Within the patrol, Spc. Alfonso was riding the convoy's third vehicle, which was a Mine-Resistant Ambush Protected vehicle ("MRAP").  *See id.*  At approximately, 8:00 PM local time, however, an explosive device struck the right side of Spc. Alfonso's MRAP, inflicting traumatic injuries upon Spc. Alfonso, who died of those injuries that night.  *See id.*  Spc. Alfonso's casualty report confirms that he died of his wounds in Baghdad, on August 26, 2008, as the result of hostile "blast injuries." Pls.' Section 1605A(c) Index, Ex. 62 (Alfonso Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the August 26, 2008 attack causing the death of Spc. Alfonso was an EFP traceable to Iran and its proxies.  First, the SIGACT report from the attack indicates that the explosive device causing the blast "consisted of a [redacted] EFP w/ approximately 20 lbs of unk[nown] bulk explosives," featuring "a copper cone and metal body."  Lutz Rep. at 408.  Similarly, the CJTF-Troy report from the attack indicates the use of an "EFP [with] a copper liner," and further notes

that the EFP was emplaced within a roadside "shack" constructed with a stand for the EFP designed "to achieve its intended point of impact." *Id.* Notably, the record also contains compelling photographic evidence depicting the significant damage and penetration inflicted upon Spc. Alfonso's MRAP from the attack. *See id.* at 409. And finally, the SIGACT report states that the area around Route Grizzlies, where the August 26, 2008 attack occurred, had been the site of multiple retaliatory attacks by "Special Groups" against Coalition Forces. *Id.* at 407.

In his expert report, Col. Lutz opines that the August 26, 2008 attack "involved a concealed, copper-lined EFP emplaced in a tactically advantageous position in a tin shack aligning the convoy route, elevated on a stand so as to inflict maximum injuries to the occupants of an MRAP." *Id.* at 410. Moreover, Col. Lutz goes on to explain that "[t]hese facts, together with the composition of the EFP, indicate that the attackers possessed extensive training in the use and emplacement of EFPs and considerable tradecraft." *Id.* Accordingly, he concludes that "the attack that killed Spc. Alfonso was part of the EFP campaign orchestrated by the IRGC and Hezbollah, and that the attack was likely conducted by one of the IRGC's Special Group proxies." *Id.* The Court is persuaded by this evidence, in particular the copper lining of the EFP and the sophistication of the attack are strong indicators of the use of a precision-manufactured Iranian weapon. *See* disc. *supra* at 12–25. Consequently, upon review of the record evidence regarding the August 26, 2008 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Spc. Alfonso.

### 63. September 4, 2008 – Staff Sergeant Kennith W. Mayne and Private First Class Christopher Miller

In 2008, both Staff Sergeant ("Staff Sgt.") Kennith W. Mayne and Private First Class ("PFC") Christopher Miller were serving as members of the United States Army in Baghdad, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 63 (Mayne & Miller Casualty Rep.) at 1–3. On September

4, 2008, Staff Sgt. Mayne and PFC Miller were traveling northwest on Route Pluto to the Route

Predators with a five-vehicle patrol from 1st Battalion, 66th Armor Regiment. *See* Lutz Rep. at

411. During the patrol, Staff Sgt. Mayne and PFC Miller were riding in the convoy's lead vehicle,

which was an M1151 HMMWV. *See id.* at 411–12. At approximately 12:15 PM local time,

however, a multi-array explosive struck the right side of Staff Sgt. Mayne and PFC Miller's M1151

HMMWV. *See id.* at 411. The blast killed Staff Sgt. Mayne, who was occupying the gunner's

position in the vehicle, and injured PFC Miller, who was the vehicle's driver. *See id.* To that end,

Staff Sgt. Mayne's casualty report confirms that he was killed in action on September 4, 2008 from

"blast and shrapnel injuries," and PFC Miller's casualty report confirms that he sustained "shrapnel

wounds" during the attack. Pls.' Section 1605A(c) Index, Ex. 63 (Mayne & Miller Casualty Rep.)

at 1–3.

The Court finds satisfactory evidence in the record to demonstrate that the explosive

responsible for the September 4, 2008 attack causing the death of Staff Sgt. Mayne and injuring

PFC Miller was an EFP traceable to Iran and its proxies. As an initial matter, the SIGACT report

from the attack "notes that the device used in the attack was a 3 array EFP that struck the right side

engine compartment and destroy[ed] the front end of the Humvee." Lutz Rep. at 412. Similarly,

the IED Report from the attack describes the explosive device as "a three array, one 10 inch and

two 6-8 inch EFPs with copper liners." *Id.* Finally, the "Event Storyboard" from the attack also

confirms that "the device used in the attack was a 3x EFP array [consisting of] 1x 10" and 2x 6-8"

EFPs with copper liners," and further notes that a "Special Group Cell likely perpetrated this

attack." *Id.* at 415.

In his expert report, Col. Lutz opines that the September 4, 2008 attack "involved a multi-

array copper-lined EFP," which killed Staff Sgt. Mayne and injured PFC Miller. *Id.* at 416. Col.

Lutz also concludes that this attack "was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* The Court is persuaded by this evidence. The Court also notes here that the record evidence shows that Staff Sgt. Mayne and PFC Miller's HMMWV was fitted with a CREW system and Level 1 armor. *See id.* at 412, 415. The defeat of an M1151 HMMWV outfitted with these defense systems, by a copper-lined explosive, strongly indicates the use of an Iranian precision-manufactured EFP in the attack. *See* disc. *supra* at 12–25. Accordingly, upon review of the record evidence regarding the September 4, 2008 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Staff Sgt. Mayne and injured PFC Miller.

### 64. <u>December 28, 2008 – Corporal Tony J. Gonzales</u>

In 2008, Corporal ("Cpl.") Tony J. Gonzales was serving as a member of the United States Army in Baghdad, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 64 (Gonzales Casualty Rep.) at 1. On December 28, 2008, Cpl. Gonzales was participating in a route sanitizing mission with a three-vehicle convoy comprising twenty soldiers from 1st Platoon, Charlie Company, 1st Battalion, 35th Armored Regiment and 1st Battalion, 6th Infantry Regiment. *See* Lutz Rep. at 418. Within the convoy, Cpl. Gonzales was positioned within the turret of the lead vehicle, which was a Mine-Resistant Ambush Protected vehicle ("MRAP"). *See id.* At approximately 2:00 PM local time, as the convoy proceeded north on Route Florida, an explosive struck the turret of Cpl. Gonzales's MRAP. *See id.* The explosive effectively penetrated the vehicle's turret and killed Cpl. Gonzales instantly. *See id.* at 418–19. Cpl. Gonzales's casualty report confirms that he was killed in action

in Sadr City, Iraq on December 28, 2008 during hostile action.  *See* Pls.' Section 1605A(c) Index, Ex. 64 (Gonzales Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the December 28, 2008 attack causing the death of Cpl. Gonzales was an EFP traceable to Iran and its proxies.  First, the SIGACT report from the attack describes the blast as an "EFP Strike."  Lutz Rep. at 419.  And the Army's AR 15-6 investigative report also indicates that an "EFP penetrated the glass on the turret" of Cpl. Gonzales's vehicle, "striking Cpl. Gonzales in the head."  *Id.*  Moreover, the CEXC report from the attack confirms the recovery of "copper EFP slugs" from the attack site.  *Id.* at 425.  Finally, Col. Lutz opines in his expert report that the December 28, 2008 attack "involved a copper EFP with a net explosive weight of 25-35 lbs."  *Id.* at 426.

The record evidence also connects the December 28, 2008 EFP attack with Iranian proxies in Iraq.  For example, the SIGACT report notes that a "heavy Coalition Force" presence in Sadr City "had exacerbated anti-CF sentiment in a historical JAM/SG support zone VIC Al-Sadiqah Al-Tahirah Husaniyah (the historical Mustafa al-Sadr JAM BN headquarters)."  *Id.* at 420. Additionally, the WIT 19 report from the blast notes the presence of Jaysh al-Maydi EFP activity in the area, specifically targeting larger military vehicles.  *Id.* at 422; *see also* disc. *supra* at 12–25 (discussing relationship between Jaysh al-Mahdi and Iran).  And in his expert report, Col. Lutz concludes that the December 28, 2008 attack "that killed Cpl. Tony J. Gonzales was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.* at 426.

The Court is persuaded by this evidence.  In particular, the Court observes the strong record evidence indicating the involvement of Iranian proxies in the December 28, 2008 attack in Sadr

City.  Consequently, upon review of the record evidence regarding the December 28, 2008 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Cpl. Gonzales.

### 65. January 10, 2009 – Staff Sergeant Justin Bauer

In 2009, Staff Sergeant ("Staff Sgt.") Justin Bauer was serving as a member of the United States Army in Baghdad, Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 65 (Bauer Casualty Rep.) at 1.  On January 10, 2009, Staff Sgt. Baur was traveling south on Haab Road near Route Florida with a four-vehicle convoy from Delta Company, 2nd Battalion, 505th Parachute Infantry Regiment, 82nd Brigade Support Battalion, 3rd Brigade Combat Team, 82nd Airborne Division. *See* Lutz Rep. at 427.  Within the patrol unit, Staff Sgt. Bauer was serving as the truck commander for the convoy's lead vehicle, which was a Mine-Resistant Ambush Protected vehicle ("MRAP"). *See id* at 427–28.  At approximately 7:59 PM local time, however, an explosive struck the driver's side of Staff Sgt. Bauer's MRAP, penetrating the vehicle at multiple points and killing Staff Sgt. Bauer.  *See id.*  Staff Sgt. Bauer's casualty report confirms that he was killed in action in Baghdad, on January 10, 2009, as the result of hostile "blast injuries."  Pls.' Section 1605A(c) Index, Ex. 65 (Bauer Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the January 10, 2009 attack causing the death of Staff Sgt. Bauer was an EFP traceable to Iran and its proxies.  First, the AR 15-6 investigation report from the attack indicates that "the attack was initiated with a command wire EFP" containing "copper plate[s]."  Lutz Rep. at 428.  Similarly, the SIGACT report notes that the explosive responsible for the attack was "a copper lined, multiple array, command fired EFP."  *Id.* at 429.  The IED Report from the attack also describes the device responsible for the explosion as a "command fired multiple array EFP."

*Id.* at 430.  Moreover, the record contains compelling photographic evidence of the penetrative damage inflicted to Staff Sgt. Bauer's armored vehicle by the EFP slugs from the attack.  *See id.* at 433.

In his expert report, Col. Lutz opines that the January 10, 2009 attack "involved a multi-array copper EFP that was command wire initiated and contained approximately 24 pounds of an unknown bulk explosive."  *Id.* at 436.  Additionally, Col. Lutz concludes that the attack "was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.*  The Court is persuaded by this evidence. Upon review of the record evidence regarding the January 10, 2009 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Staff Sgt. Bauer.

### 66. <u>January 18, 2009 – Staff Sergeant Roberto Andrade, Jr.</u>

In 2009, Staff Sergeant ("Staff Sgt.") Roberto Andrade, Jr. was serving as a member of the United States Army in Baghdad, Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 66 (Andrade Casualty Rep.) at 1.  On January 18, 2009, Staff Sgt. Andrade departed from Forward Operating Base Rustamiyah ("FOB Rustamiyah") as part of a personal security detail for an officer within his battalion, who was traveling to meet a local Iraqi Army Commander.  *See* Lutz Rep. at 437.  The security detail comprised four armored vehicles, and Staff Sgt. Andrade served as the commander of an armored Mine Resistant Ambush Protected vehicle ("MRAP") at the head of the convoy. *See id.*  But shortly after departing from FOB Rustamiyah, a multi-array explosive struck Staff Sgt. Andrade's MRAP, killing Sgt. Andrade.  *See id.*  Staff Sgt. Andrade's casualty report confirms

that he was killed in action in Baghdad, on January 18, 2009, as the result of hostile "blast injuries." Pls.' Section 1605A(c) Index, Ex. 66 (Andrade Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the January 18, 2009 attack causing the death of Staff Sgt. Andrade was an EFP traceable to Iran and its proxies.  As an initial matter, the SIGACT report from the attack indicates that Staff Sgt. Andrade's "MRAP was struck by a dual array [redacted] copper lined EFP."  Lutz Rep. at 438.  Moreover, the AR 15-6 investigation report from the attack notes that Staff Sgt. Andrade's "MRAP was struck by a dual-array EFP that was placed on top of or behind the wall that was to the immediate right of [his] vehicle" sending a "copper slug" into the vehicle, which caused Staff Sgt. Andrade "massive face and head trauma."  *Id.* at 438.  And the IED report further indicates that the EFPs used in the attack "were elevated for a direct attack against an MRAP vehicle."  *Id.* at 439.  Finally, the record also contains photographic evidence depicting the penetrative damage inflicted to Staff Sgt. Andrade's armored vehicle from the blast.  *See id.*

In his expert report, Col. Lutz opines that the January 18, 2009 attack involved "the use of a dual-array, copper lined EFP," creating slugs that "penetrated both the transparent armor and the steel armor of [Staff Sgt.] Andrade's MRAP, causing him massive traumatic head and facial injuries that resulted in his death."  *Id.* at 440.  Moreover, Col. Lutz concludes that "the attack that killed [Staff Sgt.] Andrade was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.*  The Court is persuaded by this evidence.  Accordingly, upon review of the record evidence regarding the January 18, 2009 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the

Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Staff Sgt. Andrade.

### 67. **April 22, 2009 – Corporal Brad A. Davis**

In 2009, Corporal ("Cpl.") Brad A. Davis was serving as a member of the United States Army in Baghdad, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 67 (Davis Casualty Rep.) at 1. On April 22, 2009, Cpl. Davis participated in a resupply mission, while traveling east on Route Florida with a ten-vehicle convoy from the Fox Company, 2nd Battalion, 505th Parachute Infantry Regiment, 82nd Brigade Support Battalion, 3rd Brigade Combat Team, 82nd Airborne Division. *See* Lutz Rep. at 442. During the mission, Cpl. Davis occupied the turret position within the convoy's lead vehicle, a Mine Resistant Ambush Protected vehicle ("MRAP") outfitted with a CREW system and a Rhino device. *See id.* at 442–43. At approximately 7:45 PM local time, however, a multi-array explosive struck the passenger side of Cpl. Davis's MRAP, sending a slug into the vehicle's turret, which killed Cpl. Davis. *See id.* Cpl. Davis's casualty report confirms that he was killed during hostile action on April 22, 2009 in Baghdad, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 67 (Davis Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the April 22, 2009 attack causing the death of Cpl. Davis was an EFP traceable to Iran and its proxies. First, the SIGACT report from the attack indicates that "the IED Type was an EFP and that it was a 3 array EFP." Lutz Rep. at 443. And the AR 15-6 investigation report confirms that Cpl. Davis's MRAP "was struck by an EFP," notwithstanding the fact that the MRAP was equipped with functional anti-IED CREW systems. *Id.* Furthermore, the IED report from the attack elaborates that "the device used in the attack was a three-array EFP," with "the third EFP . . . aimed at the gunner" of Cpl. Davis's armored vehicle. *Id.* at 444. Moreover, the record contains

compelling photographic evidence depicting the extensive penetrative damage inflicted upon Cpl. Davis's armored MRAP during the blast.  *See id.* at 446–48.

In his expert report, Col. Lutz opines that the April 22, 2009 attack "involved a multi-array copper lined EFP that was command wire initiated" and "emplaced on the ground near a light pole on the side of Route Florida," positioned "at an angle to strike the gunner."  *Id.* at 454. Furthermore, Col. Lutz opines that "the attack that killed Cpl. Brad A. Davis was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.*  The Court is persuaded by this evidence.  In particular, the fact that the explosive successfully defeated Cpl. Davis's armored vehicle, notwithstanding its CREW system and Rhino device, is a strong indicator of the use of a precision-manufactured Iranian EFP.  *See* disc. *supra* at 24–25 (discussing CREW systems and Rhino devices).  Upon review of the record evidence regarding the April 22, 2009 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Cpl. Davis.

### 68. May 16, 2009 – Specialist David Schaefer

In 2009, Specialist ("Spc.") David Schaefer was serving as a member of the United States Army in Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 68 (Schaefer Casualty Rep.) at 1.  On May 16, 2009, Spc. Schaefer was returning from a training mission, traveling eastbound on ASR Madrid with a six-vehicle convoy from Charlie Company, 1st Battalion, 2nd Infantry Regiment, 172nd Infantry Brigade.  *See* Lutz Rep. at 455.  Spc. Schaefer was positioned in the rear driver's side seat of the convoy's lead vehicle, which was an M1151 HMMWV.  *See id.*  At approximately 11:41 AM local time, however, a roadside explosive struck the driver's side of Spc. Schaefer's vehicle, killing Spc. Schaefer.  *See id.* at 455–56.  Spc. Schaefer's casualty report confirms that he died in

Iraq on May 16, 2009, as the result of "blast and blast fragmentation injuries."  Pls.' Section 1605A(c) Index, Ex. 68 (Schaefer Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the May 16, 2009 attack causing the death of Spc. Schaefer was an EFP traceable to Iran and its proxies.  As an initial matter, the SIGACT report from the attack confirms that the "device [was] an EFP."  Lutz Rep. at 456.  Moreover, the IED report indicates that the attack involved an "EFP [that] was placed at the base of a lamp post on ASR Madrid in the center median targeting eastbound traffic."  *Id.*  The record also contains photographic evidence depicting Spc. Schaefer's targeted M1151 HMMWV and the damage the vehicle sustained to its left rear door during the blast.  *See id.* at 459.  Finally, the "event storyboard" from the attack indicates that Special Groups had increased freedom of movement in the region wherein the May 16, 2009 attack occurred.  *See id.* at 460.

In his expert report, Col. Lutz opines that the May 16, 2009 attack "involved an EFP that . . . was placed at the base of a light pole in the center median of ASR Madrid."  *Id.*  Moreover, Col. Lutz concludes that "the attack that killed Spc. Schaefer was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.*  The Court is persuaded by this evidence.  Accordingly, upon review of the record evidence regarding the May 16, 2009 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Spc. Schaefer.

### 69. June 28, 2009 – Staff Sergeant Timothy A. David

In 2009, Staff Sgt. ("Staff Sgt.") Timothy A. David was serving as a member of the United States Army in Baghdad, Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 69 (David Casualty Rep.) at

1.  On June 28, 2009, Staff Sgt. Davis was traveling north on Route Grizzlies towards Joint Security Station ("JSS") Ur with a four-vehicle convoy from 2nd Battalion, 5th Cavalry Regiment. *See* Lutz Rep. at 462.  Staff Sgt. David was the truck commander of the convoy's fourth vehicle, which was a Mine Resistant Ambush Protected vehicle ("MRAP").  *See id.* At approximately 8:30 PM local time, an explosive device emplaced on the east side of Route Grizzlies struck Staff Sgt. David's vehicle, penetrated the truck commander window, and killed Staff Sgt. David.  *See id.* Staff Sgt. David's casualty report confirms that he died in Iraq on June 28, 2009 from "blast injuries" sustained during hostile action.  Pls.' Section 1605A(c) Index, Ex. 69 (David Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the June 28, 2009 attack causing the death of Staff Sgt. David was an EFP traceable to Iran and its proxies.  First, the SIGACT report from the attack indicates that "the device used in the attack [w]as a single array EFP with steel liner and contained approximately 50 to 60 lbs of u[nknown] b[ulk] e[xplosive]."  Lutz Rep. at 463.  Moreover, the AR 15-6 report from the attack confirms that "Staff Sgt. David was a Truck Commander (TC) of a[n] MRAP when it was struck by an explosively formed projectile (EFP) that penetrated the vehicle through the T[ruck] C[ommander] window and str[uck] the S[ervice] M[ember] in the head."  *Id.*  Relatedly, Col. Lutz opines in his expert report that the June 28, 2009 attack "involved a steel lined EFP with 50-60 lbs. of an unknown bulk explosive that struck the MRAP and entered the vehicle through the truck commander's window."  *Id.* at 468.

The record evidence also connects the June 28, 2009 EFP attack with Iranian proxies in Iraq.  For example, the IED report from the attack notes that the "attack was coordinated by an AAH EFP cell."  *Id.* at 464; *see also* disc. *supra* at 17 (discussing Asa'ib Ahl al-Haq activity in

Iraq).  Similarly, the SIGACT report also indicates that "the EFP attack was coordinated by a lower level Asa'ib Ahl al-Haq EFP cell."  Lutz Rep. at 464.  And Col. Lutz concludes in his expert report that the June 28, 2009 attack "that killed [Staff Sgt.] David was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.* at 468.

The Court is persuaded by this evidence.  In particular, the record contains strong evidence demonstrating the involvement of Asa'ib Ahl al-Haq, a known Iranian proxy group, in the EFP attack that killed Staff Sgt. David.  *See* disc. *supra* at 17.  Consequently, upon review of the record evidence regarding the June 28, 2009 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Staff Sgt. David.

**70. September 8, 2009 – Staff Sergeant Shannon M. Smith and Specialist Zachary T. Myers**

In 2008, both Staff Sergeant ("Staff Sgt.") Shannon M. Smith and Specialist ("Spc.") Zachary T. Myers were serving as members of the United States Army in Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 70 (Smith & Myers Casualty Rep.) at 1–2.  On September 8, 2009, Staff Sgt. Smith and Spc. Myers were traveling east on Salah Ad Din Street with a four-vehicle patrol from the 545th Military Police Company, 607th Military Police Battalion, 8th Military Police Brigade.  *See* Lutz Rep. at 469.  Within the patrol, Staff Sgt. Smith and Spc. Myers were riding in the last vehicle of the convoy, which was a Mine Resistant Ambush Protected vehicle ("MRAP").  *See id.* At approximately 8:00 AM local time, however, an explosive struck Staff Sgt. Smith and Spc. Myers's vehicle from the left side of the road.  *See id.*  The blast blew off the vehicle's doors and the vehicle's turret, leading to the deaths of both Staff Sgt. Smith and Spc. Myers.  *See id.* at 469–70.  To that end, Staff Sgt. Smith's casualty report confirms that he was killed during hostile action

in Iraq on September 8, 2009, and, Spc. Myers casualty report similarly confirms that he was killed in action on September 8, 2009 in Iraq, as the result of hostile "blast injuries."  Pls.' Section 1605A(c) Index, Ex. 70 (Smith & Myers Casualty Rep.) at 1–2.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the September 8, 2009 attack causing the deaths of Staff Sgt. Smith and Spc. Myers was an EFP traceable to Iran and its proxies.  As an initial matter, the IED report from the attack indicates that the munitions type from the blast was a "Shaped Charge/EFP."  Lutz Rep. at 470.  Moreover, the SIGACT report from the attack confirms that command wire was recovered from the blast site.  *See id.*; disc. *supra* at 20 (noting that EFPs in the Iraqi theatre are commonly initiated through command wire).  The record also contains compelling photographic evidence showing the significant damage inflicted to Staff Sgt. Smith and Spc. Myers's MRAP from the blast, including the total destruction of the vehicle's turret.  *See* Lutz Rep. at 472–73.  Finally, Col. Lutz opines in his expert report that the September 8, 2009 attack "involved an EFP," and further concludes that the attack "was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.* at 474.  The Court is persuaded by this evidence.  Upon review of the record evidence regarding the September 8, 2009 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Staff Sgt. Smith and Spc. Myers.

### 71. <u>April 27, 2010 – Specialist Nicholas Baumhoer</u>

In 2010, Specialist ("Spc.") Nicholas Baumhoer was serving as a member of the United States Army in Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 71 (Baumhoer Purple Heart) at 1; Lutz Rep. at 475.  On April 27, 2010, Spc. Baumhoer was traveling south on Route Cheyenne while

conducting battlefield circulation with a three-vehicle convoy from 1st Battalion, 37th Field Artillery Regiment, 3rd Stryker Brigade Combat Team, 2nd Infantry Division. *See* Lutz Rep. at 475. During the mission, Spc. Baumhoer was riding in the convoy's third vehicle, which was a Mine Resistant Ambush Protected vehicle ("MRAP"). *See id.* at 475–76. At approximately 8:15 AM local time, an explosive emplaced in a mound of dirt along Route Cheyenne struck Spc. Baumhoer's MRAP. *See id.* at 475. The explosive entered into the MRAP's main crew compartment, causing Spc. Baumhoer to sustain injuries and killing another U.S. servicemember within the vehicle. *See id.* at 476. Spc. Baumhoer's Purple Heart Award confirms that he received wounds in action on April 27, 2010. *See* Pls.' Section 1605A(c) Index, Ex. 71 (Baumhoer Purple Heart) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the April 27, 2010 attack causing the injuries of Spc. Baumhoer was an EFP traceable to Iran and its proxies. First, the AR 15-6 investigation report from the attack confirms that "the device employed against the patrol was determined to be an explosively formed penetrator (EFP)." Lutz Rep. at 476. Moreover, the SIGACT report from the attack indicates that the blast involved an "EFP/IED . . . initiated by command wire," and that the "EFP struck the vehicle crew cabin . . . indicat[ing] that the EFP was angled up." *Id.* at 477. That same report also notes that the April 27, 2010 attack was the eighth EFP attack in the area around Khalis, Iraq within the year. *See id.* Moreover, the record contains compelling photographic evidence showing the damage sustained by Spc. Baumhoer's MRAP during the blast, including the penetrative damage inflicted by the EFP to the vehicle's crew compartment. *See id.* at 482.

In his expert report, Col. Lutz opines that the April 27, 2010 attack that injured Spc. Baumhoer "involved an EFP with approximately 40 lbs. of an unknown bulk explosive and was

command wired initiated." *Id.* at 485.  Moreover, Col. Lutz concludes that the attack "was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.*  The Court is persuaded by this evidence. In particular, the photographic evidence depicting the clear penetrative damage inflicted upon Spc. Baumhoer's armored vehicle, as well as the evidence indicating that the explosive was specifically angled upward for targeting purposes, presents a strong indicator of the use of a precision-manufactured Iranian EFP.  *See* disc. *supra* at 19–20 (discussing unique ability of EFP to penetrate armored vehicles).  Accordingly, upon review of the record evidence regarding the April 27, 2010 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that injured Spc. Baumhoer.

### 72. July 7, 2011 – Specialist Nicholas W. Newby

In 2011, Specialist ("Spc.") Nicholas W. Newby was serving as a member of the United States Army in Baghdad, Iraq.  *See* Pls.' Section 1605A(c) Index, Ex. 72 (Newby Casualty Rep.) at 1.  On July 7, 2011, Spc. Newby was traveling southwest on Route Thunder, while conducting a mobility mission with a three-vehicle convoy from B Company, 145th Brigade Support Battalion, 116th Cavalry Heavy Brigade Combat Team.  *See* Lutz Rep. at 487.  During the mission, Spc. Newby was serving as the truck commander for the convoy's third vehicle, which was a M1151 HMMWV.  *See id.* at 487–88.  At approximately 10:30 AM local time, a multi-array explosive struck the driver's side of Spc. Newby's vehicle.  *See id.*  The blast caused the M1151 to veer into a wall and sustain serious damage, leading to Spc. Newby's death.  *See id.* at 487–88. Spc. Newby's casualty report confirms that he was killed in action on July 7, 2011, as the result of

"blast injuries" sustained in Baghdad, Iraq.  Pls.' Section 1605A(c) Index, Ex. 72 (Newby Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the July 7, 2011 attack causing the death of Spc. Newby was an EFP traceable to Iran and its proxies.  As an initial matter, the SIGACT report makes clear the IED used in the July 7, 2011 attack "was a large multi-array EFP that was surface laid and steel in construction."  Lutz Rep. at 488.  Moreover, the AR 15-6 investigation report from the attack confirms that Spc. Newby's "M1151 was hit by an explosively formed projectile (EFP)" and further notes that "the CREW systems in the convoy were operating normally" at the time of the blast.  *Id.*  Finally, the Intelligence Information Report from the attack concludes that "two members of Jaysh Al-Mahdi working with Asa'ib Ahl al-Haq planned and conducted the explosively formed projectile attack on United States Forces."  *Id.* at 490.

In his expert report, Col. Lutz opines that the July 7, 2011 attack involved a "multi-array EFP," which "struck Spc. Newby's M1151 on the driver's side killing Spc. Newby, who was the truck commander."  *Id.* at 493.  Moreover, Col. Lutz concludes that "the attack that killed Spc. Nicholas W. Newby was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.*  The Court is persuaded by this evidence, in particular, the record evidence demonstrating the involvement of Jaysh al-Mahdi and Asa'ib Ahl al-Haq in the attack.  *See* disc. *supra* at 12–25 (discussing relationship between Iran, Jaysh al-Mahdi, and Asa'ib Ahl al-Haq).  Consequently, upon review of the record evidence regarding the July 7, 2011 attack, along with the broader evidence of Iran's

use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that injured Spc. Newby.

### 73. <u>November 14, 2011 – Specialist David Emanuel Hickman</u>

In 2011, Specialist ("Spc.") David Emanuel Hickman was serving as a member of the United States Army in Baghdad, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 73 (Hickman Casualty Rep.) at 1. On November 14, 2011, Spc. Hickman was traveling south on Route Tampa with an air supply convoy from 2nd Battalion, 325th Airborne Infantry Regiment, 2nd Brigade Combat Team, 82d Airborne Division. *See* Lutz Rep. at 494. During the air supply mission, Spc. Hickman was riding in the convoy's lead vehicle, which was a Mine Resistant Ambush Protected vehicle ("MRAP"). *See id.* At approximately 7:00 PM local time, however, an explosive struck the passenger's side of Spc. Hickman's MRAP, causing Spc. Hickman to sustain fatal wounds. *See id.* Spc. Hickman's casualty report confirms that he died of his wounds sustained during hostile action on November 14, 2011 in Baghdad, Iraq. *See* Pls.' Section 1605A(c) Index, Ex. 73 (Hickman Casualty Rep.) at 1.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the November 14, 2011 attack causing the death of Spc. Hickman was an EFP traceable to Iran and its proxies. First, the SIGACT report from the attack "assessed the IED as an EFP" and confirmed the presence of "copper residue" on Spc. Hickman's MRAP following the explosion. Lutz Rep. at 494–95. That SIGACT report also notes that the July 7, 2011 attack was "the first EFP attack to occur along this portion of MSR Tampa in the last 6 months" and that such EFP attacks were traditionally "conducted by Iranian backed militias." *Id.* at 495. Relatedly, Col. Lutz concludes in his expert report that the November 14, 2011 attack "that killed Spc. Hickman was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one

of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 496. The Court is persuaded by this evidence. Upon review of the record evidence regarding the November 14, 2011 attack, along with the broader evidence of Iran's use of EFPs in Iraq, the Court finds that Iran and its proxies bear responsibility for the EFP attack that killed Spc. Hickman.

## IV.     CONCLUSIONS OF LAW

The Court's Conclusions of Law proceed in three parts. First, the Court evaluates whether it has subject-matter jurisdiction, pursuant to the FSIA's terrorism exception to foreign sovereign immunity, over Plaintiffs' claims arising from the seventy-three non-bellwether EFP attacks outlined above in the Court's Findings of Fact. Next, the Court assesses whether Plaintiffs have satisfactorily established their claims for relief under the federal cause of action associated with the FSIA's terrorism exception. Finally, the Court considers whether it has personal jurisdiction over Iran in this action.

### A.  Subject-Matter Jurisdiction and Liability

For the reasons set forth below, the Court concludes that it has subject-matter jurisdiction over Plaintiffs' claims under 28 U.S.C. 1605A(a)(1). The Court also finds that Plaintiffs have successfully established their right to relief under 28 U.S.C. § 1605A(c) on some, but not all, of their individual claims. *See* Am. Compl., ECF No. 8, ¶¶ 1161–74.

#### 1. <u>Subject-Matter Jurisdiction</u>

"The FSIA provides a basis for asserting jurisdiction over foreign nations in the United States." *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 87 (D.C. Cir. 2002) (citing *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989)). Pursuant to the FSIA, the Court has "original jurisdiction" over "nonjury civil action[s]" against foreign states "without regard to amount in controversy" if the claims seek "relief in personam with respect

to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement."  28 U.S.C. § 1330(a).  Most of these elements are clearly satisfied in this case and require little discussion.  Plaintiffs do not demand a jury trial, they assert civil causes of action, and also seek in personam relief against Defendant Islamic Republic of Iran, a foreign state.

The question of Iran's immunity is more involved.  "[A] foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state."  *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (citing, e.g., 28 U.S.C. § 1604).  "[E]ven if the foreign state does not enter an appearance to assert an immunity defense, a District Court still must determine that immunity is unavailable under the [FSIA]."  *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 n.20 (1983); *see also Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (recognizing that a court must consider, *sua sponte*, a potential defect in its subject-matter jurisdiction).  Plaintiffs have not identified an international agreement that would abrogate Iran's immunity, nor is the Court aware of any such agreement.

Plaintiffs, in this case, have instead relied on the FSIA's terrorism exception to foreign sovereign immunity.  That exception states that:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

28 U.S.C. § 1605A(a)(1).  Additionally, this exception generally applies only when the defendant was a designated state sponsor of terrorism when the act happened *and* at the time the claim was

140

filed or in the preceding six months, *id.* § 1605A(a)(2)(A)(i); the "claimant or the victim" in the case was "a national of the United States," "a member of the armed forces," or "otherwise an employee of the Government of the United States" when the act happened, *id.* § 1605A(a)(2)(A)(ii); and "in a case in which the act occurred in the foreign state against which the claim has been brought, the claimant has afforded the foreign state a reasonable opportunity to arbitrate the claim in accordance with the accepted international rules of arbitration," *id.* § 1605A(a)(2)(A)(iii).

Some of these elements are clearly satisfied and require little discussion.  To start, Iran has been a designated state sponsor of terrorism since 1984 and presently retains that designation.  *See* U.S. Dep't of State, State Sponsors of Terrorism (Dec. 21, 2020), PX-1; Levitt T1-27:16-17.  Next, each of the victims in the seventy-three non-bellwether EFP attacks addressed in the Court's Findings of Fact, with one exception, was a U.S. military servicemember at the time of their death or injury.  *See generally* disc. *supra* Part III.C (discussing military service).  The only exception, Mr. Kwesi Christopher, was working in Iraq as a civilian contractor for the Department of Defense at the time of his death, *see* Pls.' Section 1605A(c) Index, Ex. 32 (Christopher Autopsy Examination Rep.) at 1, and, therefore, also satisfies the jurisdictional requirement set forth in 28 § 1605A(a)(2)(A)(ii), *see id.* § 1605A(a)(2)(A)(ii)(III) (including government contractors).  Finally, none of the injuries or killings at issue in the seventy-three non-bellwether EFP attacks addressed in the Court's Findings of Fact took place in Iran.  *See generally* disc. *supra* Part III.C (finding that each attack occurred within Iraq).  Accordingly, Plaintiffs had no obligation to afford Iran an opportunity to arbitrate.  *See* 28 § 1605A(a)(2)(A)(iii).

Next, the Court concludes that each of the victims in the seventy-three non-bellwether EFP attacks addressed in the Court's Findings of Fact was the victim of either a completed or attempted

"extrajudicial killing."  28 U.S.C. § 1605A(a)(1).  Under the FSIA, the term "extrajudicial killing"

is defined consistently with Section 3 of the Torture Victim Protection Act of 1991 ("TVPA").  28

U.S.C. § 1605A(h)(7).  The TVPA states that:

> For the purposes of this Act, the term "extrajudicial killing" means a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples. Such term, however, does not include any such killing that, under international law, is lawfully carried out under the authority of a foreign nation.

Torture Victim Protection Act of 1991, Pub. L. No. 102-256, § 3(a), 106 Stat. 73.  The Court of

Appeals recognizes "three elements" of this definition: "(1) a killing; (2) that is deliberated; and

(3) is not authorized by a previous judgment pronounced by a regularly constituted court."  *Owens*

*v. Republic of Sudan*, 864 F.3d 751, 770 (D.C. Cir. 2017).

Each element is satisfied here.  First, as set forth in the Court's Findings of Fact, all seventy-

three of the non-bellwether EFPs attacks involved a "deliberated" effort to "kill" the victims of

those attacks.  *See id.*  The lethal intentionality of each EFP attack is evidenced, first and foremost,

by the destructive capacity of the EFP itself, a uniquely powerful weapon utilized in the Iraqi

theater to defeat armored military vehicles.  The record in this case contains extensive testimonial

and documentary evidence demonstrating the salient and strategic capacity of the EFP to inflict

fatalities.  *See* disc. *supra* at 12–25.  Moreover, the deliberate lethality of these EFP attacks is

further supported by the record evidence showing facts, such as the angling of the EFPs to impact

the crew compartment of military vehicles, the development of EFPs to defeat defensive CREW

systems and Rhino devices, and the use of high-energy explosives in their manufacture.  *See* Aug.

26, 2019, Mem. Op., ECF No. 95, at 72–73.  Finally, there is no evidence whatsoever to suggest

that any of the seventy-three EFP attacks outlined in the Court's Findings of Fact were "authorized

by a previous judgment pronounced by a regularly constituted court" or conducted under the lawful

authority of a foreign sovereign.  *Owens*, 864 F.3d at 770; *see also Schwartz v. Islamic Republic of Iran*, No. CV 18-1349 (RDM), 2020 WL 7042842, at *13 (D.D.C. Nov. 30, 2020).  Accordingly, the Court concludes that each of the seventy-three non-bellwether EFP attacks constituted an "extrajudicial killing" within the meaning of the FSIA.  28 U.S.C. § 1605A(a)(1).

Importantly, this conclusion of law also applies to the eight victims addressed in the Court's Findings of Fact who suffered personal injuries, but not death, as the result of an EFP attack.[12] "Based on the 'text and purpose' of the FSIA . . . as well as relevant legislative history," this Court has already concluded that "an incomplete act of extrajudicial killing [also] falls within the scope of Section 1605A(a)(1)."  Aug. 26, 2019, Mem. Op., ECF No. 95, at 74 (quoting *Van Beneden v. Al-Sanusi*, 709 F.3d 1165, 1167 (D.C. Cir. 2013)).   And, as set forth in the Court's Findings of Fact, each of the eight victims in question was injured during an EFP attack carried out in the Iraqi theater.  *See generally* disc. *supra* Part III.C.  The uniquely lethal design and destructive capacity of an EFP compels the conclusion that an EFP attack represents an attempt to kill, whether or not the attackers realize their goal.  Moreover, Plaintiffs Tony Wood, Christopher Miller, and Nicholas Baumhoer were each injured during an EFP attack that simultaneously killed at least one of their fellow soldiers.  *See generally* disc. *supra* Part III.C.  This Court has found that "an attack that extrajudicially killed someone other than the injured servicemember . . . is sufficient for jurisdictional purposes."  Aug. 26, 2019, Mem. Op., ECF No. 95, at 75 (collecting cases).  For these reasons, the eight injured victims, as well as the seventy-six deceased victims, of the seventy-three non-bellwether EFP attacks suffered an "extrajudicial killing," sufficient for the jurisdictional purposes of the FSIA.  28 U.S.C. § 1605A(a)(1).

---

[12] These eight victims are: Timothy Karcher, Tony Wood, Erik Roberts, Ryan Sabinish, Scott Lilley, Allen Swinton, Christopher Miller, and Nicholas Baumhoer.

Next, the Court concludes that Iran provided "material support or resources" for each of these seventy-three non-bellwether EFP attacks. 28 U.S.C. § 1605A(a)(1). The FSIA adopts the definition of "material support or resources" found in 18 U.S.C. § 2339A. 28 U.S.C. § 1605A(h)(3). That section broadly defines "material support or resources" to consist of

> any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials[.]

18 U.S.C. § 2339A(b)(1). As set forth in the Court's Findings of Fact, the IRGC, along with Hezbollah, provided expertise, financial support, and material resources to Iranian proxies in Iraq, specifically to facilitate the use of EFPs against U.S. military service members in furtherance of Iranian strategic interests in the Iraqi theater. *See generally* disc. *supra* Part III.C. Moreover, the Court is satisfied that the IRGC is at least an agent of Iran, if not a part of the government itself, such that individuals working for the IRGC would be officials or employees of Iran. *Cf., e.g.*, *Blais v. Islamic Republic of Iran*, 459 F. Supp. 2d 40, 60–61 (D.D.C. 2006) (finding that IRGC was governmental entity, rather than commercial agent). Lastly, the record evidence in this case demonstrates that each of the seventy-three non-bellwether EFP attacks addressed in the Court's Findings of Fact was traceable to Iran, through the IRGC, Hezbollah, and their proxies. *See generally disc. supra* Part III.C. For these reasons, the Court concludes that Iran, "by an official, employee, or agent," provided "material resources or support" for each of the seventy-three non-bellwether EFP attacks.

Finally, the Court concludes that Iran's material support for the seventy-three non-bellwether EFP attacks was the "proximate cause" of each victim's death or personal injury in those attacks. *Owens*, 864 F.3d at 794; *see also Kilburn v. Socialist People's Libyan Arab*

*Jamahiriya*, 376 F.3d 1123, 1128 (D.C. Cir. 2004)) (clarifying that "jurisdictional causation" under Section 1605A(a) relies on same standard applicable to its predecessor, Section 1605(a)(7)). "Proximate cause requires 'some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered.'" *Owens*, 864 F.3d at 794 (quoting *Kilburn*, 376 F.3d at 1128 (quoting *Prosser & Keeton on the Law of Torts* 263 (5th ed. 1984)) (internal quotation marks omitted)). The "two similar but distinct elements" to establish proximate cause are that 1) "the defendant's actions [were] a 'substantial factor' in the sequence of events that led to the plaintiff's injury," and 2) "the plaintiff's injury [was] 'reasonably foreseeable or anticipated as a natural consequence' of the defendant's conduct." *Id.* (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013)).

Under these elements of proximate cause, there is more than a "reasonable connection" between Iran's material support for its Iraqi proxies and the deaths and injuries suffered in each of the seventy-three non-bellwether EFP attacks addressed in the Court's Findings of Fact. *See Kilburn*, 376 F.3d at 1128–30. Iran, through the IRGC and/or Hezbollah, furnished EFPs or the components thereof, facilitated training of Shi'a militia groups, and supported their effective deployment of EFPs in the Iraqi theater. And, as described above, these Iranian-backed EFPs were specifically designed to inflict maximum and lethal damage to U.S. military vehicles and service members. Moreover, the record evidence also demonstrates that Iranian expertise was necessary for the sophisticated manufacturing and deployment of EFPs. For these reasons, the Court concludes that Iran's "material support" proximately caused the deaths and injuries sustained in each of the seventy-three non-bellwether EFP attacks. *See Owens v. Republic of Sudan*, 374 F. Supp. 2d 1, 13 (D.D.C. 2005) ("It is enough, the D.C. Circuit held [in *Kilburn*], to show that the

material support or resources went to the terrorist organization that perpetrated the act, and that the support was a 'proximate cause' of the terrorist act." (citing *Kilburn*, 376 F.3d at 1127–30)).

Having determined that Iran provided material support through IRGC to Hezbollah and other Shi'a proxies in Iraq, and that this support was for the purpose of extrajudicial killing in each of the seventy-three non-bellwether attacks, the Court concludes that it has subject-matter jurisdiction under the FSIA's terrorism exception over Plaintiffs' claims arising from those attacks.

### 2. **Liability**

Plaintiffs assert private causes of action against Iran under 28 U.S.C. § 1605A(c) for the personal injuries, deaths, and emotional distress caused by the seventy-three non-bellwether EFP attacks addressed in the Court's Findings of Fact. *See* Am. Compl., ECF No. 8, ¶¶ 1161–74. Section 1605A(c) of the FSIA provides that state sponsors of terrorism "shall be liable . . . for personal injury or death caused by acts described in subsection (a)(1) of that foreign state, or of an official, employee, or agent of that foreign state, for which the courts of the United States may maintain jurisdiction under this section for money damages," in suits brought by four categories of individuals, including "member[s] of the armed forces" or their legal representatives. 28 U.S.C. § 1605A(c); *see also Opati v. Republic of Sudan*, 140 S. Ct. 1601, 1606 (2020). In other words, this section creates a cause of action for the same conduct that gives rise to subject-matter jurisdiction under the terrorism exception to sovereign immunity. Importantly, Section 1605A(c) also creates vicarious liability "for the acts of [Iran's] officials, employees, or agents," in this case, the IRGC and its leadership, Hezbollah, and Iraqi proxies. 28 U.S.C. § 1605A(c).

Plaintiffs' § 1605A(c) claims arising from the seventy-three non-bellwether EFP attacks fall into three categories: the claims of "(1) [the] U.S. soldiers and civilians injured in Iraq by terrorist acts that Iran materially supported; (2) the estates of U.S. soldiers and civilians killed in Iraq as a result of such acts; and (3) the immediate family members (or the estates of now-deceased

immediate family members) of the injured and deceased U.S. soldiers and civilians." Pls.' Tr. Br.,

ECF No. 43, at 18. The first two categories comprise the § 1605A(c) claims of forty-two Plaintiffs:

> **Surviving Plaintiffs: (1)** Timothy Karcher, **(2)** Tony Wood, **(3)** Erik Roberts, **(4)** Ryan Sabinish, **(5)** Scott Lilley, **(6)** Allen Swinton, **(7)** Christopher Miller, and **(8)** Nicholas Baumhoer. *See* Am Compl. ¶¶ 1161–65.

> **Estates of Deceased EFP Victims: (1)** Gwendolyn Morin-Marentes, on behalf of the Estate of Steve Morin, Jr., **(2)** Amy Lynn Robinson and Floyd Burton Robinson, on behalf of the Estate of Jeremiah Robinson, **(3)** Deborah Noble, on behalf of the Estate of Charles E. Matheny, IV, **(4)** Patrick Farr, on behalf of the Estate of Clay P. Farr, **(5)** Rayanne Hunter, on behalf of the Estate of Wesley Hunter, **(6)** Lorenzo Sandoval, Sr., on behalf of the Estate of Israel Devora-Garcia, **(7)** John Vacho, on behalf of the Estate of Nathan J. Vacho, **(8)** Nanette Saenz, on behalf of the Estate of Carlos N. Saenz, **(9)** Donna Engeman, on behalf of the Estate of John W. Engeman, **(10)** Jeanette West, on behalf of the Estate of Robert H. West, **(11)** Suzzette Lawson, on behalf of the Estate of Isaac S. Lawson, **(12)** Judy Huenink, on behalf of the Estate of Benjamin J. Slaven, **(13)** Seop (Steve) Kim, on behalf of the Estate of Jang Ho Kim, **(14)** Richard Fraser, on behalf of the Estate of David M. Fraser, **(15)** Todd Daily, on behalf of the Estate of Shawn L. English, **(16)** Anastasia Fuller, on behalf of the Estate of Alexander H. Fuller, **(17)** Ann Christopher, on behalf of the Estate of Kwesi Christopher, **(18)** Nancy Fuentes, on behalf of the Estate of Daniel A. Fuentes, **(19)** Michelle Klemensberg, on behalf of the Estate of Larry R. Bowman, **(20)** Ava Tomson, on behalf of the Estate of Lucas V. Starcevich, **(21)** Karen Funcheon, on behalf of the Estate of Alexander J. Funcheon, **(22)** Holly Burson-Gilpin, on behalf of the Estate of Jerome Potter, **(23)** Nancy Umbrell and Mark Umbrell, on behalf of the Estate of Colby J. Umbrell, **(24)** Dan Dixon, on behalf of the Estate of Robert J. Dixon, **(25)** William Farrar, Sr., on behalf of the Estate of William A. Farrar, **(26)** Elizabeth Brown, on behalf of the Estate of Joshua D. Brown, **(27)** Donna Kuglics, on behalf of the Estate of Matthew J. Kuglics, **(28)** Danielle Sweet, on behalf of the Estate of Ryan A. Balmer, **(29)** Donna Lewis, on behalf of the Estate of Jason Dale Lewis, **(30)** Paula C. Bobb-Miles, on behalf of the Estate of Brandon K. Bobb, **(31)** John Vandegrift, on behalf of the Estate of Matthew R. Vandegrift, **(32)** Michelle Benavidez, on behalf of the Estate of Kennith W. Mayne, **(33)** Linda David, on behalf of the Estate of Timothy A. David, and **(34)** Megan Marie Rice, on behalf of the Estate of Zachary T. Myers. *See* Am Compl. ¶¶ 1166–70

Collectively, these Plaintiffs' claims derive from the injuries or deaths of members of the

U.S. armed forces, or, in the case of Mr. Kwesi Christopher, a government contractor, proximately

caused by Iran's material support for an EFP attack in Iraq. *See* 28 U.S.C. § 1605A(c); *Roth v.*

*Islamic Republic of Iran*, 78 F. Supp. 3d 379, 398 (D.D.C. 2015) (discussing claim by legal

representative of an estate).  Given the factual and legal overlap, the Court's finding of subject-matter jurisdiction over each of these Plaintiff's claims also establishes their entitlement to relief under 28 U.S.C. § 1605A(c).  *See, e.g.*, *Force v. Islamic Republic of Iran*, 464 F. Supp. 3d 323, 369 (D.D.C. 2020); *Allan v. Islamic Republic of Iran*, Civil Case No. 17-338 (RJL), 2019 WL 2185037, at *6 (D.D.C. May 21, 2019) ("[M]ost courts conduct the analysis together, since evidence sufficient to establish jurisdictional causation will almost always establish a theory of 'personal injury' necessary to prevail under § 1605 A(c) [sic]."); *Foley v. Syrian Arab Republic*, 249 F. Supp. 3d 186, 205 (D.D.C. 2017) (Kollar-Kotelly, J.) (discussing overlapping aspects of jurisdiction and liability).

The remaining § 1605A(c) claims at issue, however, are those of family members, or the estates of now-deceased family members, of the U.S. soldiers and civilians injured or killed in the seventy-three non-bellwether EFP attacks.  *See* Am. Compl., ECF No. 8, ¶¶ 1171–74.[13]  These

---

[13] By the Court's count, the following 227 Plaintiff's assert a § 1605A(c) claim for emotional distress arising from the death or injury of a family-member in one of the seventy-three non-bellwether EFP attacks: Alesia Karcher, A.K., Audrey Karcher, Anna Karcher, Raymond Montgomery, Patricia Montgomery, Bryan Montgomery, Joedi Wood, Adam Wood, Megan Wood, Gwendolyn Morin-Marentes, E.M., Audrey Morin, Steve Morin, Sr., Amy Lynn Robinson, Floyd Burton Robinson, Jacob Michael Robinson, Lucas William Robinson, Deborah Noble, David Noble, Charles E. Matheny, III, Patrick Farr, Silver Farr, Carrol Alderete, Anthony Alderete, Chad Farr, Rayanne Hunter, W.H., T.H., Fabersha Flynt Lewis, Lorenzo Sandoval, Sr., Lorenzo Sandoval, Jr., H. Joseph Bandhold, Donald C. Bandhold, E.C.R., Robin Roberts, James Craig Roberts, Cara Roberts, Colin Roberts, John Vacho, Ashley Vacho Leslie, the Estate of Carol Vacho, Nanette Saenz, Juan Saenz, Donna Engeman, Jeanette West, Shelby West, Suzzettee Lawson, C.L., Judy Ann Crabtree, Ronald Wayne Crabtree, Debra Wigbels, Ronald William Crabtree, Judy Huenink, Sean Slaven, Chastity Dawn Laflin, Nicole Landon, Misti Fisher, Lynn Forehand, Lance Haupt, Rhonda Haupt, Tifany Haupt Thompson, Sabrina Cumbe, Fred Frigo, Harry Riley Bock, Jill Ann Bock, Mariah Simoneaux, Lawrence Kruger, Carol Kruger, Douglas Kruger, Kristy Kruger, Sangsoon Kim, Seop (Steve) Kim, Michelle Kim, Helen Fraser, Richard Fraser, Tricia English, N.W.E., N.C.E., A.S.E., Linda Gibson, John Gibson, Stephanie Gibson Webster, Sean Elliott, Travis Gibson, Philip S. Ford, Debbie Beavers, Denise Vennix, Chris Blohm, Kiana Blohm, Jeremy Blohm, James Smith, Joanne Gutcher, Tracy Anderson, Jeffrey Anderson, Anastasia Fuller, A.F, Hyunjung Glawson, Yolanda M. Brooks, Curtis Glawson, Sr., Kierra Glawson, Cortez Glawson, R.J.S., S.J.S., Ann Christopher, Nancy Fuentes, Armando Fuentes, Julio Fuentes, T.F., D.J.F., Michelle Klemensberg, Frank Lilley, Jolene Lilley, Matthew Lilley, Ava Tomson, Richard Tomson, Bradley Starcevich, Glenda Starcevich, Ariana Reyes, Trenton Starcevich, Samantha Tomson, Andrew Tomson, Karen Funcheon, Robert Funcheon, Holly Burson-Gilpin, Nancy Umbrell, 128 Mark Umbrell, Dan Dixon, the Estate of Ilene Dixon, Rebecca J. Oliver, Daniel C. Oliver, Shelley Ann

Plaintiffs seek solatium damages under an intentional infliction of emotional distress theory of liability. *See* Pls.' Tr. Br., ECF No. 43, at 20; *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 78 (D.D.C. 2010). Adhering to the common law of torts, courts in this jurisdiction have concluded that family-members may recover for emotional distress under § 1605A(c) if: "(1) they are members of a victim's immediate family," and (2) if "the defendant's conduct is sufficiently outrageous and intended to inflict severe emotional harm upon a person [who] is not present." *Rezaian v. Islamic Republic of Iran*, 422 F. Supp. 3d 164, 179 (D.D.C. 2019) (cleaned up) (citing Restatement (Second) of Torts § 46); *see also Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 82 (D.D.C. 2017). Additionally, § 1605A(c) still requires that these Plaintiffs individually demonstrate that they "are themselves U.S. nationals, members of the armed services, or government employees." *Force*, 464 F. Supp. 3d at 369.[14]

---

Smith, William Farrar, Sr., Elizabeth Brown, Tonya K. Dressler, Ardith Cecil Dressler, Melissa Dressler, Donna Kuglics, Les Kuglics, Emily Adams, Danielle Sweet, A.B., G.B, Scott Hood, Flora Hood, Stephanie Howard, Dixie Flagg, C.F., William Parker, Meghan Parker-Crockett, Sylvia Johnson Spencer, Raymond Nigel Spencer, Sr.,  154 Amanda B. Adair, John D. Lamie, Donna Lewis, J.L., J.L., G.L., Jean Mariano, Katherine McRill-Fellini, Brett Coke, Brian Coke, Paula C. Bobb-Miles, Johnny Javier Miles, Sr., J.J.M. Jr., Racquel Arnae Bobb Miles, Ursula Ann Joshua, Tammy Vanderwaal, A.L.R., Ashley Gudridge Houppert, Marion Crimens, Timothy W. Elledge, Kim Miller, Michael J. Miller, Kacey Gilmore, Terrell Gilmore, Jr., Kynesha Dhanoolal, Patricia Smith, Michael Smith, Jacqueline A. Smith, Temika Swinton, T.S., T.S., T.B., Linda Pritchett, Mary Jane Vandegrift, John Vandegrift, Paula Menke, Daniel Menke, Matthew Menke, Nichole Lohring, Rosemarie Alfonso, K.B., Michelle Benavidez, Daniel Benavidez, Christina Biederman, Daniel Benavidez, Jr., Jennifer Morman, Tony Gonzales, Marlynn Gonzales, Tamara Runzel, Megan People, Shaula Shaffer, Kari Carosella, Gregory Bauer, Roberto Andrade, Sr., Theresa Davis, Rhonda Kemper, Linda David, Michael David, Christopher David, Cassie Collins, Debbie Smith, James Smith, Cory Smith, Christina Smith, Megan Marie Rice, R.N.R., Tonya Lotto, Jerry L. Myers, Jeffrey D. Price, Theresa Hart, Wayne Newby, Nathan Newby, Veronica Hickman, David Eugene Hickman, and Devon Fletcher Hickman.

[14] "For jurisdictional purposes, this fact is non-consequential, because the waiver of foreign sovereign immunity applies so long as 'the claimant *or* the victim was, at the time of the' terrorist attack, a U.S. national, member of the armed forces, or government employee." *Force*, 464 F. Supp. 3d at 369 (emphasis in original) (quoting 28 U.S.C. § 1605A(a)(2)(A)(ii)). As set forth in the Court's Findings of Fact, each *victim* in the seventy-three non-bellwether EFP attacks was a U.S. servicemember, or, in the case of Mr. Kwesi Christopher, a government contractor. *See generally* disc. *supra* Part III.C.

At this time, these "family-member" Plaintiffs have not yet submitted satisfactory evidence establishing their individual rights to relief under § 1605A(c).  *See* Am. Compl., ECF No. 8, ¶¶ 1171–74.  To start, each "family-member" Plaintiff may rely on the Findings of Fact in this Memorandum Opinion, which establish that Iran's material support proximately caused the actual or attempted extrajudicial killing of each victim in the seventy-three non-bellwether attacks.  *See generally* disc. *supra* at Part III.C.  Moreover, the Court is satisfied that these acts of terrorism were "sufficiently extreme and outrageous to demonstrate that" Iran's intent was "to inflict severe emotional harm on even those not present at the site of the act."  *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 400 (D.D.C. 2015).  Nonetheless, the "family-member" Plaintiffs have not yet offered evidence proving their *own* qualifying statuses within the enumerated categories of permissible claimants under § 1605A(c).  *See* 28 U.S.C. § 1605A(c)(1)–(4); *Force*, 464 F. Supp. 3d at 369.  Each "family-member" Plaintiff must also provide evidence satisfying the "immediate family" requirement, which "is strictly construed in FSIA cases."  *Roth*, 78 F. Supp. 3d at 400. Without such evidence, the Court makes no finding as to the § 1605A(c) claims of the "family-member" Plaintiffs arising from the seventy-three non-bellwether EFP attacks.  *See* Am. Compl., ECF No. 8, ¶¶ 1171–74; 28 U.S.C. § 1608(e).

## B.  Personal Jurisdiction

Although a personal jurisdiction defense can be waived in certain circumstances, the Court has "an independent obligation . . . to satisfy itself of its personal jurisdiction before entering a default judgment against a missing party."  *Kaplan v. Cent. Bank of Islamic Republic of Iran*, 896 F.3d 501, 511 (D.C. Cir. 2018) (citing *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005); 10A Charles Alan Wright et al., Federal Practice and Procedure § 2682 (3d ed. 1998)).  "Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts

have jurisdiction under subsection (a) [and] where service has been made under section 1608 of this title."  28 U.S.C. § 1330(b).  "In other words, 'under the FSIA, subject matter jurisdiction plus service of process equals personal jurisdiction.'"  *GSS Grp. Ltd v. Nat'l Port Auth.*, 680 F.3d 805, 811 (D.C. Cir. 2012) (quoting *Price*, 294 F.3d at 95).

The Court has already concluded that it has subject-matter jurisdiction over the claims in this case.  Moreover, service has been made under Section 1608(a)(3), as described above and in the Court's [31] Memorandum Opinion and Order.  The Court incorporates the analysis in that Memorandum Opinion and Order here and accordingly concludes that the Court has personal jurisdiction over Iran.  There are no due process concerns raised by the Court's exercise of personal jurisdiction over Iran because "foreign states are not 'persons' protected by the Fifth Amendment." *Price*, 294 F.3d at 96.

## V. CONCLUSION

For the reasons set forth in this Memorandum Opinion, and in an exercise of its discretion, the Court shall **GRANT** default judgment against Defendant Islamic Republic of Iran as to the § 1605A(c) claims of: (1) the eight Plaintiffs personally injured in one of the seventy-three non-bellwether EFP attacks and (2) the thirty-four Plaintiffs representing the estates of individuals killed by one of those attacks.  The Court, however, does not make any ruling at this time regarding the § 1605A(c) claims of the "family-member" Plaintiffs, arising out of the seventy-three non-bellwether attacks.  Moreover, the Court makes no findings regarding the appropriate amount of damages for any Plaintiff.  Instead, the Court anticipates that a special master will make subsequent findings regarding the appropriate damages calculations for those Plaintiffs that have established their right to relief under § 1605A(c), upon the submission of supplemental damages evidence.

An appropriate Order accompanies this Memorandum Opinion.

**Dated**: January 14, 2021

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge