**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TIMOTHY KARCHER, *et al.*, <br> Plaintiffs, <br> v. <br> ISLAMIC REPUBLIC OF IRAN, <br> Defendant. | Civil Action No. 16-00232 (CKK) |

**MEMORANDUM OPINION**
(December 27, 2023)

**I. INTRODUCTION**

This Memorandum Opinion addresses the following categories of recommended damages awards, as set forth by the Special Master in his [146, 147, 148] [sealed] Reports[1]: (1) the assault, battery and intentional infliction of emotional distress claims for four Plaintiffs injured in attacks not involving Explosively Formed Penetrators ("EFPs"); (2) conscious pain and suffering damages for the three estate Plaintiffs; (3) economic damages; and (4) solatium damages. This Memorandum Opinion does <u>not</u> address the recommended damages for pain and suffering for the thirteen Plaintiffs injured in EFP attacks, as those damages will be addressed in a separate opinion discussing the methodology by which those damages should be determined.[2] Having considered the reports of the Special Master as well as the Plaintiffs' [151] Objections to the Special Master's

---

[1] Special Master Report, ECF No. 146, addresses claims related to Plaintiffs Bartlett, Baumhoer, Canine, Haines, Karcher, Levi, Lilly, Miller, Roberts, Sabinish, Swinton, Williamson, and Wood. Special Master Report, ECF No. 147, addresses claims related to Plaintiffs [Estates of] Delgado, Habsieger and Hake. Special Master Report, ECF No. 148, addresses claims related to Plaintiffs Freeman, Kirby, Millican, Thornsberry, Wallace and Washburn.

[2] This includes Robert Bartlett, Nicholas Habsieger, Robert Canine, David Haines, Timothy Karcher, Christopher Levi, Scott Lilley, Christopher Miller, Erik Roberts, Ryan Sabinish, Allen Swinton, Wesley Williamson, and Tony Wood.

1

Reports, the Court adopts the Special Master's recommended damages awards, <u>as corrected and amended by Plaintiffs</u>, with the exception of: (1) a damages award for solatium for Anna, Audrey, and Abbey Karcher; (2) a 20% [as opposed to 25%] enhancement for solatium claims by Plaintiffs Eric and Debra Levi, and Kimberly Vesey; and (3) a 20% upward departure for solatium claims by Plaintiff Freeman's family. Plaintiffs acknowledge that there was "No request made" on behalf of the Karcher children [in the context of the Court's Order, ECF No. 125] and that there was a "computational error" in the Special Master's Report regarding the percentage enhancement applied to the Levis and Ms. Vesey. Pls.' Objections, ECF No. 151, at 11, n. 1-2.[3] Additionally, as explained herein, the Court accepts the Special Master's finding that the upward departure for the Freeman family's solatium claims is not supported by the record in this case.

## II. PROCEDURAL BACKGROUND

On August 26, 2019, this Court granted default judgment against Defendant Islamic Republic of Iran ("Iran") as to the claims of multiple Plaintiffs injured in bellwether attacks and the claims of Plaintiffs representing individuals killed in the bellwether attacks.[4] *See* Order, ECF No. 93; *see* August 26, 2019 Memorandum Opinion, ECF No. 94 (incorporated by reference herein). The Court made no finding regarding damages for any of these Plaintiffs. On January 14, 2021, the Court granted default judgment against Iran as to eight Surviving Plaintiffs, and thirty-four Plaintiffs representing the Estates of Deceased EFP Victims. *See* Order, ECF No. 122; *see* January 14, 2021 Memorandum Opinion, ECF No. 123 (incorporated by reference herein). The

---

[3] The page numbers cited are those assigned through the electronic case filing ("ECF") system.

[4] The Court required additional "information to establish Iran's liability" to Plaintiffs Kirby, Thornsberry, and Washburn. Order, ECF No. 93, at 1. Subsequently, the Court granted default judgment against Iran as to the claims of Plaintiffs Kirby, Thornsberry, and Washburn. *See* Order, ECF No. 105; *see* Memorandum Opinion, ECF No. 106 (incorporated by reference herein).

2

Court made no finding regarding the appropriate amount of damages for any of these forty-two Plaintiffs.

The Court referred the case to a Special Master, Mr. Alan L. Balaran, to prepare proposed findings of fact and recommendations on non-economic damages for the eight Plaintiffs injured in the non-bellwether EFP attacks as well as damages for the bellwether Plaintiffs. Order, ECF No. 122 at 2; *see also* Order and Administrative Plan, ECF No. 102 (appointing Mr. Balaran as Special Master to determine damages for bellwether Plaintiffs; i.e., "those related to the seven bellwether attacks that were the focus of the bench trial on December 3, 4, and 6, 2018, and their family members); Order, ECF No. 125 (appointing Mr. Balaran as Special Master to determine non-economic damages for eight Plaintiffs).

With regard to damages encompassed by this Memorandum Opinion, Plaintiffs' objections were limited and asked for: (1) correction of typographical errors; (2) amended solatium damages for Gunnar Freeman, I.F., Mackenzie Haines. Colin Haines, and G.H.; (3) amended solatium damages for CPT Brian Freeman's family; and (4) solatium damages for Russel York. As previously noted, the Court agrees with the majority of the corrections and amendments proffered by the Plaintiffs. A brief discussion follows.

**III. DISCUSSION**

In its prior Memorandum Opinions, this Court concluded that Iran was liable for Plaintiffs' injuries under 28 U.S.C. § 1605A(c). Pursuant to Section 1605A(c), damages "may include economic damages, solatium, pain and suffering, and punitive damages." "The only remaining questions, therefore, are what type of damages Plaintiffs are entitled to recover and in what amounts." *Fritz v. Islamic Republic of Iran*, 324 F. Supp. 3d 54, 59 (D.D.C. 2018). "Under the FSIA, a 'foreign states shall be liable in the same manner and to the same extent as a private

individual under like circumstances.' Therefore, plaintiffs are entitled to the typical array of compensatory damages that may be awarded against tortfeasors in the plaintiffs' respective domiciliary states." *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 51 (D.D.C. 2007) (quoting 28 U.S.C. §1606).

Plaintiffs' claims may be categorized as follows: (1) conscious pain and suffering brought by the Estates of Plaintiffs Delgado, Freeman, and Hake; (2) pain and suffering damages for assault, battery and intentional infliction of emotional distress ("iied") for Plaintiffs Kirby, Thornsberry, Wallace, and Washburn; (3) economic loss; and (4) solatium claims brought by family members of the deceased and injured victims.

In the instant case, with respect to those Plaintiffs who were not injured in EFP attacks, the Reports and Recommendations apply the damages framework derived from *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52 (D.D.C. 2010), *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25 (D.D.C. 2007) ("*Peterson II*"), and their progeny (the "*Valore/Peterson II* framework"). "In *Peterson II*, this Court adopted a general procedure for the calculation of damages that begins with the baseline assumption that persons suffering substantial injuries in terrorist attacks are entitled to $5 million in compensatory damages." *Wultz v. Islamic Republic of Iran*, 864 F. Supp. 2d 24, 37-38 (D.D.C. 2012). In *Valore*, the court departed upward from this baseline to a range of $7.5 to $12 million "in more severe instances of physical and psychological pain, such as where victims suffered relatively more numerous and severe injuries, were rendered quadriplegic, partially lost vision and hearing, or were mistaken for dead. . . " *Valore*, 700 F. Supp. 2d at 84. Courts employing *Valore* considered also "the severity of the pain immediately following the injury, the length of hospitalization, and the extent of impairment that will remain with the victim for the rest of his or her life." *Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F.

Supp. 2d 48, 82 (D.D.C. 2011). Courts may "award greater amounts in cases 'with aggravating circumstances . . .'" *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 79 (D.D.C. 2010) (quoting *Greenbaum v. Islamic Republic of Iran*, 451 F. Supp. 2d 90, 108 (D.D.C. 2006)).

### A. Damages for Conscious Pain and Suffering

There are several factors to consider when assessing damages for pain and suffering. There is "no recovery" where "death was instantaneous." *Elahi v. Islamic Republic of Iran*, 124 F. Supp. 2d 97, 112 (D.D.C. 2000). Victims who survived a few minutes to a few hours after the bombing typically receive an award of $1 million. *Id.* at 113. "[E]states of direct victims can also recover for the pain and suffering endured" by the victim. *Fritz*, 324 F. Supp. 3d at 60. In this case, Plaintiffs requested, and the Special Master recommended, an award of $1 million for the Estate of George Delgado and $1 million for the Estate of Christopher Hake, and the Court agrees with these awards.

Plaintiffs requested, and the Special Master recommended, an award of $5 million for the Estate of Brian Freeman. In analyzing Freeman's pain and suffering damages claim, the Special Master indicated that he was:

> (1) informed by prior decisions awarding compensatory damages to victims of terrorist attacks, *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 77 (D.D.C. 2010); (2) mindful both of the "challenge aris[ing] in assigning a dollar value to such pain and suffering," *Hekmati v. Islamic Republic of Iran*, 278 F. Supp. 3d 145, 163 (D.D.C. 2017); (3) cautioned that "strict application of precedent could lead to conflicting conclusions about an appropriate award," *Brewer v. Islamic Republic of Iran*, 664 F. Supp. 2d 43 (D.D.C. 2009); and (4) constrained to "not simply [recommend] what [he] abstractly finds to be fair," *Weinstein*, 184 F. Supp. 2d at 34.

Report and Recommendation, ECF No. 148, at 23. The Special Master noted that courts have embraced "the baseline assumption that persons suffering substantial injuries in terrorist attacks are entitled to $5 million in compensatory damages." *Davis v. Islamic Republic of Iran*, 882 F. Supp. 2d 7, 12 (D.D.C. 2012) (citation omitted). Report and Recommendation, ECF No. 148, at

5

23. This award may be adjusted upward or downward depending on the injuries and pain sustained. *See id.* (citing cases). The Special Master then explained the circumstances preceding and resulting in Plaintiff Freeman's death and why an award of $5 million was warranted. As such, the Court agrees with an award of $5 million to the Estate of Brian Freeman, for conscious pain and suffering.

### B. Damages for Pain and Suffering - Assault, Battery, and IIED

Plaintiffs do not object to any of the recommended pain and suffering damages (assault, battery, iied) for the four Plaintiffs injured in non-EFP attacks: Kirby; Thornsberry; Wallace; and Washburn. The amounts requested by Plaintiffs with regard to Thornsberry and Washburn [$1.5 million] are the same as the recommended amounts, and they are a downward departure from the $5 million baseline. The amount requested for Plaintiff Kirby was greater than the amount recommended, but it was a downward departure in both cases. The amount requested for Plaintiff Wallace is greater than the recommended amount, but in both cases, it is an upward departure, and the Special Master's analysis explains adequately why such upward departure is warranted. As such, the amounts recommended by the Special Master for damages for pain and suffering (assault, battery, and iied) for Plaintiffs Kirby, Thornsberry, Wallace, and Washburn are approved by this Court.

### C. Economic Loss Damages

The Court notes that "[s]ection 1605A explicitly provides that foreign state-sponsors of terrorism are liable to victims for economic losses stemming from injuries or death sustained as a result of the foreign state's conduct." *Thuneibat v. Syrian Arab Republic.* 167 F. Supp. 3d 22, 48 (D.D.C. 2016) (citing 28 U.S.C. § 1605A)(c)). Plaintiffs may prove economic losses through "submission of a forensic expert's report." *Id.* at 59, *see Reed v. Islamic Republic of Iran*, 845 F.

Supp. 2d 204, 214 (D.D.C. 2012) ("The report of a forensic economist may provide a reasonable basis for determining the amount of economic damages in an FSIA case.") The Special Master first must examine the methodological soundness of the calculations, with the idea that "mathematical exactitude is often impossible," *Bova v. Islamic Republic of Iran*, No. 15-cv-1074 (RCL), 2020 WL 2838582, at *11 (D.D.C. May 31, 2020). Then, the Special Master may examine "reasonableness and foundation of the assumptions relied upon by the experts. *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 402 (D.D.C. 2015), to protect against "speculation, contingency, or conjecture." *Bova*, 2020 WL 2838582, at *11.

Throughout his Special Master Reports and Recommendations, Mr. Balaran documents the forensic economist expert reports that he utilized in support of calculating Plaintiffs' economic loss claims. Based on a review of the record, the Court finds these calculations and assumptions made by the forensic economist experts to be reasonable. Furthermore, in the instant case, Plaintiffs do not object to any of the economic loss damages recommended by the Special Master with the exception of a typographical error regarding economic damages for Robert Canine, whose award of economic loss damages is corrected (downward) to $755,355.00. The remaining economic loss damages recommended by the Special Master in his Reports and Recommendations are approved as is.

### D. Solatium Damages

A claim for solatium is "a claim for the mental anguish, bereavement and grief that those with a close personal relationship to a decedent experience as a result of the decedent's death, as well as the harm caused by the loss of the decedent, society and comfort." *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009) (citation omitted). Under the state-sponsored terrorism exception to the FSIA, "the award of solatium damages to the close relatives

7

of terrorism victims" is expressly contemplated. *Fritz*, 324 F. Supp. 3d at 61-62 (citing 28 U.S.C. § 1605A(c)). It is presumed that "family members in direct lineal relationship suffer compensable mental anguish[.]" *Kaplan v. Hezbollah*, 213 F. Supp. 3d 27, 38 (D.D.C. 2016) (internal quotation marks omitted).

Judges in this District Court have employed "a general framework for the calculation of proper damage awards in FSIA cases" based on principles articulated in the *Heiser* case. *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 26 (D.D.C. 2011) (citing *Heiser v. Republic of Iran*, 466 F. Supp. 2d at 269-270). Under this general framework, spouses of deceased victims receive $8 million; parents and children receive $5 million; and siblings receive $2.5 million. *Id.* "Spouses typically receive greater damage awards than parents, who, in turn, receive greater awards than siblings," and "families of victims who have died are typically awarded greater damages than families of victims who remain alive." *Heiser*, 466 F. Supp. 2d at 269 (internal quotation marks omitted). "Relatives of surviving servicemen receive[ ] awards valued at half of the awards to family members of th[ose] deceased[.]" *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 79 (D.D.C. 2010); *see also Davis v. Islamic Republic of Iran*, 882 F. Supp. 2d 7, 14 (D.D.C. 2014) (finding that, for the immediate family members of a victim injured by terrorists, courts typically adhere to the following scale: "$4 million, $2.5 million, $1.5 million, and $1.25 million to spouses, parents, children and siblings, respectively." (quotation omitted)).[5]

The Court notes that "[t]hese numbers . . . are not "set in stone," *Murphy*, 740 F. Supp. 2d at 79, but instead are "goalposts," and "courts should deviate depending on the circumstances." *Fritz*, 324 F. Supp. 3d at 62 (citation omitted). Such decisions to deviate are committed to the

---

[5] The inconsistencies in the amounts awarded to children of service members in this case are addressed below in subsection 2.

court's discretion. *Oveissi*, 768 F. Supp. 2d at 26. "A court's job in a solatium case is to account for various facts and circumstances, and to use those factors to arrive at an appropriate numerical expression of total pain and grief—encapsulated in the solatium award." *Oveissi*, 768 F. Supp. 2d at 25. Upward departures may be warranted if there is "evidence establishing a particularly close relationship between the plaintiff and the decedent, particularly in comparison to the normal interactions to be expected given the familial relationship" or with "medical proof of severe pain, grief or suffering on behalf of the claimant" or if the "circumstances surrounding the terrorist attack [rendered] the suffering particularly more acute or agonizing." *Oveissi*, 768 F. Supp. 2d at 26-27. Downward departures are also possible where the relationship between the victim and family members is attenuated. *Valore*, 700 F. Supp. 2d at 86.

### 1. Correction of Typographical Errors

As previously mentioned herein, Plaintiffs indicated that:

> Mr. Karcher's family members were not part of this Court's remit to the Special Master. *See* Order, ECF No. 125 (Jan. 14, 2021) ("[T]he Court appoints Mr. Alan L. Balaran as a special master to make recommended findings of fact and conclusions of law regarding the non-economic damages for the following eight Plaintiffs, injured in a non-bellwether EFP attack": Timothy Karcher . . . . Mr. Balaran shall include his findings about the non-economic damages for these eight Plaintiffs with his forthcoming damages report for the bellwether Plaintiffs.") Plaintiffs submitted declarations from family members as part of their PFFCL Regarding Damages for Eight Plaintiffs Identified in the Court's Jan. 5, 2021 Minute Order, ECF No. 120-1 (Jan. 11, 2021) (filed under seal) to bolster Mr. Karcher's claims for psychological injuries, . . ., but not in support of their own claims. . .

Pls' Objections, ECF No. 151, at 11 n.2. Accordingly, because the Karcher family member claims were not encompassed within the scope of this Court's Order [ECF No. 125] to the Special Master, no award is granted at this point on behalf of Anna, Audrey, and Abbey Karcher.

Plaintiffs note further that while the Reports and Recommendations recommended that Plaintiffs Eric and Debra Levi, and Kimberly Vesey – the parents and sister of Plaintiff Christopher

9

Levi – receive a "20% enhancement in addition to the baseline solatium awards of $2.5 million for parents and 1.25 million for siblings of injured service members," the Special Master's calculations "reflect a 25% enhancement (which the Plaintiffs had requested)." Pls.' Objections, ECF No. 151, at 11 n.1. Reading the Special Master's Report and Recommendation, ECF No. 146-6, at 39-40, the Court notes that Mr. Balaran relied upon a case where a 20% enhancement was awarded, and he explained why a 20% enhancement was warranted. The Court adopts the Special Master's reasoning and, as such, the calculations for Eric and Debra Levi and Kimberly Vesey have been adjusted to reflect the intended 20% enhancement.

### 2. Freeman and Haines Children

Before assessing the solatium awards to children of the servicemen Plaintiffs, the Court notes that there is some inconsistency in the amounts awarded to children of deceased victims with $3 million indicated as the amount to be awarded in cases such as *Anderson v. Islamic Republic of Iran*, 839 F. Supp. 2d 263, 266 (D.D.C. 2012) (based on the same amount awarded in *Stern v. Islamic Republic of Iran*, 271 F. Supp. 2d 286, 301 (D.D.C. 2003)); *see also Spencer v. Islamic Republic of Iran*, 71 F. Supp. 3d 23, 27-28 (D.D.C. 2014) ("Awards of $3 million to the children of deceased victims are typical. . . Children of a surviving victim receive $1.5 million on average.") (citing *Anderson*, 839 F. Supp. 2d at 266). In contrast, $5 million was awarded for children of a deceased service member in *Heisner*, 466 F. Supp. 2d at 318 and *Oveissi*, 768 F. Supp. 2d at 26; and in *Peterson II*, 515 F. Supp. 2d at 51-52, $2.5 million was established as the award for children of a surviving service member.

In *Mwila v. Islamic Republic of Iran*, 33 F. Supp. 3d 36, 44-45 (D.D.C. 2014), the court recognized this inconsistency and stated that:

> Courts in this district have differed somewhat on the proper amount awarded to children of victims. *Compare Peterson II*, 515 F. Supp. 2d at 51 ($2.5 million to child of injured

10

victim), with *Davis v. Islamic Republic of Iran*, 882 F. Supp. 2d 7, 14 (D.D.C. 2012) ($1.5 million to child of injured victim). The Court finds the *Peterson II* approach to be more appropriate to the extent such suffering can be quantified, children who lose parents are likely to suffer as much as parents who lose children.

Pls.' Objections, ECF No. 151, at 13. Plaintiffs notes that there are inconsistencies in the Reports and Recommendations insofar as some of the children of servicemen wounded in action ("WIA") received $2.5 million —half of the $5 million for children of servicemen killed in action ("KIA"). *Id.* at 13-14. Plaintiffs note further that other children of WIAs and KIAs received $1.5 million [Mackenzie and Colin Haines] and $3 million [Plaintiff Hake's minor son G.H., and Gunnar and I. Freeman], respectively.

Having reviewed the Special Master's Reports and Recommendations, the Court agrees that there is an internal inconsistency in the amount awarded to children of those KIA and WIA, and furthermore, there is no discussion of circumstances or departures that would justify these inconsistencies. Accordingly, the Court adopts the *Heiser/Peterson II* award of $5 million solatium awards for children of deceased victims and $2.5 million for children of surviving victims. With regard to the Haines and Hake children, the Court finds that an award of $2.5 million each is appropriate. The Court notes that Plaintiffs initially requested a 20% upward departure for the Haines children, but they "do not object to the R&Rs' recommendations against granting the upward departures." Pls.' Objections, ECF No. 151, at 14, n.7. With regard to the Freeman children, the Court finds that an award of $5 million each is appropriate.

### 3. Freeman Family's Requested Upward Departure

Plaintiffs requested an enhancement of 20% for solatium claims by the Freeman children/other Freeman family members "commensurate with the damages awarded to the family members of service members killed in the same attack by Judge Randolph Moss in *Fritz*, 324 F.

11

Supp. 3d at 62." Pls.' Objections, ECF No. 151, at 14, n.5. The Court notes that the Special Master awarded $5 million to the Estate of Brian Freeman, "following the lead established in *Fritz*," and "[i]n deference to the principle that 'individuals with similar injuries received similar awards[.]'" Report and Recommendation, ECF No. 148, at 23 (quoting *Atkins v. Islamic Republic of Iran*, 332 F. Supp. 3d 1, 41 (D.D.C. 2018) (citation omitted)). However, when addressing the solatium claims by Plaintiff Freeman's family members, the Special Master proffered a reasonable basis –a lack of "aggravating circumstances – to conclude that an upward departure in solatium damages was unwarranted. Report and Recommendation, ECF No. 148, at 27-28 (citing *Oveissi*, 768 F. Supp. 2d at 26-27). The Court adopts the Special Master's analysis and conclusion that a 20% upward departure for the Freeman family members is not supported by the record in this case.

### 4. Plaintiff Hake's Stepfather Russel York

The Special Master denied the solatium claim of Plaintiff Christopher Hake's stepfather, Russel York, finding that he did not meet the "functional equivalent of immediate family members" test. Report and Recommendation, ECF No. 147-2, at 34-37. Plaintiffs point out however that the evidence does reflect that Russel York acted as the functional equivalent of Plaintiff Hake's father insofar as his declaration provides supports thereof. *See* Decl. of Russel York ¶¶ 32, 35 (indicating that York "did not think of Chris as a stepson but rather a son about whom [he] cared very much. . . and [n]ot having Chris around is like having a hole inside") ("although he may have technically been my 'stepson,' I have always been proud to call him my son [as] [h]e was a fine young man and I continue to miss him very much.")

Plaintiffs discuss cases in which court has granted solatium awards to stepchildren and stepparents even when the victim had a relationship with a biological parent whose role was taken on or supplemented by a step-relative. *See e.g. Fritz v. Islamic Republic of Iran*, Civil Action No

15-456 (RDM), 2018 WL 5046229 at *22 (D.D.C. Aug. 13, 2018) (awarding $1.5 million to a stepmother who lived in the same household as the victim for portions of a three-year period and indicated she felt a loss but also that her focus of concern was with the effect the loss had on her husband). In the instant case, Plaintiff Hake's mother Denice York married Russell York when Plaintiff was seven years old. Decl. of Denise York ¶ 5; Decl. of Russell York ¶ 5. Although Hake's biological father had sole custody, "Denise and Russel York nevertheless spent many weekends, school breaks, summer vacations, . . . " together, and Hake and Russell York went camping and fixed cars together. Decl. of Denise York ¶¶ 5;, 9, 13-15; Decl. of Russel York ¶¶ 6-11; Report and Recommendation, ECF No. 147-2, at 37 (indicating that Russel bought Hake a motorcycle and taught him how to drive a truck and was "distraught" over Hake's death). Furthermore, Hake and Russel York kept in touch through emails and telephone calls when Hake was in the Army. Decl. of Denise York ¶¶ 20, 26; Decl. of Russell York ¶ 12. Considering the nature of the relationship between Russel York and Hake, in the context of the case law cited, this Court disagrees with the Special Master and finds that Russel York should be considered a functional equivalent of a family member and awarded $1.5 million in solatium damages.

## IV. CONCLUSION

The Court acknowledges Plaintiffs' efforts to hold Iran responsible for the acts of terror that resulted in injury and/or death to persons serving in the military and appreciates that there is no amount of money that can truly compensate the servicemembers and members of their family. Based on the explanation set forth herein, the Court finds Defendant responsible for the injuries sustained by Plaintiffs and liable under the FSIA's state-sponsored terrorism exception for $173,882,276.47 in damages.

A separate Order and Judgment consistent with these findings shall be entered this date.

                                                                           /s/
                                         COLLEEN KOLLAR-KOTELLY
                                         UNITED STATES DISTRICT JUDGE