IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------x
TIMOTHY KARCHER, et al.,            :
                                    :   Case No. 16-cv-00232 (CKK)
            Plaintiffs,             :
                                    :
     vs.                            :
                                    :
ISLAMIC REPUBLIC OF IRAN,           :
                                    :
            Defendant.              :
------------------------------------x

MEMORANDUM OPINION
(February 19, 2025)

Pending before this Court is Plaintiffs' [191] Motion in support of Punitive Damages, which requests that this Court compute punitive damages by multiplying each Plaintiff's compensatory damages award by three. Plaintiffs proffer that this a typical method employed by judges within this District to calculate punitive damages in these types of cases, and it also comports with the method for calculating punitive damages in the companion case of *Stearns v. Islamic Republic of Iran*, No. 17-cv-131 (RCL) (D.D.C), which includes as plaintiffs the family members of Plaintiffs in this case. For the reasons set forth herein, Plaintiffs' motion for punitive damages is GRANTED.

I.   Background

This civil action arises from a series of attacks, some involving explosively formed penetrators ("EFPSs"), a kind of improvised explosive device ("IED") that was used in Iraq to injure or kill American servicemembers, in this case, between 2004 and 2011. The Plaintiffs herein include surviving servicemembers, their estates (in the cases of deceased victims), and their close family members. Plaintiffs' [8] Amended Complaint seeks compensatory and punitive damages against Defendant Islamic Republic of Iran ("Iran"), pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §1605A.

1

After Plaintiffs purported to effectuate service on Defendant Iran through diplomatic channels, pursuant to 28 U.S.C. §1608(a)(4), and following Iran's failure to respond, Plaintiffs sought entry of default, which was entered by the Clerk of the Court. *See* ECF Nos. 16-18. When Plaintiffs moved for default judgment, this Court denied that motion without prejudice to allow Plaintiffs to demonstrate the grounds for proper service. *See* Nov. 15, 2016 Order, ECF No. 22.

Plaintiffs provided additional justification for their attempt to serve Iran, but, at the same time, they requested the Clerk of the Court to facilitate service on Iran's Minister of Foreign Affairs under Section 1608(a)(3). *See* ECF Nos. 23-27. After proof of service was returned and Iran failed to respond within the statutory period, the Clerk again entered default against Iran at Plaintiffs' request, *see* ECF Nos. 27-30; 28 U.S.C. §1608(c)(2), (d), and this Court determined ultimately that Plaintiffs had properly effectuated service. *See* Apr. 19, 2017 Mem. Op. and Order, ECF No. 31.

In a November 14, 2017 Status Report to the Court, Plaintiffs proposed a joint liability and bellwether damages hearing. *See* Pls.' Status Report, ECF No. 38. The Court issued its [39] Pretrial Scheduling and Procedures Order addressing further proceedings, including liability and bellwether damages hearings. Plaintiffs filed several trial briefs and motions prior to this Court holding a three-day bench trial, in December of 2018, regarding the seven "bellwether" attacks, in order to determine the sufficiency of the evidence to support entry of default judgment under the FSIA. In connection with that trial, the Court issued a Memorandum Opinion and Order finding Iran liable for Plaintiffs' injuries stemming from the bellwether attacks alleged in the Complaint. *See* Aug. 26, 2019 Order, ECF No. 93 (granting default judgment as to the Plaintiffs killed in bellwether attacks but requesting additional information on three Plaintiffs); *see also* Sept. 11, 2019 Order (granting default judgment as to those three Plaintiffs). The Court noted that it would refer the Plaintiffs' damages determination to a Special Master and, as such, it would

defer Plaintiffs' request for punitive damages until after the Special Master determined compensatory damages. Memorandum Opinion, ECF No. 95 at 88.

A Special Master was appointed by the Court to consider the Plaintiffs' damages claims, and, after a rather extended period, the Special Master filed several reports on damages, ECF Nos. 146-148. Plaintiffs agreed with the Special Master's damages calculations for Plaintiffs injured in attacks <u>not involving</u> EFPs, but objected to the methodology by which damages were determined for Plaintiffs injured in attacks <u>involving</u> EFPs. *See* Objections, ECF No. 151. On December 27, 2023, this Court issued its [159] Memorandum Opinion and [160] Order and Judgment, regarding the damages for the Plaintiffs who were injured in attacks <u>not involving</u> EFPs. In response to the Plaintiffs' objections to the Special Master's calculation of damages for Plaintiffs injured in attacks <u>involving</u> EFPs, the Special Master proposed a modification to the EFP damages matrix, ECF No. 169, and Plaintiffs filed their [170] Notice of Non-Objection. On June 6, 2024, this Court issued its [171] Memorandum Opinion and [172] Order and Judgment regarding the Plaintiffs injured in attacks <u>involving</u> EFPs.

On March 28, 2024, Plaintiffs filed their [165] Notice of New Authority discussing the implications of a recent decision by the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") in *Borochov v. Islamic Republic of Iran*, 94 F.4th 1053 (D.C. Cir. 2024). More specifically, Plaintiffs acknowledged the need to demonstrate a completed extrajudicial killing (as opposed to an attempted extrajudicial killing) and pinpointed attacks in this case in which their previous submissions did not include any fatalities.

Currently pending before this Court is Plaintiffs' [191] Motion in support of Punitive Damages. Plaintiffs note that the Court has "already granted compensatory judgments to certain Plaintiffs," and Plaintiffs "respectfully request that the Court issue additional judgments of, or modify those judgments to include, punitive damages." Pls.' Mot. in support of Punitive

3

Damages, ECF No. 191, at 5. Plaintiffs make clear that they are "not seeking punitive damages for any attacks that would be disqualified under *Borochov*." *Id.* at 5, n.1.

    II.     Authority for Punitive Damages

Punitive damages are specifically designated as one type of damages recoverable under 28 U.S.C. Section 1605A(c), and the Supreme Court has made clear that such damages are "available to remedy certain past acts of terrorism." *Opati v. Republic of Sudan*, 590 U.S. 418, 419 (2020). Punitive damages "are awarded not to compensate the victims, but to 'punish outrageous behavior and deter such outrageous conduct in the future.'" *Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 86 (D.D.C. 2017) (quoting *Kim v. Democratic People's Republic of Korea*, 87 F. Supp. 3d 286, 290 (D.D.C. 2015)); *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 61 (D.D.C. 2009) ("The prospect of large punitive damage awards may help to deter Iran. . . from [its] support of international terrorist organizations."). Courts in this District have found that punitive damages are "warranted where 'defendants supported, protected, harbored, aided, abetted, enabled, sponsored, conspired with, and subsidized a known terrorist organization whose modus operandi included the targeting, brutalization, and murder of American citizens and others.'" *Braun*, 228 F. Supp. 3d at 86 (quoting *Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 85 (D.D.C. 2011)). "Courts routinely award punitive damages in cases brought under the terrorism exception to the Foreign Sovereign Immunities Act." *Frost vs. Islamic Republic of Iran*, 419 F. Supp. 3d 112, 116 (D.D.C. 2020).

In determining the proper punitive damages award, "courts evaluate four factors: ' (1) the character of the defendant's act, (2) the nature and extent of harm to the plaintiffs that defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants.'" *Flanagan v. Islamic Republic of Iran*, 87 F. Supp. 3d 93, 119 (D.D.C. 2015) (quoting *Acosta v. Islamic Republic of Iran*, 574 F. Supp. 2d 15, 30 (D.D.C. 2008)). "Courts have found these factors

4

to be satisfied when a defendant has provided material support to a terrorist organization in carrying out an act of terrorism." *Id.* at 119. And, in fact, courts in this district have awarded punitive damages in § 1605A cases against Iran and its Islamic Revolutionary Guards Corps ("IRGC") for supporting Foreign Terrorist Organizations such as, here, Hezbollah. *See, e.g., Stearns v. Islamic Republic of Iran*, No. 17-cv-131 (RCL), 2023 WL 4999215, at *4 (Aug. 4, 2023); *Ackley v. Islamic Republic of Iran*, No. 20-cv-621 (BAH), 2022 WL 3354720, at *60 (D.D.C. Aug. 12, 2022); *Flanagan*, 87 F. Supp. 3d 93, at 119-27; *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 87-90 (D.D.C. 2010); *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 79-82 (D.D.C. 2010).

In the instant case, this Court found Iran liable for a series of terrorist attacks against U.S. forces, injuring Plaintiffs and killing Plaintiffs' decedents, and many of these attacks involved EFPs, which are designed to defeat the armor on American military vehicles and kill the occupants. This Court found that these EFPs were "of original Hezbollah and IRGC design that was supplied by the IRGC." *Karcher v. Islamic Republic of Iran*, 396 F. Supp. 3d 12, 33 (D.D.C. 2019) (citing Expert Rep. of Col. (Ret.) Kevin Lutz, PX-159, at 25) (finding Iran liable for bellwether EFP attacks). This Court also found Iran liable for other attacks at issue here, including the kidnapping and murder of several U.S. servicemembers in Karbala and the use of weapons to kill and maim Americans. *See id.* at 57 (finding Iran liable for the Karbala attack). *See also Karcher v. Islamic Republic of Iran*, 2021 WL 133507, at *67-*69 (D.D.C. Jan. 14, 2021) (finding Iran liable for 73 additional attacks).

Considering Iran's longstanding policy of supporting terrorist organizations, there is a clear need for deterrence, *see Hekmati v. Islamic Republic of Iran*, 278 F. Supp. 3d 145, 166 (D.D.C. 2017), although at some point, large awards may pass the point of deterrence effect. *See Bluth v. Islamic Republic of Iran*, 203 F. Supp. 3d 1, 26 (D.D.C. 2016) (wherein it was noted that courts in this district have concluded that large punitive awards do not have a deterrent effect on Iran

5

"[g]iven the frequency of these attacks and the lack of evidence that high awards have successfully deterred [Iran]"). Nevertheless, because "Iran is a foreign state with substantial wealth [that] has expended significant resources [on] sponsoring terrorism;" accordingly, the punitive damages award must be substantial to have an effect. *Oveissi v. Islamic Republic of Iran*, 879 F. Supp. 2d 44, 56 (D.D.C. 2012); *see also Bluth*, 203 F. Supp. 3d at 25. Accordingly, considering the factors relevant to an award of punitive damages, the Court finds that the character of Defendant's act, the resulting harm to the Plaintiffs, the need for deterrence, and the wealth of Defendant Iran all weigh in favor of an award of punitive damages.

      III.    Calculation of Punitive Damages

"[C]ourts in this district have taken three approaches to calculating punitive damages in state-sponsored terrorism cases," as follows:

> The first approach, often used in exceptionally deadly attacks, is to multiply the foreign state's yearly expenditures on terrorism by a factor between three and five. A second approach ties punitive damages to the compensatory damages award, using a ratio set forth in earlier cases involving similar conduct. And the final approach awards $150 million to each affected family.

*Saberi v. Government of Islamic Republic of Iran*, 541 F. Supp. 3d 67, 87 (D.D.C. 2021) (internal citations omitted); *see also Abedini v. Islamic Republic of Iran*, 422 F. Supp. 3d 118, 141 (D.D.C. 2019) (discussing four possible methods – the *Flatow* method [corresponding to the first approach], awarding a flat $300 million award [often per family], applying a court-determined multiplier to compensatory damages, or awarding punitive damages equal to compensatory damages).

In this case, Plaintiffs proffer that a multiple of compensatory damages is best suited for a case like this, as "it does not require additional evidence on Iran's expenditures on terrorism and is easy to apply on a per-plaintiff basis." Pls.' Mot. in support of Punitive Damages, ECF No. 191, at 4 (noting that it "provides the Court flexibility to provide awards in multiple final judgments, so as not to prejudice Plaintiffs whose claims are ready for review by the Court"). The multiplier approach

6

is especially appropriate when the defendants "did not directly carry out the attack, but funded [a proxy actor], . . . [and] it is doubtful whether a large amount from an expenditure-times-multiplier would have the deterrent effect that it might have had in times past." *Bluth v. Islamic Republic of Iran*, 203 F. Supp. 3d at 26.  Even acknowledging, as did the court in *Stearns*, 2023 WL 4999215, at *4, that the "nature of Iran's acts is heinous and the extent of harm they caused is tragic," the Court finds that the conduct here fits more squarely within the line of cases awarding punitive damages as a multiplier of compensatory damages.  Furthermore, a compensatory damages framework is appropriate to ensure parity of awards in similar cases.  *See Force v. Islamic Republic of Iran*, 617 F. Supp. 3d 20, 40-41 (D.D.C. 2022); *Thuneibat v. Syrian Arab Republic*, 167 F. Supp. 3d 22, 54 (D.D.C. 2016); *Opati v. Republic of Sudan*, 60 F. Supp. 3d 68, 82 (D.D.C. 2014); *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 403 (D.D.C. 2015) (concluding that tying "punitive damages to compensatory damages by applying a multiplier" is appropriate in "situations where punitive damages have been awarded repeatedly against a defendant for the same conduct in a series of lawsuits").  Moreover, Plaintiffs have proffered valid reasons to calculate punitive damages on a per-plaintiff basis, in a case such as this where the Court is issuing judgments on a rolling basis.[1]

Plaintiffs request a multiplier of three.  Courts have used different multipliers depending on the circumstances.  As explained in one case, "[t]he multiplier [other members of this Court have used] has ranged between three and, in exceptional cases, five." *Gill v. Islamic Republic of Iran*, 249 F. Supp. 3d 88, 106 (D.D.C. 2017) (quoting *Harrison v. Republic of Sudan*, 882 F. Supp. 2d 23, 50 (D.D.C. 2012)). The *Gill* court adopted a multiplier of three, which the *Harrison* court also applied, given "no exceptional circumstances." *Id.* at 106 (citation omitted).  In *Stearns*, the court there calculated punitive damages by using a factor of three.  *Stearns*, 2023 WL 4999215, at

---

[1] The Court notes that, on October 3, 2024, it issued its [179] Order and Administrative Plan Governing Four Additional Special Masters, who will be making additional damage calculations based on the methodology used by the initial Special Master, and that work is ongoing.

7

*4. Although in at least one similar case, *Lee v. Islamic Republic of Iran*, No. 19- cv-830 (APM), Mem. Op., ECF No. 145 (D.D.C. Jul. 31, 2024), the court used a multiplier of two, Plaintiffs "respectfully submit that a long-term campaign of ambushing Americans with powerful bombs and other weapons arguably calls for the *highest* multiplier [but] [n]evertheless, Plaintiffs respectfully request a multiplier of three."  Pls.' Mot. in support of Punitive Damages, ECF No. 191, at 5. Considering the number of cases from this District utilizing a punitive damages calculation based on a "multiplier of three" of compensatory damages as "the usual practice in state sponsored terrorism cases," *see Roth v. Islamic Republic of Iran*, No. 14-cv-1946 (RCL), 2018 WL 4680270, at *17 (D.D.C. Sept. 28, 2018), this Court finds that a multiplier of three is appropriate, and as such, it approves the calculations set forth in Plaintiffs' proposed Order and Judgment.  That Order and Judgment will be entered separately.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE