**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

TIMOTHY KARCHER, *et al.*,
　　　　Plaintiffs,

v.

ISLAMIC REPUBLIC OF IRAN,
　　　　Defendant.

Civil Action No. 16-00232 (CKK)
(Redacted Public Version)

**MEMORANDUM OPINION AND ORDER**
(May 6, 2025)

## I. INTRODUCTION

This Memorandum Opinion addresses the Special Master's [211] Sealed Report and Recommendation Regarding Damages as to injuries sustained by 45 Plaintiffs.[1] These Plaintiffs comprise estates or family members of twelve decedents who were killed in attacks that utilized Explosively Formed Penetrators ("EFPs"), for which Defendant Islamic Republic of Iran ("Iran") and its proxies bear responsibility.[2] *See Karcher v. Islamic Republic of Iran*, Civil Action No. 16-232, 2021 WL 133507 (Jan. 14, 2021) (discussing in detail the circumstances surrounding the attacks on these twelve decedents). That opinion is incorporated by reference herein. The Special Master's Report and Recommendation addresses the following categories of damage awards: (1) economic loss damages for four Estate Plaintiffs, including damages relating to funeral expenses

---

[1] A redacted version of the Report and Recommendation was filed at ECF No. 214. This Memorandum Opinion and Order has minor redactions to protect confidential medical information.

[2] Special Master Report, ECF No. 211 addresses claims related to decedents Daniel Crabtree, Ryan Haupt, Eric Kruger, Jang Ho Kim, Brennan Gibson, John Sullivan, Daniel Fuentes, Virgil Martinez, Joshua D. Brown, Ryan Balmer, Richard Parker, and Michael Elledge.

for one of those Estate Plaintiffs;[3] and (2) solatium damages by forty-one Plaintiffs, who are close family members of the twelve decedents.[4] Having considered the Report and Recommendation of the Special Master – which is both comprehensive and supported by the record evidence – as well as the Plaintiffs' [212] Notice of Non-Objections to the Special Master's Report and Recommendation, the Court ADOPTS the Special Master's recommended damages awards. A separate consolidated Order and Judgment will be issued subsequently.

## II. PROCEDURAL BACKGROUND

After holding a three-day bench trial, on August 26, 2019, the Court granted default judgment against Iran as to the claims of multiple Plaintiffs injured in bellwether attacks and the claims of Plaintiffs representing individuals killed in the bellwether attacks. *See* Orders, ECF Nos. 93 & 105; *see* Aug. 26, 2019 Mem. Op., ECF No. 94 and Sept. 11, 2019 Mem. Op., ECF No. 106 (incorporated by reference herein). The Court made no finding regarding damages for any of those bellwether Plaintiffs but instead appointed Alan Balaran, Esq. as a Special Master to prepare reports and recommendations on damages for these Plaintiffs. *See* Sept. 9, 2019 Order and Admin. Plan, ECF No. 102. Before the Special Master's reports and recommendations had been completed, the Court ordered Mr. Balaran to include his findings on non-economic damages for eight non-bellwether Plaintiffs who were injured in EFP attacks for which the Court subsequently

---

[3] Plaintiffs claiming economic damages are the Estates of Jang Ho Kim, Daniel Fuentes, Joshua D. Brown, and Ryan A. Balmer.

[4] Plaintiffs claiming solatium damages are: Judy Ann Crabtree; Ronald Wayne Crabtree; Debra Wigbels; Ronald William Crabtree; Lynn Forehand; Lance Haupt; Sabrina Cumbe; Tifany Haupt Thompson; Rhonda Haupt; Carol Kruger; Lawrence Kruger; Douglas Kruger; Kristy Kruger; Sangsoon Kim; Seop Kim; Michelle Kim; Linda Gibson; John Gibson; Sean Elliott; Travis Gibson; Stephanie Gibson Webster; Estate of Deborah Beavers; Nancy Fuentes; Armando Fuentes; Julio Fuentes; Tatyana Fuentes; Estate of Rebecca J. Oliver; Daniel Oliver; Elizabeth Masterson; Danielle Sweet; Anthony Balmer; Gabrielle Balmer; Scott Hood; Estate of Dixie Flagg; Flora Hood; Estate of William Parker; Meghan Parker-Crockett; Stephanie Hood Howard; Cheyenne Flagg; Marion Crimens; and Timothy Elledge.

found Iran liable. *See* Jan. 14, 2021 Order, ECF No. 125; *see also* Jan.14, 2021 Order granting

default judgment; Jan. 14, 2021 Sealed Mem. Op. (incorporated by reference herein) (addressing

73 non-bellwether attacks).

Mr. Balaran's reports and recommendations were filed under seal, ECF Nos. 146-148, and

after an objection by the Plaintiffs – regarding the methodology employed to calculate EFP

damages – the Special Master revised his EFP Damages Matrix, *see* ECF No. 169 (proposed

modification). Plaintiffs filed their [170] Notice of Non-Objection, and the Court issued its [171]

Memorandum Opinion and [172] Order adopting the analysis and [revised] damages calculations.

Thereafter, this Court appointed four additional Special Masters "to administer damages

proceedings for the Plaintiffs in this case [who were] awarded default judgment, [but] who were

not part of this Court's remit to Mr. Alan L. Balaran." Oct. 3, 2024 Order and Admin. Plan, ECF

No. 179, at 1. The four Special Masters were directed to provide their Reports and

Recommendations on a rolling basis. *Id.* at 3. Special Master Franklin Rosenblatt's Report and

Recommendation – which is the subject of this Memorandum Opinion and Order – addresses

claims made "by 45 of the Plaintiffs implicated in the 73 attacks for which the Court found the

Defendant, the Islamic Republic of Iran, liable in its January 14, 2021, Order, ECF No. 123."

Report and Recommendation, ECF No. 211, at 8.

## III. DISCUSSION

As a preliminary matter, Special Master Rosenblatt noted that this Court has jurisdiction

over Plaintiffs' claims insofar as all the direct victims of the attacks were either "member[s] of the

armed forces" or "employee[s] of the Government of the United States, or of an individual

performing a contract awarded by the United States Government, acting within the scope of the

employee's employment," and furthermore, "all family member Plaintiffs are United States citizens." *Id.* at 10; *see* 28 U.S.C. §1605A(a)(2)(A)(ii) (regarding subject matter jurisdiction).

As noted herein, this Court has determined previously that Iran was liable for Plaintiffs' injuries under 28 U.S.C. § 1605A(c). Pursuant to Section 1605A(c), Plaintiffs' damages "may include economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c). "Under the FSIA, a 'foreign states shall be liable in the same manner and to the same extent as a private individual under like circumstances.' Therefore, plaintiffs are entitled to the typical array of compensatory damages that may be awarded against tortfeasors in the plaintiffs' respective domiciliary states." *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 51 (D.D.C. 2007) (quoting 28 U.S.C. §1606). In this case, therefore, "[t]he only remaining questions, therefore, are what type of damages Plaintiffs are entitled to recover and in what amounts." *Fritz v. Islamic Republic of Iran*, 324 F. Supp. 3d 54, 59 (D.D.C. 2018).

In the instant case, Plaintiffs' claims for damages may be categorized as follows: (1) economic loss brought by the Estates of Plaintiffs Kim, Fuentes, Brown, and Balmer; (2) solatium claims brought by 41 family members of the twelve deceased victims; and (3) punitive damages. The issue of punitive damages was not referred to the Special Master; rather, Plaintiffs have requested punitive damages in their [8] Amended Complaint and through their [191] Motion in Support of Punitive Damages, which was granted by this Court. *See* Memorandum Opinion, ECF No. 196 (incorporated by reference herein) (awarding punitive damages, which are to be computed by multiplying each Plaintiff's compensatory damages by three). Accordingly, punitive damages for the Plaintiffs addressed in this Opinion and Order will be calculated subsequently, in a manner consistent with this Court's Memorandum Opinion, ECF No. 196. The Court turns now to the Special Master's recommendations regarding Plaintiffs' other claims for damages.

4

### A. Economic Loss Damages

"Section 1605A explicitly provides that foreign state-sponsors of terrorism are liable to victims for economic losses stemming from injuries or death sustained as a result of the foreign state's conduct." *Thuneibat v. Syrian Arab Republic*. 167 F. Supp. 3d 22, 48 (D.D.C. 2016) (citing 28 U.S.C. § 1605A)(c)). Plaintiffs may prove economic losses through submission of a forensic expert's report. *Id.* at 49, *see Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 214 (D.D.C. 2012) ("The report of a forensic economist may provide a reasonable basis for determining the amount of economic damages in an FSIA case.") The Special Master first must examine the methodological soundness of the calculations, with the idea that "mathematical exactitude is often impossible," *Bova v. Islamic Republic of Iran*, No. 15-cv-1074 (RCL), 2020 WL 2838582, at *11 (D.D.C. May 31, 2020). Then, the Special Master may examine "reasonableness and foundation of the assumptions relied upon by the experts. *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 402 (D.D.C. 2015), to protect against "speculation, contingency, or conjecture." *Bova*, 2020 WL 2838582, at *11.

Throughout his Special Master Report and Recommendation, Special Master Rosenblatt documented the two expert reports by Wayne Plumly, Jr., Ph.D. and Steven A. Wolf, CPA, CFE, ABV/CFF, ASA that he utilized in support of calculating Plaintiffs' economic loss claims. Both economic experts are well-qualified, and both have previously provided expert reports on economic losses in numerous terrorism cases, where such loss calculations derived therefrom have been adopted by courts, including this Court. Based on a review of the record in this case, the Court finds these calculations and assumptions made by the forensic economist experts in their

reports to be reasonable. Nor have Plaintiffs objected to any of the economic loss calculations. Accordingly, the economic loss damages recommended by the Special Master in his Report and Recommendation on behalf of the Estates of Plaintiffs Kim, Fuentes, Brown, and Balmer are approved by this Court.

The Court notes that, as part of the claim for economic loss damages, the Estate of Ryan Balmer requested reimbursement of unreimbursed funeral expenses, including prejudgment interest, in the total amount of $6,594.00. Funeral expenses may be awarded as part of economic damages pursuant to Section 1605A(c), along with prejudgment interest. *Colvin v. Syrian Arab Republic*, 363 F. Supp. 3d 141, 160-61 (D.D.C. 2019); *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 24 (D.D.C. 2009) (same). Regarding prejudgment interest, the Special Master explained that "[t]his Circuit has held that an appropriate measure of what rate to use when calculating prejudgment interest is 'the prime rate for each year, *i.e.*, the rate banks charge for short-term unsecured loans to credit-worthy customers.'" Report and Recommendation, ECF No. 195-1, at 39 (quoting *Oldham v. Korean Air Lines Co.*, 127 F.3d 43, 54 (D.C. Cir. 1997) (citing *Forman v. Korean Air Lines Co., Ltd.*, 84 F.3d 446, 450 (D.C. Cir.), *cert den.*, 519 U.S. 1028 (1996)). Accordingly, considering the applicable case law, the Court adopts the Special Master's recommended calculation of funeral expenses with prejudgment interest, which is included in claim for economic damages made by the Estate of Ryan Balmer.

In sum, the Court adopts the Special Master's recommended economic damages for the Estates of Jang Ho Kim, Daniel Fuentes, Joshua D. Brown, and Ryan A. Balmer.

### B. Solatium Damages

A claim for solatium is "a claim for the mental anguish, bereavement and grief that those with a close personal relationship to a decedent experience as a result of the decedent's death, as

well as the harm caused by the loss of the decedent, society and comfort." *Belkin*, 667 F. Supp. 2d

at 22 (citation omitted). Under the state-sponsored terrorism exception to the FSIA, "the award of

solatium damages to the close relatives of terrorism victims" is expressly contemplated. *Fritz*, 324

F. Supp. 3d at 61-62 (citing 28 U.S.C. § 1605A(c)). It is presumed that "family members in direct

lineal relationship suffer compensable mental anguish[.]" *Kaplan v. Hezbollah*, 213 F. Supp. 3d

27, 38 (D.D.C. 2016) (internal quotation marks omitted).

 Judges in this District Court have employed "a general framework for the calculation of

proper damage awards in FSIA cases" based on principles articulated in the *Heiser* case. *Oveissi*

*v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 26 (D.D.C. 2011) (citing *Heiser v. Republic of*

*Iran*, 466 F. Supp. 2d at 269-270). Under this general framework, spouses of deceased victims

receive $8 million; parents and children receive $5 million; and siblings receive $2.5 million.

*Peterson v. Islamic Republic of Iran* ("*Peterson II*"), 515 F. Supp. 2d 25, 52 (D.D.C. 2007); *Valore*

*v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 85 (D.D.C. 2010); *Heiser v. Islamic Republic of*

*Iran*, 466 F. Supp. 2d 229, 269 (D.D.C. 2006). "Spouses typically receive greater damage awards

than parents, who, in turn, receive greater awards than siblings," and "families of victims who have

died are typically awarded greater damages than families of victims who remain alive." *Heiser*,

466 F. Supp. 2d at 269 (internal quotation marks omitted).[5]

 The Court notes also that there is some inconsistency in the amounts awarded to children

of deceased victims with $3 million indicated as the amount to be awarded in cases such as

---

[5] "Relatives of surviving servicemen receive[ ] awards valued at half of the awards to family
member of th[ose] deceased[.]" *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 79
(D.D.C. 2010); *see also Davis v. Islamic Republic of Iran*, 882 F. Supp. 2d 7, 14 (D.D.C. 2014)
(finding that, for the immediate family members of a victim injured by terrorists, courts typically
adhere to the following scale: "$4 million, $2.5 million, $1,5 million, and $1.25 million to
spouses, parents, children and siblings, respectively." (quotation omitted)).

*Anderson v. Islamic Republic of Iran*, 839 F. Supp. 2d 263, 266 (D.D.C. 2012) (based on the same

amount awarded in *Stern v. Islamic Republic of Iran*, 271 F. Supp. 2d 286, 301 (D.D.C. 2003));

*see also Spencer v. Islamic Republic of Iran*, 71 F. Supp. 3d 23, 27-28 (D.D.C. 2014) (finding that

'[a]wards of $3 million to the children of deceased victims are typical . . . [while] [c]hildren of a

surviving victim receive $1.5 million on average.") (citation omitted).  In contrast, $5 million was

awarded for children of a deceased servicemember in *Heisner*, 466 F. Supp. 2d at 318, and *Oveissi*,

768 F. Supp. 2d at 26, and in *Peterson II*, 515 F. Supp. 2d at 51-52 (where $2.5 million was

established as the award for children of a <u>surviving</u> servicemember).

>    In *Mwila*, the court recognized this inconsistency and stated that:

>> Courts in this district have differed somewhat on the proper amount awarded to children of victims.  *Compare Peterson II*, 515 F. Supp. 2d at 51 ($2.5 million to child of injured victim), with *Davis v. Islamic Republic of Iran*, 882 F. Supp. 2d 7, 14 (D.D.C. 2012) ($1.5 million to child of injured victim).  The Court finds the *Peterson II* approach to be more appropriate: to the extent such suffering can be quantified, [insofar as] children who lose parents are likely to suffer as much as parents who lose children.

*Mwila*, 33 F. Supp. 3d 36, 44-45 (D.D.C. 2014).  Reviewing the case law on solatium damages,

this Court finds appropriate awards of solatium damages to immediate family members of victims

killed by terrorists in the amounts of $8 million, $5 million, $5 million, and $2.5 million, to

spouses, parents, children, and siblings, respectively.

>    Step relatives are awarded damages in FSIA cases where they demonstrate that they

functioned as family members who are equivalent to biological relatives.  *See Valore*, 700 F. Supp.

2d at 79-80 (finding that a non-adoptive stepfather was entitled to damages where he and the victim

had a father-son relationship, and they acted as a natural family); *Heiser v. Islamic Republic of*

*Iran*, 659 F. Supp. 2d 20, 29 (D.D.C. 2009) (opining that non-adoptive stepfathers are functionally

the same as biological fathers when they lived in the same household while the victims were minors

and the stepparent treated the children as their own financially, emotionally, and socially). "[T]he D.C. Circuit has recognized that 'immediate family members' may include 'members of the victim's household' who are 'viewed as the functional equivalents of immediate family members.'" *Fritz v. Islamic Republic of Iran*, 324 F. Supp. 3d 54, 63 (D.D.C. 2018) (citing *Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 335 (D.C. Cir. 2003)).

### 1. The Special Master's Recommendations that are Consistent with the Standard Amounts Awarded

Upon review of the information about each Plaintiff family members set forth in the Report and Recommendation, the Special Master's solatium damage awards that correspond to the amounts found appropriate by the Court – namely, $8 million, $5 million, $5 million, and $2.5 million, to spouses, parents, children, and siblings, respectively – are adopted by this Court. The Court notes that, in several cases, the solatium damage awards relate to stepparents and half-siblings, who receive the same amounts as parents ($5 million) and siblings ($2.5 million). The Court finds these awards warranted by the circumstances of the relationships between the decedents and those close family members. By way of example, in the case of John Gibson, who was Brennan Gibson's stepfather, Mr. Gibson married Brennan Gibson's mother "when he was about three" and Brennan Gibson had "little to no contact with his biological father and was raised by his mother and John." Report and Recommendation, ECF No. 211, at 48 (internal citations omitted). Furthermore, "John considered [Brennan] his son, and [Brennan] considered John his father, eventually legally changing his last name to Gibson." *Id.* John taught Brennan to "ride a bike, throw a football, toss a frisbee, and bait a hook," *id.*, and they continued to have a close relationship throughout Brennan's adulthood. The Special Master found John to be the "functional equivalent" of Brennan Gibson's father, the "test used by courts in this District for granting solatium awards to 'members of the victim's household . . . even if they are not legally or

9

biologically related.'"  Report and Recommendation, ECF No. 211, at 49 (quoting *Cabrera v. Islamic Republic of Iran*, No. 18-cv-2065 (JDB), 2022 WL 2817730, *42 (D.D.C. July 19, 2022) (internal citations omitted), adhered to, No. 18-cv-2065 (JDB), 2023 WL 1975091 (D.D.C. Jan. 27, 2023)).

## 2. The Special Master's Recommendations that Vary from the Standard Amounts Awarded

In five cases, the Special Master's recommended solatium damages deviate upward or downward from the formula accepted by the Court, but those deviations are well-supported by the facts and circumstances in the record.  The Court notes that "[t]hese [solatium] numbers . . . are not "set in stone," *Murphy*, 740 F. Supp. 2d at 79, but instead are "goalposts," and "courts should deviate depending on the circumstances." *Fritz*, 324 F. Supp. 3d at 62 (citation omitted).  "A court's job in a solatium case is to account for various facts and circumstances, and to use those factors to arrive at an appropriate numerical expression of total pain and grief —encapsulated in the solatium award." *Oveissi*, 768 F. Supp. 2d at 25. Upward departures may be warranted if there is "evidence establishing a particularly close relationship between the plaintiff and the decedent, particularly in comparison to the normal interactions to be expected given the familial relationship" or with "medical proof of severe pain, grief or suffering on behalf of the claimant" or if the "circumstances surrounding the terrorist attack [rendered] the suffering particularly more acute or agonizing." *Oveissi*, 768 F. Supp. 2d at 26-27.  Downward departures are also possible where the relationship between the victim and family members is attenuated. *Valore*, 700 F. Supp. 2d at 87.

In this case, the Special Master agreed with Plaintiffs' proposed upward departures for Kristy Kruger (sister of Eric Kruger), [Estate of] William Parker (half-brother of Richard Parker), Cheyenne Flagg (half-sister of Richard Parker), and the Estate of Rebecca Oliver (the Estate of Virgil Martinez's mother).  The Special Master disagreed with Plaintiffs' proffered damages of $5

million for Flora Hood, stepmother to Richard Parker, and he recommended instead a 25% downward departure.  The Court agrees with the rationale and amount of the upward and downward departures recommended by the Special Master, which are described in more detail, as follows.

Regarding Kristy Kruger, the Special Master recommended a 25% upward departure for solatium damages "on account of [Kristy's] extreme reaction to the death of her brother," which continues to have long term and serious effects on her daily life.  Report and Recommendation, ECF No. 211, at 37.  This departure is commensurate with the upward departures awarded in *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 21, 29-30 (D.D.C. 2011), which awarded a 50% upward departure to a formerly "playful and cheery child" who "suffered outbursts of anger and fits of denial" and "battled alcoholism" throughout adolescence as a coping mechanism. *See also Baker v. Socialist People's Republic of Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 68, 83-84 (D.D.C. 2011) (awarding a 25% upward departure to a brother who battled substance abuse and depression because of his sister's death).

Similarly, the Special Master recommended a 25% upward adjustment for both [the Estate of] William Parker and Cheyenne Flagg, half-brother and half-sister to Richard Parker.  The Special Master found that both satisfied the "functional equivalent" test required for half-siblings to recover solatium damages. *Fritz*, 324 F. Supp. 3d at 63.  Both half-siblings had an extremely close relationship with their brother Richard, and his death continues to negatively and seriously affect their daily lives and their health.  The Special Master acknowledged the "extreme suffering [William] endured as a result of his brother's death,"

Report and Recommendation, ECF No. 211 at 93, and similarly "[Cheyenne's] particularly extreme reaction to her brother's death,

*Id.* at 99-100; *see Baker, supra.; see also Bova v. Islamic Republic of Iran*, Case No. 15-cv-1074 (RCL), 2020 WL 28338582, at *9 (D.D.C. May 31, 2020) (awarding 20% upward departure to mother who "turned to alcohol, attempted suicide, required hospitalization to alleviate her deteriorating mental condition, and engaged in a series of abusive and threatening relationships" after her son's death); *Brown v. Islamic Republic of Iran*, 872 F. Supp. 2d 37, 43 (D.D.C. July 3, 2012) (awarding 20% upward departure to sister who suffered a "nervous breakdown" and required a year of medication after her brother's death).

The Special Master recommended a 25% upward departure for the Estate of Rebecca Oliver. Based on information provided by Daniel Oliver, Rebecca's husband/Virgil Martinez's stepfather, Rebecca had an incredibly close relationship with her son that continued after he began serving in the military, and her "world fell apart" on the day he died. Report and Recommendation, ECF No. 211, at 68 (internal citation omitted). Rebecca became despondent and lost her joy in life, and she subsequently suffered failing physical health, but she would refuse medications and food, because she lost her will to live. *Id.* at 68-69. She died of a heart attack on January 2, 2019, which her husband attributes to grief from Virgil's death. *Id.* at 67-68. The Special Master looked for guidance to *Kenny v. Islamic Republic of Iran*, No. 22-cv-03299 (TNM), 2024 WL 4297682, at *10 (D.D.C. Sept. 26, 2024) , where the court awarded $6.25 million in solatium damages to a victim's father whose "health declined in the year and a half following [the victim's] passing, and the last months of his life were spent in and out of the hospital," and crediting testimony that the father's "rapidly declining health and ultimate death were likely influenced by the grief of losing his son.")

The Special Master recommended a 25% downward adjustment in solatium damages for Flora Hood, stepmother to Richard Parker. The Special Master found that "Flora's testimony

confirms that she functioned as the equivalent of [Richard] Parker's mother: she married his father when he was two years old, and [Richard] Parker had his own room in their home." Report and Recommendation, ECF No. 211, at 91 (internal citations omitted). This proposed downward adjustment is based on "Flora's partially attenuated relationship with [Richard] Parker," even though she certainly "loved Richard and . . . cared for him." *Id.* at 91; *id.* at 89-90 (where Flora acknowledged that, as a child, Richard spent 1-2 weekends a month with Flora and her husband, and she attended his school activities, helped with homework, and took him camping/fishing, while as an adult, she did not see him often between his two deployments although she did write to him and send care packages when he was deployed). The Special Master concluded that this downward adjustment "account[s] for the limited scope of the relationship between [Flora Hood] and [Richard] Parker]" and "reflects that Flora's amount should be lower as compared to [Richard] Parker's mother." *Id.* at 91-92; *see Fritz v. Islamic Republic of Iran,* No. 15-cv-456 (RDM), 2018 WL 5046229, at *22 (D.D.C. Aug. 13, 2018) (damages may be awarded to both the stepparent and parent of a victim).

In sum, the Court adopts all the Special Master's recommended solatium damages for Plaintiffs Judy Ann Crabtree; Ronald Wayne Crabtree; Debra Wigbels; Ronald William Crabtree; Lynn Forehand; Lance Haupt; Sabrina Cumbe; Tifany Haupt Thompson; Rhonda Haupt; Carol Kruger; Lawrence Kruger; Douglas Kruger; Kristy Kruger; Sangsoon Kim; Seop Kim; Michelle Kim; Linda Gibson; John Gibson; Sean Elliott; Travis Gibson; Stephanie Gibson Webster; Estate of Deborah Beavers; Nancy Fuentes; Armando Fuentes; Julio Fuentes; Tatyana Fuentes; Estate of Rebecca J. Oliver; Daniel Oliver; Elizabeth Masterson; Danielle Sweet; Anthony Balmer; Gabrielle Balmer; Scott Hood; Estate of Dixie Flagg; Flora Hood; Estate of William Parker;

Meghan Parker-Crockett; Stephanie Hood Howard; Cheyenne Flagg; Marion Crimens; and Timothy Elledge.

## IV. CONCLUSION

The Court acknowledges Plaintiffs' efforts to hold Iran responsible for the acts of terror that resulted in injury and/or death to persons serving in the military and/or working for the Government and appreciates that there is no amount of money that can truly compensate the servicemembers/civilians and members of their family. Based on the explanation set forth herein, the Court finds Defendant responsible for the injuries sustained by Plaintiffs and liable under the FSIA's state-sponsored terrorism exception for damages based on economic loss, conscious pain and suffering, and solatium. Accordingly, it is this 6th day of May 2025,

ORDERED that the court ADOPTS the Report and Recommendation by Special Master Rosenblatt, and it is further

ORDERED that by May 9, 2025, Plaintiffs shall provide this Court with a chart, which lists the 45 Plaintiffs and the damage amounts set forth in the Special Master's Report and Recommendation, as adopted herein, and which calculates punitive damages in accordance with the formula used by the Court in its [196] Memorandum Opinion, and which totals the damages. Upon receipt thereof, this Court will issue its Order and Judgment, with that chart attached thereto.

COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE