UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TIMOTHY KARCHER, *et al.*,
        Plaintiffs,

        v.

ISLAMIC REPUBLIC OF IRAN,
        Defendant.

Civil Action No. 16-00232 (CKK)

MEMORANDUM OPINION AND ORDER
(May 28, 2025)

## I. INTRODUCTION

This Memorandum Opinion addresses the Special Master's [232] Sealed Report and Recommendation Regarding Damages as to injuries sustained by 32 Plaintiffs.[1]  These Plaintiffs comprise estates or family members of twelve decedents who were killed in attacks that utilized Explosively Formed Penetrators ("EFPs"), for which Defendant Islamic Republic of Iran ("Iran") and its proxies bear responsibility.[2]  *See Karcher v. Islamic Republic of Iran*, Civil Action No. 16-232, 2021 WL 133507 (Jan. 14, 2021) (discussing in detail the circumstances surrounding the attacks on these twelve decedents).  That opinion is incorporated by reference herein.  The Special Master's Report and Recommendation addresses the following categories of damage awards:  (1)

---

[1] This is the public redacted version of the sealed Memorandum Opinion and Order filed on May 28, 2025, at ECF No. 244.  The redactions herein are minor.

[2] Special Master Report, ECF No. 232, addresses claims related to decedents Brandon Bobb, Ron Joshua, Dayne Dhanoolal, Justin Bauer, Shannon M. Smith, Zachary T. Myers, Israel Devora-Garcia, Matthew Vandegrift, Sean Dressler, Alexander Fuller, Anthony Farrar, Jr., and Robert Dixon.

1

economic loss damages for four Estate Plaintiffs;[3] (2) damages for conscious pain and suffering brought by the Estate of Plaintiff Robert Dixon; and (3) solatium damages by twenty-eight Plaintiffs, who are close family members of the twelve decedents.[4] Having considered the Report and Recommendation of the Special Master – which is detailed, well-written, and supported by the record evidence – as well as the Plaintiffs' [235] Notice of Non-Objections to the Special Master's Report and Recommendation, the Court ADOPTS the Special Master's recommended damages awards. A separate consolidated Order and Judgment will be issued subsequently.

## II. PROCEDURAL BACKGROUND

After holding a three-day bench trial, on August 26, 2019, the Court granted default judgment against Iran as to the claims of multiple Plaintiffs injured in bellwether attacks and the claims of Plaintiffs representing individuals killed in the bellwether attacks. *See* Orders, ECF Nos. 93 & 105; *see* Aug. 26, 2019 Mem. Op., ECF No. 94 and Sept. 11, 2019 Mem. Op., ECF No. 106 (incorporated by reference herein). The Court made no finding regarding damages for any of those bellwether Plaintiffs but instead appointed Alan Balaran, Esq. as a Special Master to prepare reports and recommendations on damages for these Plaintiffs. *See* Sept. 9, 2019 Order and Admin. Plan, ECF No. 102. Before the Special Master's reports and recommendations had been completed, the Court ordered Mr. Balaran to include his findings on non-economic damages for eight non-bellwether Plaintiffs who were injured in EFP attacks for which the Court subsequently

---

[3] Plaintiffs claiming economic damages are the Estates of Zachary T. Myers, Matthew Vandegrift, Alexander Fuller, and Robert Dixon.

[4] Plaintiffs claiming solatium damages are: Ursula Joshua; Paula Bobb-Miles; Racquel Bobb-Miles; Johnny Javier Miles, Jr.; Johnny Javier Miles, Sr.; Kynesha Dhanoolal; Kari Carosella; Gregory Bauer; Megan Sabatino; minor child "R.S."; Tonya Freeman; Jerry Myers; Jeffrey Price; Cassie Collins; Deborah Smith; James Smith; Cory Smith; Christina Smith; Lorenzo Sandoval, Jr.; Lorenzo Sandoval, Sr.; Mary Jane Vandegrift; Estate of John Vandegrift; Ardith Cecil Dressler; Melissa Dressler Schulz; Anastasia Fuller; William A. Farrar, Sr.; Estate of Ilene Dixon; and Estate of Daniel Dixon.

found Iran liable. *See* Jan. 14, 2021 Order, ECF No. 125; *see also* Jan.14, 2021 Order granting default judgment; Jan. 14, 2021 Sealed Mem. Op. (incorporated by reference herein) (addressing 73 non-bellwether attacks).

Mr. Balaran's reports and recommendations were filed under seal, ECF Nos. 146-148, and after an objection by the Plaintiffs – regarding the methodology employed to calculate EFP damages – the Special Master revised his EFP Damages Matrix, *see* ECF No. 169 (proposed modification). Plaintiffs filed their [170] Notice of Non-Objection, and the Court issued its [171] Memorandum Opinion and [172] Order adopting the analysis and [revised] damages calculations. Thereafter, this Court appointed four additional Special Masters "to administer damages proceedings for the Plaintiffs in this case [who were] awarded default judgment, [but] who were not part of this Court's remit to Mr. Alan L. Balaran." Oct. 3, 2024 Order and Admin. Plan, ECF No. 179, at 1. The four Special Masters were directed to provide their Reports and Recommendations on a rolling basis. *Id.* at 3. Special Master Franklin Rosenblatt's Report and Recommendation – which is the subject of this Memorandum Opinion and Order – addresses claims made "by 32 of the Plaintiffs implicated in ten of the attacks for which the Court found the Defendant, the Islamic Republic of Iran, liable in its January 14, 2021, Order, ECF No. 123." Report and Recommendation, ECF No. 232, at 7.

### III. DISCUSSION

As a preliminary matter, Special Master Rosenblatt noted that this Court has jurisdiction over Plaintiffs' claims insofar as all the direct victims of the attacks were either "member[s] of the armed forces" or "employee[s] of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the

3

employee's employment," and furthermore, "all family member Plaintiffs are United States citizens." *Id.* at 9-10; *see* 28 U.S.C. §1605A(a)(2)(A)(ii) (regarding subject matter jurisdiction).

As noted herein, this Court has determined previously that Iran was liable for Plaintiffs' injuries under 28 U.S.C. § 1605A(c). Pursuant to Section 1605A(c), Plaintiffs' damages "may include economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c). "Under the FSIA, a 'foreign states shall be liable in the same manner and to the same extent as a private individual under like circumstances.' Therefore, plaintiffs are entitled to the typical array of compensatory damages that may be awarded against tortfeasors in the plaintiffs' respective domiciliary states." *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 51 (D.D.C. 2007) (quoting 28 U.S.C. §1606). In this case, therefore, "[t]he only remaining questions, therefore, are what type of damages Plaintiffs are entitled to recover and in what amounts." *Fritz v. Islamic Republic of Iran*, 324 F. Supp. 3d 54, 59 (D.D.C. 2018).

In the instant case, Plaintiffs' claims for damages may be categorized as follows: (1) economic loss brought by the Estates of Plaintiffs Myers, Vandegrift, Fuller, and Dixon; (2) a claim for conscious pain and suffering by the Estate of Robert Dixon; (3) solatium claims brought by 28 family members of the twelve deceased victims; and (4) punitive damages. The issue of punitive damages was not referred to the Special Master; rather, Plaintiffs have requested punitive damages in their [8] Amended Complaint and through their [191] Motion in Support of Punitive Damages, which was granted by this Court. *See* Memorandum Opinion, ECF No. 196 (incorporated by reference herein) (awarding punitive damages, which are to be computed by multiplying each Plaintiff's compensatory damages by three). Accordingly, punitive damages for the Plaintiffs addressed in this Opinion and Order will be calculated subsequently, in a manner consistent with

this Court's Memorandum Opinion, ECF No. 196. The Court turns now to the Special Master's recommendations regarding Plaintiffs' other claims for damages.

### A. Economic Loss Damages

"Section 1605A explicitly provides that foreign state-sponsors of terrorism are liable to victims for economic losses stemming from injuries or death sustained as a result of the foreign state's conduct." *Thuneibat v. Syrian Arab Republic.* 167 F. Supp. 3d 22, 48 (D.D.C. 2016) (citing 28 U.S.C. § 1605A)(c)). Plaintiffs may prove economic losses through submission of a forensic expert's report. *Id.* at 49, *see Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 214 (D.D.C. 2012) ("The report of a forensic economist may provide a reasonable basis for determining the amount of economic damages in an FSIA case.") The Special Master first must examine the methodological soundness of the calculations, with the idea that "mathematical exactitude is often impossible," *Bova v. Islamic Republic of Iran*, No. 15-cv-1074 (RCL), 2020 WL 2838582, at *11 (D.D.C. May 31, 2020). Then, the Special Master may examine "reasonableness and foundation of the assumptions relied upon by the experts. *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 402 (D.D.C. 2015), to protect against "speculation, contingency, or conjecture." *Bova*, 2020 WL 2838582, at *11.

Throughout his Report and Recommendation, Special Master Rosenblatt documented the two expert reports by Wayne Plumly, Jr., Ph.D. and Steven A. Wolf, CPA, CFE, ABV/CFF, ASA that he utilized in support of calculating Plaintiffs' economic loss claims. Both economic experts are well-qualified, and both have previously provided expert reports on economic losses in numerous terrorism cases, where such loss calculations derived therefrom have been adopted by courts, including this Court. Based on a review of the record in this case, the Court finds these calculations and assumptions made by the forensic economist experts in their reports to be

5

reasonable. Nor have Plaintiffs objected to any of the economic loss calculations. Accordingly, the economic loss damages recommended by the Special Master in his Report and Recommendation on behalf of the Estates of Plaintiffs Myers, Vandegrift, Fuller, and Dixon are approved by this Court.

### B. Damages for Conscious Pain and Suffering

In this case, the Estate of Plaintiff Robert Dixon requested damages for conscious pain and suffering. When assessing damages for pain and suffering, there is "no recovery" where "death was instantaneous," *Elahi v. Islamic Republic of Iran*, 124 F. Supp. 2d 97, 112 (D.D.C. 2000). Based on the circumstances and timing of his death after injuries were incurred – as verified by eyewitness accounts – that bar is inapplicable to the claim by the Estate of Robert Dixon. Plaintiffs requested, and the Special Master recommended, that the Estate of Robert Dixon be awarded $1 million for conscious pain and suffering. The Special Master noted that courts have awarded $1 million to victims who experienced conscious pain and suffering for seconds before their deaths. *See, e.g., Smith ex rel. Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 234 (S.D.N.Y. 2003) (awarding $1 million on behalf of a victim who was leaving the South Tower of the World Trade Center on September 11, 2001, when the second plane struck the building, creating the possibility that he experienced pain and suffering when it happened). Victims who survived a few minutes to a few hours after the bombing typically receive an award of $1 million. *Elahi*, 124 F. Supp. 2d at 113. Furthermore, "estates of direct victims can also recover for the pain and suffering endured" by the victim. *Fritz*, 324 F. Supp. 3d at 60. The Court agrees with the Special Master's recommended award of $1 million in damages for conscious pain and suffering for the Estate of Robert Dixon.

6

## C. Solatium Damages

A claim for solatium is "a claim for the mental anguish, bereavement and grief that those with a close personal relationship to a decedent experience as a result of the decedent's death, as well as the harm caused by the loss of the decedent, society and comfort." *Belkin*, 667 F. Supp. 2d at 22 (citation omitted). Under the state-sponsored terrorism exception to the FSIA, "the award of solatium damages to the close relatives of terrorism victims" is expressly contemplated. *Fritz*, 324 F. Supp. 3d at 61-62 (citing 28 U.S.C. § 1605A(c)). It is presumed that "family members in direct lineal relationship suffer compensable mental anguish[.]" *Kaplan v. Hezbollah*, 213 F. Supp. 3d 27, 38 (D.D.C. 2016) (internal quotation marks omitted).

Judges in this District Court have employed "a general framework for the calculation of proper damage awards in FSIA cases" based on principles articulated in the *Heiser* case. *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 26 (D.D.C. 2011) (citing *Heiser v. Republic of Iran*, 466 F. Supp. 2d at 269-270). Under this general framework, spouses of deceased victims receive $8 million; parents and children receive $5 million; and siblings receive $2.5 million. *Peterson v. Islamic Republic of Iran* ("*Peterson II*"), 515 F. Supp. 2d 25, 52 (D.D.C. 2007); *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 85 (D.D.C. 2010); *Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 269 (D.D.C. 2006). "Spouses typically receive greater damage awards than parents, who, in turn, receive greater awards than siblings," and "families of victims who have died are typically awarded greater damages than families of victims who remain alive." *Heiser*, 466 F. Supp. 2d at 269 (internal quotation marks omitted).[5]  "Siblings of half-blood to the

---

[5] "Relatives of surviving servicemen receive[ ] awards valued at half of the awards to family member of th[ose] deceased[.]" *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 79 (D.D.C. 2010); *see also Davis v. Islamic Republic of Iran*, 882 F. Supp. 2d 7, 14 (D.D.C. 2014) (finding that, for the immediate family members of a victim injured by terrorists, courts typically

7

servicemen in this case are presumed to recover as a full-blood sibling would – that is, they are entitled to $2.5 million. . ." *Peterson II*, 515 F. Supp. 2d at 52.

The Court notes also that there is some inconsistency in the amounts awarded to children of deceased victims with $3 million indicated as the amount to be awarded in cases such as *Anderson v. Islamic Republic of Iran*, 839 F. Supp. 2d 263, 266 (D.D.C. 2012) (based on the same amount awarded in *Stern v. Islamic Republic of Iran*, 271 F. Supp. 2d 286, 301 (D.D.C. 2003)); *see also Spencer v. Islamic Republic of Iran*, 71 F. Supp. 3d 23, 27-28 (D.D.C. 2014) (finding that '[a]wards of $3 million to the children of deceased victims are typical . . . [while] [c]hildren of a surviving victim receive $1.5 million on average.") (citation omitted). In contrast, $5 million was awarded for children of a deceased servicemember in *Heisner*, 466 F. Supp. 2d at 318, and *Oveissi*, 768 F. Supp. 2d at 26, and in *Peterson II*, 515 F. Supp. 2d at 51-52 (where $2.5 million was established as the award for children of a <u>surviving</u> servicemember).

In *Mwila*, the court recognized this inconsistency and stated that:

> Courts in this district have differed somewhat on the proper amount awarded to children of victims. *Compare Peterson II*, 515 F. Supp. 2d at 51 ($2.5 million to child of injured victim), with *Davis v. Islamic Republic of Iran*, 882 F. Supp. 2d 7, 14 (D.D.C. 2012) ($1.5 million to child of injured victim). The Court finds the *Peterson II* approach to be more appropriate: to the extent such suffering can be quantified, [insofar as] children who lose parents are likely to suffer as much as parents who lose children.

*Mwila*, 33 F. Supp. 3d 36, 44-45 (D.D.C. 2014). Reviewing the case law on solatium damages, this Court finds appropriate awards of solatium damages to immediate family members of victims killed by terrorists in the amounts of $8 million, $5 million, $5 million, and $2.5 million, to spouses, parents, children, and siblings, respectively.

---

adhere to the following scale: "$4 million, $2.5 million, $1,5 million, and $1.25 million to spouses, parents, children and siblings, respectively." (quotation omitted)).

Step-relatives are awarded damages in FSIA cases where they demonstrate that they functioned as family members who are equivalent to biological relatives. *See Valore*, 700 F. Supp. 2d at 79-80 (finding that a non-adoptive stepfather was entitled to damages where he and the victim had a father-son relationship, and they acted as a natural family); *Estate of Heiser v. Islamic Republic of Iran*, 659 F. Supp. 2d 20, 29 (D.D.C. 2009) (opining that non-adoptive stepfathers are functionally the same as biological fathers when they lived in the same household while the victims were minors and the stepparent treated the children as their own financially, emotionally, and socially). "[T]he D.C. Circuit has recognized that 'immediate family members' may include 'members of the victim's household' who are 'viewed as the functional equivalents of immediate family members.'" *Fritz v. Islamic Republic of Iran*, 324 F. Supp. 3d 54, 63 (D.D.C. 2018) (citing *Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 335 (D.C. Cir. 2003)).

### 1. The Special Master's Recommendations that are Consistent with the Standard Amounts Awarded

Upon review of the information about each Plaintiff family member contained in the Report and Recommendation, the Court adopts the Special Master's solatium damage awards that correspond to the amounts found appropriate by the Court – namely, $8 million, $5 million, $5 million, and $2.5 million, to spouses, parents, children, and siblings, respectively. The Court notes that, in several cases, the solatium damage awards recommended by the Special Master relate to stepparents and half-siblings, who receive the same amounts as parents ($5 million) and siblings ($2.5 million). By way of example, the Court looks to the case of Johnny Javier Miles, Sr., who was Brandon Bobb's stepfather. Mr. Miles married Brandon's mother when he was about nine; he was "the only father [Brandon] ever had, and [he] took that responsibility seriously" as it "fulfilled [his] lifelong dream to have a son." Report and Recommendation ECF No. 232, at 22. Father and son regularly ate dinner together; they attended church services, went on family vacations; and Mr.

9

Miles attended Brandon's athletic competitions and bought him his first car. *Id.* at 22-23. The Special Master found Mr. Miles to be "functionally equivalent" to Brandon Bobb's father, which is the test used by courts in this District for granting solatium awards to members of a victim's household when they are not legally or biologically related, Report and Recommendation, ECF No. 232, at 24 (citing *Heisner*, 659 F. Supp. 2d at 29). Accordingly, the Special Master recommended solatium damages of $5 million for Johnny Javier Miles, Sr., the same baseline amount as a parent. The Court finds the Special Master's recommended awards to stepparents and half siblings warranted by the circumstances of the relationships between the decedents and those close family members.

### 2. The Special Master's Recommendations that Vary from the Standard Amounts Awarded

In five cases, the Special Master's recommended solatium damages deviate upward or downward from the formula accepted by the Court, but those deviations are well-supported by the facts and circumstances in the record. The Court notes that "[t]hese [solatium] numbers . . . are not "set in stone," *Murphy*, 740 F. Supp. 2d at 79, but instead are "goalposts," and "courts should deviate depending on the circumstances." *Fritz*, 324 F. Supp. 3d at 62 (citation omitted). "A court's job in a solatium case is to account for various facts and circumstances, and to use those factors to arrive at an appropriate numerical expression of total pain and grief—encapsulated in the solatium award." *Oveissi*, 768 F. Supp. 2d at 25. Upward departures may be warranted if there is "evidence establishing a particularly close relationship between the plaintiff and the decedent, particularly in comparison to the normal interactions to be expected given the familial relationship" or with "medical proof of severe pain, grief or suffering on behalf of the claimant" or if the "circumstances surrounding the terrorist attack [rendered] the suffering particularly more acute or

10

agonizing." *Oveissi*, 768 F. Supp. 2d at 26-27. Downward departures are also possible where the relationship between the victim and family members is attenuated. *Valore*, 700 F. Supp. 2d at 87.

In this case, the Special Master agreed with Plaintiffs' proposed upward departures for Racquel Bobb-Miles (half-sister of Brandon Bobb), Johnny Javier Miles, Jr. (half-brother of Brandon Bobb), and Anastasia Fuller (widow of Alexander Fuller). The Special Master recommended also an upward departure for Gregory Bauer (father of Justin Bauer), and he recommended a downward departure for "R.S." (minor child of Zachary Myers). The rationale and amount of the upward and downward departures recommended by the Special Master are described in more detail, as follows.

Regarding Racquel Bobb-Miles, the Special Master recommended a 20% upward departure for solatium damages "warranted by her extreme reaction to her brother's death,

." Report and Recommendation, ECF No. 232, at 20 (string citing cases). This departure is commensurate with the upward departures in those cases, where the plaintiff's reaction to a servicemember's death was extreme. *See Baker v. Socialist People's Republic of Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 68, 83-84 (D.D.C. 2011) (awarding a 25% upward departure where the decedent's brother battled substance abuse and depression); *see also Bova v. Islamic Republic of Iran*, Case No. 15-cv-1074 (RCL), 2020 WL 28338582, at *9 (D.D.C. May 31, 2020) (awarding 20% upward departure to mother who "turned to alcohol, attempted suicide, required hospitalization to alleviate her deteriorating mental condition, and engaged in a series of abusive and threatening relationships" after her son's death); *Brown v. Islamic Republic of Iran*, 872 F. Supp. 2d 37, 43 (D.D.C. July 3, 2012) (awarding 20% upward departure to sister who suffered a "nervous breakdown" and required a year of medication after her brother's death). Similarly, the Special Master recommended a 20% upward adjustment for Racquel's brother,

11

Johnny Javier Miles, Jr. The Special Master indicated that Johnny's reaction to his brother's death

᠁. Report and Recommendation, ECF No. 232 at 22. The Special Master found that both Racquel and Johnny satisfied the "functional equivalent" test required for half-siblings to recover solatium damages. *Fritz*, 324 F. Supp. 3d at 63. Both half-siblings had an extremely close relationship with their older brother Brandon, ᠂

The Special Master recommended a 25% upward departure for Anastasia Fuller, whose relationship with her decedent husband started when they became friends at ages 8 and 10, respectively, and evolved into dating and then marriage, at age 16 and 18, respectively. Report and Recommendation, ECF No. 232, at 93. Alexander Fuller deployed when Anastasia was pregnant, and he was killed before she gave birth.

᠂ *Id.* at 94-95. The Special Master found the upward departure warranted not only by Anastasi's extreme reaction to Alexander's death, but also by the "particularly gruesome circumstances under which SGT Fuller's body was returned [piecemeal] to the United States." *Id.* at 94.

The Special Master recommended a 20% upward departure for Gregory Bauer, who raised Justin Bauer and his siblings as a single parent. The Special Master noted the unusually close relationship between the father and son – Gregory would visit his son at school daily at lunchtime; he coached his son's football team for years, and he never missed one of Justin's wrestling matches or football games. Report and Recommendation, ECF No. 232, at 33-34. After Justin enlisted, the two talked on the telephone daily, often for hours, and after Justin was deployed, they spoke or

12

emailed regularly. *Id.* at 34.

from the death of SSG Bauer as described above, and his status as sole parent of SSG Bauer[.]" *Id.* at 35; *see Islamic Republic of Iran*, No. 22-cv-03299 (TNM), 2024 WL 4297682, at *10 (D.D.C. Sept. 26, 2024), where the court awarded $6.25 million in solatium damages to a victim's father whose "health declined in the year and a half following [the victim's] passing, and the last months of his life were spent in and out of the hospital," and crediting testimony that the father's "rapidly declining health and ultimate death were likely influenced by the grief of losing his son.")

The Special Master recommended a 25% downward adjustment in solatium damages for R.S., minor child of Zachary Myers. The Special Master acknowledged that R.S. has felt grief, anger, and sadness due to the loss of her father, but the Special Master concluded that "[g]iven her age (14 months) at the time of her father's death, R.S. can only have derivative memories of her father, and her grief must necessarily be less intense than that of other children of deceased victims." Report and Recommendation, ECF No. 232, at 46. This Court agrees with the rationale and amount of all of the upward and downward departures recommended by the Special Master, In sum, the Court adopts all the Special Master's recommended solatium damages for Plaintiffs Ursula Joshua; Paula Bobb-Miles; Racquel Bobb-Miles; Johnny Javier Miles, Jr.; Johnny Javier Miles, Sr.; Kynesha Dhanoolal; Kari Carosella; Gregory Bauer; Megan Sabatino; minor child "R.S."; Tonya Freeman; Jerry Myers; Jeffrey Price; Cassie Collins; Deborah Smith; James Smith; Cory Smith; Christina Smith; Lorenzo Sandoval, Jr.; Lorenzo Sandoval, Sr.; Mary Jane Vandegrift; Estate of John Vandegrift; Ardith Cecil Dressler; Melissa Dressler Schulz; Anastasia Fuller; William A. Farrar, Sr.; Estate of Ilene Dixon; and Estate of Daniel Dixon.

13

## IV. CONCLUSION

The Court acknowledges Plaintiffs' efforts to hold Iran responsible for the acts of terror that resulted in injury and/or death to persons serving in the military and/or working for the Government and appreciates that there is no amount of money that can truly compensate the servicemembers/civilians and members of their family. Based on the explanation set forth herein, the Court finds Defendant responsible for the injuries sustained by Plaintiffs and liable under the FSIA's state-sponsored terrorism exception for damages based on economic loss, conscious pain and suffering, and solatium. Accordingly, it is this 28th day of May 2025,

ORDERED that the court ADOPTS the [232] Report and Recommendation by Special Master Rosenblatt. After review of the proposed damages chart provided by the Plaintiffs, which lists the 32 Plaintiffs and the damage amounts set forth in the Special Master's Report and Recommendation, as adopted herein, and which calculates punitive damages in accordance with the formula used by the Court in its [196] Memorandum Opinion, this Court will issue its Order and Judgment, with a damages chart attached thereto.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE

14