UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TIMOTHY KARCHER, *et al.*,
    Plaintiffs,
v.
ISLAMIC REPUBLIC OF IRAN,
    Defendant.

Civil Action No. 16-00232 (CKK)
SEALED

**MEMORANDUM OPINION AND ORDER**
(Aug. 18, 2025)

**I. INTRODUCTION**

This Memorandum Opinion addresses the Special Master Shana Solomon's [272] Sealed Report and Recommendation Regarding Damages as to solatium claims by thirty-six Plaintiffs.[1] These Plaintiffs are family members of twenty servicemembers who died because of attacks – that utilized Explosively Formed Penetrators ("EFPs") – for which Defendant Islamic Republic of Iran ("Iran") and its proxies bear responsibility.[2] *See Karcher v. Islamic Republic of Iran*, Civil Action

---

[1] The Plaintiffs addressed in this Memorandum Opinion are: Patricia Montgomery, Raymond Montgomery, Bryan Montgomery, Rayanne Hunter, Westlin Hunter, Fabersha Flynt Lewis, Fred Frigo, Jill Bock, Harry Bock, Mariah Simoneaux, James Smith, Megan Smith, Joanne Gutcher, Amanda B. Adair, John Lamie, Tammy Vanderwaal, Alyssa Reece, Ashley Gudridge Houppert, Kimberly Miller, Michael J. Miller, Kacey Gilmore, Terrell Gilmore, Jr., Patricia Smith, Michael Smith, Jacqueline Smith, Rosemarie Alfonso, Kyle Brecken, Roberto Andrade, Sr., Theresa Davis, Rhonda Kemper, Theresa Hart, Wayne Newby, Nathan Newby, Veronica Hickman, David Eugene Hickman, and Devon Fletcher Hickman.

[2] The twenty servicemembers are: Ryan Montgomery, Wesley Hunter, Bryan Anthony Lewis, Nathan Joseph Frigo, Amos Bock, Richard Smith, William Joseph Rechenmacher, James Adair, Gene Lamie, Matthew Kyle Reece, James D. Gudridge, Patrick J. Miller, Terrell Gilmore, Timothy Smith, Carlo Alfonso, Roberto Andrade, Jr., Brad A. Davis, David A. Schaefer, Jr., Nicholas W. Newby, and David Emanuel Hickman. Regarding the claim by family members of Wesley Hunter, this Court found previously that the February 26, 2006 attack – in which Staff Sgt. Hunter was seriously wounded – killed Specialist Clay Farr (whose claims are not addressed

1

No. 16-232, 2021 WL 133507 (Jan. 14, 2021) (discussing in detail the circumstances surrounding the attacks resulting in the servicemembers' deaths). That opinion is incorporated by reference herein. The Special Master's Report and Recommendation addresses only solatium damages. Having considered the Report and Recommendation of the Special Master – which is comprehensive and supported by citations to the record evidence – as well as the Plaintiffs' [273] Notice of Non-Objections to the Special Master's Report and Recommendation, the Court ADOPTS the Special Master's recommended damages awards. A separate consolidated Order and Judgment will be issued subsequently.

## II. PROCEDURAL BACKGROUND

After holding a three-day bench trial, on August 26, 2019, the Court granted default judgment against Iran as to the claims of multiple Plaintiffs injured in bellwether attacks and the claims of Plaintiffs representing individuals killed in the bellwether attacks. *See* Orders, ECF Nos. 93 & 105; *see* Aug. 26, 2019 Mem. Op., ECF No. 94 and Sept. 11, 2019 Mem. Op., ECF No. 106 (incorporated by reference herein). The Court made no finding regarding damages for any of those bellwether Plaintiffs but instead appointed Alan Balaran, Esq. as a Special Master to prepare reports and recommendations on damages for these Plaintiffs. *See* Sept. 9, 2019 Order and Admin. Plan, ECF No. 102. Before the Special Master's reports and recommendations had been completed, the Court ordered Mr. Balaran to include his findings on non-economic damages for eight non-bellwether Plaintiffs who were injured in EFP attacks for which the Court subsequently found Iran liable. *See* Jan. 14, 2021 Order, ECF No. 125; *see also* Jan. 14, 2021 Order granting

---

in this Report and Recommendation). Memorandum Opinion, ECF No. 124, at 35. The Special Master indicates that "[b]ecause SSG Hunter [months later] died because of his injuries, the military treated his status 'as if he had died in theater.'" Report and Recommendation, ECF No. 272, at 24.

default judgment, ECF No. 122; Jan. 14, 2021 Mem. Op., ECF No. 124 (incorporated by reference herein) (addressing 73 non-bellwether attacks).

Mr. Balaran's reports and recommendations were filed under seal, ECF Nos. 146-148, and after an objection by the Plaintiffs – regarding the methodology employed to calculate EFP damages – the Special Master revised his EFP Damages Matrix, see ECF No. 169 (proposed modification). See Proposed Modification, ECF No. 169, at 9. Plaintiffs filed their [170] Notice of Non-Objection to the Proposed Modification, and the Court issued its [171] Memorandum Opinion adopting the analysis and [revised] damages calculations. Thereafter, this Court appointed four additional Special Masters "to administer damages proceedings for the Plaintiffs in this case [who were] awarded default judgment, [but] who were not part of this Court's remit to Mr. Alan L. Balaran." Oct. 3, 2024 Order and Admin. Plan, ECF No. 179, at 1. The four Special Masters were directed to provide their Reports and Recommendations on a rolling basis. *Id.* at 3. The Report and Recommendation – which is the subject of this Memorandum Opinion and Order – addresses solatium claims made by thirty-six family members of servicemen who died because of the twenty terrorist attacks, which were described therein by Special Master Shana Solomon.

### III. DISCUSSION

As a preliminary matter, Special Master Solomon affirmed this Court's jurisdiction over Plaintiffs' claims insofar as "the direct victims were all 'member[s] of the armed forces' or 'an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment,' and all of the family member Plaintiffs are United States citizens." Report and Recommendation, ECF No. 272, at 9-10; see 28 U.S.C. §1605A(a)(2)(A)(ii) (regarding subject matter jurisdiction). As noted herein, this Court has determined previously that Iran was liable for

3

Plaintiffs' injuries under 28 U.S.C. § 1605A(c). Pursuant to Section 1605A(c), Plaintiffs' damages "may include economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c). In the instant case, Plaintiffs claim solatium damages and punitive damages.

The issue of punitive damages was not referred to the Special Master; rather, Plaintiffs have requested punitive damages in their [8] Amended Complaint and through their [191] Motion in Support of Punitive Damages, which was granted by this Court. *See* Memorandum Opinion, ECF No. 196 (incorporated by reference herein) (awarding punitive damages, which are to be computed by multiplying each Plaintiff's compensatory damages by three). Accordingly, punitive damages for the Plaintiffs addressed in this Opinion and Order will be calculated subsequently, in a manner consistent with this Court's Memorandum Opinion, ECF No. 196. The Court turns now to the Special Master's recommendations regarding Plaintiffs' solatium claims.

### A. Solatium Claims

A claim for solatium is "a claim for the mental anguish, bereavement and grief that those with a close personal relationship to a decedent experience as a result of the decedent's death, as well as the harm caused by the loss of the decedent, society and comfort." *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009) (citation omitted). Under the state-sponsored terrorism exception to the FSIA, "the award of solatium damages to the close relatives of terrorism victims" is expressly contemplated. *Fritz v. Islamic Republic of Iran*, 324 F. Supp. 3d 54, 61-62 (D.D.C. 2018) (citing 28 U.S.C. § 1605A(c)). It is presumed that "family members in direct lineal relationship suffer compensable mental anguish[.]" *Kaplan v. Hezbollah*, 213 F. Supp. 3d 27, 38 (D.D.C. 2016) (internal quotation marks omitted).

Special Master Solomon explains that courts in this District have established "[b]aseline solatium awards for family members of victims who died as a result of terrorist attacks[.]" Report

4

and Recommendation ECF No. 272, at 9. "The spouses of deceased victims typically receive $8 million; the parents of the decedent victims receive $5 million; the children of decedent victims receive $5 million; and the siblings of decedent victims receive $2.5 million." *Id.* (citing *Peterson v. Islamic Republic of Iran* ("*Peterson II*"), 515 F. Supp. 2d 25, 52 (D.D.C. 2007); *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 85 (D.D.C. 2010); *Heisner v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 269 (D.D.C. 2006)).

The Court notes also that there is some inconsistency in the amounts awarded to children of deceased victims with $3 million indicated as the amount to be awarded in cases such as *Anderson v. Islamic Republic of Iran*, 839 F. Supp. 2d 263, 266 (D.D.C. 2012) (based on the same amount awarded in *Stern v. Islamic Republic of Iran*, 271 F. Supp. 2d 286, 301 (D.D.C. 2003)); *see also Spencer v. Islamic Republic of Iran*, 71 F. Supp. 3d 23, 27-28 (D.D.C. 2014) (finding that '[a]wards of $3 million to the children of deceased victims are typical . . . [while] [c]hildren of a surviving victim receive $1.5 million on average.") (citation omitted). In contrast, $5 million was awarded for children of a deceased servicemember in *Heisner*, 466 F. Supp. 2d at 318, and *Oveissi*, 768 F. Supp. 2d at 26, and in *Peterson II*, 515 F. Supp. 2d at 51-52 (where $2.5 million was established as the award for children of a surviving servicemember).

In *Mwila*, the court recognized this inconsistency and stated that:

> Courts in this district have differed somewhat on the proper amount awarded to children of victims. *Compare Peterson II*, 515 F. Supp. 2d at 51 ($2.5 million to child of injured victim), *with Davis v. Islamic Republic of Iran*, 882 F. Supp. 2d 7, 14 (D.D.C. 2012) ($1.5 million to child of injured victim). The Court finds the *Peterson II* approach to be more appropriate: to the extent such suffering can be quantified, children who lose parents are likely to suffer as much as parents who lose children.

*Mwila*, 33 F. Supp. 3d 36, 44-45 (D.D.C. 2014). Reviewing the case law on solatium damages, this Court finds appropriate awards of solatium damages to immediate family members of victims

killed by terrorists in the amounts of $8 million, $5 million, $5 million, and $2.5 million, to spouses, parents, children, and siblings, respectively.

**1. The Special Master's Recommendations that are Consistent with the Standard Amounts Awarded**

"A court's job in a solatium case is to account for various facts and circumstances, and to use those factors to arrive at an appropriate numerical expression of total pain and grief — encapsulated in the solatium award." *Oveissi*, 768 F. Supp. 2d at 25. The Court notes that most of Special Master Solomon's recommended damage awards for Plaintiffs' solatium claims fall within that baseline range of $8 million to spouses of the decedents, $5 million to parents, $5 million to children (including a stepchild, addressed below), and $2.5 million to siblings (including a half-sibling, addressed below).

In the case of Megan Smith, half-sister to Richard Smith, the Special Master recommended an award of $2.5 million in solatium damages, with which this Court agrees. The Special Master noted the half-siblings' close relationship, including that Megan looked up to, was friends with, and sought guidance from Richard. Report and Recommendation, ECF No. 272, at 48. The Special Master further highlighted the "mental anguish, bereavement, and grief" that Megan experienced, and continues to experience, because of Richard Smith's death. *Id.* at 49-50. "Siblings of half-blood to the servicemen in this case are presumed to recover as a full-blood sibling would – that is, they are entitled to $2.5 million. . ." *Peterson II*, 515 F. Supp. 2d at 52.

The Court notes that in the case of Kyle Brecken – Carlo Alfonso's stepson, who was quite young when Alfonoso was killed – the Special Master recommended $5 million in solatium damages based on Kyle's testimony that Carlo Alfonso "was the only father [he] ever had" and the fact that Kyle has "some images" and memories of Alfonso, has kept various possessions that

6

belonged to Alfonso, misses his presence, and feels continued sadness. Report and Recommendation, ECF No 272, at 97-98. Step-relatives are awarded damages in FSIA cases where they demonstrate that they functioned as family members who are equivalent to biological relatives. *See, e.g., Valore*, 700 F. Supp. 2d at 79-80 (finding that a non-adoptive stepfather was entitled to damages where he and the victim had a father-son relationship, and they acted as a natural family); *Estate of Heiser v. Islamic Republic of Iran*, 659 F. Supp. 2d 20, 29 (D.D.C. 2009) (opining that non-adoptive stepfathers are functionally the same as biological fathers when they lived in the same household while the victims were minors and the stepparent treated the children as their own financially, emotionally, and socially). "[T]he D.C. Circuit has recognized that 'immediate family members' may include 'members of the victim's household' who are 'viewed as the functional equivalents of immediate family members.'" *Fritz*, 324 F. Supp. 3d at 63 (citation omitted). This Court agrees with the Special Master that Alfonso was the "functional equivalent" of Kyle's father, and further, that an award of $5 million in solatium damages is appropriate.

Accordingly, upon review of the information about the Plaintiff family members contained in the Report and Recommendation, this Court adopts the Special Master's solatium damage awards that correspond to the baseline amounts of $8 million to spouses of the decedents, $5 million to parents, $5 million to children (including a stepchild), and $2.5 million to siblings (including a half-sibling).

## 2. The Special Master's Recommendations that Vary from the Standard Amounts Awarded

In five cases, the Special Master's recommended solatium damages deviate upward from the formula accepted by the Court, but those deviations are well-supported by the facts and circumstances in the record. Baseline awards are "not set in stone," *Murphy v. Islamic Republic*

*of Iran*, 740 F. Supp. 2d 51, 79 (D.D.C. 2010), but instead, they are "guideposts," and "courts should deviate depending on the circumstances." *Fritz*, 324 F. Supp. 3d at 62 (citation omitted). The awards may be adjusted, including when there is "an especially close relationship between the plaintiff and decedent, particularly in comparison to the normal interactions to be expected given the familial relationship, medical proof of severe pain, grief or suffering on behalf of the claimant, and circumstances surrounding the terrorist attack which made the suffering particularly more acute or agonizing." *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 26-27 (D.D.C. 2011).

In this case, the Special Master recommended the following upward departures (consistent with Plaintiffs' requests, unless otherwise noted below): (1) from $2.5 million to $3.125 million for Bryan Montgomery, twin brother of decedent Ryan Montgomery [where Plaintiffs requested $2.5 million]; (2) from $8 million to $10 million for Rayanne Hunter, widow of decedent Wesley Hunter; (3) from $2.5 million to $3 million for John Lamie, decedent Gene Lamie's brother; (4) from $5 million to $7.5 million for Tammy Vanderwaal, mother of decedent Matthew Kyle Reece [where Plaintiffs requested $10 million]; and (5) from $2.5 million to $3 million for Michael J. Miller, brother of decedent Patrick J. Miller. Special Master Solomon's rationale for her recommended upward departures is described in more detail below.

Regarding Bryan Montgomery, he was an identical twin of and inseparable from his brother Ryan; they were "best friends, confidants, and motivators." Report and Recommendation, ECF No. 272, at 19. Both enlisted in the National Guard, with the proviso that Bryan would be in the same unit as Ryan, and both deployed to Iraq together. *Id.* at 17.

*Id.* at 18.

Bryan sees his brother in his reflection in the mirror and he has nightmares about not being able to save him. *Id.* at 18-20. Ryan Montgomery was "part of Bryan's identity, such that Bryan has been

significantly and permanently changed by his brother's absence." *Id.* at 19. The Special Master concluded, and this Court agrees, that "Bryan's especially close relationship with SGT Montgomery has caused him to experience a heightened degree of mental anguish, bereavement, and grief as a result of SGT Mongomery's death, warranting the recommended upward departure from standard baseline awards." *Id.* at 20 (*see Oveissi*, 768 F. Supp. 2d at 26-27; *Murphy*, 740 F. Supp. 2d at 79; *Relvas v. Islamic Republic of Iran*, No. 14-cv-01752 (RCL), 2018 WL 1092445 at *4 (D.D.C. Feb. 28, 2018)). Accordingly, an award of $3.125 million in solatium damages to Bryan Mongomery is approved by this Court.

Regarding Rayanne Hunter – who is the widow of Wesley Hunter and mother of his two children – the Special Master recommended a departure to $10 million in solatium damages, based on the circumstances preceding Wesley Hunter's death. Wesley Hunter was severely injured during a February 26, 2006 attack, where he watched two soldiers die, and even as his wounds healed, he experienced intense pain, memory loss and confusion; he would have nightmares of the attack, often waking up often in a startled state;

," Report and Recommendation, ECF No. 272, at 22-23. Wesley and Rayanne Hunger had "heartbreaking" conversations about the fact that "[Wesley] was not really getting better," and that the "life he was leading was not fair to him, to [them], or to [their] family." *Id.* at 23-24. Wesley Hunter's condition worsened significantly before his eventual death, which was treated by the military "as if he had died in theater" because his death resulted from the injuries he suffered. *Id.* at 24. The Special Master noted that Rayanne often visits her husband's grave and believes that losing him has created an "unfillable void in her family's lives." *Id.* at 25. The Special Master recommended the 25% upward departure for "family members [such as Rayanne] who experience particularly egregious

9

suffering which can be caused by the knowledge that their loved ones suffered before dying." *Id.* at 25; *see., e.g., Flanagan v. Islamic Republic of Iran*, 87 F. Supp 3d. 93, 118 (D.D.C. 2015). Furthermore, such departure is warranted by Rayanne's "commitment to caring for her husband during the 30 months he suffered after his attack before he died." Report and Recommendation ECF No. 272 at 25; *see, e.g., Kinyua v. Republic of Sudan*, 466 F. Supp. 3d 1, 11 (D.D.C. 2000) (awarding a 20% upward departure to a plaintiff who put his life on hold to care for his injured brother). Based on the circumstances of Wesley Hunter's death and his wife's care for him during the time he was suffering, as well as the mental anguish, bereavement, and grief she experienced because of his death, this Court approves the recommended upward departure to $10 million in solatium damages for Rayanne Hunter.

The Special Master recommends a 20% upward departure for John Lamie, brother of U.S. Army SGT Gene Lamie. The Special Master describes the especially close relationship between the brothers, which caused John Lamie to experience a "heightened degree of mental anguish, bereavement, and grief as a result of SGT Lamie's death[.]" Report and Recommendation, ECF No. 272, at 52 (string citing cases in support of an upward departure). In this case, John Lamie idolized his older brother, Gene, and he relied on him, as they had a tumultuous family life in which they were tasked with caring for their half-sister's baby

*Id.* at 59. After Gene enlisted, John felt empty, and a year later, he enlisted, although their requests to be assigned together were denied. *Id.* John continued to look up to and rely upon his brother, and he was beyond devastated when his brother died. He reenlisted so that he could deploy to Iraq and search for the spot where his brother was killed. The Special Master concluded that

*Id.* at 62. Considering the nature of the relationship

10

between the two brothers, and the effects of Gene's death on John Lamie, this Court finds that an award of $3 million in solatium damages is warranted.

Regarding Tammy Vanderwaal, SPC Reece's mother, while the Plaintiffs requested $10 million in solatium damages, the Special Master recommended an award of $7.5 million. Tammy Vanderwaal was an actively involved mother, who enjoyed reading, swimming, hiking, fishing, and cooking around a campfire with her son Matthew during his childhood. Report and Recommendation ECF No. 272, at 63. Tammy was impressed by the way Matthew cared for his brother, who suffered from Muscular Dystrophy, and she was Matthew's "biggest fan" when he played on the high school basketball team. *Id.* at 64. Before Matthew enlisted, he relinquished full custody of his daughter to Tammy,

*Id.* After her son's death, Tammy struggled with eating and sleeping issues, and she "still struggle[s] to get out of bed every morning" and "struggles daily with her pain and anguish." *Id.* at 65-66. The Special Master recommended an upward departure of 50% based on the "unique circumstances in which Tammy needed to raise her son's daughter on her own from when she was three years old," which compounds the "awareness of her son's absence." *Id.* at 65-66. Based on the circumstances described by the Special Master, the Court approves the upward adjustment and awards $7.5 million in solatium damages to Tammy Vanderwaal.

Finally, the Special Master recommends a 20% upward departure for Michael Miller, younger brother of U.S. Army PFC Patrick Miller, because of the close nature of their relationship as siblings. In this case, Michael testified that PTC Miller, who was six years his senior, was his father figure in their family,                                                                          . Report and Recommendation, ECF No. 272, at 76, 78. Patrick Miller showed Michael how to "brush his teeth, ride a bicycle, skate, and use remote control cars," as well as how to "use a wakeboard," and they

enjoyed bowling and watching professional wrestling together. *Id.* at 76. After Patrick enlisted, he and Michael would speak at least once a week about many things, including plans for the future. *Id.* at 77. After Patrick's death, Michael "felt numb and was overwhelmed by an utter sadness"; he visited the cemetery "nearly every month" during the first three years after his brother's death, and he kept many of his brother's possessions as mementos. *Id.* Michael expressed that "everything was taken from [him]" when his brother died, and sometimes he feels "completely broken." *Id.* at 78. The Special Master noted that "Michael's especially close relationship with PFC Miller has caused him to experience a heightened degree of mental anguish, bereavement, and grief as a result of PFC Miller's death, warranting the recommended upward departure from the standard baseline awards." *Id.* at 78; *see Relvas*, 2018 WL 1092445 at *4 (finding that an upward adjustment is appropriate for siblings who "generally enjoyed a relationship more intimate than that shared by most siblings"). Based on the statements made by Michael Miller and the circumstances underlying his relationship with his older brother Patrick, this Court finds that the upward adjustment recommended by the Special Master is warranted.

Accordingly, this Court agrees with the Special Master's recommended upward adjustments in solatium damages in the cases of: Bryan Montgomery, Rayanne Hunter, John Lamie, Tammy Vanderwaal, and Michael Miller.

### IV. CONCLUSION

The Court acknowledges Plaintiffs' efforts to hold Iran responsible for the acts of terror that resulted in injury and/or death to persons serving in the military and/or working for the Government and appreciates that there is no amount of money that can truly compensate the servicemembers/civilians and members of their family. Based on the explanation set forth herein, the Court finds Defendant responsible for the injuries sustained by Plaintiffs and liable under the

FSIA's state-sponsored terrorism exception for damages based on solatium. Accordingly, it is this 18th day of August 2025,

ORDERED that the court ADOPTS the [272] Report and Recommendation by Special Master Shana Solomon. After review of Plaintiffs' proposed damages chart for the 36 Plaintiffs herein, to ensure that it is consistent with the damage amounts set forth in the Special Master's Report and Recommendation, as adopted herein, and that it calculates punitive damages in accordance with the formula used by the Court in its [196] Memorandum Opinion, this Court will issue its Order and Judgment, with a damages chart attached thereto.

/s/ Colleen Kollar-Kotelly
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE