**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TIMOTHY KARCHER, *et al.*,<br>    Plaintiffs,<br>v.<br>ISLAMIC REPUBLIC OF IRAN,<br>    Defendant. | Civil Action No. 16-00232 (CKK)<br>Public Redacted Version |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This Memorandum Opinion addresses the Special Master's [287] Sealed Report and Recommendation Regarding Damages as to solatium claims by Plaintiffs Aliciah Fuller and Daniel J. Fuentes.[1] These Plaintiffs are family members of Plaintiffs Alexander Fuller and Daniel A. Fuentes, who were killed in attacks on January 25, 2007, and April 6, 2007, respectively, where both attacks utilized Explosively Formed Penetrators ("EFPs"), for which Defendant Islamic Republic of Iran ("Iran") and its proxies bear responsibility. *See Karcher v. Islamic Republic of Iran*, Civil Action No. 16-232, 2021 WL 133507 (Jan. 14, 2021) (discussing in detail the circumstances surrounding the attacks, including the attack which killed Alexander Fuller and Daniel A. Fuentes, among others). That opinion is incorporated by reference herein. The Special Master's Report and Recommendation addresses only solatium damages. Having considered the Report and Recommendation of the Special Master – which is thoughtful and supported by citations to the record evidence – as well as the Plaintiffs' [289] Notice of Non-Objections to the

---

[1] A redacted version of the Report and Recommendation was filed by Plaintiffs at ECF No. 291. This Memorandum Opinion and Order is being filed under seal as it discloses confidential information.

1

Special Master's Report and Recommendation, the Court ADOPTS the Special Master's recommended damages awards. A separate consolidated Order and Judgment will be issued subsequently.

## II. PROCEDURAL BACKGROUND

After holding a three-day bench trial, on August 26, 2019, the Court granted default judgment against Iran as to the claims of multiple Plaintiffs injured in bellwether attacks and the claims of Plaintiffs representing individuals killed in the bellwether attacks. *See* Orders, ECF Nos. 93 & 105; *see* Aug. 26, 2019 Mem. Op., ECF No. 94 and Sept. 11, 2019 Mem. Op., ECF No. 106 (incorporated by reference herein). The Court made no finding regarding damages for any of those bellwether Plaintiffs but instead appointed Alan Balaran, Esq. as a Special Master to prepare reports and recommendations on damages for these Plaintiffs. *See* Sept. 9, 2019 Order and Admin. Plan, ECF No. 102. Before the Special Master's reports and recommendations had been completed, the Court ordered Mr. Balaran to include his findings on non-economic damages for eight non-bellwether Plaintiffs who were injured in EFP attacks for which the Court subsequently found Iran liable. *See* Jan. 14, 2021 Order, ECF No. 125; *see also* Jan. 14, 2021 Order granting default judgment; Jan. 14, 2021 Sealed Mem. Op. (incorporated by reference herein) (addressing 73 non-bellwether attacks).

Mr. Balaran's reports and recommendations were filed under seal, ECF Nos. 146-148, and after an objection by the Plaintiffs – regarding the methodology employed to calculate EFP damages – the Special Master revised his EFP Damages Matrix, *see* ECF No. 169 (proposed modification). Plaintiffs filed their [170] Notice of Non-Objection to the Proposed Modification, and the Court issued its [171] Memorandum Opinion adopting the analysis and revised damages calculations. Thereafter, this Court appointed four additional Special Masters "to administer

damages proceedings for the Plaintiffs in this case [who were] awarded default judgment, [but] who were not part of this Court's remit to Mr. Alan L. Balaran." Oct. 3, 2024 Order and Admin. Plan, ECF No. 179, at 1. The four Special Masters were directed to provide their Reports and Recommendations on a rolling basis. *Id.* at 3. Special Master Jack McKay's Report and Recommendation – which is the subject of this Memorandum Opinion and Order – addresses solatium claims made by family members of Alexander Fuller and Daniel A. Fuentes.

### III. DISCUSSION

As a preliminary matter, Special Master McKay noted that this Court has jurisdiction over Plaintiffs' claims insofar as both Mr. Fuller and Mr. Fuentes were "member[s] of the armed forces" and "both of the family member Plaintiffs are United States citizens." Report and Recommendation, ECF No. 287, at 6; *see* 28 U.S.C. §1605A(a)(2)(A)(ii) (regarding subject matter jurisdiction). As noted herein, this Court has determined previously that Iran was liable for Plaintiffs' injuries under 28 U.S.C. § 1605A(c). Pursuant to Section 1605A(c), Plaintiffs' damages "may include economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c). In the instant case, Plaintiffs claim solatium damages and punitive damages.

The issue of punitive damages was not referred to the Special Master; rather, Plaintiffs have requested punitive damages in their [8] Amended Complaint and through their [191] Motion in Support of Punitive Damages, which was granted by this Court. *See* Memorandum Opinion, ECF No. 196 (incorporated by reference herein) (awarding punitive damages, which are to be computed by multiplying each Plaintiff's compensatory damages by three). Accordingly, punitive damages for the Plaintiffs addressed in this Opinion and Order will be calculated subsequently, in a manner consistent with this Court's Memorandum Opinion, ECF No. 196. The Court turns now to the Special Master's recommendations regarding Plaintiffs' solatium claims.

A. Solatium Damages

A claim for solatium is "a claim for the mental anguish, bereavement and grief that those with a close personal relationship to a decedent experience as a result of the decedent's death, as well as the harm caused by the loss of the decedent, society and comfort." *Belkin*, 667 F. Supp. 2d at 22 (citation omitted). Under the state-sponsored terrorism exception to the FSIA, "the award of solatium damages to the close relatives of terrorism victims" is expressly contemplated. *Fritz*, 324 F. Supp. 3d at 61-62 (citing 28 U.S.C. § 1605A(c)). It is presumed that "family members in direct lineal relationship suffer compensable mental anguish[.]" *Kaplan v. Hezbollah*, 213 F. Supp. 3d 27, 38 (D.D.C. 2016) (internal quotation marks omitted).

Courts in this District have employed "a general framework for the calculation of proper damage awards in FSIA cases" based on principles articulated in the *Heiser* case. *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 26 (D.D.C. 2011) (citing *Heiser v. Republic of Iran*, 466 F. Supp. 2d at 269-270). Under this general framework, spouses of deceased victims receive $8 million; parents and children receive $5 million; and siblings receive $2.5 million. *Peterson v. Islamic Republic of Iran* ("*Peterson II*"), 515 F. Supp. 2d 25, 52 (D.D.C. 2007); *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 85 (D.D.C. 2010); *Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 269 (D.D.C. 2006). "Spouses typically receive greater damage awards than parents, who, in turn, receive greater awards than siblings," and "families of victims who have died are typically awarded greater damages than families of victims who remain alive." *Heiser*, 466 F. Supp. 2d at 269 (internal quotation marks omitted).

Accordingly, in this District, the baseline solatium awards for family members of victims who survived terrorist attacks are that spouses receive $4 million, parents and children receive $2.5 million, and siblings receive $1.25 million. *Peterson v. Islamic Republic of Iran*, 515 F. Supp.

4

2d 25, 52 (D.D.C. 2007)). "Relatives of surviving servicemen receive[ ] awards valued at half of the awards to family member of th[ose] deceased[.]" *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 79 (D.D.C. 2010).

In this case, both Plaintiffs were in utero at the time that their fathers were killed; more specifically, Aliciah Fuller was born less than three months after the attack that killed her father, and Daniel J. Fuentes was born five months after the attack that killed his father. Special Master McKay notes that the Court of Appeals for the District of Columbia Circuit has held that "children who are in utero at the time a parent is killed in a terrorist attack and who are later born may seek solatium under the FSIA." *K.E.F.V. v. Islamic Republic of Iran*, 135 F.4th 988, 996 (D.C. Cir. 2025) (reversing the district court's dismissal of a solatium claim on behalf of an "in utero" plaintiff). Following that decision, the Honorable John Bates awarded $1.25 million in solatium damages to an in utero child who was born after her father was injured in an attack. *Cabrera v. Islamic Republic of Iran*, Civil Actions Nos. 18-2065, 19-3835, 2025 WL1423739, *16 (May 16, 2025) (citing *Cabrera*, No. 19cv-3835, 2024 WL 864092 (D.D.C. Feb. 29, 2024) (anticipating that if the Court of Appeals held that in utero plaintiffs had standing, it would award a child born after her father was killed in an attack $2,5 million, since "[w]hile A.M.P. has been deprived of her father's parental care and support, she has not suffered the same mental anguish as most plaintiffs who experienced the loss of a parent."))

B. Calculation of Damages for the Two In Utero Plaintiffs

"A court's job in a solatium case is to account for various facts and circumstances, and to use those factors to arrive at an appropriate numerical expression of total pain and grief — encapsulated in the solatium award." *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 25 (D.D.C. 2011).

5

1. Aliciah Fuller

Aliciah Fuller knows of her father, Alexander Fuller, only through stories about him and the scrapbooks her aunt made. ECF No. 287, at 7-8 (internal citations omitted). Ms. Fuller expressed a deep sense of longing for the father she never knew and frustration with the way in which she "lost the childhood [she] should have had." *Id.* at 8. When she was younger and feeling upset, she went to her father's grave "just to feel close to him." *Id.* at 9. She and her mother would visit the grave on certain days of the year, and, in recent years, she goes more frequently. *Id.*

Ms. Fuller's loss of growing up without a father was compounded by watching the way in which his death affected her mother, who became a widow at age 19. She opined that her mother loved her, but Ms. Fuller could never fill the void left by her father's death, and furthermore, while people told her that her mother used to be happy and independent, her father's death broke her mother. *Id.* at 9.

Ms. Fuller described growing up without either parent, after her mom's death. She skipped her high school graduation and thinks about the other milestones her parents will never see. *Id.* at 10-11. She continues to struggle with the belief that she "never got the parents [she] was supposed to have" and she finds the pain from losing both to be overwhelming. *Id.*

Special Master McKay noted that the court in *Cabrera* awarded an in utero plaintiff half of the typical baseline award, upon the reasoning that plaintiffs who were in utero when their parent was killed would not suffer the same mental anguish as a child who knew the parent they lost. In this case, however, Special Master McKay indicated, and this Court agrees, that "Aliciah's

6

circumstances warrant an award that *exceeds* even the full baseline award of $5 million for children of deceased servicemembers." ECF No. 287, at 12. This is because, '[u]nlike typical in-utero plaintiffs, Aliciah did not simply lose the father she never knew; she lost both parents as a result of the January 25, 2007 attack [as] [h]er father's death set in motion a chain of events that destroyed her mother" and left her orphaned at age 16. *Id.* Accordingly, "[s]he has experienced precisely the kind of devasting mental anguish that full baseline awards are meant to compensate, plus additional grief." *Id.* The Special Master recommended an award of $7.5 million, which is a tripling of the $2.5 million used as a baseline in other cases of plaintiffs who were in utero when they lost a parent. The Court agrees with this recommendation and notes that it is a downward adjustment from the $8 million requested by Plaintiffs.

2. Daniel J. Fuentes

Daniel Fuentes knows of his father from stories he has been told over the years, as well as some photos and letters. ECF No. 287, at 14 (internal citations omitted). Mr. Fuentes also compares himself to his half-sister, who was five years old when their father was killed, and who has independent memories of him. *Id.* at 15. Growing up, Mr. Fuentes knew that he and his family were different, and he was acutely aware of his father not being able to share his successes when he competed as a member of the wrestling, football, and track teams in middle school and high school. *Id.* Mr. Fuentes often wished that his father was around to show him how to do things and give him advice, as well as to share in his achievements and milestones. *Id.* at 16. He visits his father's grave often as he finds it a place where he can "feel very close to him." *Id.* at 17. He thinks about his father often, and he proffered that "[n]ot having him [SPC Fuentes] in my life

7

every day hurts inside, and sometimes, it has been hard for me to deal with." *Id.* at 18. The Special Master recommends an award of $2.5 million for Daniel J. Fuentes's solatium claim. This Court agrees with that recommendation and notes that it is consistent with Plaintiffs' request.

In this case, upon review of the Report and Recommendation — which describes in detail the way in which Aliciah Fuller and Daniel J. Fuentes have been affected by growing up without a father in their lives, and, for Aliciah, the cascading effect of her father's death resulting in the loss of her mother — the Court adopts the Special Master's solatium damage awards – namely, $7.5 million to Aliciah Fuller, daughter of the late Alexander Fuller, and $2.5 million to Daniel J. Fuentes, son of the late Daniel A. Fuentes.

### IV. CONCLUSION

The Court acknowledges Plaintiffs' efforts to hold Iran responsible for the acts of terror that resulted in injury and/or death to persons serving in the military and/or working for the Government and appreciates that there is no amount of money that can truly compensate the servicemembers/civilians and members of their family. The Court finds Defendant responsible for the injuries sustained by Plaintiffs and liable under the FSIA's state-sponsored terrorism exception for damages based on solatium. Accordingly, it is this 20th day of January 2026,

ORDERED that the Court ADOPTS the [287] Report and Recommendation by Special Master McKay. The Court shall issue a separate Order and Judgment, with a damages chart attached thereto.

_____
COLLEEN KOLLAR-KOTELY
UNITED STATES DISTRICT JUDGE