**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TIMOTHY KARCHER, *et al.*,<br>Plaintiffs,<br>v.<br>ISLAMIC REPUBLIC OF IRAN,<br>Defendant. | Civil Action No. 16-00232 (CKK) |

**MEMORANDUM OPINION AND ORDER**
(September 28, 2026)

## I. INTRODUCTION

This Memorandum Opinion addresses the Special Master Jack McKay's [310] Sealed Report and Recommendation Regarding Damages as to injuries sustained by 16 Plaintiffs, including fifteen family members[1] of service members who were injured or killed in attacks for which Defendant Islamic Republic of Iran ("Iran") and its proxies bear responsibility, as well as the estate of one service member who was killed.[2] More specifically, Special Master McKay's [310] Report and Recommendation addresses claims related to service members PFC Marvin Thornsberry, SSG Blake Harris, SPC Jerome Potter, Colonel Stephen Scott, Major Stuart Wolfer, SSG Emanuel Pickett, SSG Jeffery Hartley, PFC Adam Marion, SGT Mark Stone, and SPC Daniel Drevnick.

[1] One family member is deceased and is represented by her estate.

[2] A redacted version of the Report and Recommendation was filed at ECF No. 312. This Memorandum Opinion and Order is not being filed under seal because it does not disclose any confidential information about the Plaintiffs.

The Special Master's Report and Recommendation addresses the following categories of damage awards: (1) conscious pain and suffering damages for the Estate of Jerome Potter; (2) economic loss damages for the Estate of Jerome Potter, including damages for lost wages and unreimbursed funeral expenses; and (3) solatium damages for Plaintiffs Noah Thornsberry, Anne Harris, Paul Harris, [the Estate of] Holly Burson, Rachel Gillette, Rebekah Scott, Esther Wolfer, Leonard Wolfer, Harry Cromity, David Wade Hartley, Pamela Marion, Donnie Marion, Adrian McCann, Don Stone, and Kenneth J. Drevnick, all close family members of the ten service members. Having considered the Report and Recommendation of the Special Master – which is both thorough and well-reasoned – and to which Plaintiffs filed its [313] Notice of Non-Objection, the Court ADOPTS the Special Master's recommended damages awards. A separate consolidated Order and Judgment will be issued subsequently.

## II. PROCEDURAL BACKGROUND

After holding a three-day bench trial in December 2018, on August 26, 2019, the Court granted default judgment against Iran as to the claims of multiple Plaintiffs injured in seven bellwether attacks – six of which involved the use of explosively formed penetrators ("EFPs") and one which involved more conventional weapons – and the claims of Plaintiffs representing individuals killed in the bellwether attacks. *See Karcher v. Islamic Republic of Iran*, 396 F. Supp. 3d 12 (D.D.C. 2019) (incorporated by reference herein). The Court made no finding regarding damages for any of those bellwether Plaintiffs but instead appointed Alan Balaran, Esq. as a Special Master to prepare reports and recommendations on damages for these Plaintiffs. ECF No. 102. On January 14, 2021, the Court found Iran liable for an additional 73 non-bellwether attacks involving the use of EFPs. *See Karcher v. Islamic Republic of Iran*, 2021 WL 133507 (D.D.C. Jan. 14, 2021) (incorporated by reference herein). On that same day, the Court broadened the

scope of Special Master Balaran's appointment to include recommended findings of fact and conclusions of law regarding non-economic damages for the service member Plaintiffs injured in those EFP attacks. Order, ECF No. 125.

Mr. Balaran filed his reports and recommendations, and after an objection by the Plaintiffs – regarding the methodology employed to calculate EFP damages – the Special Master revised his EFP Damages Matrix, which was agreed to by Plaintiffs and adopted by the Court. *See* Mem. Op., ECF No. 171; Order and Judgment, ECF No. 172. Thereafter, this Court appointed four additional Special Masters to administer damages proceedings for the Plaintiffs awarded default judgment, who were not part of this Court's remit to Mr. Balaran. The four Special Masters have been providing their Reports and Recommendations on a rolling basis, and the Court has been issuing Orders and Judgments on damages on that same basis.

In June of 2026, this Court found Iran liable for ten [unadjudicated] non-bellwether attacks resulting in deaths and injuries to United States service members and U.S. nationals, which implicate additional Plaintiffs. *See Karcher v. Islamic Republic of Iran*, 2026 WL1584411 (D.D.C. June 3, 2026) (incorporated by reference herein). The Court indicated that those damage determinations would be handled also by the Special Masters in this case. *See* Order, ECF No. 202. Special Master McKay's Report and Recommendation involves Plaintiffs who are family members of service members killed or injured in seven of the ten non-bellwether attacks, with two exceptions. First, there are claims by Estates of Plaintiffs Jerome Potter and Holly Burson, "which arise from the May 3, 2007, attack for which the Court found Iran liable in its January 14, 2021 Memorandum Opinion, ECF No. 124." Report and Recommendation, ECF No. 310, at 6. Second, Plaintiff Noah Thornsberry has a "previously unadjudicated solatium claim arising from the January 20, 2007, bellwether attack on the Provincial Joint Coordination Center in Karbala, Iraq,

for which the Court found Iran liable in its August 26, 2019, Memorandum Opinion and Order, ECF No. 93." Report and Recommendation, ECF No. 310, at 6 (referencing also ECF Nos. 105 & 106 (granting default judgment in favor of Marvin Thornsberry, Noah's father)). The Court turns now to the conclusions of law and findings of fact in Special Master McKay's Report and Recommendation.

## III. DISCUSSION

As a preliminary matter, Special Master McKay noted that this Court has jurisdiction over Plaintiffs' claims insofar as all the direct victims of the attacks were "member[s] of the armed forces" and furthermore, all "the family member Plaintiffs are United States citizens." *Id.*; *see* 28 U.S.C. §1605A(a)(2)(A)(ii) (regarding subject matter jurisdiction). Furthermore, this Court has determined previously that Iran was liable for Plaintiffs' injuries under 28 U.S.C. § 1605A(c). "Under the FSIA, a 'foreign states shall be liable in the same manner and to the same extent as a private individual under like circumstances.' Therefore, plaintiffs are entitled to the typical array of compensatory damages that may be awarded against tortfeasors in the plaintiffs' respective domiciliary states." *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 51 (D.D.C. 2007) (quoting 28 U.S.C. §1606). Pursuant to Section 1605A(c), Plaintiffs' damages "may include economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c).

In this case, "[t]he only remaining questions, therefore, are what type of damages Plaintiffs are entitled to recover and in what amounts." *Fritz v. Islamic Republic of Iran*, 324 F. Supp. 3d 54, 59 (D.D.C. 2018). Special Master McKay noted that Plaintiffs' claims for damages may be categorized as follows: (1) a conscious pain and suffering claim brought by the Estate of Jerome Potter; (2) an economic loss claim brought by the Estate of Jerome Potter; and (3) solatium claims brought by the remaining Plaintiffs. The issue of punitive damages was not referred to the Special

Master; rather, Plaintiffs have requested punitive damages in their [8] Amended Complaint and through their [191] Motion in Support of Punitive Damages, which was granted by this Court. *See* Memorandum Opinion, ECF No. 196 (awarding punitive damages, which are to be computed by multiplying each Plaintiff's compensatory damages by three) (incorporated by reference herein). Accordingly, punitive damages for the 16 Plaintiffs addressed in this Opinion and Order will be calculated subsequently, in a manner consistent with this Court's Memorandum Opinion, ECF No. 196. The Court turns now to the Special Master's recommendations regarding Plaintiffs' claims for damages.

**A. Damages for Conscious Pain and Suffering**

In this case, the Estate of Jerome Potter requested damages for conscious pain and suffering. When assessing damages for pain and suffering, there is "no recovery" where "death was instantaneous," *Elahi v. Islamic Republic of Iran*, 124 F. Supp. 2d 97, 112 (D.D.C. 2000). Based on the circumstances and timing of his death after his injuries were suffered, that bar is inapplicable to the claim by Jerome Potter's Estate. Plaintiffs requested, and the Special Master recommended, that the Estate of Jerome Potter be awarded $1 million for conscious pain and suffering. The Special Master noted that courts have awarded $1 million "in comparable circumstances involving brief periods of conscious pain and suffering, including where the evidence of consciousness was less direct than here." Report and Recommendation, ECF No. 310, at 33; *see, e.g., Smith ex rel. Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 234 (S.D.N.Y. 2003) (finding it reasonable that a victim of the September 11, 2001 destruction of the World Trade Center might have survived the plane crashing into the South Tower and been killed while descending). Victims who survived a few minutes to a few hours after the bombing typically receive an award of $1 million. *Elahi*, 124 F. Supp. 2d at 113. Furthermore, "estates of

direct victims can also recover for the pain and suffering endured" by the victim. *Fritz*, 324 F. Supp. 3d at 60. Based on the circumstances underlying Mr. Potter's death, the Court agrees with the Special Master's recommended award of $1 million for conscious pain and suffering to the Estate of Jerome Potter.

**B. Economic Loss Damages**

"Section 1605A explicitly provides that foreign state-sponsors of terrorism are liable to victims for economic losses stemming from injuries or death sustained as a result of the foreign state's conduct." *Thuneibat v. Syrian Arab Republic*. 167 F. Supp. 3d 22, 48 (D.D.C. 2016) (citing 28 U.S.C. § 1605A)(c)). Plaintiffs may prove economic losses through submission of a forensic expert's report. *Id.* at 49, *see Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 214 (D.D.C. 2012) ("The report of a forensic economist may provide a reasonable basis for determining the amount of economic damages in an FSIA case.") The Special Master first must examine the methodological soundness of the calculations, with the idea that "mathematical exactitude is often impossible," *Bova v. Islamic Republic of Iran*, No. 15-cv-1074 (RCL), 2020 WL 2838582, at *11 (D.D.C. May 31, 2020). Then, the Special Master may examine "reasonableness and foundation of the assumptions relied upon by the experts. *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 402 (D.D.C. 2015), to protect against "speculation, contingency, or conjecture." *Bova*, 2020 WL 2838582, at *11.

In his Special Master Report and Recommendation, Special Master McKay documented the expert report by L. Wayne Plumly, Jr., Ph.D. that he utilized in support of calculating Plaintiff Potter's economic loss claim. Dr. Plumly –who served as Professor of Economics at Langdale College of Business at Valdosta State University, until 2005, and as Dean until 2020 – is well-qualified, and he has previously provided expert reports on economic losses in terrorism cases,

where such loss calculations derived therefrom have been adopted by courts, including this Court. Based on a review of the record in this case, the Court finds these calculations and assumptions made by Dr. Plumly in his report to be reasonable. Nor have Plaintiffs objected to the economic loss calculation. Accordingly, the economic loss damages [for lost wages and benefits] recommended by Special Master McKay, on behalf of the Estate of Jerome Potter, in the amount of $2,882,804.87, is approved by this Court.

The Court notes that, as part of the claim for economic loss damages, the Estate of Jerome Potter requested reimbursement of unreimbursed funeral expenses, including prejudgment interest, in total amounts of $4,000.00 and $5,886.62, respectively. Funeral expenses may be awarded as part of economic damages pursuant to Section 1605A(c), along with prejudgment interest. *Colvin v. Syrian Arab Republic*, 363 F. Supp. 3d 141, 160-61 (D.D.C. 2019); *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 24 (D.D.C. 2009) (same). Regarding prejudgment interest, the Special Master explained that "[t]his Circuit has held that an appropriate measure of what rate to use when calculating prejudgment interest is 'the prime rate for each year, *i.e.*, the rate banks charge for short-term unsecured loans to credit-worthy customers.'" Report and Recommendation, ECF No. 310, at 31 (quoting *Oldham v. Korean Air Lines Co.*, 127 F.3d 43, 54 (D.C. Cir. 1997) (citing *Forman v. Korean Air Lines Co., Ltd.*, 84 F.3d 446, 450 (D.C. Cir.), *cert den.*, 519 U.S. 1028 (1996)). The Special Master explained that the interest calculation conformed to the calculation in *Mwila v. Islamic Republic of Iran*, 33 F. Supp. 3d 36, 47 & n.7, 8 (D.D.C. 2014). Accordingly, considering the applicable case law, the Court adopts the Special Master's recommended calculation of funeral expenses with prejudgment interest, in the total amount of $ 9,886.62, which is included in the claim for economic damages made by the Estate of Jerome Potter.

**C. Solatium Damages**

A claim for solatium is "a claim for the mental anguish, bereavement and grief that those with a close personal relationship to a decedent experience as a result of the decedent's death, as well as the harm caused by the loss of the decedent, society and comfort." *Belkin*, 667 F. Supp. 2d at 22 (citation omitted). Under the state-sponsored terrorism exception to the FSIA, "the award of solatium damages to the close relatives of terrorism victims" is expressly contemplated. *Fritz*, 324 F. Supp. 3d at 61-62 (citing 28 U.S.C. § 1605A(c)). It is presumed that "family members in direct lineal relationship suffer compensable mental anguish[.]" *Kaplan v. Hezbollah*, 213 F. Supp. 3d 27, 38 (D.D.C. 2016) (internal quotation marks omitted).

Judges in this District Court have employed "a general framework for the calculation of proper damage awards in FSIA cases" based on principles articulated in the *Heiser* case. *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 26 (D.D.C. 2011) (citing *Heiser v. Republic of Iran*, 466 F. Supp. 2d at 269-270). Under this general framework, spouses of deceased victims receive $8 million; parents and children receive $5 million; and siblings receive $2.5 million. *Peterson v. Islamic Republic of Iran* ("*Peterson II*"), 515 F. Supp. 2d 25, 52 (D.D.C. 2007); *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 85 (D.D.C. 2010); *Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 269 (D.D.C. 2006). "Spouses typically receive greater damage awards than parents, who, in turn, receive greater awards than siblings," and "families of victims who have died are typically awarded greater damages than families of victims who remain alive." *Heiser*, 466 F. Supp. 2d at 269 (internal quotation marks omitted). Courts in this District have also established baseline solatium awards for family member victims who survived terrorist attacks: Spouses receive $4 million, parents and children receive $2.5 million, and siblings receive $1.25

million. *See Peterson II*, 515 F. Supp. 2d at 52; *see also Davis v. Islamic Republic of Iran*, 882 F. Supp. 2d 7, 14 (D.D.C. 2014) (same).

Reviewing the case law on solatium damages, this Court finds appropriate awards of solatium damages to immediate family members of victims killed by terrorists in the amounts of $8 million, $5 million, $5 million, and $2.5 million, to spouses, parents, children, and siblings, respectively. The Special Master's recommended solatium damage awards that correspond to this formula are adopted by this Court. This includes claims by Plaintiffs Anne and Paul Harris, Rachel Gillette, Rebekah Scott, Esther and Leonard Wolfer, Harry Cromity, David Wade Hartley, Pamela and Donnie Marion, Adrian McCann, Don Stone, and Kenneth J. Drevnick.

1. Upward Adjustment

In the case of the Estate of Holly Burson, the Special Master's recommended solatium damages deviates from this formula, but that deviation is well-supported by the facts and circumstances in the record. The Court notes that "[t]hese [solatium] numbers . . . are not "set in stone," *Murphy*, 740 F. Supp. 2d at 79, but instead are "goalposts," and "courts should deviate depending on the circumstances." *Fritz*, 324 F. Supp. 3d at 62 (citation omitted). "A court's job in a solatium case is to account for various facts and circumstances, and to use those factors to arrive at an appropriate numerical expression of total pain and grief—encapsulated in the solatium award." *Oveissi*, 768 F. Supp. 2d at 25. Upward departures may be warranted if there is "evidence establishing a particularly close relationship between the plaintiff and the decedent, particularly in comparison to the normal interactions to be expected given the familial relationship" or with "medical proof of severe pain, grief or suffering on behalf of the claimant" or if the "circumstances surrounding the terrorist attack [rendered] the suffering particularly more acute or agonizing."

*Oveissi*, 768 F. Supp. 2d at 26-27. The Court turns now to the departure recommended by the Special Master.

Plaintiffs requested an upward departure of 25%, to $6.25 million, for Holly Burson's solatium claim to reflect "Holly's particularly egregious suffering over the way her son was killed[.]" Report and Recommendation, ECF No. 310, at 41; *see Flanagan v. Islamic Republic of Iran*, 87 F. Supp. 3d 93, 118 (D.D.C. 2015) (awarding 25% upward departure for family members of the deceased, because "the violent nature in which he died exacerbated their grief and mental suffering, with several of his family members tortured by the fact that he may have suffered before he died"); *Oveissi*, 768 F. Supp. 2d at 21, 29-30 (awarding 50% upward departure to formerly "playful and cheery child" who "suffered from outbursts of anger and fits of denial" and "battled alcoholism" throughout his adolescence in an attempt to cope with the death of his family member); *Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 68, 84 (D.D.C. 2011) (awarding 25% upward departure to brother who battled substance abuse and depression as a result of his sister's death). The Special Master considered the close relationship between Holly Burson and her son Jerome Potter, as well as the circumstances of Jerome Potter's death, the tragic way in which his remains were presented to Holly Burson, and her overwhelming grief following his death. As such, Special Master McKay recommended a 40% upward departure in solatium damages, to $7 million, for the Estate of Plaintiff Holly Burson, noting that this was a case where "the circumstances of a family member's death inflict[ed] psychological trauma on the survivor and precipitate[d] self-destructive behavior [ ] far beyond what is typical in solatium cases." Report and Recommendation, ECF No. 310, at 42. The Court finds this upward departure is warranted by the relationship between Plaintiffs Holly Burson and her son, Jerome Potter, the

circumstances surrounding Jerome Potter's death and the way in which Holly Burson was affected by his death.

2. Solatium Damages for Plaintiff with an Unadjudicated Claim

In this case, Special Master McKay considered an unadjudicated claim for solatium damages by Noah Thornsberry, who was in utero when his father Marvin Thornsberry was injured during a January 20, 2007 Karbala attack which killed other service members. Noah was born in March of 2007, while Marvin was home on leave after the attack. While Special Master Balaran considered Noah's claim in connection with claims by Marvin Thornsberry and other immediate family members, at that time, Special Master Balaran recommended that Noah's claim be denied because of the then-existing case law precedent that "a plaintiff bringing an action under §1605A must have been alive at the time of the attack in order to collect solatium damages." *Davis*, 882 F. Supp. 2d at 15. Report and Recommendation, ECF No. 148-3 at 27-28. This Court did not refer to this recommendation in its Memorandum Opinion or its Order and Judgment related to the Plaintiffs discussed in that Report and Recommendation, and accordingly, Noah Thornsberry's claim remains unadjudicated. *See Baxter v. Islamic Republic of Iran*, No. 11-cv-2133 (RCL), 2025 WL 689217, at *3 (D.D.C. Mar. 3, 2025) ("[T]here is no final judgment on the merits that would allow the Court to invoke claim preclusion. . . The Court will therefore proceed to rule on Mr. Bluth's claims."); Fed. R. Civ. P. 53, Advisory Comm. Notes to 2003 Amend., subdivision (g)(2) ("If no party asks the court to act on a master's report, the court is free to adopt the master's action or to disregard it at any relevant point in the proceedings.")

Special Master McKay notes that:

> "[N]ew case law has been issued since the final judgment was entered in favor of Noah Thornsberry's family members that directly addresses the status of Noah Thornsberry's claims. On April 29, 2025, the D.C. Circuit Court of Appeals issued a decision in *K.E.F.V. v. Islamic Republic of Iran*, holding that a child in utero at the time of a father's death in a

> terrorist attack has standing to recover solatium damages. *See* 135 F.4th at 996. Following the Court of Appeals' decision, the district court in *Cabrero v. Islamic Republic of Iran* awarded in utero plaintiffs 50% of the baseline awards for children set forth in *Peterson II*, 515 F. Supp. 2d at 52 (awarding $5 million for the child of a deceased servicemember, and $2.5 million to a child born after her father was injured in an attack) (citing *Cabrera*, No. 19-cv-3835 (JDB), 2024 U.S. Dist. LEXIS 34785, at *2 n.2 (D.D.C. Feb. 29, 2024) (anticipating that if the Court of Appeals held that in utero plaintiffs had standing, it would award a child born after her father was killed in an attack $2.5 million, since "[w]hile A.M.P. has been deprived of her father's parental care and support, she has not suffered the same mental anguish as most plaintiffs who experienced the loss of a parent.")).

Report and Recommendation, ECF No. 310 at 12-13.

In this case, Special Master McKay described how the trauma that Marvin Thornsberry experienced during the Karbala attack led to a change in Marvin's behavior and put a strain on his relationships with his wife and children. "Furthermore, as Noah considered Marvin's behavior and its impact today, Noah has 'accepted that he [Marvin] will probably be like this forever,'" and "he sincerely wishes that neither he nor Marvin 'had to live with any of the upsetting ways he [Marvin] acts now.'" *Id.* at 18 (quoting Noah Thornsberry). Plaintiffs requested an award of solatium damages in the amount of $375,000 – which is half the amount awarded to his siblings for their "emotional trauma." *See* ECF No. 148-3, at 25. Special Master McKay recommended however that Noah receive $750,000, noting that "Noah suffered the same loss of his father's society and the same "emotional trauma" as did his siblings and should be similarly compensated even though he was born after the attack that damaged his father." Report and Recommendation, ECFR No. 312, at 19. In sum, Special Master McKay opines, and this Court agrees that:

> Cases applying a 50% reduction to solatium awards to in utero children of deceased service members reflect the fact that the child did not experience the emotional impact of the death itself. That rationale does not apply to in utero plaintiffs where the service member survived. All of Marvin Thornsberry's children were exposed to the same ongoing loss and harm arising from their father's psychological injury and should be equally compensated.

Report and Recommendation, ECF No. 310, at 19. Accordingly, the Court agrees with a solatium damages award for Noah Thornsberry in the amount of $750,000, which is the same amount awarded previously to his siblings.

## IV. CONCLUSION

The Court acknowledges Plaintiffs' efforts to hold Iran responsible for the acts of terror that resulted in injury and/or death to persons serving in the military and appreciates that there is no amount of money that can truly compensate the service members/civilians and members of their family. Based on the explanation set forth herein, the Court finds Defendant responsible for the injuries sustained by Plaintiffs and liable under the FSIA's state-sponsored terrorism exception for damages based on economic loss, conscious pain and suffering, and solatium. Accordingly, it is this 28th day of September 2026,

ORDERED that the court ADOPTS IN FULL the findings and recommendations in Special Master McKay's [310] Report and Recommendation. A separate Order and Judgment shall follow this Memorandum Opinion and Order.

Colleen Kollar-Kotelly
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE